Kevin J. McKenna, Esq. (KJM 7530)
Elvin Esteves, Esq. (EE 2216)
**GIBBONS, DEL DEO, DOLAN
GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey  07102-5496
(973) 596-4500
Attorneys for Defendant IAC/InterActiveCorp

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Source Search Technologies, LLC, | ) **Filed Electronically** |
| Plaintiff, | ) Civil Action No. 2:04-cv-4420 (DRD) (SDW) |
| -- against -- | ) |
| LendingTree, Inc., IAC InterActiveCorp, and Service Magic, Inc. | ) (Oral Argument Requested for December 13, 2004) |
| Defendants. | ) |

### DEFENDANT IAC/INTERACTIVECORP'S
### OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

#797056 v4
099998-00013

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS............................................................................... 2

ARGUMENT .................................................................................................. 7

    I.    IAC DOES NOT DIRECTLY INFRINGE THE ASSERTED
        PATENT BECAUSE IT DOES NOT MAKE, USE, SELL,
        OFFER TO SELL OR IMPORT ANY OF THE ACCUSED
        PRODUCTS OR SERVICES.......................................................... 8

    II.   IAC DOES NOT CONTRIBUTE TO THE INFRINGEMENT
        OF THE ASSERTED PATENT BECAUSE IT DOES NOT
        OFFER TO SELL, SELL OR IMPORT A COMPONENT OF
        THE ACCUSED PRODUCTS OR SERVICES ............................... 9

    III.  IAC DOES NOT ACTIVELY INDUCE INFRINGEMENT OF
        THE ASSERTED PATENT BECAUSE THERE IS NO
        EVIDENCE OF SPECIFIC INTENT ........................................... 10

    IV.  IAC AND, RESPECTIVELY, LENDINGTREE AND
        SERVICE MAGIC HAVE LEGITIMATE PARENT-
        SUBSIDIARY RELATIONSHIPS AND THE COURT
        THEREFORE SHOULD NOT DISREGARD THE
        CORPORATE FORM TO FIND IAC POTENTIALLY
        LIABLE FOR ACTS OF THESE SUBSIDIARIES ...................... 12

        A.    IAC is not the "Alter Ego" of either LendingTree or
              Service Magic ..................................................................... 15

        B.    Neither LendingTree nor Service Magic is Acting as
              IAC's Agent when it Performs Activities that may Relate
              to the '328 Patent............................................................... 18

CONCLUSION.............................................................................................. 20

#797056 v4
099998-00013

## TABLE OF AUTHORITIES

### FEDERAL CASES

A. Stucki Co. v. Worthington Industries, Inc.,
    849 F.2d 593 (Fed. Cir. 1988) .................................................................. 13

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .......................................................................... 7, 8

Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT,
    106 F. Supp. 2d 606 (D. N.J. 1999) ................................................ 14, 19, 20

Board of Trustees v. Foodtown, Inc.,
    296 F.3d 164 (3d Cir. 2002) ........................................................ 15, 16, 18

Beverly Hills Fan Co. v. Royal Sovereign Corp.,
    21 F.3d 1558 (Fed. Cir. 1994) ................................................................. 8

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ............................................................................. 7

Hewlett-Packard Co. v. Bausch & Lomb Inc.,
    909 F.2d 1464 (Fed. Cir. 1990) .............................................................. 10

L.A. Gear, Inc. v. E.S. Originals, Inc.,
    859 F. Supp. 1294 (C.D. Cal. 1994) ........................................................ 10

Leo v. Kerr-McGee,
    No. 93-1107 (JEI), 1996 U.S. Dist. LEXIS 6698 (D. N.J. May 10,
    1996) ................................................................................................ 14

Manville Sales Corp. v. Paramount Systems Inc.,
    917 F.2d 544 (Fed. Cir. 1990) .................................................... 10, 13, 17

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ............................................................................. 7

Minnesota Mining & Manufacturing Co. v. Eco Chemical, Inc.,
    757 F.2d 1256 (Fed. Cir. 1985) .............................................................. 18

#797056 v4
099998-00013

Pearson v. Component Technology Corp.,
    247 F.3d 471 (3d Cir. 2001) ...........................................................15, 16

