**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------X
                                                               :
Source Search Technologies, LLC,        :
                                                               :
                Plaintiff,                     :        **Civil Action No. 2:04-CV-4420 (DRD)**
                                                                :
        v.                                    :
                                                               :
LendingTree, Inc., Service Magic Inc. and  :
IAC InterActiveCorp.,                        :
                                                               :
              Defendants.                :
---------------------------------------------------------X


**PLAINTIFF SOURCE SEARCH TECHNOLOGIES, LLC'S COMBINED MOTION TO**
**FILE A SURREPLY AND SURREPLY IN OPPOSITION**
**TO IAC INTERACTIVECORP.'S MOTION TO DISMISS THE COMPLAINT**


| | |
|---|---|
| Dated: December 13, 2004 | Jeffrey I. Kaplan (JK 4706) |
| | KAPLAN & GILMAN, L.L.P. |
| | Attorneys for Plaintiff |
| | 900 Route 9 North, Suite 104 |
| | Woodbridge, NJ 07095 |
| | Telephone (732) 634-7634 |
| | Facsimile (732) 634-6887 |
| | E-Mail: jkaplan@kaplangilman.com |

I.  **INTRODUCTION**

Defendant IAC InterActiveCorp. ("IAC") filed a Reply Brief on December 6, 2004, nearly two weeks late and without leave of Court or consent of plaintiff Source Search Technologies, LLC ("SST"). SST respectfully requests permission to file this short Surreply only to address new issues improperly raised in the Reply Brief of IAC, which issues should have been raised in IAC's original motion. IAC has not pointed to a single case where a parent company, that was alleged to be ***controlling the specific infringing conduct with specific knowledge of the patent in suit***, was dismissed from the lawsuit prior to any discovery taking place. Precedent mandates denial of IAC's motion.

II.  **ARGUMENT**

IAC first notes that SST "abandoned" allegations of *contributory* and *direct* infringement – allegations that were never made in SST's pleadings. Instead, the Complaint and the Amended Complaint alleges facts that show *inducement* of infringement, even under IAC's interpretation of the law. (See Amended Complaint Par. 13 "Upon information and belief, defendant IAC Interactive Corp. runs and controls the daily operation of the Lendingtree website…Defendants…are believed to have full knowledge of such rights, and the intent to continue infringing such rights.") These allegations are sufficient to make out a claim of inducement. *Phonometrics Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000).

IAC relies upon *Katz Tech. Licensing, LP v. Verizon Communications, Inc*., Civil Action No. 01-5627, 2002 U.S.Dist. LEXIS 24117. (E.D. Pa. Dec. 18, 2002). However, as pointed out in SST's initial opposition brief, the Court granted discovery to the plaintiff in an earlier opinion

in *Katz Tech. Licensing*, so that the plaintiff could determine whether there was sufficient control being exercised over the infringement of the subsidiary to support a claim of inducement. *Katz Technology Licensing, L.P., v. Verizon Communications, Inc.*, 2002 WL 31356302 (E.D. Pa.). Only *after the evidence* produced in discovery showed there was no such control did the Court issue a later opinion granting summary judgment. Here, IAC asks for summary judgment in lieu of an Answer to the Complaint.

Moreover, IAC has drastically distorted the holding of *Katz Technology*. In *Katz Technology*, the Court found that the parent company only exercised general control over the subsidiary, but was "not aware of the types of technology that are used in providing the allegedly infringing services, nor does [the parent company] decide what technology is to be used in providing these services." Indeed, the plaintiff in *Katz Technology* **never even asserted** that the parent corporation had knowledge of the infringing acts, but instead, put forth the legally erroneous argument that "271(b) does not require specific intent". The Court correctly rejected that argument. *Katz Technology*, 2002 WL 31824833, at p. 3.

SST agrees that if, for example, the accounting software utilized in the Lendingtree billing department included unauthorized copies of a popular accounting program, IAC would not be liable for inducing copyright infringement merely because it exercises general control over Lendingtree. Like the situation in *Katz Technology*, IAC likely does not specify or approve any particular software for the billing department of its subsidiary, just as was the case in *Katz Technology*. Similarly, if Lendingtree used office furniture that included a patented chair or desk lamp, IAC would clearly not be liable, as IAC is unlikely in charge of, or with specific knowledge of, the particular office furniture that its subsidiary uses. Thus, SST agrees that mere general control of a parent over a subsidiary is insufficient to make a claim of inducement.

