# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Source Search Technologies, LLC,<br><br>Plaintiff,<br><br>-- against --<br><br>LendingTree, LLC, IAC/InterActiveCorp, and ServiceMagic, Inc.<br><br>Defendants. | Civil Action No. 2:04-cv-4420 (DRD) (SDW) |

## DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S  OPENING MARKMAN  BRIEF

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation

Kevin J. McKenna, Esq. (KJM 7530)
Elvin Esteves, Esq. (EE 2216)
One Riverfront Plaza
Newark, NJ 07102-5497
Telephone (973) 596-4500
Facsimile (973) 596-0545

Attorneys for LendingTree, LLC,
IAC/InterActiveCorp, and ServiceMagic, Inc.

OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Tel.: (404)572-4600
Fax: (404)572-5145

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

NATURE AND STAGE OF PROCEEDING...........................................................1

ARGUMENT........................................................................................................1

I.    OVERVIEW OF SST'S PROPOSED CONSTRUCTIONS.......................................1

II.   SST'S PROPOSED CONSTRUCTIONS SHOULD BE REJECTED ......................3

    A.   SST Asks The Court To Construe Claims Terms That Do Not Appear In The Claims ..3

    B.   SST Asks The Court To Adopt Inconsistent Constructions For The Term "Filter Conditions"................................................................................................4

        1.    Filter Conditions Set by the Buyer ......................................................5

            a.    SST's Construction For "Buyer Filter Conditions" Is Inconsistent With The Specification ......................................................................................7

            b.    SST's Construction For "Buyer Filter Conditions" Constitutes An Improper Attempt To Import The Specification Into the Claim .............................................8

        2.    Filter Conditions Set by the Vendor ...................................................13

        3.    Filter Conditions Set by Network Software.........................................15

III.  SST'S ATTEMPT TO NARROW THE SCOPE OF ITS DISCLAIMER SHOULD BE REJECTED ............................................................................................16

    A.   SST's Attempt To Narrowly Define Its Admitted Disclaimer Is Inconsistent With The Prosecution History....................................................................................17

    B.   SST's Attempt To Narrowly Define Its Admitted Disclaimer Is Inconsistent With The Specification................................................................................................18

CONCLUSION .....................................................................................................20

#1041564 v2
105556-53216

## TABLE OF AUTHORITIES

### FEDERAL CASES

Eolas Technologies, Inc. v. Microsoft Corp.,
    399 F.3d 1325 (Fed. Cir. 2005) ....................................................................10

Jurgens v. McKasy,
    927 F.2d 1552 (Fed. Cir. 1991) ......................................................................6

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................................10

#1041564 v2
105556-53216

<u>NATURE AND STAGE OF PROCEEDING</u>

The parties simultaneously submitted opening claim construction briefs on December 7, 2005 seeking construction of certain terms of the claims of U.S. Patent No. 5,758,328 ("the '328 Patent"). Defendants LendingTree, LLC ("LendingTree"), IAC/InterActiveCorp ("IAC"), and ServiceMagic, Inc. ("ServiceMagic") (collectively, "Defendants") submit this Brief in Response to Plaintiff Source Search Technologies, LLC's ("SST") Opening Markman Brief ("SST's Opening Brief"). Defendants submit in this Response Brief that the constructions proposed by SST in its Opening Brief are not supported by the record or by the law of claim construction and thus should be rejected.

<u>ARGUMENT</u>

I.     <u>OVERVIEW OF SST'S PROPOSED CONSTRUCTIONS</u>

SST's Opening Brief requests the Court's construction of only three claim terms:

1) "buyer filter conditions,"
2) "vendor filter conditions," and
3) "network filter conditions."

The specification of the '328 Patent uses the term "filter conditions" to describe the limitations or conditions that are used to match or "filter" buyers and vendors to determine to whom a request for quote ("RFQ") or a response to an RFQ will be routed. *See, e.g.*, '328 Patent, Col. 1, ll. 14-16.[1] Notably, none of the three terms for which SST seeks construction appears in any claim of the '328 Patent. For example, claim 3 recites: "selecting one or more appropriate vendors to be sent the buyer's request for quotation based upon **filter conditions, set by the buyer, vendor and the network software**." Thus, SST's proposed constructions would require

---

[1]         Unless otherwise noted, all column and line citations are to the '328 Patent.

the Court to rewrite claim 3 to create three new terms: "buyer filter conditions," "vendor filter conditions," and "network filter conditions."

