## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| Source Search Technologies, LLC, | ) | Civil Action No. 2:04-cv-4420 (DRD) (SDW) |
| Plaintiff, | ) | |
| -- against -- | ) | |
| LendingTree, LLC, IAC/InterActiveCorp, and ServiceMagic, Inc. | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
## PROPOSED CLAIM CONSTRUCTIONS

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation
Kevin J. McKenna, Esq. (KJM 7530)
Elvin Esteves, Esq. (EE 2216)
One Riverfront Plaza
Newark, NJ 07102-5497
Telephone (973) 596-4500
Facsimile (973) 596-0545

*Attorneys for LendingTree, LLC,*
*IAC/InterActiveCorp, and ServiceMagic, Inc.*

OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
191 Peachtree Street
Atlanta, Georgia 30303
Tel.: (404)572-4600
Fax: (404)572-5145

## <u>TABLE OF CONTENTS</u>

ARGUMENT.................................................................................................................1

I.      SST's ALLEGED LEVEL OF SKILL IN THE ART SHOULD BE REJECTED ............1

II.     SST's PROPOSED CONSTRUCTIONS SHOULD BE REJECTED ...............................3

        A.      Request for Quotation.........................................................................................3

        B.      Filter Means .......................................................................................................7

                1.      The Structure of the Filter Means ...........................................................7

                2.      The Disclaimer of a Central Database of Goods and Prices......................9

        C.      Filter and Broadcast Means ..............................................................................13

        D.      Computer Based Communications Network ........................................................14

        E.      Filter Conditions ..............................................................................................14

        F.      Network Member...............................................................................................15

        G.      Goods and Services...........................................................................................16

        H.      Communications Channel Storage Means ..........................................................16

        I.      Storage Means ..................................................................................................17

CONCLUSION............................................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brown v. 3M*,
  265 F.3d 1349 (Fed Cir. 2001) ....................................................................5

*JVW Enters. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ...................................................................7

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003) .................................................................17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir.  2005) .................................................3, 4, 5, 16

*Reilly Foam Corp. v. Rubbermaid Corp.*,
  206 F. Supp. 2d 643 (E.D. Pa. 2002) ..........................................................6

*WMS Gaming, Inc. v. International Game Technology*,
  184 F.3d 1339 (Fed. Cir. 1999) ...................................................................8

## FEDERAL STATUTES

35 U.S.C. § 112, ¶ 6 ....................................................................................7, 13

35 U.S.C. § 255....................................................................................................16

ii

The parties simultaneously filed response briefs on December 21, 2005. Defendants LendingTree, LLC ("LendingTree"), IAC/InterActiveCorp ("IAC"), and ServiceMagic, Inc. ("ServiceMagic") (collectively, "Defendants") submit this Reply Brief in Support of Their Proposed Claim Constructions. For the reasons set forth herein, the constructions proposed by Plaintiff Source Search Technologies, LLC's ("SST") in its Responsive *Markman* Brief are not supported by the record or by the law of claim construction and thus should be rejected, and Defendants' proposed constructions should be adopted.

ARGUMENT

I.    SST's ALLEGED LEVEL OF SKILL IN THE ART SHOULD BE REJECTED

Defendants assert that one of ordinary skill in the art relevant to the '328 Patent "need not possess more than a minimal understanding of computer applications and communications, but must have at least some experience in the procurement arts to properly understand the meaning of the claims of the '328 Patent." Defendants' Opening Brief at 8. SST states that Defendants' proposed level of ordinary skill in the art is improperly established "through the use of mere attorney argument." SST's Response Brief at 1. This is not true. On the contrary, Defendants' position is fully supported by citation to the specification of the '328 Patent as well as to the deposition testimony of the inventor himself. As set forth in Defendants' Opening Brief, the specification of the '328 Patent unambiguously relates to the art of purchasing and procurement, and the inventor of the '328 Patent testified that his inspiration for the invention was his first hand observation of problems in the purchasing department of his own company. Defendants' Opening Brief at 7-8. Defendants' position as to the level of ordinary skill in the art is supported not by attorney argument, but by the record.

