## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------X
:
Source Search Technologies, LLC,                       :
:
Plaintiff,                        :
:     **Civil Action No. 2:04-CV-4420 (DRD)**
v.                          :
:     **Oral Argument Requested**
LendingTree, Inc., Service Magic Inc. and              :
IAC InterActiveCorp,                                   :
:
Defendants.                       :
-------------------------------------------------------X


## PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S
## REPLY *MARKMAN* BRIEF


Dated: December 30, 2005

Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (MG 7608 *Pro Hac* Admittee)
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

I.     PRELIMINARY STATEMENT ................................................................................1

II.    ARGUMENT ..........................................................................................................1

    A.    Defendants Assertions Are Largely Correct But Irrelevant ......................................1

    B.    The Disclaimer is Not as Broad as Defendants Argue ..............................................3

    C.    Defendants' Misconstrue the Term Filter Condition ................................................6

        1.    Defendants' Construction Excludes Preferred Embodiments ....................6

        2.    Defendants' Definition Conflicts with the Claims Themselves ..................8

    D.    Defendants' Assertion Concerning Network Filter
        Conditions is Frivolous ............................................................................................8

    E.    SST Never Argued That Examples In the Specification
        Limit the Claims ....................................................................................................10

    F.    Defendants Remaining Arguments Are Without Merit ...........................................13

III.    CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2004)..........................................................................12

*Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*,
   262 F.3d 1258 (Fed. Cir. 2001)..............................................................10, 13, 15

*Budde v. Harley-Davidson, Inc*.,
   250 F. 3d 1369, 1379-80 (Fed. Cir. 2001) .............................................................3

*Comark Communications Inc. v. Harris Corporation*,
   156 F.3d 1182 (Fed. Cir. 1998)............................................................................12

*Connectel LLC v. ITXC Incorporated*,
   2004 WL 540444 (E.D. Pa.) ................................................................................16

*Dow Chemical Company v. Sumitomo Chemical Company, Ltd*,
   257 F.3d 1364 (Fed. Cir. 2001)..............................................................................6

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996)................................................................................6

*Interactive Gift Express, Inc. v. Compuserve, Inc*.,
   256 F.3d 1323 (Fed. Cir. 2001)..............................................................................5

*Legget & Platt, Inc. v. Hickory Springs Manufacturing Co.*,
   285 F.3d 1353 (Fed. Cir. 2002)......................................................................11, 15

*Microsoft Corporation v. Multi-Tech Systems, Inc*.,
   357 F.3d 1340 (Fed. Cir. 2004)............................................................................15

*Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc*.,
   429 F.3d 1364 (Fed. Cir. 2005)......................................................................3, 4, 6

*Phillips v. AWH*,
   15 F.3d 1303 (Fed. Cir. 2005)................................................................................3

*Sandisk Corp. v. Memorex Prods., Inc*.,
   415 F.3d 1278, 1285 (Fed. Cir. 2005)....................................................................3

*Specialty Composites v. Cabot Corp*.,
   845 F.2d 981 (Fed. Cir. 1988)..............................................................................12

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Tandon Corp. v. United States Int'l Trade Comm'n,*
   831 F.2d 1017 (Fed.Cir.1987)..................................................................................12

*Telemac Cellular Corporation v. Topp Telecom, Inc.,*
   247 F.3d 1316 (Fed. Cir. 2001)................................................................................5

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996)...............................................................................16

## I.  PRELIMINARY STATEMENT

Although defendants make a variety of assertions with which SST fully agrees, most of these assertions do not address in any way, much less refute,  the underlying basis for SST's claim construction, as supported by the '328 patent's entire intrinsic record.  Accordingly, this Court should construe the claims as SST has urged.

## II. ARGUMENT

### A.     Defendants Assertions Are Largely Correct But Irrelevant

Defendants complain that SST is requesting construction of "buyer filter conditions", "vendor filter conditions" and "Network Filter Conditions" - terms not in the claims. Claim 3 recites "filter conditions set by the…vendor", while claim 18 calls for filter conditions "determined by said vendor".   Claim 1 requires filter conditions "set up by the central processing unit", while claim 3 refers to the same filter conditions by reciting that the network includes a central processing unit, and that the filter conditions are set up by the network.  SST specifically noted that despite slight grammatical and wording differences in the claim language based upon surrounding text, the terms should be construed similarly for purposes of this case, and that the Court should construe the *actual claim language*.  (See SST Opening Markman Brief p. 26: "[T]his Court should construe filter conditions set by the buyer [the actual claim 3 term] and substantially similar claim terms to mean"; See also *Id*., page 28).

