Kevin J. McKenna, Esq.
Elvin Esteves, Esq.
**GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, NJ 07102-5497
Telephone (973) 596-4500
Facsimile (973) 596-0545
*Attorneys for LendingTree, LLC,
IAC/InterActiveCorp, and
 ServiceMagic, Inc*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| Source Search Technologies, LLC, | |
| Plaintiff, | Civil Action No. 2:04-cv-4420 (DRD) |
| -- against -- | |
|  | *Document Filed Electronically* |
| LendingTree, LLC, IAC/InterActiveCorp, and ServiceMagic, Inc., | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR PARTIAL RECONSIDERATION**

The Court should deny Plaintiff Source Search Technologies, LLC's ("SST") motion for partial reconsideration of this Court's October 16, 2006 Markman Opinion ("Opinion"). The Court properly construed the term "goods and services" in United States Patent No. 5,758,328 ("the '328 patent) to mean "standardized articles of trade and performances of work for another."

(Opinion, at 28-29). Ample evidence—including the explicit disclaimer in the patent's specification that "the goods and services <u>must</u> be standard items"—supports the Court's construction. Accordingly, there is no need to "reconsider" anything.

### I. THE SPECIFICATION EXPLICITLY DISCLAIMS A BROAD READING OF "GOODS AND SERVICES" AND INTENTIONALLY NARROWS THAT TERM TO "STANDARD ITEMS."

SST contends that the term "goods and services" means <u>any</u> goods and services, even though it expressly disclaimed such a broad construction in the specification of the '328 patent. SST's proposed construction violates the Federal Circuit's directive that "claims 'must be read in view of the specification, of which they are a part.'" <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc), <u>cert. denied</u>, 126 S. Ct. 1332 (2006) (citing <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), <u>aff'd</u>, 517 U.S. 370 (1996)). Indeed, in most cases "the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1360 (Fed. Cir. 2004), <u>cert. dismissed</u>, 126 S. Ct. 2921 (2006).

Though words in a claim may appear to have a broad extrinsic meaning outside the context of the patent itself, an inventor may intentionally disclaim or disavow a broad reading of the claim term in the specification. See <u>Phillips</u>, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess."). "In that instance . . . , the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." <u>Id.</u>

Here, the '328 patent explicitly disclaims a broad reading of the term "goods and services" as "<u>any</u> goods and services." The specification states:

> There is no central pricing database to limit the number of buyers and vendors of goods and services or to limit the number of goods and services which can be processed. However the goods and services must be standard items to ensure that there is no confusion as to what buyers are requesting and what sellers are offering to buyers.

'328 Patent, col. 3, ll. 60-65. Indeed, it is difficult to imagine a clearer disclaimer and limitation than the statement that "the goods and services <u>must</u> be standard items . . . ." Id. (emphasis added). The mandatory, categorical nature of the term "must" clearly establishes that all of the goods and services referred to in and comprehended by the patent are "standard" items. See BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC, 303 F.3d 1332, 1340 (Fed. Cir. 2002) (distinguishing mandatory language such as "must" from permissive language such as "may"); cf. Prima Tek II, LLC v. Poly-pap, S.A.R.L., 318 F.3d 1143, 1150 (Fed. Cir. 2003) ("The written description only states that the floral holding material 'may be' (not must be) the type of material commonly referred to in the art as floral foam or soil."); Mantech Envtl. Corp. v. Hudson Envtl. Serv., Inc., 152 F.3d 1368, 1373 (Fed. Cir. 1998) ("Mantech emphasizes the use of the word 'can' in the specification instead of 'must' or 'shall' to indicate that each function is possible but is not required."); cf. Kim v. ConAgra Foods, Inc., 2006 U.S. App. LEXIS 23810, at *11 (Fed. Cir. Sept. 20, 2006) ("The specification does not require that the potassium bromate replacer <u>must</u> necessarily be a slow acting oxidant . . . .") (emphasis added). The '328 patent does not say that the goods and services "may" or "could" be standard; it says the goods and services "must" be standard. Thus, SST's argument that "goods and services" should be construed to the outer limits of that term cannot be reconciled with the plain language of the intentional disclaimer in the specification.

**II.    SST'S ARGUMENT IS BASED ON THE SPECIFICATION'S DESCRIPTION OF TEXTUAL DESCRIPTORS AND IDENTIFIERS, NOT ITS DESCRIPTION OF GOODS AND SERVICES.**

In an effort to avoid its clear disavowal of "<u>any</u> goods and services," SST argues that its disclaimer is mitigated by the following language in the specification:

> Standardization of product or service descriptions is essential to avoid confusion unless a more text oriented specification is appropriate to the product or service type.

