## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Source Search Technologies, LLC, | ) |
| | ) **DOCUMENT FILED ELECTRONICALLY** |
| Plaintiff, | ) |
| | ) |
| -- against -- | ) Civil Action No. 2:04-cv-4420 (DRD) (ES) |
| | ) |
| LendingTree, LLC, | ) **(ORAL ARGUMENT REQUESTED)** |
| IAC/InterActiveCorp, and | ) |
| ServiceMagic, Inc., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT SERVICEMAGIC, INC.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

GIBBONS PC
Kevin J. McKenna (KJM 7530)
Elvin Esteves (EE 2216)
One Gateway Center
Newark, New Jersey 07102-5497
Tel.:  (973) 596-4500
Fax:  (973) 596-0545

OF COUNSEL:
Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax:  (404) 572-5134

Attorneys for
SERVICEMAGIC, INC.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

PRELIMINARY STATEMENT ................................................................... 3

      A.   The '328 Patent ................................................................... 3

      B.   ServiceMagic's Website ................................................... 5

PROCEDURAL HISTORY ............................................................................ 7

ARGUMENT .................................................................................................. 8

    I.    APPLICABLE LEGAL STANDARDS ................................... 8

      A.   Summary Judgment in Patent Cases ............................... 8

      B.   Literal Infringement ......................................................... 9

      C.   Infringement under the Doctrine of
           Equivalents ..................................................................... 10

    II.   SERVICEMAGIC DOES NOT INFRINGE THE '328
         PATENT BECAUSE ITS WEBSITE DOES NOT
         INVOLVE STANDARDIZED GOODS OR SERVICES ............... 10

      A.   ServiceMagic Does Not Literally Infringe
           Claims 1-3 ..................................................................... 11

      B.   ServiceMagic Does Not Infringe Claims 1-3
           under the Doctrine of Equivalents ............................... 14

    III.  SERVICEMAGIC DOES NOT INFRINGE THE '328
         PATENT BECAUSE ITS WEBSITE DOES NOT
         PROCESS OR  OTHERWISE INVOLVE "REQUESTS
         FOR QUOTATION" ..................................................................... 15

      A.   ServiceMagic Does Not Literally Infringe
           Claims 1-3 ..................................................................... 16

      B.   ServiceMagic Does Not Infringe Claims 1-3
           under  the Doctrine of Equivalents ............................... 17

CONCLUSION .............................................................................................. 19

APPENDIX A:  ASSERTED CLAIMS OF THE '328 PATENT ....................... A1

#1170693 v1
105556-53217

# TABLE OF AUTHORITIES

## CASES

Bai v. L & L Wings, Inc.,
  160 F.3d 1350 (Fed. Cir. 1998) ......................................................... 9

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
  535 U.S. 722 (2002) ..................................................................... 10

Hoganas AB v. Dresser Indus., Inc.,
  9 F.3d 948 (Fed. Cir. 1993) .......................................................... 15

Hormone Research Found., Inc. v. Genentech, Inc.,
  904 F.2d 1558 (Fed. Cir. 1990) ..................................................... 18

In re Gabapentin Patent Litig.,
  393 F. Supp. 2d 278 (D.N.J. 2005) ................................................. 9

Irdeto Access, Inc. v. Echostar Satellite Corp.,
  383 F.3d 1295 (Fed. Cir. 2004) ...................................................... 9

Novartis Corp. v. Ben Venue Labs., Inc.,
  271 F.3d 1043 (Fed. Cir. 2001) ...................................................... 8

Perkin-Elmer Corp. v. Westinghouse Elec. Corp.,
  822 F.2d 1528 (Fed. Cir. 1987) ..................................................... 15

Research Plastics, Inc. v. Federal Packaging Corp.,
  421 F.3d 1290 (Fed. Cir. 2005) ...................................................... 9

Sage Prods., Inc. v. Devon Indus., Inc.,
  126 F.3d 1420 (Fed. Cir. 1997) ..................................................... 10