Phoenix Canada Oil Co. v. Texaco, Inc.,
    842 F.2d 1466 (3d Cir. 1988)..................................................... 14, 19, 20

Portfolio Finance Servicing Co. v. Sharemax.com, Inc.,
    334 F. Supp. 2d 620 (D. N.J. 2004)........................................... 14

SDS USA, Inc. v. Ken Specialties, Inc.,
    No. 99-133, 2002 U.S. Dist. LEXIS 16762 (D. N.J. Aug. 28,
    2002)....................................................................................13, 15, 16, 17

Trustees of National Elevator Industry Pension, Health Benefit and
    Educational Funds v. Lutyk,
    332 F.3d 188 (3d Cir. 2003) ..................................................... 15

United States v. Bestfoods,
    524 U.S. 51 (1998)...........................................................................12, 13

View Engineering, Inc. v. Robotic Vision Systems, Inc.,
    208 F.3d 981 (Fed. Cir. 2000)................................................... 11

## STATE CASES

Department of Environmental Protection v. Ventron Corp.,
    468 A.2d 150 (N.J. 1983) ...............................................................12, 14

## FEDERAL STATUTES

35 U.S.C. §§ 1-376 (2003) ................................................................... 13

35 U.S.C. § 271(a) (2004).................................................................8, 9, 10

Fed. R. Civ. P. 12(b) (2004) ................................................................. 7

Fed. R. Civ. P. 56(c) (2004) ...........................................................7, 11

#797056 v4
099998-00013

## PRELIMINARY STATEMENT

Through its First Amended Complaint, Plaintiff Source Search Technologies, LLC ("SST") alleges that Defendants LendingTree, Inc. ("LendingTree"), Service Magic, Inc. ("Service Magic"), and LendingTree's and Service Magic's parent IAC/InterActiveCorp ("IAC") each infringe one or more claims of U.S. Patent No. 5,758,328 (the "'328 patent"). <u>See</u> First Amended Complaint for Patent Infringement ("Complaint"). The '328 patent is generally directed to "a computerized system forming a computer based communications network for processing requests for quotation for goods and/or services by broadcasting such requests to network members of the computerized system over any conventional transmitting medium, such as the Internet." <u>See</u> the '328 patent, col. 2, ll. 35-41.

IAC moves to dismiss the Complaint for failure to state a claim, on the simple ground that IAC, as a holding company, does not make, use, sell, offer to sell, or import *anything* that could possibly infringe the '328 patent. Although two of IAC's operating subsidiaries have also been named in this case, well-settled case law makes it clear that IAC is not ?  and cannot be held ?  responsible for any activities of these subsidiaries that may relate to the '328 patent. No basis exists for holding IAC liable for the acts of its subsidiaries, LendingTree and Service Magic, under any theory, including an alter ego theory or agency theory.

#797056 v4
099998-00013

Accordingly, IAC respectfully requests that this Court grant its motion to dismiss for failure to state a claim upon which relief can be granted.

### STATEMENT OF FACTS

As a matter of corporate organizational structure, IAC is a holding company for a number of operating subsidiaries, most of which are wholly owned by IAC and conduct business in the field of interactive or electronic commerce. See Declaration of Edward T. Ferguson, attached hereto as Exhibit A, at ¶3 (hereinafter Ferguson Decl. ¶__). Each of IAC's operating subsidiaries is a separately incorporated business. Ferguson Decl. ¶4. IAC's wholly owned operating subsidiaries include, for example, Expedia, Inc., Home Shopping Network, Hotels.com, Hotwire.com, Interval International, LendingTree, Match.com, Service Magic, and Ticketmaster. Ferguson Decl. ¶¶4-5, 7.

IAC acquired all of the outstanding capital stock of LendingTree in a transaction that closed on August 8, 2003. Ferguson Decl. ¶6. At the time of the acquisition, LendingTree was already a well established, independently functioning, publicly traded company. Ferguson Decl. ¶6. Since the 1990's, LendingTree has provided an online lending exchange, through its Internet website, http://www.lendingtree.com, that connects consumers, lenders, real estate agents, and related service providers. Ferguson Decl. ¶6.