The issue here is whether IAC has knowledge and control *over the specific acts alleged to constitute the infringement*, a fact found after discovery *not* to exist in *Katz Tech. Licensing*, and whether IAC is authorizing and encouraging those specific acts after obtaining *specific or constructive knowledge of the patents*, just as SST alleges. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir. 1985)); *Fromson v. Citiplate, Inc.* 886 F.2d 1300 (Fed. Cir. 1989); *Water Technologies Corporation v. Calco, Ltd.,* 850 F.2d 660 (Fed. Cir. 1988). The present complaint alleges that the basic business of Lendingtree, running a computerized reverse auction website, is controlled by IAC. IAC does not, and can not, deny, that IAC is on full notice of the conduct alleged to infringe, full notice of the patent rights in issue, and the full ability to control whether Lendingtree continues its operation of that website or not. The infringing conduct is the only business of Lendingtree. Hence, this is not the *Katz Technology* situation, where the alleged infringement of the subsidiary was unknown to the parent and involved details of the subsidiary's operation over which the parent company had no control.

IAC can not deny that it is controlling the operation of the infringing website, or that if the parent company IAC requested that the website be changed to avoid infringement, it would have to be done. Nor can IAC deny that after receiving notice of the patent in suit, it has fully approved Lendingtree's (and defendant ServiceMagic's) specific infringing conduct to continue, with full knowledge of the patent in issue. Nor can IAC deny that it, through its seats on the Lendingtree Board, has affirmatively voted to continue the infringement with full knowledge of the patent. This is sufficient to support a claim of inducement, and indeed, is identical to the facts in many cases where inducement was found based upon approving, encouraging, or participating in acts of infringement. *Orthokinetics Inc. v. Safety Travel Chairs Inc.,* 806 F.2d 1565, 1578-79 (Fed. Cir. 1986) (citing *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481

4

(Fed. Cir. 1985)); *Fromson v. Citiplate, Inc*. 886 F.2d 1300 (Fed. Cir. 1989); *Water Technologies Corporation v. Calco, Ltd.,* 850 F.2d 660 (Fed. Cir. 1988) (Inducement of one entity by another without piercing the corporate veil). *Rohm and Haas Company v. Dawson Chemical Company, Inc*., 557 F. Supp. 739 (S.D. Texas 1983).

     IAC argues that "no company served with a complaint alleging inducement of patent infringement by a corporate affiliate could ever successfully move to dismiss the complaint" IAC Reply Brief, p. 4. We have provided above just two examples of when dismissal in such a case would be perfectly appropriate, and *Katz Technology* represents still a third. Whenever the parent was not controlling the specific conduct in issue with knowledge of the patent, it would be dismissed. There is a large amount of potentially infringing conduct of subsidiaries that parent companies would be unlikely to control: billing software, office supplies, types of windows to install in the offices, machines to be used in a machine shop, etc. Indeed, most of the conduct of the subsidiary is not typically controlled by the parent, so many cases would be subject to dismissal. Hence, IAC's argument is without merit.

     However, under IAC's test, dismissal would ***always*** be appropriate because even if the parent company, with knowledge of the patent, directly controlled the day to day activity alleged to infringe, which is precisely what SST has pled here, dismissal would be appropriate. Under IAC's test, a parent corporation could put its own executives and Board members into its subsidiary, directly instruct the subsidiary to perform the infringing conduct after being put on full notice of the patent, and such defendant could be dismissed ***before discovery*** by simply claiming that the only evidence of control is the board membership or the executives being appointed, just as IAC claims. This would effectively eliminate all liability for inducement by a corporate affiliate. Were this the law, the Court in *Katz Technology* would have had no need to

5

grant discovery to determine whether the parent was controlling the infringing activity. Instead, it could have simply dismissed the case without discovery.

The remaining cases newly raised by IAC allegedly go to the specific intent requirement for inducement, and should have thus been addressed in IAC's main brief. For this reason, the Court should not even consider them and should strike most of the Reply. However, in the event the Court is inclined to consider them, they firmly support SST's position. *Organon Inc. v. Teva Pharma., Inc.*, 244 F. Supp.2d 370 (D. N.J. 2002) involved sale of a drug to doctors. The drug could be administered in several ways, only one of which infringed. The defendant sold the drugs, but had no knowledge of or intent about how the drug was administered, or whether the doctors were using it to infringe or not. Hence, mere knowledge of the patent could not create the intent to cause the acts that were alleged to infringe.[1]

Here, the alleged infringement relates to the sale of services by using the Internet to have banks or other vendors compete for the business of a consumer. It is simply absurd and would constitute Rule 11 conduct for IAC to be arguing that the Lendingtree website has many other uses other than to permit banks to compete for a consumer's loan, and that ***IAC has no idea for what purpose consumers are using the Lendingtree website***. Indeed, this Court can take judicial notice that Lendingtree advertises its website extensively for the infringing use, and no other use.