This rewriting -- although clearly improper -- is necessary to support SST's argument that the term "filter conditions" has a different meaning depending on whether the filter conditions are set by a buyer, by a vendor, or by network software. Specifically, SST argues that **vendor** filter conditions can include an identification of goods or services, but that **buyer** filter conditions must exclude any identification of goods or services. This construction constitutes an improper attempt to import limitations from the specification and is not supported by the claims, the specification, or the prosecution history. The Court should reject SST's improper invitation to rewrite the claims, and instead, construe "filter conditions" to have a consistent meaning throughout all of the claims, as is required by the Patent Laws.

The second thrust of SST's brief is designed to overcome a fatal flaw in its infringement case against Defendants. SST seeks to have this Court ignore the inventor's clear and repeated disclaimer of a central database that includes the information necessary to generate a quotation (e.g., goods, services, and prices). As is repeated throughout the specification and the prosecution history of the '328 Patent, the inventor contemplated an invention that eliminated the need for such a central database. SST has now taken the untenable position that the scope of that waiver is very narrow, including only a central database of:

> **all** of the information about **all** of the items for sale from **all** of the vendors . . . so that a complete quote could be generated, and a transaction could be fully consummated, between the central database and the consumer.

SST's Opening Brief at 29 (emphasis in original). SST's effort to narrow the scope of this clear disclaimer should be rejected, because it is refuted by the inventor's own statements in the

specification of the '328 Patent and in the prosecution history of the '328 Patent. Notably, SST admits that the disavowal applies to all of the claims in the '328 Patent.

II.    <u>SST'S PROPOSED CONSTRUCTIONS SHOULD BE REJECTED</u>

In their Opening Brief, Defendants established that the intrinsic record and the laws of claim construction require that the proper construction of "filter conditions" is:

> **Limitations or conditions that determine which of the network vendors will receive a buyer's request for quotation and/or which buyers will receive a response from a network vendor**

Defendants' Opening Brief at 20-21. Consistent with the intrinsic record and the Patent Laws, this definition should apply to the term "filter conditions," regardless of whether the "filter conditions" are set by a buyer, vendor, or network software.

A.    SST Asks The Court To Construe Claims Terms
       That Do Not Appear In The Claims

As an initial matter, the parties not only disagree on the proposed construction of certain claim terms, but they even disagree on what terms are to be construed. As noted in Defendants' Opening Brief, Defendants request that the Court construe the term "filter conditions," which is recited in every claim of the '328 Patent, except claim 12. SST, however, does not propose a construction for the term "filter conditions," but instead proposes constructions for the terms: 1) "buyer filter conditions," 2) "vendor filter conditions," and 3) "network filter conditions." **Notably, none of these terms appear in the claims of the '328 Patent.** For example, Claim 1 recites "filter conditions set up by the network buyer in said request for quotation or by the central processing unit in accordance with preestablished conditions." Similarly, Claim 3 recites "filter conditions, set by the buyer, vendor and the network software." Because no claim of the '328 patent recites the terms "buyer filter conditions," "vendor filter conditions," or "network

3

filter conditions," SST's request that the Court construe those terms should be rejected.  To do so would require that the Court impermissibly rewrite the claims of the '328 patent.

B.     SST Asks The Court To Adopt Inconsistent Constructions
       For The Term "Filter Conditions"

The reason that SST seeks to rewrite the claims and have the Court construe three terms that do not appear anywhere in any of the claims is obvious when you look at SST's proposed construction of the three terms.  Under SST's constructions, for example, the terms "buyer filter conditions" and "vendor filter conditions" have **different meanings**.  In other words, "filter conditions," at least according to SST, means one thing when they are set by a buyer (i.e., must exclude product information) and another thing when they are set by the vendor (i.e., can include product information).[2]  Such a construction is contrary to the plain language of the claims, which refer to a single term ("filter conditions") that is set by one of three different sources, the buyer, the vendor, or the network software.  There is nothing in the claim language, however, to suggest that the inventor intended to apply different meanings to the term "filter conditions" depending upon who set them.