SST alleges that "**the ordinarily skilled artisan would have some basic level of computer programming and networking or similar expertise, perhaps a BS degree in computer science or a related field or the equivalent work experience**." SST's Response Brief at 2 (emphasis added). SST's claims that its position is based entirely on the declaration of an alleged expert, Dr. Eric Dowling.[1] Dr. Dowling's declaration, however, defines a level of ordinary skill in the art that is different than SST's position: "**I regard one of ordinary skill in the art to be one with a BS degree in computer science or an equivalent field like electrical engineering, or having the equivalent work experience, and someone with experience designing and/or using Internet related software and ecommerce systems**." Dowling Declaration at 1 (emphasis added). SST's position is, therefore, inconsistent with the position of its own alleged expert – the sole basis for its position.

Specifically, Dr. Dowling states that one aspect of a person skilled in the relevant art must have "experience designing and/or using Internet related software and ecommerce systems." Dr. Dowling's reference to electronic commerce comes close to suggesting a purchasing/procurement aspect to the appropriate art. Nonetheless, SST's definition completely omits any reference to the electronic commerce aspect of Dr. Dowling's definition. Similarly, Dr. Dowling never states that one of ordinary skill in the art "would have some basic level of computer programming and networking or similar expertise." Indeed, Dr. Dowling never even mentions "networking" or "computer programming" – at a "basic level" or otherwise.

---

[1] Dr. Dowling has never been identified as an expert in this matter and Defendants have not been provided with the opportunity to take Dr. Dowling's deposition. Although his declaration has also been identified by SST as a "preliminary expert report," the Court's Scheduling Order specifically provides – over SST's objection – that expert discovery will not occur until after the Court has ruled on the claim construction proceedings. Accordingly, Dr. Dowling's declaration has been improperly submitted and should not be considered by the Court in connection with this claim construction briefing.

2

Additionally, Dr. Dowling flatly states that one of ordinary skill in the art would have a BS degree in computer science or an equivalent field, while SST states that one of ordinary skill would "perhaps" have a BS degree in computer science. Clearly, there are fundamental inconsistencies between SST's definition of the level of ordinary skill in the art and Dr. Dowling's definition. Because Dr. Dowling's testimony is the sole basis for SST's definition of the level of skill in the art, the fundamental inconsistencies between their positions is fatal to SST's position on this issue.

Even if the Court were to determine that Dr. Dowling's declaration warranted consideration, SST's position would still fail for at least two reasons. First, there is nothing in Dr. Dowling's declaration to suggest that he has had "experience designing and/or using Internet related software and ecommerce systems." Accordingly, Dr. Dowling does not even satisfy his own definition of one of ordinary skill in the art and, as such, his declaration has no relevance in this matter. Second, Dr. Dowling provides no basis whatsoever for his definition – he merely states his conclusion, with no analysis or basis. Dr. Dowling's definition of the appropriate level of skill in the art should be rejected as baseless. SST's definition should also be struck for the same reasons.

## II.    SST's PROPOSED CONSTRUCTIONS SHOULD BE REJECTED

### A.    Request for Quotation

Defendants' construction for "request for quotation" is "*a request for a statement of the current price of something*." SST disputes Defendants' construction on the basis that it relies on extrinsic evidence. SST is mistaken.

SST has apparently misunderstood the holding in the recent landmark decision of the Federal Circuit Court of Appeals in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.

#1043347 v2
105556-52625

2005).[2]  In particular, SST criticizes Defendants for using "extrinsic evidence" when Defendants

cite two dictionary definitions in connection with their analysis of the definition for "request for

quotation."  SST states:

> Defendants argue that for all the terms to be construed here, "[T]he specification, and the prosecution history -- i.e., the intrinsic record -- provides the correct construction.  Accordingly it is unnecessary for the Court to resort to any extrinsic evidence." (Defendants Opening Markman Brief, p.7)  Then, the first term they present to this Court for construction immediately thereafter is "Request for Quote", at pp. 8-9 of their brief. … These extrinsic definitions are divorced from, and completely contradict, the use of the term in the '328 patent, and are precisely what the *Phillips* Court denounced and what defendants' own brief argues is improper.