SST adopted the phrase "vendor filter conditions", for example, as a convenient way to refer to "filter conditions set up by the network vendor", and filter conditions "determined by the vendor" without having to write out two long phrases repeatedly.   Accordingly, there is no disagreement here, and the Court should construe the actual claim terms at issue.

Defendants also argue that filter conditions are mandatory, pointing to a requirement that the examiner made to remove "if any" from claim 3, and to the fact that the claims require filters to operate. Several claims require filtering based upon product type requested in the RFQ, yet these same claims clearly contemplate filtering without any *buyer* filter conditions.(e.g.; claims 1, 12). Therefore, the "product type" in the RFQ can not possibly be a buyer filter condition. SST's citation to the "if any" language of the specification was only to show that *buyer* filter conditions are optional because some claims operate with less than all three types of filter conditions. Defendants' contentions that all claims require *some* filter conditions and that claim 3 requires all three types are both correct, but irrelevant. [1]

Next, defendants urge that filter conditions should be construed in a consistent manner. Again, correct, but irrelevant. SST never asked this Court "To adopt inconsistent constructions for the term filter conditions". Instead, SST merely correctly pointed out, as discussed more fully below, that the '328 patent clearly treats each of the three *types* of filter conditions differently, because they are different things. Defining a "monkey" differently from a "horse" does not mean that one is asking for inconsistent definitions of the term mammal, merely because horses and monkeys are different mammals.

SST even agrees with defendants that the example of Figure 7 should not be read into the claims, although, as explained below, SST never advocated such a procedure.

In short, defendants say many correct things that simply do not address the fact that the intrinsic record supports the claim construction offered by SST. Where they do actually dispute

---

[1] Claim 1 indicates filtering may be based upon buyer *or* network filter conditions, and claim 12 clearly does not require buyer filter conditions, because its dependant claim 13 adds those. See Section E below.

SST, they offer claim constructions that directly contradict the entire intrinsic record, or which are otherwise contrary to law as further explained below.

### B.        The Disclaimer is Not as Broad as Defendants Argue

In their latest brief, defendants emphasize certain language in the '328 patent specification indicating that no central database of goods, prices, etc. is involved.   Defendants' argument is contrary to well established law.   In *Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc.*, 429 F.3d 1364 (Fed. Cir. 2005), the Federal Circuit upheld the district court's grant of a preliminary injunction:

> Indeed, the problem with Ranbaxy's argument is that it ignores the fact the person of ordinary skill in the art is deemed to have read the claim term in the ***context of the entire patent***. *Phillips v. AWH*, 15 F.3d 1303 (Fed. Cir. 2005).  See also *Sandisk Corp. v. Memorex Prods., Inc*., 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("the court must always read the claims in view of the *full* specification"(emphasis added)).  "[I]t is necessary to consider the specification as a whole, and to read all portions of the written description, if possible, in a manner that renders the patent internally consistent.  *Budde v. Harley-Davidson, Inc*., 250 F. 3d 1369, 1379-80 (Fed. Cir. 2001).

(Bolded emphasis added) *Id.*, at 1373.

The central database system SST disclaimed is described at cols. 1-2 of the '328 patent:

> In such [prior art] systems, a vendor provides its database of goods and/or services to a buyer who ***orders items from the vendor's*** database.  It is analogous to walking into a vendors [sic] store and selecting items from the vendors [sic] available stock.  Another such system is analogous to shopping in a mall.  In this case, a number of (complimentary) vendors combine ***to offer*** their collective inventory to the buyer through individual databases…Each vendor would be required to provide detailed information to the central database about its product lines and would be required to update them daily….