'328 Patent, col. 4, ll. 9-12.  However, SST's argument ignores the clear distinction made in this passage and the specification as a whole between what the covered "goods and services" <u>must be</u> and how they <u>may be described</u>.  As discussed above, the specification expressly provides that the "goods and services <u>must</u> be standard items." '328 Patent, col. 3, l. 63 (emphasis added); <u>see also</u> '328 Patent, col. 4, ll. 4-8 ("The programming . . . would include information . . . to identify <u>standard</u> goods or services . . . .") (emphasis added).  In contrast, the sentence relied on by SST refers to "[s]tandardization of product or service <u>descriptions</u>. . . ." (emphasis added).  Though both phrases use a common root word ("standard" versus "standardization"), they each modify different elements of the invention.  In the first instance, "standard" is used to identify what types of "goods and services" are required for the invention.  In the second instance, "standardization" is used to specify how those standard goods and services may be <u>described</u>.  Only in the latter instance does the patent contemplate something other than standardization.  '328 Patent, col. 4, ll. 6-12 ("Standardization of product or service descriptions is essential….unless a more text oriented specification is appropriate to the product or service type.").[1]

---

[1] Since the specification acknowledges two alternative methods the invention may use to <u>describe</u> the goods or services requested -- either (1) a standardized format or (2) a text-oriented approach – and if, as SST suggests, the term "standard" as used in the specification in connection with "goods and services" is merely a reference to the optional "standardization" of product or service <u>descriptions</u>, then it would also be necessary to read the "<u>standard</u> items"

- 4 -

SST demonstrates the practical difference between the application of the modifier "standard" to the product descriptions and its application to the underlying products in the example it provides on pages 3-4 of its brief. Using an example from the patent itself (*see* SST's Motion, Ex. A, at 45), SST observes that a resistor may be <u>described</u> with (1) a standard description known to people in the art (<u>e.g.</u>, a "Type J" resistor) or (2) a text-oriented description whereby the user lists the specifications of the product he or she desires (<u>e.g.</u>, resistors with 10K resistance, 400-volt maximum voltage, 10 Amp maximum current, 0.01% tolerance, etc.). In either case, however, the underlying product—a Type J resistor—is still a "standard good." Indeed, it is the very fact that the underlying products are "standard" that gives users of the invention the option to use non-standard text-oriented descriptions. If the products themselves were not standard, the use of text-oriented descriptions surely would give rise to confusion as to what counterparties were buying and selling. Thus, far from supporting its proposed construction, SST's reliance on the sentence in the patent relating to product descriptions only confirms that the underlying goods and services "must" be standard items. Indeed, nothing in the '328 patent remotely suggests that the invention may cover non-standard goods and services. While the patent gives examples of non-standard product descriptions, it never once gives an example of a non-standard good or service.

### III.  CONCLUSION

For the reasons stated herein and in Defendants' Opening and Reply Briefs on Claim Construction, the Court's construction of "goods and services" as "standardized articles of trade

---

language in light of the alternative, text oriented method of description. In other words, one would have to read the patent to say the "goods and services must be [text oriented] items." This plainly would make no sense. While the standard goods and services required by the patent may be capable of having a "text oriented" description, they are not themselves "text oriented."

and performances of work for another"[2] is correct, and SST's motion for partial reconsideration should be denied.

                              Respectfully submitted,

                              GIBBONS, DEL DEO, DOLAN,
                              GRIFFINGER & VECCHIONE
                              A Professional Corporation

                              By: s/Elvin Esteves
                              Kevin J. McKenna, Esq.
                              Elvin Esteves, Esq.
                              One Riverfront Plaza
                              Newark, NJ 07102-5497
                              Telephone (973) 596-4500
                              Facsimile (973) 596-0545

                              *Attorneys for LendingTree, LLC,*
Dated: October 30, 2006          *IAC/InterActiveCorp, and ServiceMagic, Inc.*

OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404)572-4600
Fax: (404)572-5145

---

[2] Defendants' construction of the individual terms "goods" and "services" within the context of "standard goods and services" derives from the ordinary, commonly understood meaning of those terms. See RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 822, 1750 (2d ed. 2001) (defining "goods" as "articles of trade; wares; merchandise" and defining "services" as "the performace of any duties or work for another").