Southwall Techs., Inc. v. Cardinal IG Co.,
  54 F.3d 1570 (Fed. Cir. 1995) ............................................... 9-10, 18

Tandon Corp. v. United States Int'l Trade Comm'n,
  831 F.2d 1017 (Fed. Cir. 1987) ................................................. 17-18

Wahpeton Canvas Co. v. Frontier, Inc.,
  870 F.2d 1546 (Fed. Cir. 1989) ..................................................... 14

#1170693 v1
105556-53217

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
    520 U.S. 17 (1997) .......................................................................... 10

#1170693 v1
105556-53217

## PRELIMINARY STATEMENT

The undisputable facts demonstrate that ServiceMagic, Inc. does not infringe U.S. Patent No. 5,758,328 ("the '328 patent"). Each of the asserted claims of the '328 patent discloses a computerized quotation system that processes *requests for quotation* for *standardized* goods and services between buyers and sellers. In contrast, ServiceMagic's website provides an online referral system that allows homeowners to identify potential contractors for custom, site-specific home repair, maintenance, and improvement projects. Accordingly, ServiceMagic's website does not satisfy at least two distinct limitations of the '328 patent: (1) it does not involve standardized goods and services, and (2) it does not process or otherwise involve requests for quotation.

The '328 patent does not encompass the purchase and sale of every possible good or service. Rather, the scope of the patent, as defined by this Court, is limited to "standardized articles of trade and performances of work for another." (11/13/2006 Op. at 3-5, D.I. 82.) The goods and services covered by the patent must be standardized items in order to avoid "confusion as to what buyers are requesting and what sellers are offering to buyers." (Id. (quoting '328 patent at col. 3, ll. 63-65).) While (to use the patent's own example) buyers and sellers can easily agree to purchase and sell "Type J Resistors" and other commoditized goods and services over an electronic exchange, they cannot enter sight unseen into

#1170693 v1
105556-53217

contracts for home repair and improvement projects, such as renovating a kitchen. The scope and nature—and therefore, the cost—of such projects necessarily depend upon a variety of factors, including the subjective preferences of the homeowner, the condition of the home, and the complexity of the work to be performed. Thus, the services facilitated by ServiceMagic's website are anything but standardized.

In part because the services sought by homeowners are non-standardized, ServiceMagic's website does not process or otherwise involve "requests for quotation," which the Court has defined as "request[s] for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." (10/16/2006 Op. at 16, D.I. 75.) Homeowners who use ServiceMagic's website seek referrals—not quotations—and ServiceMagic does not solicit or otherwise receive sufficient information from the homeowner about a given home project to enable contractors to provide quotations.

Because the material facts regarding the operation of ServiceMagic's website are not in dispute, the issue of non-infringement is ripe for summary adjudication. The Court should grant this motion because ServiceMagic's website

- 2 -

does not meet at least two limitations of each of the asserted claims of the '328 patent and therefore does not infringe that patent.[1]

## FACTUAL BACKGROUND

### A.    The '328 Patent

Plaintiff Source Search Technologies, Inc. ("SST") is a shell company whose sole asset is the '328 patent, which issued on May 26, 1998. (See Ex. A ['328 patent]; Ex. B [06/15/2005 Giovannoli Dep. Tr.] at 75:12-24, 76:12-14.)[2] SST was formed in 2004 for the sole purpose of prosecuting this action. (See Ex. B at 69:8-19.) Neither SST nor the inventor of the '328 patent has ever practiced the patent. (See Ex. B at 94:19-97:3.)

The '328 patent generally relates to a "computerized quotation system" that processes *requests for quotation* for *standardized* goods and services between buyers and sellers. (See Ex. A at Col. 3, ll. 55-65.) SST accuses ServiceMagic of infringing claims 1 through 3 only. Independent claim 1 discloses "[a] computerized system … for processing *requests for quotation* for *goods and services*." (Id. at Col. 8, ll. 22-45 (emphasis added).) Claim 2 depends from claim

---

[1]    By moving for summary judgment on these two grounds, ServiceMagic does not waive its right to assert any additional non-infringement arguments or its invalidity defenses.