#797056 v4
099998-00013

Service Magic, Inc. was acquired by IAC on September 2, 2004. Ferguson Decl. ¶8. At the time of its acquisition by IAC, Service Magic was already a well established, independently functioning, privately held company. Ferguson Decl. ¶8. Formed in December 1998, Service Magic is the leading online marketplace connecting homeowners to prescreened, profiled, and customer-rated contractors and real estate professionals, offering its services through its website at www.ServiceMagic.com. Ferguson Decl. ¶8.

Since being acquired by IAC, LendingTree and Service Magic have continued to operate as separate, stand-alone companies. Ferguson Decl. ¶9. Although IAC owns LendingTree and Service Magic, IAC does not control – in any meaningful sense of the word – the day-to-day operations or activities of either LendingTree or Service Magic. Ferguson Decl. ¶9.

IAC does not provide interactive or electronic commerce services in the areas of financial services or real estate, and specifically in the area of Internet-based loan services, except through LendingTree. Ferguson Decl. ¶10. IAC does not make, use, sell, offer to sell, or import the lending exchange offered by LendingTree, or any other product or service that is or may be related to the '328 patent. Ferguson Decl. ¶10.

IAC does not provide interactive or electronic commerce services in the area of connecting homeowners with residential contractors, except through its

- 3 -

wholly owned subsidiary Service Magic.  Ferguson Decl. ¶11.  IAC does not make, use, sell, offer to sell, or import the online marketplace of Service Magic, or any other product or service that is or may be related to the '328 patent.  Ferguson Decl. ¶11.

IAC has not directed, is not directing, and does not intend to direct the operations of the lending exchange offered by LendingTree or the online marketplace offered by Service Magic.  Ferguson Decl. ¶12.  IAC's operating subsidiaries, including LendingTree and Service Magic, have their own executives and employees who manage the day-to-day operations of the business.  Ferguson Decl. ¶12.  With the exception of executive positions at the highest levels of the operating businesses, such as chief executive officer and chief financial officer, IAC is not involved in determining who is employed by its operating subsidiaries, including LendingTree and Service Magic.  Ferguson Decl. ¶12.

IAC, LendingTree, and Service Magic each observe all necessary corporate formalities, including maintaining separately constituted boards of directors, and have entirely separate groups of executive and other corporate officers.    Ferguson Decl.  ¶13.    Although IAC officers are members of LendingTree's board of directors, no member of IAC's board of directors also sits on LendingTree's board of directors.  Ferguson Decl. ¶13.  Similarly, although IAC officers are members of Service Magic's board of directors, no member of

- 4 -

IAC's board of directors also sits on Service Magic's board of directors.  Ferguson Decl. ¶13.

IAC and LendingTree do not promote or otherwise project a common marketing image.  Ferguson Decl. ¶14.  IAC trademarks do not appear on the LendingTree website, www.lendingtree.com, nor on LendingTree promotional materials and letterhead.  Ferguson Decl. ¶14.  Similarly, IAC and Service Magic do not promote or otherwise project a common marketing image.  Ferguson Decl. ¶15.  IAC trademarks do not appear on the Service Magic website, www.ServiceMagic.com, nor on Service Magic promotional materials and letterhead.  Ferguson Decl. ¶15.

IAC and each of its operating subsidiaries, including LendingTree and Service Magic, maintain separate books and accounting records, and any transactions or other business arrangements between IAC and its subsidiaries are accurately accounted for in order to maintain a clear record of IAC's dealings with those subsidiaries.  Ferguson Decl. ¶16.

Accordingly, because IAC is not engaged in any activities that could infringe the '328 patent and because IAC cannot be held responsible for any acts of its subsidiaries, LendingTree and Service Magic, that may relate to the '328 patent, the Court should grant IAC's motion to dismiss.

- 5 -

## ARGUMENT

Although this motion is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, IAC recognizes that the motion will be treated as one for summary judgment if, as is the case here, matters outside the pleadings are presented to the court.  See FED. R. CIV. P. 12(b) (2004).   Summary judgment should be granted if the court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c) (2004).  The moving party bears the burden of proving that no genuine issue of material fact is in dispute.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986).  Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Id. at 587.  If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that factual issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

#797056 v4
099998-00013

Here, SST simply cannot make any showing of any evidence that would allow a jury to reasonably return a verdict in favor of SST and find that IAC has infringed, has contributed to the infringement of, and/or has induced the infringement of the patent-in-suit.  See Liberty, 477 U.S at 249.  Accordingly, IAC's motion to dismiss should be granted.