IAC's remaining cases are no more on point. *Manville Sales Corporation v. Paramount Systems, Inc.* 917 F.2d 544 (Fed. Cir. 1990) involved a situation wherein the alleged inducer had been advised by counsel that the patent claims did not cover the process in issue, and that they believed their conduct was thus not causing infringement. Here, there is no evidence of IAC

---

[1] This was the same situation in *Catapano v. Wyeth Ayerst Pharmaceuticals*, *Inc.*, 88 F. Supp.2d 27 also relied upon by IAC, which is also inapplicable.

having an opinion of noninfringement, and it is doubtful any respectable law firm would issue such an opinion based upon the facts of this case. Regardless, there has been no discovery to even determine whether such an opinion exists. Hence, *Manville Sales* is inapplicable.

*Coolsavings .com, Inc. v. Catalina Marketing Corporation*, 1999 US Dist. Lexis 7891 (N.D. Ill. May 14, 1999) involved a complaint that simply pled "active inducement", but failed to plead knowledge or control over the specific infringing activity. *Ristvedt-Johnson, Inc. v. Peltz*, Case No. 91 C 3273 1991 U.S. Dist. LEXIS 17233 (N.D. Ill. Nov. 18, 1991) also involved a complaint that did not even plead any facts showing that the defendant intended to induce infringement. Here, SST has plead knowledge of the patent and specific knowledge of and control over the specific infringing website. Indeed, IAC has even denied these allegations, a denial that would be unnecessary if these allegations did not support a claim of inducement.

In *TI Group Automotive Systems, Inc. v VDO North America LLC*, 2002 LEXIS 4671 (D. De. Mar. 7, 2002) the court found that the plaintiff had failed to demonstrate specific intent to encourage another's infringement. It appears that this finding was made after several years of proceedings, and presumably after extensive discovery. Here, the Complaint alleges the specific control over the infringement – precisely the element lacking in *TI Group*. Hence, if proven, the allegation would support a claim of inducement.

Finally, in *Hughes Aircraft Company v. National Semiconductor Corporation*, 857 F. Supp. 691 (N.D. Ca. 1994), after extensive discovery, the Court found that General Motors exercised no control over the manufacturing processes that were alleged to infringe, did not care how the components were produced, and that General Motors was never put on notice of the specific patents in issue by the plaintiff. This fact pattern is readily distinguishable from what has been pled here.

**III    CONCLUSION**

IAC has not pointed to a single case where a parent company that was alleged to be *controlling the specific infringing conduct with specific knowledge of the patent in suit* was dismissed from the lawsuit, and certainly not prior to any discovery taking place.  SST is also aware of no such case.  Accordingly, SST respectfully submits that the motion to dismiss and/or for summary judgment must be denied.


Dated:  December 13, 2004                     s/ Jeffrey I. Kaplan /
                                                                       KAPLAN & GILMAN, L.L.P.
Jeffrey I. Kaplan (JK 4706)
Attorneys for Plaintiff
900 Route 9 North, Suite 104
Woodbridge, NJ 07095
Telephone (732) 634-7634
Facsimile (732) 634-6887
E-Mail: jkaplan@kaplangilman.com

## **CERTIFICATE OF SERVICE**

I, Michael R. Gilman, hereby certified that on this 13th day of December, 2004, a true and correct copy of **PLAINTIFF SOURCE SEARCH TECHNOLOGIES, LLC'S COMBINED MOTION TO FILE A SURREPLY AND SURREPLY IN OPPOSITION TO IAC INTERACTIVECORP.'S MOTION TO DISMISS THE COMPLAINT** were served on the following attorneys for defendants via e-mail and first class mail, postage prepaid:

Kevin J. McKenna, Esq.
**GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE**
One Riverfront Plaza
Newark, NJ  07102
Telephone (973) 596-4500
kmckenna@gibbonslaw.com

- and -

Holmes J. Hawkins, III, Esq.
**KING & SPALDING, LLP**
191 Peachtree Street
Atlanta, Georgia  30303
Telephone (404) 572-4600
hhawkins@kslaw.com

DATED: December 13, 2004                    s/ Michael R. Gilman /
                                                                    Michael R. Gilman