Under Defendants' proposed construction, filter conditions are simply those limitations or conditions that determine which of the vendors will receive a particular request for quotation from a buyer or which of the buyers will receive a particular response from a vendor.  This is consistent with how the specification of the '328 Patent describes "filter conditions."  The following analysis of the intrinsic record supports Defendants' proposed construction and refutes

---

[2] As will become apparent to the Court in connection with the Defendant's anticipated dispositive motion seeking invalidity of the asserted claims, SST makes this unusual argument in an attempt to avoid prior art that discloses routing RFQs to certain vendors by matching product codes entered by a buyer in the RFQ with product codes previously identified by a vendor.

#1041564 v2
105556-53216

SST's construction – even when considered as SST proposes: from the perspective of the buyer, the vendor, and the network computer.

        1.      <u>Filter Conditions Set by the Buyer</u>

As noted above, Defendants' position is that the proper term for the Court to construe is "filter conditions," not "buyer filter conditions," "vendor filter conditions," and "network filter conditions." However, if and to the extent the Court elects to construe the term "filter conditions" separately depending upon whether the filter conditions are set by the buyer, vendor or network software, Defendants urge the Court to adopt a construction for "filter conditions set by a buyer" that is consistent with the general construction for "filter conditions" set forth above. Defendants submit that the adoption of multiple definitions for the term "filter conditions" is inappropriate. Accordingly, the proper construction of "filter conditions set by the buyer" is:

> limitations or conditions that determine which of the network vendors will receive a buyer's request for quotation and/or which buyers will receive a response from a network vendor, **set by the buyer**.

In contrast, SST proposes that the Court should define the term "buyer filter conditions" as follows:

> conditions specified by the buyer that limit the class of vendors to receive the RFQ so that all vendors that sell the item(s) specified in the RFQ will not receive the RFQ[3]

SST's Opening Brief at 15. SST argues that its definition includes the clause "so that all vendors that sell the item(s) specified in the RFQ will not receive the RFQ" to indicate that the buyer-set filter condition may be a geographical description, a particular currency, a particular language,

---

[3]      SST's construction for "buyer filter conditions" is confusing. Defendants assume that SST intended the phrase "so that all vendors that sell the item(s) specified in the RFQ will not receive the RFQ" to mean "so that ***not all*** vendors that sell the item(s) specified in the RFQ ***will receive*** the RFQ." A literal reading of SST proposed construction requires that none of the vendors that sell the item(s) specified in the RFQ would receive the RFQ.

#1041564 v2
105556-53216

etc. – **i.e., anything and everything but product information**. *See, e.g.*, SST's Opening Brief at 9.

SST appears to misunderstand Defendants' position as to filter conditions set by a buyer. SST states in its Opening Brief that:

> [D]efendants will try to claim that the buyer filter conditions may consist merely of a code or a label that specifies the product or class of products that the buyer wants to buy. . . . Defendants interpretation would mean that all vendors selling light bulbs would receive the RFQ, in the absence of vendor or central office filter conditions.

SST's Opening Brief at 16. On the contrary, Defendants' argument is not that a filter condition set by a buyer must be a product code. Defendants acknowledge that the specification describes filter conditions other than product codes (e.g., geographical limitations, quantity limitations, etc.), but there is simply no support for SST's contention that the intrinsic record **requires** that the buyer-set filter conditions **exclude product information**. A proper claim construction analysis must be done without regard to the parties' positions on infringement and/or invalidity.[4] *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991). Accordingly, SST's result-oriented construction should be rejected.

SST acknowledges that "vendor filter conditions" include "for example, the type of goods or services in which the vendor deals." SST's Opening Brief at 14, 15. SST fails, however, to explain why the "type of goods or services" must be excluded from filter conditions when those filter conditions are set by the buyer. The specification of the '328 Patent makes clear that filter conditions can be used to filter or match buyers and vendors to determine to whom a request for quote ("RFQ") or a response to an RFQ will be routed. The specification of the '328 Patent states:

---

[4]      Specifically, SST's footnote 6 is improper. It is also incorrect; the prior art uncovered by Defendants in this litigation is replete with filter conditions set by buyers.

#1041564 v2
105556-53216

> The buyer and vendor filters may represent in their simplest form defined classes of suppliers and/or buyers and may extend to delineate conditions of sale and/or purchase. Limitations or conditions included in the RFQ and/or in the response are defined for purposes of the present application as filter information or simply "filters". Filtering performed by a quotation system computer may simply involve limiting the network members to whom the RFQ is given and/or to whom responses are given or may be a more complex selection process.