SST's Response Brief at 3.  This is wrong on several counts.  First, SST has misleadingly

omitted the first part of the sentence that it quotes from Defendants' Opening Brief.  The entire

sentence from which SST selectively quotes states:

> ***For each of these terms, the ordinary meaning of the claim language to one of skill in the art***, the specification, and the prosecution history – i.e., the "intrinsic record" – provides the correct construction.

Defendants' Opening Brief at 7 (emphasis added).  SST omitted the portion of the sentence set

forth in emphasis above in order to suggest that Defendants were speaking out of both sides of

their mouths.  This is simply untrue.[3]  Defendants have consistently asserted that the ordinary

meaning to one of ordinary skill in the art is an appropriate source for claim term construction.

SST is also wrong because Defendants' position is entirely consistent with the holding in

*Phillips*.  The *Phillips* Court held that the initial focus of the claim construction analysis should

be on the intrinsic record, not the extrinsic record.  *See, e.g., Phillips*, 415 F.3d at 1317.

---

[2]    SST has, throughout its brief, incorrectly cited the *Phillips* case.  The proper cite is "415 F.3d 1303" not "15 F.3d 1303."

[3]    Also untrue is SST's assertion that Defendants fail to "cite the patent specification or the prosecution history at all."  SST's Response Brief at 3.  In fact, Defendants specifically cite to Figure 8 of the '328 Patent and the accompanying text.  Defendants' Opening Brief at 9.

4

However, the Court also acknowledged that many claim terms could have an ordinary meaning that was readily apparent to lay judges:

> In some cases, ***the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges***, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed Cir. 2001) (holding that the claims did "not require elaborate interpretation"). ***In such circumstances, general purpose dictionaries may be helpful.***

*Phillips*, 415 F.3d at 1314 (emphais added). The term "request for quotation" is a commonly understood term that has an "ordinary meaning ... [that] may be readily apparent even to lay judges." Moreover, it is a term for which "general purpose dictionaries [are] helpful." It is for this reason -- entirely consistent with the holding in *Phillips* -- that Defendants assert that the general purpose dictionary definitions cited are helpful to determine the ordinary meaning of the term "request for quotations." As stated in Defendants' Opening Brief, Defendants' construction for "request for quotations" is also fully consistent with the specification of the '328 Patent. Defendants' Opening Brief at 9 (citing Figure 8 and the accompanying text).

In contrast, SST proposes a construction for "request for quotation" for which SST fails to provide support in the specification or anywhere in the intrinsic record:

> the request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance

SST's Opening Brief at 2. The portions of the specification to which SST cites relate to what a vendor may send to a buyer **in response to a request for quotation**; and does not relate to a request for quotation itself. For example, SST quotes Figure 2A of the specification, thusly: "Each selected vendor responds to the requests(s) [sic] by providing its pricing ***and other information*** . . . ." This quotation certainly may be relevant to the question of what the inventors contemplated that the vendors might send to a buyer, in response to receiving an RFQ.

But, SST fails to show how this passage is relevant to the determination of its proposed construction of the claim term "request for quotation." That a vendor's response to a request for quotation may include other information does not "mandate" that the buyer sending the request for quotation necessarily includes a request for something other than the current price of something.