3

It is clear that the two systems being described as prior art and disclaimed are those where the full "offer" comes from the central database and where a buyer actually "orders items from" the central database, as shown below:



The '328 technology replaced the foregoing system with a central database containing "information insufficient to consummate the transaction" and/or wherein "at least part of the quote information is stored at a location remote from said filter means".   As a result, a buyer can not order items from the central database, nor does the central database have all the information it needs to generate an offer.  Instead, it *filters the RFQs and sends them* to the vendors, as shown below:



4

Defendants' argument is even weaker than was the case in *Pfizer, Inc.*   Here, the remainder of the file shows that approximately ten different times, the applicant told the examiner that the novelty of applicant's invention was the elimination of the central database that stores all the information on all the products for sale and can fully consummate the transaction, and the replacement of such a database with the filter that sends the RFQ's to the vendors.  For example:

> The present invention solves the problem by not providing a central database that contains all of the information on all items to be sold.  (Ex. F, p. 5)[2]
>
> Applicant's invention as recited by claim 4 receives the quotes from the vendor terminals, rather then storing all information necessary to generate all of the quotes at the central database; (Ex. D, p. 8)
>
> Additionally, claim 1 requires that the network members are remotely located and that they are communicated with, after the requests are filtered, via a communications channel.  Neither Dworkin nor Shavit as relied upon by the Examiner teach or even remotely suggest such a system…(Ex. F, p.4)

See other cites at SST's Responsive Markman Brief, pp. 17-18.[3]

Further, defendants position is that a central database that "contains information insufficient to consummate the transaction" and that filters and sends the RFQs to vendors is outside the scope of the claim if it stores anything more than filter conditions to select vendors. This flies in the face of the explicit claim language, to which the comments in issue were directed specifically, and therefore must be wrong. *Interactive Gift Express, Inc. v. Compuserve,*

---

[2] Refers to the Kaplan Declaration of December 7, 2005.

[3] Strictly speaking, given that the language upon which defendants rely was directed to the specific claim amendments, there is no disclaimer at all.  The patent owner was explaining the meaning of claim language he was adding to all three independent claims, not disclaiming subject matter covered by that claim language. Thus, the "disclaimer", to the extent there was one,  should be used to interpret the language added in the amendments that were made.

*Inc.*, 256 F.3d 1323 (Fed. Cir. 2001)*; Telemac Cellular Corporation v. Topp Telecom, Inc.*, 247

F.3d 1316 (Fed. Cir. 2001)[4]

Defendants' citation to an out of context incomplete snippet of the '328 patent

specification does not establish the broad disclaimer they seek. This Court should so rule.

## C.    Defendants' Misconstrue the Term Filter Condition

In the event that the Court chooses to simply construe the generic term "filter

conditions", SST urges the Court to correctly construe that term as *conditions that are compared*

*or applied to a specified item(s) of information to determine if the condition is met or not by*

*the item(s) of information.* Simply put, the filtering process described and claimed in the '328

patent is a procedure whereby a specified condition is tested, and it either passes (e.g.; there is a

match) or does not pass. The filter conditions are simply the conditions that are tested.[5]

### 1.    Defendants' Construction Excludes Preferred Embodiments

The network software may set filter conditions that time sequence the vendors or put

them in order by priority. (Ex. A, col. 7; Figures 5 and 6, showing order of queue is rearranged

based upon priority, distance "Calculate new que position for the vendor"). These filters

---

[4] Defendants argue that filter conditions in the central computer are "conditions or limitations that determine which of the network vendors will receive a buyer's request for quotation **and/or which buyers will receive a response from a network member**." Yet, defendants also urge the disclaimer excluded any central database that stores "anything more than the information required to determine which sellers should receive the RFQ.*"* Thus, defendants own definition of filter conditions, while incorrect, provides for the storage of information to select vendors *and additional information to determine how to route the returned quote*. Most importantly, the additional filter conditions that select the buyers to receive the quote are *different* from the conditions used to select vendors. It would make no sense to filter an RFQ so that only vendors located in New York receive it, and then filter the returned quotes so that only quotes from vendors in New York are forwarded to the buyer. The second filter would do nothing.

[5] SST has no objection to defendants' request that the Court construe filter conditions in addition to its construction of the three specific types of filter conditions. The construction of each type is still necessary however, because each type of filter condition qualifies the generic definition by restricting who can set the filter condition and what values it can take.

compare distance or priority of a vendor to stored information and reorder the queue for transmission of the RFQ. *Id.*  They do not determine which vendors get the RFQ, or which buyers get the response.  Accordingly, defendants' proposed construction of filter conditions is incorrect, because it excludes *two* preferred embodiments disclosed in the specification.  *Dow Chemical Company v. Sumitomo Chemical Company, Ltd*,  257 F.3d 1364 (Fed. Cir. 2001)*; Pfizer v. Teva Pharmaceuticals*, 429 F.3d 1364.  (Fed. Cir. 2005); *Hoechst Celanese Corp. v. BP Chem. Ltd*.,  78 F.3d 1575 (Fed. Cir. 1996).