[2]    The exhibits cited herein are attached to the Declaration of Elvin Esteves, filed contemporaneously herewith.

#1170693 v1
105556-53217

1.  (See id. at Col. 8, ll. 46-48.)  Independent claim 3 discloses "[a] method for processing *requests for quotation* for *goods and/or services.*"  (Id. at Col. 8, l. 49 - Col. 9, l. 2 (emphasis added).)  Thus, each of the asserted claims contains both the "request for quotation" and "goods and services" limitations.[3]

In its claim construction orders, the Court defined these terms as follows:

| Claim Term | Court's Definition |
|---|---|
| "goods and services" | "standardized articles of trade and performances of work for another" (10/16/2006 Op. at 28, D.I. 75; 11/13/2006 Op. at 5, D.I. 82) |
| "request for quotation" | "a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance" (10/16/2006 Op. at 16, D.I. 75) |

Using the system described in the patent, a buyer can submit a request for quotation for standardized goods or services.  (See Ex. A at Col. 3, ll. 42-47.)  The system receives the request for quotation from the buyer, identifies which prospective sellers should receive the request for quotation based upon certain filter conditions, and transmits the request for quotation to the identified prospective sellers.  (See id. at Col. 2, ll. 52-67.)  Each seller receiving the request for quotation may respond with a quotation for the standardized goods or services specified in the request for quotation.  (See id. at Col. 3, ll. 1-4.)

---

[3]     The full text of claims 1 through 3 is set forth in Appendix A hereto.

#1170693 v1
105556-53217

**B.    ServiceMagic's Website**

ServiceMagic was founded in December 1998 to provide homeowners with an easier way to find prescreened contractors to perform home repair or improvement projects.  (See Declaration of James Andrew Zurcher ("Zurcher Decl."), filed contemporaneously herewith, ¶ 2.)  Traditionally, homeowners searching for a contractor used printed directories like the Yellow Pages.  These resources were limited, providing no information about whether the contractor was actually available to perform the job, whether the contractor was qualified to perform the job, or how the contractor compared to others.

In October 1999, ServiceMagic sought to address these deficiencies by launching a website (www.servicemagic.com) that provides homeowners with referrals for local, prescreened contractors for a wide variety of home project needs, ranging from repairs and maintenance to complete remodeling projects.  (Id. at ¶ 3.)  The website also provides residential contractors with potential leads (i.e., names and contact information) of homeowners in their geographic area who have indicated a need for home repair, maintenance, or improvement services.  (Id.; see also Ex. C [Zurcher Dep. Tr.] at 28:13-25.)  These contractors pay ServiceMagic a referral fee for this service; the service is free to homeowners.  (Zurcher Decl. ¶ 3.)

To use the ServiceMagic website, a homeowner must complete an online form that asks for his or her name, geographic location, and basic information

- 5 -

#1170693 v1
105556-53217

about the desired home project. (Id. at ¶ 4; see also Ex. C at 10:21-12:3.) A homeowner can seek contractor referrals for a variety of different projects, such as a home addition or remodeling project, or for roofing, carpet, or hardwood flooring installation. (Zurcher Decl. ¶ 4; Ex. C at 11:11-14; Ex. D [SST 012570-571] (listing the types of home projects for which a homeowner can seek a contractor referral).) Depending on the desired project type, the form prompts the homeowner to provide general information about the project, including things such as the square footage of the home, the status of the project (i.e., whether the homeowner is ready to hire or simply in the planning and budgeting stage), and the timeframe within which the consumer desires the project to be completed. (Zurcher Decl. ¶ 4; Ex. C at 11:15-24; Ex. E [SST 012574, SST 012579-581] (ServiceMagic form for carpet installation).)