I.    IAC DOES NOT DIRECTLY INFRINGE THE ASSERTED PATENT BECAUSE IT DOES NOT MAKE, USE, SELL, OFFER TO SELL OR IMPORT ANY OF THE ACCUSED PRODUCTS OR SERVICES

SST alleges that IAC infringes one or more claims of the '328 patent, as a direct infringer.  See Complaint, ¶ 11.  A patent is infringed when someone "makes, uses, offers to sell or sells any patented invention" or "imports into the United States any patented invention" without authorization.  35 U.S.C. § 271(a) (2004); see also Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570 n.2 (Fed. Cir. 1994) ("only an affirmative act (making, using, or selling the patented design) can give rise to [] direct infringement").  Here, there is no dispute. IAC does not provide interactive or electronic commerce services in the areas of financial services or real estate, and specifically in the area of Internet-based loan services, except through LendingTree.  Ferguson Decl. ¶¶10-11.  Similarly, IAC does not provide interactive or electronic commerce services in the area of connecting homeowners with residential contractors, except through Service

- 7 -

Magic.  Ferguson Decl. ¶¶10-11.  IAC does not make, use, sell, offer to sell, or import any product that could even arguably infringe the '328 patent.  Ferguson Decl. ¶10.  IAC is simply a holding company that holds the stock of its subsidiaries.  Ferguson Decl. ¶4.  Accordingly, IAC cannot possibly be liable for direct infringement of any claims of the '328 patent, and an order dismissing IAC from the suit is appropriate.

II.    IAC DOES NOT CONTRIBUTE TO THE INFRINGEMENT OF THE ASSERTED PATENT BECAUSE IT DOES NOT OFFER TO SELL, SELL OR IMPORT A COMPONENT OF THE ACCUSED PRODUCTS OR SERVICES

SST also alleges that IAC infringes the '328 patent as a contributory infringer.  See Complaint, ¶11.  A party can be liable for contributing to the infringement of a patent, however, only when it offers to sell, sells or imports a component of the patented invention.  35 U.S.C. § 271(c) (2004).  Here, as established above, IAC does not offer to sell, sell, or import *any* goods or services, let alone any component of LendingTree's lending exchange or Service Magic's online marketplace that is accused of infringing the '328 patent.  Ferguson Decl. ¶¶10-11.  Accordingly, IAC cannot possibly be liable for contributing to the infringement of the '328 patent, and an order dismissing IAC from the suit is appropriate.

- 8 -

III.    IAC DOES NOT ACTIVELY INDUCE
        INFRINGEMENT OF THE ASSERTED PATENT
        BECAUSE THERE IS NO EVIDENCE OF SPECIFIC
        INTENT

SST also alleges that IAC induces infringement of the '328 patent by "aid[ing] and abet[ting] the infringements of Defendants LendingTree and Service Magic, with the specific intent to cause such infringements."  Complaint, ¶11.  Under 35 U.S.C. § 271(b), a party may be held liable as an infringer for "actively induc[ing] infringement of a patent."  Actively inducing infringement requires specific intent to cause the acts that constitute the infringement.  Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990).  This specific intent requirement cannot be met if the party has no knowledge of the patent.  See Manville Sales Corp. v. Paramount Sys. Inc., 917 F.2d 544, 553 (Fed. Cir. 1990; see also Ferguson Decl. ¶¶17 ("IAC did not have knowledge of U.S. Patent No. 5,758,328 prior to Source Search Technologies, LLC's filing its patent infringement suit.").  Mere knowledge of the infringement is not enough; there must be specific intent to encourage the infringement.  L.A. Gear, Inc. v. E.S. Originals, Inc., 859 F. Supp. 1294, 1300 (C.D. Cal. 1994).  If there is no evidence of specific intent, there cannot be infringement under Section 271(b) even if the defendant's actions encouraged the infringing sales.