'328 Patent, Col. 5, ll. 15-25. The inventor clearly intended that the term "filter conditions" should be broadly construed. The intrinsic evidence refutes SST's construction for "buyer filter conditions" because SST's construction excludes product information. That is, SST argues that a buyer's indication of the particular products for which it seeks to receive quotes is not a filter condition set by a buyer.

       a.    SST's Construction For "Buyer Filter Conditions" Is Inconsistent With The Specification

The specification of the '328 Patent makes it very clear that the inventor contemplated that product information/identification (e.g., product codes) are examples of "filter conditions" set by the buyer. The following passage from the specification of the '328 Patent describes the steps by which a buyer requests quotations for – in this example – volt meters:

> The process of the present invention begins when a buyer prepares a network compatible request for quotation (RFQ). **The buyer additionally may prepare or has previously prepared a definition of the class of vendor to receive the request**. The request or requests are telecommunicated to a quotation network computer and is thereafter **routed to the specified class of vendors consistent with network software and vendor requirements or conditions, if any**. Vendors in the defined class respond to the buyer's request for quotation and the buyer may purchase from a responding vendor. The number of vendors within the specified class will depend on the buyer's class specification. For example, **a buyer who specifies vendors of volt meters in New York State will reach more vendors than if New York City alone were specified. Such class specifications are information filters** through which only the desired vendors can pass. By joining the network, all vendors are potential class members no matter where in the world they are located. In addition, a vendor may choose to filter out requests for quotation for other than a vendor defined class of requests for quotation, e.g., requests must be for at least 10,000 pieces or for goods produced by a specific manufacturer.

#1041564 v2
105556-53216

Col. 6, l. 66 – Col. 7, l. 20 (emphasis added). This example from the specification of the '328 Patent, thus makes it clear that "class specifications" including product descriptions – e.g., volt meters – and vendor location – e.g., New York City – are "filters."

Several other portions of the specification support a construction of "filter conditions set by buyers" to include product information. For example, the following portion of the specification indicates that product information is within the scope of filter conditions that can be set by the buyer:

> The RFQ is then processed to select vendors who are capable of quoting on the RFQ and who meet any other conditions set by the requesting buyer (e.g. language, currency, or vendor location).

Col. 5, ll. 9-12. This passage states that the RFQ is processed to determine which vendors sell the requested goods or services **and any other conditions set by the buyer**. This portion of the specification indicates that the "requested goods or services" are a condition set by buyer. Indeed, it suggests that any other conditions are optional. Regardless, this passage in no way suggests that the filter conditions set by the buyer **must** exclude product identification.

   b. SST's Construction For "Buyer Filter Conditions"
     Constitutes An Improper Attempt To Import
     <u>The Specification Into the Claim</u>

In light of the broad language found in the specification supporting Defendants' position that filter conditions set by a buyer may include a product identification such as a product code, SST resorts to an effort to improperly import limitations from the preferred embodiment into the claim. SST relies primarily on the figures of the '328 Patent to attempt to narrow the definition of "buyer filter conditions."

SST points first to a specific portion of Figure 2 to argue that filter conditions set by a buyer precludes the buyer's indication of product information. According to the Brief

Description of the Drawings of the '328 Patent, Figure 2 "shows a block diagram representing how a buyer interacts with the computerized system of this invention via the Internet." Col. 3, ll. 31-33. The portion of Figure 2 cited by SST is shown below:

THE QUOTATION SYSTEM PROCESSES THE REQUEST BY SELECTING A CLASS OF VENDORS WHO SELL THE REQUESTED PRODUCT(S) AND MEET THE FILTER REQUIREMENTS OF THE BUYER, VENDOR, AND THE QUOTATION SYSTEM. THE QUOTATION SYSTEM THEN MAKES AVAILABLE THE REQUEST(S) TO EACH SELECTED VENDOR VIA FILE TRANSFER PROTOCOL (FTP) OR E-MAIL.

This portion of Figure 2 describes processing a request by selecting a class of vendors that sell the product identified by the buyer and that meet filter requirements. Notably, the figure does not include the terms "filter conditions," "buyer filter conditions" or "filter conditions set by a buyer." In any event, there is absolutely no indication or suggestion that the product identified by the buyer is not itself a filter condition. Instead, Figure 2 merely indicates that filter requirements in addition to product type may be used to select appropriate vendors.