SST includes several other arguments related to "quotations" not to "requests for quotations." These arguments are inapposite for relating to the wrong claim term:

1. The **quote may include** such items as delivery terms, price, etc.;
2. The **quote** is so detailed that it is **preferably** sent using a whole file;
3. Part of the **quote information** is stored at a remote computer;
4. A **quote** includes pricing information as well as other terms;
5. A **quote** contains a field for the user to accept the **quote** by clicking; and
6. Another court in an unrelated case construed the term "quote" in a way that SST alleges is consistent with SST's proposed construction.[4]

Each of these arguments is meritless on its face. While Defendants acknowledge that the proper construction of the term "request for quotation" is based on an ordinary meaning taken in part from a general dictionary definition of the term "quote," it is significant that SST is not urging the Court to adopt an ordinary meaning for the term "request for quotation." Instead, SST urges the Court to adopt a specific definition of the term from the specification of the '328 Patent. *See, e.g.,* SST's Response Brief at 4 ("The specification thus **mandates** that the response includes *more* than just the price."). SST utterly fails to cite a single portion of the specification that

---

[4]     SST's reliance on *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F.Supp.2d 643 (E.D. Pa. 2002) is especially misleading. The *Reilly* case is not a patent infringement case and does not address claim construction. Moreover, although the court in *Reilly* determined that the quotation in that case contained sufficient detail to constitute an offer that could be accepted, the court stated that "[g]enerally, price quotes are **not considered an offer**, but rather mere invitations to enter into negotiations or to submit offers." *Id.* at 650 (internal citations and quotations omitted).

6

indicates that the inventors meant to use the term "request for quotation" in a way that was different from its ordinary and common usage.

Even if the Court were to accept SST's arguments that a "request for quotation" requires a request for something more than just the price of something, SST's proposed construction is wholly unsupported by the specification. Indeed, SST fails to cite or quote any portion of the intrinsic record that supports its argument that a "request for quotation" is a "request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." As such, SST's proposed construction has been created out of whole cloth – without regard for the record or the laws of claim construction – and must be rejected.

## B. Filter Means

### 1. The Structure of the Filter Means

SST argues that the definition of the term "filter means" must be the same for every claim and that the function of the filter means in each of the claims must be the same. SST's Response Brief at 6. However, SST's argument ignores the fact that the "filter means" terms, as they appear in independent claims 1 and 12 are means-plus-function limitations.[5] *See* Defendants' Opening Brief at 9 ("Because the claim limitations in each of these claims do not by themselves provide any structure, the claim term "filter means" is a means-plus-function limitation and is, therefore, subject to construction under 35 U.S.C. § 112, ¶ 6."). The first step in construing a means-plus-function limitation is to determine the claimed function. *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005). Accordingly, the **function** of the filter means is determined from the function recited in the claims. Independent claims 1 and 12 recite a "filter means" for performing different functions. Because the function associated with the

---

[5]     SST does not, however, dispute that the "filter means" terms are means-plus-function limitations subject to construction under 35 U.S.C. § 112, ¶ 6.

7

"filter means" recitation in each of these claims is slightly different, a separate claim construction analysis is appropriate for each of the claims reciting "filter means."

As set forth in Defendants' Opening Brief, the only disclosed algorithm arguably capable of performing the filtering functions recited in independent claims 1 and 12, is depicted in Figures 5 and 6 of the '328 Patent. SST purports to agree with Defendants' interpretation of *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339 (Fed. Cir. 1999), which states that "[i]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, **the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm**." SST's Response Brief at 6 (emphasis added). However, it is clear from SST's analysis that the parties do not agree on the proper application of the *WMS Gaming* case. Specifically, SST asserts that "the structure to be used for claim construction purposes is the computer as programmed to implement the disclosed steps, and all equivalents thereof, not merely a computer." SST's Response Brief at 6. SST then cites several portions of the specification that it claims demonstrate that the "disclosed algorithm" required by *WMS Gaming* is not limited to the algorithm disclosed in Figures 5 and 6. Not one of the portions of the specification to which SST points, however, describes or discloses an algorithm, a flowchart, or even a series of steps related to filtering requests for quotations. *See* Col. 7, ll. 3-29; Figure 2A; Figure 3.