 Figure 2A includes a flowchart showing that filtering consists merely of a comparison of the item being filtered to various conditions to determine if the conditions are met:

 THE QUOTATION SYSTEM PROCESSES THE REQUEST BY SELECTING A CLASS OF VENDORS WHO SELL THE REQUESTED PRODUCTS(S) AND ***MEET THE FILTER REQUIREMENTS OF THE BUYER, VENDOR, AND THE QUOTATION SYSTEM***.

(Emphasis added)

 Notably, the patent examiner interpreted the claim the same way:

 The computer then searches the database to retrieve all products or services, within the selected category, ***having the specifications required by the user***…one of ordinary skill in the art would have been motivated to incorporate ***this filtering*** in the embodiment of Shavit to solve the known problem of allowing users to [sic] order or obtain quotation information on products or services directly…***for a product or service meeting a set of specifications***.

(Emphasis added) (Ex. E, Office Action of December 22, 1997, p. 3).

 Figure 5 also notes that the system tests to determine if the condition is met.  (Do they quote in the buyer currency, etc.)  Thus, filter conditions are ***conditions that are compared or applied to a specified item(s) of information to determine if the condition is met or not by the item(s) of information.***

## 2.     Defendants' Definition Conflicts with the Claims Themselves

7

Every time the term filter conditions is referred to in the claims, it is adjacent to or otherwise joined through dependant claims with **_additional_** language indicating what is done if the filter condition is met.  Some examples, with the additional language bolded here, are as follows:

> means for filtering the network members in said storage means to **_determine which network members are to receive said request for quotation_** based upon filter conditions…" ; (Claim 1)
>
> **_Selecting one or more appropriate vendors to be sent the buyer's request for quotation_** based upon filter conditions…(Claim 3)
>
> means for **_matching said requests with vendor terminals_** which meet predetermined filter conditions..." (Claim 4)

If the filter conditions were defined as defendants suggest, as conditions that "determine which of the network vendors will receive a buyer's request for quotation….," then all of this language in the claims that specifies what action is to be taken when the filter conditions are met would be superfluous.  By defining the filter conditions as the condition that is tested, not the action taken in response to the test, all the language in the claim is meaningful, because the claim then specifies what actions are to be taken when the conditions are met.   Further, the computer instead might reorder the vendors in response to the condition, as described above.  SST submits that filter conditions are not limited to vendor and buyer selection criteria as urged by defendants. Instead, filter conditions are **_conditions that are compared or applied to a specified item(s) of information to determine if the condition is met or not by the item(s) of information_**.

### D.    Defendants' Assertion Concerning Network Filter Conditions is Frivolous

At page 16 of their responsive brief, defendants cite to language at column 7, lines 31-47 of the '328 patent, which describes a vendor defining his filter conditions and sending them to

the central computer for use in the filtering process. Defendants argue that the network software

in the central computer "**uses** that [class] definition [defined and sent by the vendor] to filter all

requests for quotation routed to the vendor". (Emphasis added). Relying upon the word "uses",

defendants then urge that the Court should construe "network filter conditions" to include the

"vendor defined conditions" merely because the network "uses" those conditions.

    Here is the language defendants cite:

> When a vendor wants to receive requests for quotation over the network,
> the **vendor notifies** the network of the class of goods or services in which
> the vendor deals (a 'request for quotation class definition".) This can be
> communicated by voice, telephone, fax, et cetera, or by use of
> programming provided for that purpose by the network. The request for
> quotation class definition is transmitted to the network and the network
> uses that definition to filter all requests for quotation routed to the
> vendor, i.e.; to the class defined by the buyer of which the vendor is a
> member. In this way, the vendor receives only those requests for
> quotation which conform to the **vendor's request for quotation
> definition**.

(Emphasis added) Ex. A, col. 7, lines 31-47.