After the homeowner enters this information, the website sends it to certain contractors who have indicated an interest in receiving leads for the specified project type and geographic area. (Zurcher Decl. ¶ 5.) The contractors can then contact the homeowner directly to discuss, and obtain additional information relating to, the specified home project. (Id.) The ServiceMagic website also sends the homeowner information relating to up to four local contractors who may be

- 6 -

interested in working with the homeowner on the project.[4]  (Id. at ¶ 6; Ex. C at 23:9-16.)  This information may include a contractor's profile and contact information, previous customers' ratings and reviews, and a link to the contractor's website.  (Zurcher Decl. ¶ 6; Ex. F [12/14/2006 email from Carpet Network to J. Kaplan] at SST 012964-965.)

After providing this information, ServiceMagic's website plays no further role in referring homeowners to contractors.  (Zurcher Decl. ¶ 7.)  The homeowner is free to contact whichever contractors he or she is interested in, but is under no obligation to do so.  (Id.)  Likewise, the contractors may, but need not, contact the homeowner.  (Id.)

## PROCEDURAL HISTORY

SST filed this action on September 10, 2004 against LendingTree, LLC and LendingTree's parent company, IAC/InterActiveCorp, alleging infringement of the '328 patent.  On October 15, 2004, shortly after IAC acquired ServiceMagic, SST filed an Amended Complaint and joined ServiceMagic as a defendant.  Following extensive briefing, the Court issued a claim construction opinion and order on October 16, 2006.  (See 10/16/2006 Op., D.I. 75.)  On November 13, 2006, this Court reaffirmed its construction of one of the disputed claim terms ("goods and

---

[4]    If ServiceMagic is not able to match the homeowner with any contractors, the website displays a directory of local contractors obtained from a third party source.  (Zurcher Decl. ¶ 6.)

- 7 -

services") upon SST's motion for reconsideration.  (See 11/13/2006 Op., D.I. 82-83.)  Fact discovery is closed and the parties have exchanged initial expert reports relating to infringement, damages, and invalidity.

**ARGUMENT**

I.    **APPLICABLE LEGAL STANDARDS**

   A.    **Summary Judgment in Patent Cases**

   Summary judgment is appropriate in a patent infringement case where no reasonable jury could conclude, based on the record, that the accused device infringes the patent.  "The summary judgment movant … has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact."  Novartis Corp. v. Ben Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Because the patentee bears the burden of proving infringement, "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case."  Id.  Once the movant has made this showing, the burden shifts to the nonmovant to designate specific facts showing that there is a genuine issue for trial.  Id. at 1046.

#1170693 v1
105556-53217

**B.    Literal Infringement**

Determining literal infringement is a two-step process.  See <u>Southwall</u>

<u>Techs., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1575 (Fed. Cir. 1995); <u>In re</u>

<u>Gabapentin Patent Litig.</u>, 393 F. Supp. 2d 278, 287 (D.N.J. 2005).  First, the court

must determine the patent claim's acquired meaning and scope.  See <u>Southwall</u>, 54

F.3d at 1575; <u>Gabapentin</u>, 393 F. Supp. 2d at 287.  Second, the claim as construed

must be compared to the accused product to ascertain whether it "reads" on the

accused product.  See <u>Southwall</u>, 54 F.3d at 1575; <u>Gabapentin</u>, 393 F. Supp. 2d at

287.

"To establish literal infringement, every limitation set forth in a claim must

be found in an accused product, exactly."  <u>Southwall</u>, 54 F.3d at 1575; <u>Gabapentin</u>,

393 F. Supp. 2d at 287.  "The absence of *any* limitation of the asserted claim

defeats literal infringement."  <u>Research Plastics, Inc. v. Federal Packaging Corp.</u>,

421 F.3d 1290, 1297 (Fed. Cir. 2005) (emphasis added).  Summary judgment of no

literal infringement is proper when no reasonable jury could find that every

limitation recited in the properly construed claim is found in the accused device.