- 9 -

Here, SST's Complaint provides merely a naked allegation that IAC has specific intent to cause the alleged infringement.  SST does not allege a single fact to support this allegation.  Indeed, the Federal Circuit requires a patent holder to make a reasonable inquiry into the factual basis of any infringement claim prior to initiating a patent infringement suit or risk sanctions under Rule 11 of the Federal Rules of Civil Procedure.  See, e.g., View Eng'g, Inc. v. Robotic Vision Sys. Inc., 208 F.3d 981  (Fed. Cir. 2000) (affirming sanctions under Rule 11 where a patent holder failed to perform a reasonable inquiry prior to filing patent infringement claims); see also FED. R. CIV. P. 56(e) (2004) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").  Here, IAC did not even know of the '328 patent and therefore could not have had the requisite specific intent.  See Ferguson Decl. ¶¶17.  Without any intent, IAC cannot actively induce or have actively induced infringement of the '328 patent.  Accordingly, IAC cannot possibly be liable for "actively inducing" infringement of the '328 patent, and an order dismissing IAC from the suit is appropriate.

#797056 v4
099998-00013

IV.    IAC AND, RESPECTIVELY, LENDINGTREE AND
       SERVICE MAGIC HAVE LEGITIMATE PARENT-
       SUBSIDIARY RELATIONSHIPS AND THEREFORE
       THE COURT SHOULD NOT DISREGARD THE
       CORPORATE FORM TO FIND IAC POTENTIALLY
       LIABLE FOR ACTS OF THESE SUBSIDIARIES

As discussed above, IAC does not perform any actions or provide any products or services that are or may be related to the '328 patent. Indeed, SST has not pleaded any specific facts that would suggest that IAC directly infringes, contributorily infringes, or induces others to infringe the '328 patent. Thus, the only other conceivable basis for IAC to be named as a defendant by SST is in its capacity as the parent corporation of its subsidiaries LendingTree and Service Magic. However, well-settled case law mandates that this theory of liability must also fail.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal system' that a parent [corporation] is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 55-56 (1998). "[A] corporation is a separate entity from its shareholders and [] a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983) (internal citation omitted). This protection is afforded to any shareholder, whether the shareholder is an individual or another company. See id. ("Even in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally

will not be abrogated.").  The patent laws of the United States do not alter this fundamental principle.  <u>See</u> 35 U.S.C. §§ 1-376 (2003); <u>see also</u> <u>A. Stucki Co. v. Worthington Indus., Inc.</u>, 849 F.2d 593, 596 (Fed. Cir. 1988) (stating that a parent corporation could be liable for patent infringement by a subsidiary only if a court is justified in piercing the corporate veil of the parent).  Thus, SST's naming two IAC subsidiaries as defendants in this patent infringement suit does not give SST a cause of action against IAC.

A court "must 'start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.'"  <u>Manville Sales</u>, 917 F.2d at 552;  <u>see also</u> <u>SDS USA, Inc. v. Ken Specialties, Inc.</u>, No. 99-133, 2002 U.S. Dist. LEXIS 16762, at *24-25 (D. N.J. Aug. 28, 2002) (relying on *Manville Sales* in determining whether to pierce the corporate veil in a patent infringement case)[1].  Justice does not disregard a corporate entity "unless there is a specific intent to escape liability for a specific tort."  <u>Manville Sales</u>, 917 F.2d at 552.

For situations where a corporate form is being misused to accomplish certain wrongful purposes, such as fraud on behalf of a shareholder, courts may take the extraordinary step of disregarding the corporate entity and holding a shareholder liable for the acts of the corporation.  <u>See</u> <u>Bestfoods</u>, 524 U.S. at 63;

---

[1] Copies of all unreported cases are attached as Exhibits to the Brief.

#797056 v4
099998-00013

see also <u>Manville Sales</u> 917 F.2d at 552 ("[A] court may exert its equitable powers and disregard the corporate entity if it decides that piercing the veil will prevent fraud, illegality, injustice, a convention ["CONVENTION"?] of public policy, or prevent the corporation from shielding someone from criminal liability."); <u>Phoenix Can. Oil Co. v. Texaco</u>, 842 F.2d 1466, 1476 (3d Cir. 1988) ("Courts most often 'pierce the corporate veil' where fraud would result if the corporate structure were allowed to shield shareholders from liability."); <u>Ventron</u>, 468 A.2d at 164 ("Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil. … Even in the presence of corporate dominance, liability is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.").