SST further points to a specific portion of Figure 7 to argue that filter conditions set by a buyer must exclude product identification. The portion of Figure 7 cited by SST is shown below:

SAMPLE BUYER'S DATA PACKET

— BUYER'S IDENTIFICATION (CODE)
— TRACKING NUMBER
— DATE AND TIME
— PRODUCT IDENTIFICATION
— QUANTITY
— SHIP METHOD
— SHIP DESTINATION
— VENDOR QUALIFICATIONS (FILTER CONDITIONS)
— BUYER'S NOTES

NOTE:  BUYER'S FILTER CONDITIONS MIGHT INCLUDE LANGUAGE SPOKEN, CURRENCY OF QUOTATION, TYPE OF VENDOR (e.g. MANUFACTURER, DISTRIBUTOR, RETAILER, ECT.), OR LOCATION OF THE VENDOR.

SST points out that the list of "buyer's filter conditions" listed in the "NOTE" portion of this figure does not include product identification. However, Figure 7 clearly states that "filter conditions **might include** language spoken, currency of quotation, type of vendor . . . or location of the vendor." Figure 7 (emphasis added). Figure 7 does not state that filter conditions **cannot include** product identification.

SST's reliance on Figures 2 and 7 to support its effort to narrow the construction of filter conditions set by a buyer falls squarely into the traditional – and improper – trap of reading limitations from a preferred embodiment into the claim. According to the Brief Description of the Drawings of the '328 Patent, Figure 7:

> shows **a hypothetical list** of the options for use in preparing requests for quotation to be routed over the network. It is **one embodiment** of the data structures suitable for buyers and sellers to interact via the quotation system network of this invention.

Col. 3, ll. 44-49 (emphasis added). Clearly, the inventor contemplated Figure 7 to represent a preferred embodiment of the claimed invention. It is just as improper for a patentee to attempt to narrow a claim construction through such an improper importation as it is for an accused infringer to do so. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("the purpose underlying the Texas Digital line of cases--to avoid the danger of reading limitations from the specification into the claim--is sound"); *see also Eolas Technologies, Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337 (Fed. Cir. 2005) (stating that the Federal Circuit "consistently declines to construe claims according to the preferred embodiment").

SST's reliance on *Phillips*, on this point is misplaced. SST quotes the *Phillips* case for the proposition that a claim term with a qualifier (i.e., steel baffle) suggests that the claim term alone (i.e., baffle) need not inherently include the qualifier (i.e., need not be made of steel). But, then SST attempts to apply the *Phillips* reasoning to the language of the **specification** of the '328

#1041564 v2
105556-53216

Patent, instead of the language of the **claims**: "[a] system that selects a class of vendors that sell the requested product(s) **and** meet filter requirements of the buyer strongly indicates that merely selling the requested product(s) does not include meeting the buyer filter requirements."  SST's Opening Brief at 20 (emphasis in original).  Unlike the passage from *Phillips*, the language to which SST refers does not appear in the claims of the '328 Patent.  SST's misleading attempt to apply inapposite law to the facts in this case is improper – and wrong – and should be ignored.

SST also refers to Figures 5 and 6 of the '328 Patent to support its argument that filter conditions set by a buyer must exclude product identification.  But at this point in its brief, SST makes an interesting admission, stating that Figures 5 and 6 "clearly contemplate that the buyer filter conditions are **not merely whether the vendor sells that item**."  SST's Opening Brief at 20 (emphasis added).  To the extent that SST admits that filter conditions set by a buyer can include an indication that a vendor sells a particular item – in addition to other information – then the parties are in agreement.

SST purports that Figures 5 and 6 depict a two-stage filter process in which a determination is first made as to whether a vendor sells a particular product followed by a second determination of whether the vendor meets other requirements.  Notably, Figures 5 and 6 – like all of the other figures of the '328 Patent – do not have accompanying text or even element numbers to describe their content.  Accordingly, SST asks Defendants and the Court to accept its litigation-induced description of the operation of the flow charts in Figures 5 and 6 as if it were part of the disclosure.  This is, of course, improper.  In any event, even if SST's later-developed description of the operation of Figures 5 and 6 are accepted as accurate, it still remains improper to import that description of a preferred embodiment into the claims.  The specification itself describes Figures 5 and 6 as "**sample** logic for **processing filter conditions** to accomplish

vendor selection for a given RFQ.  Col. 5, ll. 32-34 (emphasis added).  Notably, the inventor's

own description of Figures 5 and 6 does not state that the logic is for selecting a vendor by

processing filter conditions **and** product information; it refers only to filter conditions.