Despite SST's allegations to the contrary, Figures 2A and 3 simply are not flow charts and are not described as flowcharts or algorithms in the accompanying test. *Compare* Figure 2A *with* Figures 5 and 6. Tellingly, the Brief Description of the Drawings describes Figures 5 and 6 as "**logic** for processing requests for quotation such that all filter conditions are met and a

8

predetermined number of vendor responses are returned to the requesting buyer."  On the other hand, Figure 2A is described as 'a **block diagram** representing how a buyer interacts with the computerized system of this invention via the Internet."  Similarly, Figure 3 is described as "**block diagram** of how a vendor's offer of items for special sale is communicated to network buyer members."  The portion of Column 7 that SST cites also fails to describe any logic, algorithm, or steps for performing the filtering functions recited in the claims.  Under a proper application of the *WMS Gaming* case, the disclosures of Figures 2A, 3, and Column 7 are not "disclosed algorithms" and cannot, therefore be properly considered as a structure corresponding to the "filter means" means-plus-function recitations of Claims 1 and 12.

### 2.   The Disclaimer of a Central Database of Goods and Prices

SST devotes over 20 pages of its 50 page Response Brief to an expansive discussion of the admitted disclaimer.  SST's conclusion is flawed for the several reasons that Defendants set forth in their Opening Brief and Response Brief.  Although SST has plainly admitted that the inventor disclaimed some claim scope – as it must – SST has **failed to make any suggestion** of how that disclaimer should affect the Court's claim constructions.  Defendants have asserted that the disclaimer should be integrated into the constructions for "filter means," "filter and broadcast means," "computer based communications network," "communications channel storage means," and "storage means."  While SST has criticized Defendants' analysis of the disclaimer issue, SST has never integrated the disclaimer – in any form or scope – into any of its proposed claim constructions.  It surely cannot be SST's position that the disclaimer can be simply read into the claims in the abstract, disassociated with any claim term.  Nonetheless, SST makes no attempt to provide the Court or the Defendants with a proposal as to the claim terms that are affected by the admitted disclaimer.  In other words, if the Court were to adopt all of SST's claim constructions,

#1043347 v2
105556-52625

then the disclaimer would be effectively written out of the claims. Accordingly, Defendants submit that by failing to connect its proposed disclaimer to any particular claim term, SST has waived its right to propose a construction of any claim term that incorporates a disclaimer of any scope. The Court should, therefore, adopt Defendants' constructions for the terms that incorporate the disclaimer proposed by Defendants: i.e., "filter means," "filter and broadcast means," "computer based communications network," "communications channel storage means," and "storage means."

The merits of SST's disclaimer argument are equally unavailing. SST insists that the inventor's admitted disclaimer is so narrow that it only disclaims a central database containing "**all** of the information about **all** of the items for sale from **all** of the vendors . . . so that a complete quote could be generated, and a transaction could be fully consummated, between the central database and the consumer." SST's Opening Brief at 29 (emphasis in original); *See also,* SST's Response Brief at 9. Nothing in the specification, the file history, or the claims supports this theory and it should be rejected as a transparent attempt to recapture what was disclaimed in the specification and during prosecution of the '328 Patent.

SST makes several arguments suggesting that if the disclaimer proposed by Defendants were adopted, then the claimed invention could not operate as disclosed. Even assuming that SST's argument in this regard was true, however, that is not a proper application of the laws of claim construction. The specification of any patent describes more than that to which the inventor is entitled patent protection. That the specification of the '328 Patent describes an exemplary embodiment that would fall within the scope of the disclaimer, and outside the scope of the claims is not in itself a proper basis for concluding that the scope of the disclaimer is too broad. SST's conclusions based on this theory should be rejected.

10

SST devotes three pages of its brief to a discussion of the clear disclaimer made by its counsel during examination of the '328 Patent:

> **In summary, none of the prior art teaches a system wherein the central database maintains information only sufficient to determine which sellers should receive the quote,** and wherein the central database filters and sends that request for quote only to the appropriate sellers.