    Defendants' assertion is absurd. Filter conditions specified by the vendor do not become

network filter conditions merely because the central computer filters based upon the vendor filter

conditions it receives from the vendor. The '328 patent distinguishes the different types by 1)

who **specifies** them; (Col. 8, lines 7-10), and 2) what they can specify (col. 7, lines 29-47). The

'328 patent calls for filter conditions "set by the buyer and/or the seller and/or the network

operator". (Ex. A, at col. 2, lines 46-47; "filter conditions, if any, set by the buyer, vendors and

the network software;" *Id*., at col. 2, lines 64-65; "class description filters which **can be

specified** by the buyer, the network computer, and the vendors"; (Emphasis added)claims 1, 3

("[F]ilter conditions set by the buyer, vendor, and the network software)). All three types are

used to do the filtering by the software in the central computer (Ex. A, Figures 5, 6). That does not make them all the same.

In fact, the language immediately *following* the above quoted language discusses network filter conditions: "The number of vendors within a class to receive a request for quotation may be very large. To keep the process manageable, network software may be arranged to limit the number of vendors to receive a request for quotation." The filter conditions set by the network are separate filter conditions, *specified* by the network, to implement priorities, contracts with private parties, time sequencing, capping the number of vendors to receive the RFQ, or the like. In every single case discussed in the '328 patent, they are filter conditions *separate from* those specified by either the vendor or the buyer that *further* limit or skew the transmission of RFQs or responses. (Ex. A, col. 7, and col. 8, lines 7-10). Defendants *have cited no intrinsic evidence to the contrary*. The court should therefore adopt SST's construction of network filter conditions. [6]

### E.    SST Never Argued That Examples In the Specification Limit the Claims

Defendants want the Court to construe the filter conditions set by the buyer in such a manner that it includes the product specified in the RFQ. Defendants' urge that the examples of buyer filter conditions cited by SST that show otherwise should not be read into the claims. This demonstrates defendants' profound confusion concerning both Federal Circuit case law and

---

[6] Defendants' prior art is a system wherein the network sends to the vendors all RFQ's that the vendors request. There are no network filter conditions, and there is no network filtering. In fact, several witnesses testified to the effect that the in that prior art system, great pains and expense were taken to ensure that the network did not add any filter conditions, so that that all vendors received all RFQs that met the vendor's filter conditions. Knowing their prior art defense is thus no defense at all, defendants are trying to misconstrue network filter conditions to be whatever the vendor specifies.

SST's position in this regard.  SST is not asking the Court to limit the claim to the example, but is simply noting that two terms that are used throughout to designate two different things are not one and the same.

In *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258 (Fed. Cir. 2001) the claim in issue called for a communications system that could operate in different "modes".  The patent owner argued that the claim covered systems that operated at different "rates", because these systems had at least two different "modes", slow and fast.  The Court noted that claim term "different modes" ***was broad enough to encompass different rates***, under its ordinary meaning.  Nonetheless, the Federal Circuit also held that the term "mode" did ***not*** include "rate" because the patent specification used the terms to refer to different concepts:

> In the Summary of the Invention, the specification states that it is an object of the invention to operate in a plurality of different modes and at any one of a plurality of different bit rates…Still another object of the invention is to simply and easily vary the bit rates of the upstream and downstream channels, or the modes of the transceivers….In short, there is no question that the 786 patent specification uses the terms "mode" and "rate" to refer to two different and distinct concepts.

*Id.,* at 1270-1272.

A similar result was reached by the Federal Circuit in *Legget & Platt, Incorporated v. Hickory Springs Manufacturing Company,* 285 F.3d 1353 (Fed. Cir. 2002), where the Court construed "support wires" as excluding certain other wires because "[T]he specification distinguishes support wires from other types of wire."

So too here.  Figures 5 and 7 of the '328 patent specifies that a buyer sends his product identification request and ***additionally*** sends his filter conditions. Similarly, the rest of the '328 patent specification and claims also treat the filter conditions from the buyer as separate from the product specified by the RFQ.   The claims themselves clearly distinguish between the product or service in the RFQ, and the buyer filter conditions.  Consider claim 12:

A method of purchasing goods or services over a data network comprising the steps of:
communicating, over said data network, to a filter means, at least one request for quotation from a potential buyer of said goods or services; filtering, at said filter means, the at least one request in order to ascertain a set of sellers potentially capable of supplying said goods or services; and obtaining, from at least one of said potential sellers, over a data network, quotes to supply said goods or service and forwarding said quotes to said potential buyer, wherein at least part of the quote information is stored at a location remote from said filter means.