See <u>Irdeto Access, Inc. v. Echostar Satellite Corp.</u>, 383 F.3d 1295, 1299 (Fed. Cir.

2004); <u>Bai v. L & L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

#1170693 v1
105556-53217

### C.    Infringement under the Doctrine of Equivalents

The doctrine of equivalents allows a patentee to claim insubstantial alterations not expressly captured in drafting the original patent claim.  See <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 732-33 (2002); <u>Southwall</u>, 54 F.3d at 1579 ("An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if 'it performs substantially the same function in substantially the same way to obtain the same result.'").

"[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole," in order "to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."  <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 29 (1997); <u>see also</u> <u>Sage Prods., Inc. v. Devon Indus., Inc.</u>, 126 F.3d 1420, 1424 (Fed. Cir. 1997).  Summary judgment of no equivalent infringement is proper where "the evidence is such that no reasonable jury could determine two elements to be equivalent…."  <u>Warner-Jenkinson</u>, 520 U.S. at 39 n.8.

## II.    SERVICEMAGIC DOES NOT INFRINGE THE '328 PATENT BECAUSE ITS WEBSITE DOES NOT INVOLVE STANDARDIZED GOODS OR SERVICES

ServiceMagic does not infringe claims 1 through 3, under a literal infringement analysis or the doctrine of equivalents, because its website does not

involve "goods and services," which this Court has construed to mean "standardized articles of trade and performances of work for another." (10/16/2006 Op. at 28, D.I. 75; 11/13/2006 Op. at 5, D.I. 82.)

### A.    ServiceMagic Does Not Literally Infringe Claims 1-3

The '328 patent makes clear that the quotation system it discloses only works if the goods and services to be exchanged are *standardized* items: "[T]he goods and services *must be standard items* to ensure that there is no confusion as to what buyers are requesting [to buy] and what sellers are offering [to sell] to buyers." (Ex. A at Col. 3, ll. 63-65 (emphasis added); 11/13/2006 Op. at 3-5.) Indeed, if a seller is not clear about the item the buyer wants to buy, it cannot possibly provide an accurate quote for the item. Examples of *standardized* goods provided in the patent include "Type J resistors," "personal computer monitors," and "Seagate Model 225 Hard Disk Drive." (Ex. A at Fig. 2A, Fig. 8.)

The home projects for which ServiceMagic's website provides contractor referrals are, by definition, not standardized and not amenable to standardization. The scope, nature, and cost of any given home project depends upon numerous factors, including the layout and condition of the home, the subjective preferences of the homeowner, the type and quality of the materials to be used on the project, and the complexity of the work to be done. (Zurcher Decl. ¶ 8.) As a result, a contractor typically would not be able to provide a quotation for a home repair,

- 11 -

maintenance or improvement project without a detailed understanding of the scope of the project, which can only be gained from speaking to the homeowner, and, in most cases, visiting the home.  (Id.)

SST's technical expert does not dispute this point.  (See Ex. G [Expert Report of Dr. Eric M. Dowling], App. I at 4.)  Instead, he argues that because ServiceMagic's website organizes home repair and improvement project descriptions into various broad categories, the projects themselves are "standardized" services.  (See id. App. H at 2.)  SST's expert's reasoning is faulty for at least two reasons.