Two closely related theories have evolved under which courts may find a parent liable for a subsidiary's acts:  an "alter ego" theory and a general agency theory.  <u>See</u> <u>Portfolio Fin. Servicing Co. v. Sharemax.com, Inc.</u>, 334 F. Supp. 2d 620 (D. N.J. 2004) (using a corporate alter ego analysis to determine if piercing the corporate veil is appropriate); <u>Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT</u>, 106 F. Supp. 2d 606 (D. N.J. 1999) (applying an agency analysis to determine if a parent corporation should be liable for a subsidiary's actions); <u>cf.</u> <u>Leo v. Kerr-McGee</u>, No. 93-1107 (JEI), 1996 U.S. Dist. LEXIS 6698, at *17 (D. N.J. May 10, 1996) (applying the agency and "alter ego" theory to a

- 13 -

personal jurisdiction analysis).  As discussed below, an analysis of either theory leads to the same conclusion:  IAC cannot be liable for any acts of its subsidiaries, LendingTree and Service Magic, that may relate in some way to the patent-in-suit.

### A.    IAC is not the "Alter Ego" of either LendingTree or Service Magic

A threshold issue under an "alter ego" analysis is which law governing piercing the corporate veil applies:  state law or federal common law. Courts in this district have found that, in a federal question case, such as a patent infringement case, federal common law should be applied.  See SDS USA, Inc., 2002 U.S. Dist. LEXIS 16762 at *24-26 (applying federal common law governing piercing the corporate veil in a patent case); see also Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (applying federal common law governing piercing the corporate veil in a federal question jurisdiction case); but see Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164 (3d Cir. 2002) (applying New Jersey veil piercing law to a federal question case); cf. Trs. of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk, 332 F.3d 188 (3d Cir. 2003) (declining to decide whether federal common law or state law governing piercing the corporate veil applies in a federal question case). However, an alter ego analysis would be similar under federal common law and New Jersey state law.  Under New Jersey law, a plaintiff must show that "(1) one

- 14 -

corporation is organized and operated as to make it a mere instrumentality of another corporation and (2) the dominant corporation is using the subservient corporation to perpetuate fraud, to accomplish injustice, or to circumvent the law." Foodtown, Inc., 296 F.3d at 171.  The Third Circuit's federal common law for piercing the corporate veil provides a list of factors that support deciding to pierce the veil.  See SDS USA, Inc., 2002 U.S. Dist. LEXIS 16762 at *25-26.  However, these factors are consistent with determining whether "one corporation is organized and operated as to make it a mere instrumentality of another corporation."  See Foodtown, Inc., 296 F.3d at 172.

The Third Circuit factors include: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.  Pearson, 247 F.3d at 484-85.  "[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such."  Id. at 485.

In this case, there is no dispute that IAC and LendingTree, and IAC and Service Magic, do not function as single entities — they have legitimate

- 15 -

#797056 v4
099998-00013

parent-subsidiary relationships.  None of the eight factors used in the Third Circuit alter ego test is present in the IAC-LendingTree or IAC-Service Magic relationship.  LendingTree and Service Magic are adequately capitalized, independently functioning corporations and have been since the 1990's.  Ferguson Decl. ¶¶6, 8.  Each corporation observes all necessary corporate formalities, including having its own executives and employees who manage the day-to-day operations of the business. Ferguson Decl. ¶¶12-13.  LendingTree and Service Magic, like all of IAC's operating subsidiaries, maintain corporate books and accounting records separately from IAC.  Ferguson Decl. ¶16.  Neither LendingTree nor Service Magic is insolvent; nor is IAC siphoning either of their funds.  Neither LendingTree nor Service Magic is a mere facade of IAC — both LendingTree and Service Magic are operating independently today, just as they did prior to IAC's acquisition of the companies.