Referring to the Summary of the Invention, SST makes the argument that the

specification suggests that filter conditions are optional.  That is, that the product identification is

required, but that a separate filter condition is not required.  SST makes a selective quotation of

the following paragraph from the specification – which is set forth in full as follows:

> The method of the present invention processes requests for quotation for goods
> and/or services from a buyer or supplier of goods and/or services through a
> computerized system forming a computer based communications network of
> network members for linking buyers to suppliers with the computerized system
> having at least one central processing unit including operating system software for
> controlling the central processing unit and storage means containing the
> identification of the network members, wherein the method comprises a
> computerized system receiving a buyer's request for quotation over a
> communication network; **selecting one or more appropriate vendors to receive
> the buyer's request for quotation based on filter conditions, if any, set by the
> buyer, vendor and the network software**; transmitting or making available the
> buyer's request for quotation to said selected vendors over a communications
> network; and said selected vendors communicating their quotations either directly
> to the buyer or to the computerized system which in turn makes available or
> transmits said received quotations to the requesting buyer.

Col. 2, ll. 52 - Col. 3, ll. 4 (emphasis added).  SST argues that the phrase "if any" following the

term "filter conditions" suggests that the filter conditions are optional.  SST suggests that the

vendors may be selected solely on the basis of a specified good or service.  However, this portion

of the specification discloses nothing about selecting vendors on any basis other than through the

use of filter conditions.  Accordingly, there is no basis for concluding that selection on the basis

of filter conditions is optional.

Tellingly, this portion of the Summary of the Invention closely resembles the language of

Claim 3.  Indeed, the three paragraphs of the Summary of the Invention closely track the

#1041564 v2
105556-53216

language of the three independent claims that were originally filed with the patent application. In the Patent Office's January 19, 1998 Notice of Allowance, the Examiner entered an Examiner's Amendment to claim 3, deleting the words "if any" from the corresponding claim language.  As with the paragraph SST cited from the Summary of the Invention, claim 3 recites no other means for selecting a vendor other than "selecting one or more appropriate vendors to be sent the buyer's request for quotation based upon filter conditions, set by the buyer, vendor and the network software."  Accordingly, there is absolutely no basis for the argument that filter conditions are optional, because the language from claim 3.  Likewise, there is no basis for the conclusion that claim 3 – or the specification – requires a two-stage filtration in which the filter conditions are an "optional" second step.  If the selection of vendors on the basis of filter conditions is optional, then claim 3 and the rest of the claims of the '328 Patent are simply inoperable, because that is the only recitation in the claims for selecting vendors to whom to send an RFQ.

2.      Filter Conditions Set by the Vendor

If and to the extent the Court elects to construe the term "filter conditions" separately depending upon whether the filter conditions are set by the buyer, vendor or network software, Defendants submit that the proper construction for "filter conditions set by the vendor" is:

> limitations or conditions that determine which of the network vendors will receive a buyer's request for quotation and/or which buyers will receive a response from a network vendor, **set by the vendor**.

In contrast, SST proposes that the Court should find that the term "vendor filter conditions" should be defined as:

> conditions that the vendor specifies that define a class of RFQs to which the vendor is interested in receiving

SST Opening Brief at 14. As to this construction, the parties are not very far apart. Defendants, however, submit that the claim language, the intrinsic record, and the Patent Laws require that the term "filter conditions" be construed consistently, whether set by a buyer, a vendor, or the network software. SST's constructions for "buyer filter conditions" (i.e., excluding product identification) and "vendor filter conditions" (i.e., which could include product identification) are inexorably inconsistent.

The specification of the '328 Patent describes the use of filter conditions by a vendor to determine which requests for quotation the vendor will receive:

> When a vendor wants to receive requests for quotation over the network, **the vendor notifies the network of the class of goods or services in which the vendor deals** (a "request for quotation class definition"). This can be communicated by voice, telephone, fax, et cetera, or by use of programming provided for that purpose but the preferred method is to use programming provided for that purpose by the network. The request for quotation class definition is transmitted to the network and **the network uses that definition to filter all requests for quotation routed to the vendor**, i.e., to the class defined by a buyer of which the vendor is a member. **In this way the vendor receives only those requests for quotation which conform to the vendor's request for quotation definition**. The number of vendors within a class to receive a request for quotation may be very large. To keep the process manageable network software may be arranged to limit the number of vendors to receive a request for quotation.