February 5, 1998 Response at 8 (Exhibit C to Defendants' Opening Brief) (emphasis added). SST does not, however, explain why this clear disclaimer can be ignored. This is a clear, unambiguous, and deliberate disavowal of claim scope; and just as SST benefited from this disclaimer during prosecution,[6] it is saddled with its consequences during litigation.

In a new argument, SST points out that claims 17, 18, and 19 – which have not been asserted in this litigation or subject to claim construction – recite a separate filtering process for filtering responses to RFQs, so that only a subset of the responses are sent back to a buyer. SST's Response Brief at 11-12. SST argues that these claims demonstrate that the disclaimer cannot be as broad as the inventor characterized it to the Patent Office in February of 1998, as set forth above. It is SST's theory that because these unasserted claims recite a first set of filter

---

[6]    As discussed in Defendants' Opening Brief, the Examiner specifically relied upon the inventor's unequivocal statement when deciding to allow the claims of the '328 Patent to issue. The Examiner could not have been more clear in its Reasons for Allowance:

> The systems of the prior art either maintain a central database containing all necessary information to answer an RFQ or they require that the buyer specify the vendor to deliver the RFQ to. ***Applicant's system represents a significant improvement over these systems in that the filtering means only maintains enough information to determine which vendors to send the RFQ to, without having to maintain data on all possible goods and services.***

Notice of Allowability (Jan. 19, 1998) at p. 3 (attached as Exhibit D) (emphasis added).

conditions and a second set of filter conditions, that the disclaimer must be narrower than Defendants propose.

This, however, is a straw man argument. It has never been Defendants' contention that any specific number of filter conditions can be stored in a central database of the claimed invention – it is clear that filter conditions can be stored in such a database. Indeed, SST stretches this argument even more thinly when it states that the first set of filter conditions of unasserted claim 17 "are clearly different from" the additional filter conditions. SST's Response Brief at 14. This argument is totally unsupported by the specification and should be rejected. While separate sets of filter conditions might be used at different times for routing RFQs and responses, there is no teaching in the specification that these filter conditions are mutually exclusive – and SST cites no such support.

As set forth in Defendants' Opening Brief, the specification – in addition to the prosecution history – supports Defendants' position regarding the inventor's intentional disclaimer of claim scope:

> The present invention is analogous [sic] to a cross between telephone and broadcasting technologies. It is this difference which creates the opportunity for buyers to relate to vendors **without a rigid structure operating through a centralized computer database** as required by existing methods.

Col. 2, ll. 27-31 (emphasis added).

> The present invention is a computerized system forming a computer based communications network for processing requests for quotation for goods and/or services by broadcasting such requests to network members of the computerized system over any conventional transmitting medium, such as the Internet, to which the computerized system may be connected. **No central database of goods, prices, etc. is involved**.

Col. 2, ll. 35-41 (emphasis added).

> There is **no central pricing database** to limit the number of buyers and vendors of goods and services or to limit the number of goods and services which can be

12

processed. However the goods and services must be standard items to ensure that there is no confusion as to what buyers are requesting and what sellers are offering to buyers.

Col. 5, ll. 60-65 (emphasis added).  Accordingly, the claims and the specification make clear that the filter means cannot include a central database of goods, services, and/or prices.  On the contrary, the central database may only include that which is required to properly route the RFQs.

### C.      Filter and Broadcast Means

Independent claim 4 recites a "filter and broadcast means."  SST does not dispute that this term is a means-plus-function limitation subject to construction under 35 U.S.C. § 112, ¶ 6. For the reasons set forth in Defendants' Opening Brief and set forth above in connection with the Defendants' proposed construction of "filter means," Defendants submit that SST's proposed construction is incorrect to the extent that it seeks to incorporate a structure for filtering other than the disclosed algorithms depicted in Figures 5 and 6 (in combination with a computer programmed to perform those algorithms).