But claim 13 reads as follows:

The method of claim 12 *further comprising* the step of accepting filtering conditions from said potential buyer and utilizing said filtering conditions in said step of filtering to determine a *subset* of potentially capable sellers. (Emphasis added).

Claim 12 filters the RFQ and obtains quotes from sellers that can provide the product specified in the RFQ.   If the goods or services requested in the RFQ are the filter conditions set by the buyer, as defendants argue, then claim 13 is completely meaningless.  The Federal Circuit had before it identical facts in *Comark Commnications, Inc. v. Harris Corp*., 156 F.3d 1182 (Fed. Cir. 1998):

To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017 (Fed.Cir.1987).  Claim 2 incorporates claim 1 by reference and further defines the "video delay circuit" element with the following additional limitation:  "wherein the video delay circuit provides a delay so that there is coincidence of the modified aural signal with the IF modulated signal at the adder circuit."   To interpret the term "video delay circuit" to mean a video delay circuit that compensates for the delay introduced by the IF vision modulator, as Harris suggests, would render claim 2 completely superfluous and redundant of claim 1.

*Id.*, at 1187.  See also,  *3M Innovative Properties Company v. Avery Dennison Corporation* 350 F.3d 1365 (Fed. Cir. 2004) (Reversing trial court's claim construction, holding "The limitation of serial embossing clearly present in method claim 6 cannot be read into claim

1"); *Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988)("The recitation in the dependent claims that the foam be formed from a plastisol…implies that the independent claims are not so limited").   Defendants, while improperly criticizing SST for attempting to read limitations into the claims, are themselves requesting that this Court read the limitation of claim 13, which specifies that the filtering is based upon buyer filter conditions, into claim 12.

In short, SST is not, for example, arguing that the buyer filter conditions must be the specific examples shown in Figure 7 of the specification.  Figure 7, and every other part of the '328 patent specification **and claims**, refers to buyer filter conditions as a separate thing from product identification information contained in the RFQ.   Therefore, the two are different, which is why defendants cite no intrinsic evidence to the contrary.  *Bell Atlantic*, supra. [7]

### F.    Defendants' Remaining Arguments Are Without Merit

At pages 15-25 of its Opening *Markman* Brief of December 7, 2005, SST showed in specific detail, with citations, how the specification, the drawings, the claims and the prosecution history support SST's constructions of the three types of filter conditions.   Defendants' response at pages 5-12 their brief does not withstand scrutiny.

First, defendants argue that SST misunderstood defendants.  This is not true.  Defendants are in fact urging that a buyer who simply specifies a standard product in which he is interested, and nothing more, has specified a buyer filter condition.   SST believes the patent applicant was clear that such a system would not infringe, for example, claim 3 of the '328 patent.

Second, defendants argue that the product code is a vendor filter condition, and that it is up to plaintiff to explain why the product code should not also be considered a buyer filter

---

[7] Footnote 3 of defendants' Responsive *Markman* Brief correctly notes that the grammar of SST's proposed construction of buyer filter conditions may have been somewhat less than perfect.  Without conceding that the original statement was incorrect, SST agrees that defendants' footnote 3 statement of SST's position is clearer and is what SST is asserting.

condition.  (Defendants responsive brief, p. 6).   The answer is simple.  The '328 patent says so. It says so at Figure 7, where it lists the buyer filter conditions as a different thing from the product identification.   It says so at column 7, where it defines both buyer filter conditions and vendor filter conditions – differently.   It says so in dependant claim 13, which adds a limitation that buyer filter conditions are used to filter the RFQ, meaning claim 12 does not require this.  It says so in the file history, where the patent examiner referred to two different things: "the product or service category selected" and, separately, "having the specifications required by the user". And it says so in Figures 5 and 6, where it selects vendors that sell the product type **before even applying** the buyer's filter conditions to generate "qualifying" vendors.[8]

Indeed, under defendants' view, it is clear that the patent owner would be given an inequitable advantage.  Claim 3 requires that filtering be based upon filter conditions set by the buyer and the vendor.  Defendants would claim that the filtering is based upon **vendor** filter conditions when the RFQ is sent to all vendors that have specified they sell the product requested in the RFQ, and that the filtering is also based upon **buyer** filter conditions because the product specified in the RFQ (i.e.; the buyer filter condition) is used to determine to which vendors to