First, his opinion is premised on the (incorrect) view that the '328 patent requires that only the product *descriptions* be standardized, not the goods and services themselves.  In particular, SST's expert argues that ServiceMagic's "defined product *descriptions* used by both buyers and vendors constitute the 'standardized' goods and/or services relative to the '328 system." (Ex. G. at 10 (emphasis added).)  However, this Court already considered—and rejected—SST's argument that only "the *descriptions* [of the goods and services] must be standardized, unless one wants to write out text to specify the desired product." (SST's Responsive Markman Brief (D.I. 55-1) at 45-46 (emphasis added); 11/13/2006 Op. at 5.)  Thus, it is irrelevant that the services for which referrals are available on the ServiceMagic website may be described and grouped in some

#1170693 v1
105556-53217

manner by use of the English language.  Every type of service, no matter how non-standardized, can be placed in some generic category (*e.g.*, "patent litigation defense," "custom homebuilding").  Merely describing such services does not render them "standardized."  If SST's view of the scope of the "goods and services" covered by its patent were correct, *every* type of service would be covered by claims 1 through 3, and the Court's construction of "goods and services" would be meaningless surplusage.

Second, a homeowner's selection of a generic service category on ServiceMagic's website, such as "additions," "remodels," or "install carpentry," cannot dispel "confusion as to what buyers are requesting [to buy] and what sellers are offering [to sell] to buyers"—the very problem the standardization requirement is intended to cure.  (See Ex. A at Col. 3, ll. 63-65.)  While an order for 5,000 "Type J Resistors" will not cause any confusion for suppliers who stock the item, home improvement projects simply do not work the same way.  All that selecting the website category "Additions & Remodels" does is to tell potentially interested contractors, "I want to build an addition or remodel my house."  This says nothing about the scope of the desired project.  In order for a prospective contractor to understand the project's scope and therefore be able to price it, further information must be obtained from the homeowner and, in most cases, a visit to the home is required.  (See Zurcher Decl. ¶ 8.)  What type of addition or remodel does the

#1170693 v1
105556-53217

homeowner want?  What type and quality of materials are needed?  How much is he or she willing to spend?  Will the contractor have to remove any walls or the roof?  Are there any features of the space that might make the job unusually difficult or expensive?  The contractor will be unlikely to assess the answer to these questions prior to visiting the home.

In short, ServiceMagic's website does not involve standardized goods and services.  Accordingly, no reasonable jury could find that ServiceMagic literally infringes claims 1 through 3 of the '328 patent.[5]

### B.    ServiceMagic Does Not Infringe Claims 1-3 under the Doctrine of Equivalents

Notably, SST and its technical expert do not assert that ServiceMagic infringes the '328 patent under the doctrine of equivalents.[6]  Nor can they do so.  Put simply, ServiceMagic's website does not involve standardized goods and services, or any "equivalent" thereof.  Instead, it involves only non-standardized home repair, maintenance, and improvement projects.

---

[5]    If the Court determines that independent claim 1 is not infringed, then it must also find that dependent claim 2 (which depends from claim 1) is not infringed.  See Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir. 1989) (holding that a dependent claim cannot be infringed if the independent claim from which it depends is not infringed).

[6]    SST's expert does not offer a doctrine of equivalents analysis.  Instead, he merely argues that his opinion that "ServiceMagic literally meet[s] each claim limitation implies that … ServiceMagic … also infringe[s] under the doctrine of equivalents."  (Ex. G at 7.)

#1170693 v1
105556-53217

To conclude that a non-standardized good or service is the equivalent of a standardized good or service would eviscerate from the claims the requirement that the goods and services be standardized. A patent holder "is not entitled to a range of equivalents which would erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 954-55 (Fed. Cir. 1993) (quoting Perkin-Elmer Corp. v. Westinghouse Elec. Corp., 822 F.2d 1528, 1532 (Fed. Cir. 1987)). "Though the doctrine of equivalents is designed to do equity, and to relieve an inventor from a semantic strait jacket when equity requires, it is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices, *i.e.*, to permit a claim expansion that would encompass more than an insubstantial change." Perkin-Elmer Corp., 822 F.2d at 1532. For these reasons, no reasonable jury could find that ServiceMagic infringes claims 1 through 3 of the '328 patent under the doctrine of equivalents.