Accordingly, this case does not involve "unusual circumstances" that "call for an exception" to the rule that a court should recognize the corporate entities.  Manville Sales, 917 F.2d at 552; compare SDS USA, Inc., 2002 U.S. Dist. LEXIS 16762 at *26 (concluding that the corporate veil should not be pierced where there was no evidence that the subsidiary was undercapitalized, failed to pay dividends, or that the shareholder was siphoning funds) with Minn. Mining & Mfg. v. Eco Chem, Inc., 757 F.2d 1256 (Fed. Cir. 1985) (finding that piercing the

corporate veil was warranted when parent stripped subsidiary of assets to thwart recovery from infringing subsidiary).

Also, SST failed to allege that IAC uses either LendingTree or Service Magic to perpetuate a fraud, to accomplish injustice, or to circumvent the law. As such, piercing the corporate veil is not warranted in this case. Cf. Foodtown, Inc., 296 F.3d at 172-73 (finding that appellant did sufficiently allege facts that the corporate structure was set up to perpetuate a fraud, to accomplish injustice, or to circumvent the law).

This is clearly not a case where IAC established either LendingTree or Service Magic as a mere shell organization in order to fraudulently avoid liability for patent infringement, or for any other legal wrong. Instead, IAC acquired both LendingTree and Service Magic as well established, independently functioning, companies that had been operating since the 1990's. If and to the extent that there was any infringement of the '328 patent, the infringement would have taken place at LendingTree or Service Magic and would have occurred independently of IAC's acquisition of either company.

### B. Neither LendingTree nor Service Magic is Acting as IAC's Agent when it Performs Activities that may Relate to the '328 Patent

A parent corporation may still be held liable for the acts of a subsidiary even when piercing the corporate veil is not warranted ?  in this case

under an agency theory.  See Automated Salvage Transp., Inc., 106 F. Supp. 2d at 626 (citing Phoenix Can. Oil Co.)   A subsidiary is not an agent of a parent corporation merely as a result of the parent-subsidiary relationship.  See Phoenix Can. Oil Co., 842 F.2d at 1477.   "However, one corporation - completely independent of a second corporation - may assume the role of the second corporation's agent in the course of one or more specific transactions."  Id.  In that case, the corporation acting as a principal in the relationship may be liable for the actions of the agent.  Id.

For IAC to be liable for any actions of LendingTree or Service Magic under general agency principles, (1) an arrangement must exist between IAC and LendingTree, or IAC and Service Magic, where the subsidiary acts on behalf of IAC within the usual agency principles and (2) the subsidiary's actions must be relevant to SST's claims of patent infringement.  See id.  In other words, LendingTree or Service Magic must be acting on behalf of IAC and with IAC's express or implied authority and IAC must "control [] not only [the] finances but [the] policy and business practices" of LendingTree in respect of LendingTree's Internet-based lending exchange, or Service Magic in respect of Service Magic's Internet-based marketplace. See id. at n.5.

In this case, however, there is no dispute that LendingTree and Service Magic are well-established, independently functioning corporate entities.

#797056 v4
099998-00013

They do not have an agency relationship with IAC, where LendingTree or Service Magic conducts its business at the behest of IAC. IAC cannot be held liable for any acts of LendingTree or Service Magic under a general agency theory. <u>Cf</u>. <u>Automated Salvage Transp., Inc.</u>, 106 F. Supp. 2d at 626 (finding an agency relationship where the subsidiary was formed to supply raw materials to the parent). Because IAC is a separate and legally distinct corporate entity from either LendingTree or Service Magic, it cannot be held responsible for any activities conducted by those subsidiaries that may relate to the '328 patent.

#797056 v4
099998-00013

## CONCLUSION

For the above stated reasons, defendant IAC respectfully requests the Court to grant its motion, and thereby dismiss IAC from the pending case.

**GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE**
A Professional Corporation

By:_____s/ Kevin McKenna_____
        Kevin J. McKenna, Esq. (KJM 7530)
        Elvin Esteves, Esq. (EE 2216)

**OF COUNSEL:**
Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
**KING & SPALDING LLP**
191 Peachtree Street
Atlanta, Georgia 30303
404-572-4600 (phone)
404-572-5145 (fax)

Attorneys for IAC/InterActiveCorp

DATED:  November 10, 2004
            Newark, NJ

- 20 -