Col. 7, ll. 31-47 (emphasis added). It is, thus, again made clear in the specification that the inventor contemplated a definition of "filter conditions" set by a vendor that includes product specifications and product descriptions. The vendor first defines a class of goods or service in which the vendor deals. The network then uses that class definition to filter requests for quotation routed to the vendor. Clearly, the class of goods and services set by the vendor – and included in an RFQ by a buyer – is a filter condition as that term is used in the specification of the '328 Patent. This Court should reject SST's invitation to adopt inconsistent constructions for filter conditions that are set by vendors and filter conditions that are set by buyers.

#1041564 v2
105556-53216

3.    Filter Conditions Set by Network Software

If and to the extent the Court elects to construe the term "filter conditions" separately depending upon whether the filter conditions are set by the buyer, vendor or network software, Defendants submit that the proper construction for "filter conditions set by network software" is:

> limitations or conditions that determine which of the network vendors will receive a buyer's request for quotation and/or which buyers will receive a response from a network vendor, **set by network software** [5]

In contrast, SST proposes that the definition of "network software filter conditions" is:

> additional filter conditions that prevent all sellers and buyers from being matched equally when the buyer and seller filter conditions match each other

SST's Opening Brief at 28, 29.

The limitations related to filter conditions set by "network software" and a "central processing unit" are recited in Claims 1 and 3.  Claim 1 recites:

> filter means for filtering the network members in said storage means to determine which network members are to receive said request for quotation based upon **filter conditions set up** by the network buyer in said request for quotation or **by the central processing unit in accordance with preestablished conditions**

Col. 8, ll. 34-39.  Similarly, Claim 3 recites:

> selecting one or more appropriate vendors to be sent the buyer's request for quotation based upon **filter conditions**, set by the buyer, vendor and **the network software**

Col. 8, ll. 61-64.

The specification of the '328 Patent alludes to the fact that the central processing unit and/or network software may **itself** set a filter condition to determine to which vendors an RFQ

---

[5]    Defendants submit that the definition of filter conditions set by network software cannot be construed, because the specification fails to provide a written description of how network software can "set a filter condition."  Defendants intend to submit a motion on this issue following the conclusion of the claim construction briefing.

#1041564 v2
105556-53216

will be transmitted. Defendants submit that the intrinsic record provides no basis to modify the construction of the term "filter conditions," simply on the grounds that filter conditions may be set by network software or the central processing unit. Notably, Defendants believe that the specification is completely devoid of any teaching or disclosure as to how "network software" or the "central processing unit" can set a filter condition and that claims 1 and 3 are invalid for lack of a written description, lack of enablement, and/or indefiniteness. Moreover, the recitation of "the network software" in claim 3 lacks antecedent basis and Defendants contend that claim 3 is invalid for indefiniteness, among other reasons.

As discussed above, the specification describes the network receiving a request for quotation class definition from a vendor and using the "definition to filter all requests for quotation routed to the vendor, i.e., to the class defined by a buyer of which the vendor is a member." Col. 7, ll. 37-44. This is the only portion of the specification that provides any disclosure for how network software and/or a central processing unit can itself set up filter conditions. Accordingly, Defendants submit that to the extent that the Court decides to construe the term "filter condition set by network software," that the Court should not preclude the network's setting a filter condition that is based on a vendor's class definition.

III.    SST'S ATTEMPT TO NARROW THE SCOPE OF ITS DISCLAIMER SHOULD BE REJECTED

SST admits that the inventor of the '328 Patent made a disclaimer during prosecution that affects every claim in the '328 Patent. SST's Opening Brief at 36. SST's proposed claim constructions, however, include no reference to this disclaimer. The dispute before the Court at the claim construction phase of this matter, therefore, appears to be limited to a determination of the scope of the admitted disclaimer.

#1041564 v2
105556-53216

In their Opening Brief, Defendants set forth several constructions that incorporate the inventor's express disclaimer. Accordingly, Defendants will limit their arguments in this brief to those in opposition to SST's current position on the scope of the disclaimer.

SST argues that the admitted disclaimer is so narrow as to exclude only a central database of:

> **all** of the information about **all** of the items for sale from **all** of the vendors . . . so that a complete quote could be generated, and a transaction could be fully consummated, between the central database and the consumer.