SST's construction is also flawed because SST urges the Court to ignore the language of the claim, which recites "means for receiving . . . requests . . . to engage in transactions . . . and for filtering said requests."  As set forth in Defendants' Opening Brief, there is absolutely no disclosure of "requests to engage in transactions."  SST argues that a "request to engage in transactions" is a "slightly more generic term" for "request for quote," but provides no basis in the intrinsic record to support that argument.  Such an argument should be rejected, as it would require the Court to essentially rewrite or at least ignore the plain language of claim 4.

13

As set forth in Defendants' Opening Brief and set forth above in connection with the Defendants' proposed construction of "filter means," Defendants submit that the disclaimer of a central database should be incorporated into the construction of "filter and broadcast means."

### D.    Computer Based Communications Network

SST has failed to respond to Defendants' proposed claim construction for "computer based communications network.  SST's Response Brief at 32-33.  Accordingly, Defendants' proposed construction should be adopted.  As set forth in Defendants' Opening Brief and set forth above in connection with the Defendants' proposed construction of "filter means," Defendants submit that the disclaimer of a central database should be incorporated into the construction of "computer based communications network."

### E.    Filter Conditions

SST has requested that the Court construe three terms – "vendor filter conditions," "buyer filter conditions," and "network filter conditions" – that simply do not exist in the claims of the '328 Patent.  This is, of course, improper.  SST fails to address the fact that the claims do not recite the terms for which it seeks constructions.  Accordingly, without any justification provided for construing claims terms that are not found in the '328 Patent, the Court should reject SST's constructions for those fictitious terms and adopt Defendants' construction for the term "filter conditions" – a term that appears in every claim except claim 12.

Ironically, while asking the Court to construe claim terms that do not exist, SST simultaneously argues that Defendants have improperly broadened the construction of "filter conditions" by removing the clause: "included in the RFQ and/or the response" from a description found in the specification.  SST suggests that the omission of this clause demonstrates that Defendants had to modify the definition to permit its definition of "filter

14

conditions to apply whether the filter conditions were generated by a buyer, vendor, or network software." This is, of course, not true. SST mischaracterizes Defendants' position by omitting the fact that Defendants cited and quoted four passages from the specification that supported Defendants' construction, including a passage regarding filter conditions that purport to exist outside of the context of a RFQ or response to an RFQ.[7]

Because SST has failed to provide a construction for the claim term "filter conditions," it has waived its right to propose a construction. The Court should, therefore adopt the construction proposed by Defendants.

### F. Network Member

The parties essentially agree on the first part of the construction of "network member," but disagree as to the second part of Defendants' proposed construction, relating to a requirement of "receiving password information or other means necessary to access and use the quotation system." SST contends that the use of a password or other access means is exemplary and not a part of the definition of "network member." As is set forth in Defendants Opening Brief, the specification is unequivocal and does not support a finding that this aspect of the definition of a "network member" is optional. The specification plainly states that "[n]ew members would receive password information via e-mail to ensure that applicants have provided correct e-mail coordinates." Col. 4, l. 67 – Col. 5, l. 8.

---

[7] SST goes so far as to state that "Defendants instead take one isolated statement and alter it to describe additional terms that it clearly does not describe, while they ignore the parts of the patent document that do describe these additional terms." SST's Response Brief at 34. Even the most cursory glance at page 20 of Defendants' Opening Brief would demonstrate that this statement is patently false.

#1043347 v2
105556-52625

### G.    Goods and Services

SST accuses Defendants of "practice[ing] snippet litigation" by contending that the goods and services must be standardized.  It is not "snippet litigation," however, to quote directly from the specification in support of a construction.  As set forth in Defendants' Opening Brief, the specification unequivocally requires standardized goods and services:

> There is no central pricing database to limit the number of buyers and vendors of goods and services or to limit the number of goods and services which can be processed. **However the goods and services must be standard items to ensure that there is no confusion as to what buyers are requesting and what sellers are offering to buyers**.

Col. 3, ll. 60-65 (emphasis added).  Because SST's construction ignores the clear mandate of the specification, the Court should adopt the Defendants' construction for "goods and services."