---

[8] Moreover, the fact that a product code is a vendor filter condition is precisely **why** it is not a buyer filter condition.  Most cases involve the matching of corresponding buyer and vendor filter conditions.  For example, a buyer filter condition limiting the RFQ to vendors that can do business in New Jersey might be matched with a vendor filter condition indicating that the vendor only wants to receive RFQs that relate to transactions within the continental United States.  Two different filter conditions are involved, one from the buyer, one from the vendor. When the class defined by one falls within the class defined by the other one, there is a match. (Ex. A Fig. 7, See also, col. 7, lines 37-41). However, if the vendors specify no more than that they wish to receive all RFQs for a standard product, and the buyer merely specifies that product type, there is only one filter condition, the product code, which the patent owner designated a vendor filter condition.

send the RFQ. SST would clearly not be entitled to establish infringement by claiming the same thing is really two different things.[9]

Third, defendants fuss about SST adding reference numerals to the figures. Defendants perhaps would prefer SST to have described Figure 5 by referring to "the box that says VENDOR FOUND inside it" instead of labeling it "502" and citing "box 502".

Fourth, defendants argue that the language in the '328 patent distinguishing between buyer filter conditions and product identification codes as two different things is not in the claims. Claims 12 and 13 show otherwise, but regardless, *Bell Atlantic* and *Legget & Platt* similarly involved two phrases being treated throughout the ***specification*** as different, not the claims.

Finally, defendants argue that the product code is in fact inserted by the buyer so it literally meets the language of a condition set by the buyer. In *Bell Atlantic Network Services, Inc.* the Federal Circuit specifically noted that the ordinary meaning of the phrase "a plurality of different modes" could in fact be broad enough to encompass a plurality of different transmission rates. However, because the patent owner had used mode and rate as two different concepts, the term mode was deemed to not include the term rate. In *Microsoft Corporation v. Multi-Tech Systems, Inc.*, 357 F.3d 1340 (Fed. Cir. 2004), the Court limited the claim to cover transmission over telephone lines only, despite holding explicitly that the claim "[M]akes no reference to a telephone line and standing alone, does not exclude data transmission over a packet switched network." Countless other examples exist of situations wherein one of many embodiments literally covered by the claims was deemed to be disclaimed during prosecution or in the

_____

[9] The problem with defendants' position is further emphasized by the fact that they also claim the same system implements network filter conditions, since the product codes sent by the vendor are used to set filters at the central computer. (Defendants' Responsive Brief, p. 16). In other words, according to defendants, all three types of filter conditions are the same.

specification.   Defendants themselves are asking for this Court to apply a disclaimer to limit the claims further than what their literal language states.

SST does not deny that the product code is something put into the RFQ by the buyer. However, the specification, file history, claims 12 and 13, the drawings, and all the other intrinsic evidence cited make clear that the patent owner did not consider this limitation met by a buyer who specifies only a product code and no more, and thus, such a system would not infringe the relevant claims.  In short, a clear disavowal of claim scope occurred that precludes the claim from covering what the literal language would otherwise cover.  The patent owner can not claim that the mere entry of a standard product type by the buyer meets the limitation of "filter condition set by the buyer."   *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)*; Connectel LLC v. ITXC Incorporated*, 2004 WL 540444 (E.D. Pa.)(Copy submitted with SST's Responsive *Markman* Brief).  (Holding phone number embedded in a data file can not meet claim limitation "property of the data file" despite literal language of claim).


**III.    CONCLUSION**

Defendants have cited no intrinsic evidence to challenge SST's claim constructions.  The Court should therefore adopt them in their entirety.


Respectfully submitted,

KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone (732) 634-7634
Facsimile (732) 634-6887


Dated: December 30, 2005        By:  _____s/Jeffrey I. Kaplan/_____

Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (MG 7608 *pro hac vice*)
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on this 30st day of December, 2005, the undersigned has served

a true and correct copy of the foregoing **PLAINTIFF SST'S REPLY MARKMAN BRIEF** to

the following counsel for Defendants Via Electronic Mail:


Elvin Esteves, Esq.
**GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE**
One Riverfront Plaza
Newark, NJ  07102
Telephone (973) 596-4500
eesteves@gibbonslaw.com


- and -

Holmes J. Hawkins, III, Esq.
**KING & SPALDING, LLP**
191 Peachtree Street
Atlanta, GA 30303
Telephone (404) 572-4600
hhawkins@kslaw.com



DATED: December 30, 2005          By:      s/Jeffrey I. Kaplan/