## III.    SERVICEMAGIC DOES NOT INFRINGE THE '328 PATENT BECAUSE ITS WEBSITE DOES NOT PROCESS OR OTHERWISE INVOLVE "REQUESTS FOR QUOTATION"

ServiceMagic does not infringe claims 1 through 3, under a literal infringement analysis or the doctrine of equivalents, because its website does not process or otherwise involve "requests for quotation," which this Court has construed to mean "request[s] for the price and other terms of a particular

#1170693 v1
105556-53217

transaction in sufficient detail to constitute an offer capable of acceptance."
(10/16/2006 Op. at 16, D.I. 75.)

### A.    ServiceMagic Does Not Literally Infringe Claims 1-3

ServiceMagic's website enables homeowners to obtain the names and contact information of pre-screened contractors who might be able to do the home repair or improvement work the homeowner has in mind.  (See Zurcher Decl. ¶ 4; Ex. F [12/14/2006 email from Carpet Network to J. Kaplan] at SST 012964-965.)

The online forms completed by homeowners on ServiceMagic's website are not requests for quotations because they do not contain sufficient information from the homeowner about the contemplated project to enable a contractor to respond with a quotation containing price and any other essential terms.  (See Zurcher Decl. ¶ 8; Ex. F; Ex. G, App. G at 12 (depicting an email from a contractor in response to information submitted through the ServiceMagic website by SST's technical expert, which states "ServiceMagic has matched us to your 'Install Cabinets' request, and we are interested in working with you!  Our company … has been pre-screened and *we are ready to learn more about your project and needs*" (emphasis added).)  After the homeowner completes an online form briefly describing the project, the ServiceMagic website sends the homeowner information about local contractors who may be interested in doing the work.  SST's technical expert agrees that the online form "is forwarded to a service professional who then

- 16 -

responds … and offers to come to the site of the job to provide a bid on the job *after* studying the job specifics in further detail." (Ex. G, App. I at 4 (emphasis added).)

Simply put, a request for a referral is not a request for quotation. To conclude otherwise would eviscerate from the asserted claims the patent's requirement, as construed by this Court, that the request from the buyer be not just any request, but a request for a *quotation*, *i.e.*, a request for "the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance."[7] Accordingly, no reasonable jury could find that ServiceMagic literally infringes claims 1 through 3 of the '328 patent.

## B.    ServiceMagic Does Not Infringe Claims 1-3 under the Doctrine of Equivalents

The doctrine of equivalents does not assist SST because there is no evidence that ServiceMagic's website performs substantially the same function as the invention claimed in the '328 patent in substantially the same way to achieve the

---

[7]    The fact that a homeowner may, eventually, enter into a transaction with a contractor does not assist SST. In prosecuting the '328 patent, the applicant deliberately chose to use the more narrow words "requests for quotation" in claims 1-3 instead of the broader language "request[] … to engage in transactions" in claim 4 (which SST is not asserting against ServiceMagic). (See Ex. A at Col. 9, ll. 3-20.) Having so narrowed claims 1-3, SST cannot be heard to assert that these claims encompass "requests … to engage in transactions." See Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.").

same result.  See Southwall, 54 F.3d at 1579.  The online form on the

ServiceMagic website does not perform substantially the same function as a

request for quotation.  The function of a request for quotation is to identify, and

provide sufficient detail about, the requested standardized goods and services so

that a seller can respond with "the price and other terms of a particular transaction

in sufficient detail to constitute an offer capable of acceptance."  (10/16/2006 Op.

at 16, D.I. 75.)  In contrast, the function of ServiceMagic's online form is to collect

just enough information to generate *referrals*.[8]  Thus, using ServiceMagic's

website is far more analogous to looking in the Yellow Pages or asking friends

about contractors they have used in the past than to participating in the

procurement system disclosed in claims 1-3.  To construe these claims as

disclosing a referral system would be to rewrite them completely.  This the

doctrine of equivalents does not permit.  See Hormone Research Found., Inc. v.

Genentech, Inc., 904 F.2d 1558 (Fed. Cir. 1990) ("The doctrine of equivalents …

is not a tool for redrafting the claims of a patent.").