SST's Opening Brief at 29 (emphasis in original). There is simply no basis for SST's proposed definition of scope of this disclaimer. It is inconsistent with the specification of the '328 Patent as well as the prosecution history and the claims.

> A.    SST's Attempt To Narrowly Define Its Admitted Disclaimer
>        Is Inconsistent With The Prosecution History

In its effort to describe the prosecution history as it relates to the scope of the admitted disclaimer, SST omitted reference to a significant statement that appears in the response to office action that immediately preceded the Notice of Allowance in the application. During the prosecution of the '328 Patent, the inventor stated:

> **In summary, none of the prior art teaches a system wherein the central database maintains information only sufficient to determine which sellers should receive the quote,** and wherein the central database filters and sends that request for quote only to the appropriate sellers.

February 5, 1998 Response at 8 (Exhibit C to Defendants' Opening Brief) (emphasis added). The scope of the inventor's disclaimer could not be clearer – and this admission during prosecution clearly refutes SST's litigation-induced attempt to narrow the scope of the disclaimer to a database "to contain **all** the information on all the products from all of the vendors – down to

17

the last detail – so that the transaction could be completed between the consumer and the central database." SST's Opening Brief at 4.

SST devotes a significant portion of its Opening Brief to a description of U.S. Patent No. 4,992,940 ("the Dworkin patent"). The precise details of the Dworkin patent, however, are not particularly relevant to the scope of the disclaimer. Significantly more important are the statements that the inventor made to distinguish the claims of the '328 Patent over the Dworkin patent and the other prior art cited by the Examiner. In discussing its statements in connection with the prior art, SST suggests that it should benefit as the result of any confusion created by its own statements to the Patent Office. SST's Opening Brief at 32. The cases SST cites that found no disavowal, however, considered situations in which the only purported disclaimer was alleged to be in the prosecution history -- and not the specification. Here, the specification itself includes several disclaimers that are consistent with Defendants' position. *See* Defendants' Opening Brief at 10-15.

    B.    SST's Attempt To Narrowly Define Its Admitted Disclaimer
            Is Inconsistent With The Specification

As set forth in Defendants' Opening Brief, the specification of the '328 Patent includes several passages in which the inventor repeatedly distinguished his invention from prior art systems by noting the absence of any central database of goods and services:

> The present invention is a computerized system forming a computer based communications network for processing requests for quotation for goods and/or services by broadcasting such requests to network members of the computerized system over any conventional transmitting medium, such as the Internet, to which the computerized system may be connected. **No central database of goods, prices, etc. is involved**.

Col. 2, ll. 35-41 (emphasis added).

> There is **no central pricing database** to limit the number of buyers and vendors of goods and services or to limit the number of goods and services which can be

#1041564 v2
105556-53216

processed. However the goods and services must be standard items to ensure that there is no confusion as to what buyers are requesting and what sellers are offering to buyers.

Col. 5, ll. 60-65 (emphasis added).  Accordingly, the claims and the specification make clear that the disclaimer excludes a central database of goods, services, and/or prices.  Also made clear is that the disclaimer that the inventor made in the specification as well as during prosecution of the '328 Patent was not nearly as narrow as SST now proposes.  Accordingly, Defendants submit that the scope of the admitted disclaimer must be broad enough to exclude "a central database that contains more information than is required to determine which network vendors should receive an RFQ."

#1041564 v2
105556-53216

<u>CONCLUSION</u>

For the reasons provided above, Defendants respectfully request that the Court reject

SST's proposed constructions and construe the disputed claim terms as set forth in Defendants'

Opening Brief.

Respectfully submitted,

DATED: December 21, 2005              GIBBONS, DEL DEO, DOLAN,
                                      GRIFFINGER & VECCHIONE
                                      A Professional Corporation


                                      By:    s/ Elvin Esteves (EE 2216)
                                          Kevin J. McKenna, Esq. (KJM 7530)
                                          Elvin Esteves, Esq. (EE 2216)

                                      One Riverfront Plaza
                                      Newark, NJ 07102-5497
                                      Telephone (973) 596-4500
                                      Facsimile (973) 596-0545

                                      Attorneys for LendingTree, LLC, IAC/InterActiveCorp,
                                      and ServiceMagic, Inc.


OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303
Tel.: (404)572-4600
Fax: (404)572-514

#1041564 v2
105556-53216