### H.    Communications Channel Storage Means

Although SST claims that the "communications channel storage means" issue is a "red herring," it requires a simple application of claim construction law.  SST argues that the patentee omitted a comma during prosecution.  Nonetheless, even assuming that to be the case, SST failed to correct that error prior to litigation and it is stuck with the claims that it brought into this lawsuit.[8]  If this term cannot be construed, then the claim is simply indefinite.  If it can be construed, then Defendants are entitled to a construction.  SST's suggestion that the Court insert a comma between "channel" and "storage" is simply another improper invitation for the Court to err by rewriting the claims.  Defendants contend that the term "communications channel storage means" cannot be construed because it is indefinite.

---

[8]    35 U.S.C. § 255 empowers the Patent Office to correct typographical errors in a patent by issuing a certificate of correction, upon petition by the patentee.

16

## I.    Storage Means

For the reasons set forth in their Opening Brief, Defendants contend that the term "storage means" cannot be construed because it is indefinite for lacking any structure in the specification. SST's reliance on extrinsic evidence in the form of its purported expert, Dr. Dowling, is improper because he is not qualified as someone of ordinary skill in the art – and does not even meet his own definition of the level of skill in the art. Every point of SST's argument regarding the construction of "storage means" relies directly and exclusively on Dr. Dowling's testimony. The Federal Circuit has recently criticized the use of expert testimony in the claim construction analysis, especially expert testimony of a conclusory nature, like Dr. Dowling's. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). Accordingly, SST's contentions should be rejected and Defendants' contention that "storage means" is indefinite for lacking a disclosure of structure should be adopted.

SST's means plus function analysis relies on Dr. Dowling's declaration that the storage means could be the Random Access Memory. SST's Opening Brief at p. 40. Additionally, however, SST must further rely on Dr. Dowling's declaration that the storage means also includes the "peripheral devices and known input and interface devices" described in the specification, which Dr. Dowling declares to be inherently known to one of ordinary skill in the art to be a hard drive that could store the identification of the network members. Presumably, this arrangement would overcome the problem that Defendants identified in their Opening Brief regarding the volatile nature of the RAM.

Even if Dr. Dowling's declaration was credible and relevant -- it is neither -- SST cannot escape the fact that the specification simply fails to connect the function of the storage means with a literal structure -- not a structure seen only by a purported expert. The question is not

#1043347 v2
105556-52625

whether one of ordinary skill in the art would be able to implement a structure, but whether the specification discloses the structure. *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB,* 344 F.3d 1205, 1212 (Fed. Cir. 2003). As stated in *Med. Instrumentation*, "[i]t is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing that structure." *Id.* Thus, even if one of ordinary skill in the art would know how to implement a means-plus-function claim based on pre-existing art, the patentee has not satisfied their duty of disclosure if they do not disclose or discuss that fact in the specification. *See id.* (illustrating that the court was not persuaded when an expert found that the claimed means was not discussed in the specification because it was "well-known in the art and required no explanation").

18

<u>CONCLUSION</u>

For the reasons provided above, Defendants respectfully request that the Court construe the disputed claim terms as set forth herein.

DATED: December 30, 2005          GIBBONS, DEL DEO, DOLAN,
                                  GRIFFINGER & VECCHIONE
                                  A Professional Corporation


                                  By:  ___s/ Elvin Esteves (EE 2216)
                                       Kevin J. McKenna, Esq. (KJM 7530)
                                       Elvin Esteves, Esq. (EE 2216)

                                  One Riverfront Plaza
                                  Newark, NJ 07102-5497
                                  Telephone (973) 596-4500
                                  Facsimile (973) 596-0545

                                  *Attorneys for LendingTree, LLC,*
                                  *IAC/InterActiveCorp, and ServiceMagic, Inc.*


OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia 30303
Tel.: (404)572-4600
Fax: (404)572-5145

#1043347 v2
105556-52625