---

[8]      As noted above, the fact that homeowners may eventually enter into
transactions with contractors is irrelevant.  The applicant deliberately chose to
narrowly claim the alleged invention of claims 1-3 to cover "requests for
quotation."  (See Ex. A at Col. 9, ll. 3-20.)  Having so narrowed claims 1-3, SST
cannot be heard to assert that these claims encompass "requests … to engage in
transactions."  See Tandon Corp., 831 F.2d at 1023.

- 18 -

In sum, ServiceMagic's website performs substantially different functions than the patented invention, in substantially different ways and with substantially different results.  Accordingly, no reasonable jury could find that ServiceMagic infringes claims 1 through 3 of the '328 patent under the doctrine of equivalents.

## CONCLUSION

For the reasons set forth above, the indisputable facts establish that ServiceMagic does not infringe the '328 patent because its website does not satisfy at least two distinct limitations of the asserted claims of the '328 patent:  (1) the "standardized goods and services" limitation, and (2) the "request for quotation" limitation.  Therefore, ServiceMagic respectfully requests that the Court grant its Motion for Summary Judgment.

Dated:        February 22, 2007
              Newark, New Jersey
                                          GIBBONS P.C.

                                  By: s/Elvin Esteves
                                      Kevin J. McKenna (KJM 7530)
                                      Elvin Esteves (EE 2216)
                                      One Gateway Center
                                      Newark, New Jersey 07102-5497
                                      Tel.:  (973) 596-4500
                                      Fax:   (973) 596-0545

#1170693 v1
105556-53217

OF COUNSEL:

Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Tel.:       (404) 572-4600
Fax:       (404) 572-5134

Attorneys for Defendant
SERVICEMASTER, INC.

#1170693 v1
105556-53217

## APPENDIX A:  ASSERTED CLAIMS OF THE '328 PATENT

1.      A computerized system for forming a computer based communications network of network members inclusive of network buyers and or network vendors for processing requests for quotation for goods and services through at least one central processing unit including operating system software for controlling the central processing unit, said network members being remotely located from said central processing unit and connected thereto via a communications channel storage means containing identification of the network members, means for network buyers to generate request for quotation for goods and/or services, means for transmitting said request for quotation to said central processing unit, filter means for filtering the network members in said storage means to determine which network members are to receive said request for quotation based upon filter conditions set up by the network buyer in said request for quotation or by the central processing unit in accordance with preestablished conditions, means for broadcasting said request for quotation to the network members selected by said filter means and means for responding to the generator of said request with either a response from the selected network members or with a list of said selected network members for said generator of said request to establish independent communication.

(Ex. A at Col. 8, ll. 22-45.)

- A1 -

#1170693 v1
105556-53217

2.      A computerized system as defined in claim 1 wherein said network

members communicate via the Internet through said central processing unit.

(Id. at Col. 8, ll. 46-48.)

3.      A method for processing requests for quotation for goods and/or

services from a party representing a buyer or supplier of goods and/or services

through a computerized system forming a computer based communications

network of network members for linking buyers to suppliers with the computerized

system having at least one central processing unit including operating system

software for controlling the central processing unit and storage means containing

the identification of the network members, wherein the method comprises the steps

of:

> receiving a buyer's request for quotation over a communication network;
>
> selecting one or more appropriate vendors to be sent the buyer's request for
>
> quotation based upon filter conditions, set by the buyer, vendor and the
>
> network software; transmitting the buyer's request for quotation separately
>
> to said selected vendors over said communications network; and with said
>
> selected vendors communicating their quotations either directly to the buyer
>
> or to the computerized system which in turn transmits said received
>
> quotations to the requesting buyer.

(Id. at Col. 8, l. 49 - Col. 9, l. 2.)

#1170693 v1
105556-53217

## <u>CERTIFICATE OF SERVICE</u>

#1170693 v1
105556-53217