**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Source Search Technologies, LLC, | ) |
| | ) DOCUMENT ELECTRONICALLY FILED |
| Plaintiff, | ) |
| | ) |
| -- against -- | ) Civil Action No. 2:04-cv-4420 (DRD) |
| | ) |
| LendingTree, LLC, | ) |
| IAC/InterActiveCorp, and | ) |
| ServiceMagic, Inc., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT SERVICEMAGIC, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

GIBBONS P.C.
A Professional Corporation

Kevin J. McKenna
Elvin Esteves
One Gateway Center
Newark, New Jersey 07102-5497
Tel.: (973) 596-4717
Fax: (973) 639-6489

OF COUNSEL:
Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5134

Attorneys for Defendant
SERVICEMAGIC, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................1

THE ‘328 PATENT AND THE COURT’S CLAIM CONSTRUCTION ................2

ARGUMENT ..............................................................................................5

I. THE COURT SHOULD GRANT SERVICEMAGIC’S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT. ..............................................................5

A. ServiceMagic’s Website Does Not Satisfy The “Goods And Services” Limitation Of Claims 1 Through 3. ...................5

1. The Court Should Reject SST’s Request To Reconsider The Construction Of The Term “Goods And Services.” .............................................................7

a. SST’s New Argument Is Contradicted By The Record And Is Unsupported By Any Evidence. ..........................................................8

b. This Court Already Has Rejected SST’s Arguments That The Patent Requires Only Standardized “Descriptions” And That The Court’s Construction Excludes An Embodiment. ....................................................11

2. SST Has Not Proffered Evidence Establishing A Genuine Issue Of Material Fact Concerning The Application Of The Properly Construed Claims To ServiceMagic’s Website. ............................................12

B. ServiceMagic’s Website Does Not Satisfy The “Request For Quotation” Limitation Of Claims 1 Through 3. ................13

C. The Doctrine Of Equivalents Is Not Applicable. ......................18

II. SST’S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED. .....................................20

A. SST Has Failed To Demonstrate That ServiceMagic Literally Infringes Each And Every Limitation Of Any Of Claims 1 Through 3. .......................................................21

1. SST Has Failed To Demonstrate How ServiceMagic's Website Infringes Any Of The Means-Plus-Function Limitations. ................................22

2. SST Has Failed To Demonstrate That ServiceMagic's Website Processes Requests For Quotations "From A Party Representing A Buyer Or Supplier." ................................................................23

B. SST Has Failed To Demonstrate That ServiceMagic Infringes Under The Doctrine Of Equivalents.........................24

CONCLUSION ........................................................................................24

# TABLE OF AUTHORITIES

Aquatex Indus., Inc. v. Techniche Solutions,
___ F.3d ___, 2007 WL 582392 (Fed. Cir. Fed. 27, 2007) ........................ 19, 24

Cardinal Chem. Co. v. Morton Int'l,
508 U.S. 83 (1993) ........................ 22

CCS Fitness v. Brunswick Corp.,
288 F.3d 1359 (Fed. Cir. 2002) ........................ 17

Datamize, LLC v. Plumtree Software, Inc.,
417 F.3d 1342 (Fed. Cir. 2005) ........................ 15

Deering Precision Instr., L.L.C. v. Vector Distrib. Sys., Inc.,
347 F.3d 1314 (Fed. Cir. 2003) ........................ 20-21

EZ Dock, Inc. v. Schafer Sys.,
2003 WL 1610781 (D. Minn. Mar. 8, 2003) ........................ 7

Greenberg v. Ethicon Endo-Surgery, Inc.,
1995 U.S. Dist. LEXIS 22411 (E.D.N.Y. Sept. 25, 1995) ........................ 22

Hoganas AB v. Dresser Indus., Inc.,
9 F.3d 948 (Fed. Cir. 1993) ........................ 19

Johnston v. IVAC Corp.,
885 F.2d 1574 (Fed. Cir. 1989) ........................ 5

Loral Fairchild Corp. v. Victor Co. of Japan,
911 F. Supp. 76 (E.D.N.Y. 1996) ........................ 7

Malta v. Schulmerich Carillons, Inc.,
952 F.2d 1320 (Fed. Cir. 1991) ........................ 18

Pennwalt Corp. v. Durand-Wayland, Inc.,
833 F.2d 931 (Fed. Cir. 1987) ........................ 22

Phillips v. AWH Corp.,
15 F.3d 1303 (Fed. Cir. 2005) ........................ 10

Southwall Techs. v. Cardinal IG Co.,
54 F.3d 1570 (Fed. Cir. 1995) ........ 21

SRI Int'l v. Matsushita Elec. Corp.,
775 F.2d 1107 (Fed. Cir. 1985) ........ 17

Warner-Lambert Co. v. Teva Pharms., USA, Inc.,
418 F.3d 1326 (Fed. Cir. 2005) ........ 20-21

Zelinski v. Brunswick Corp.,
185 F.3d 1311 (Fed. Cir. 1999) ........ 19

## INTRODUCTION

Applying the Court's settled claim constructions to the undisputed evidence of how ServiceMagic's website functions yields the inescapable conclusion that ServiceMagic does not infringe the '328 patent. Plaintiff Source Search Technologies, LLC ("SST") nonetheless seeks to escape that conclusion. Unable to demonstrate that ServiceMagic's website processes "requests for quotation" for "standardized goods and services," SST attempts to rewrite its patent to capture an invention never contemplated by the inventor, contradicts its prior claim construction arguments, and entirely ignores the Court's claim construction ruling.

*First*, recognizing that the services offered by ServiceMagic's contractors are anything but "standardized," SST implicitly asks the Court *again* to reconsider its construction of the claim term "goods and services" and eliminate the requirement that they be "standardized." The Court should decline this invitation because it was right the first (and second) time it examined that term. In order to function properly, the patented "computerized quotation system" must deal in *standardized* goods and services. For the Court's claim construction to have any meaning, it must exclude customer-specific, site-specific home repair and improvement services.

*Second*, recognizing that the online forms completed by homeowners on ServiceMagic's website do not contain sufficient information for contractors to

furnish a "quotation," SST attempts to recast the subject of its patent as a mere "referral service," wherein buyers might eventually obtain quotations at some later date. This newly minted characterization is at odds with both the patent's specification—which never once uses the word "referral"—and the Court's definition of "request for quotation" as "a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." SST may not claim, in litigation-driven hindsight, a wholly different system that the inventor did not invent and the Patent Office did not allow.

Aside from unsupported and untimely claim construction arguments, SST offers nothing to dispute that ServiceMagic's website does not process "requests for quotation" or involve "standardized goods or services." For either of these independent reasons, the Court should enter summary judgment of non-infringement and deny SST's cross-motion for summary judgment. The Court should also deny the cross-motion because SST has not demonstrated on an element-by-element basis that ServiceMagic's website meets all of the limitations of any of claims 1-3 of the '328 patent.

## THE '328 PATENT AND THE COURT'S CLAIM CONSTRUCTION

Because SST mischaracterizes the '328 patent and ignores the Court's claim construction, we summarize at the outset the actual objective of the patent and how that objective informed the Court's claim construction. Contrary to SST's

suggestion, the '328 patent does not disclose "a referral service, wherein buyers wishing to obtain quotes are referred to vendors who are likely to be able to supply the quotes based upon the patented filtering algorithm." (SST Br. at 6.) Tellingly, the word "referral" does not appear anywhere in the patent. As its title indicates, the '328 patent discloses a "***computerized quotation system***" for the submission of requests for quotation and the communication of quotations among an unlimited number of buyers and sellers. (See Esteves Decl. [D.I. 96] Ex. A ['328 patent] at Col. 3, ll. 1-4, 55-59.)[1]

According to the specification, the principal prior art systems used a centralized database for storing information relating to the goods and services offered by sellers. (See id. at Col. 1, ll. 42-44.) At the time, it was not "feasible for such systems to provide access to all standard goods and services and all suppliers world wide." (Id. at Col. 1, ll. 46-53.) Thus, the prior art systems restricted a buyer's choice of goods, services, and/or vendors. (See id. at Col. 1, ll. 46-53.) The patented invention purportedly overcame this limitation by eliminating the need for a centralized database and thereby "***satisfy[ing] the need of buyers to receive timely quotes*** on an enormous variety of goods and services

[1] Figure 7 provides an example of the level of detail and the type of information contained in both (i) a request for quotation, including the product for which a quotation is requested, the quantity requested, and how and where the product is to be shipped, and (ii) a quotation, including price per unit, total price, taxes, shipping charges, and delivery time. (See id. at Figure 7.)

from vendors anywhere in the world." (Id. at Col. 1, ll. 53-56 (emphasis added); Col. 3, ll. 60-62.)

This objective informed the Court's construction of the terms "goods and services" and "request for quotation":

| Claim Term | Court's Definition |
|---|---|
| "goods and services" | "standardized articles of trade and performances of work for another" (10/16/2006 Op. [D.I. 75] at 28)[2] |
| "request for quotation" | "a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance" (10/16/2006 Op. at 16) |

The Court construed "request for quotation" in light of the explanation in the '328 patent that "pricing *and other information* necessary to respond to the RFQ" reside on the vendor's database (10/16/2006 Op. at 16 (quoting '328 patent col. 5, ll. 43-48) (emphasis added)), and that each selected vendor responds to a request for quotation by "providing its pricing *and other information* to the quotation system." (Id. (quoting Fig. 2A) (emphasis added).) The Court therefore concluded that a request for a quotation must be sufficiently detailed to enable a vendor to provide price and other material contractual terms to a buyer. (See Id.) The Court further noted that, because the goal of the system is to facilitate quotations, "the goods and services must be standard items to ensure that there is no confusion as to

[2] The Court reaffirmed its construction of "goods and services" upon SST's motion for partial reconsideration. (See 11/13/2006 Op. [D.I. 82] at 5.)

what buyers are requesting and what sellers are offering to buyers." (11/13/2006 Op. [D.I. 82] at 5 (quoting '328 patent col. 3, ll. 63-65).)

## ARGUMENT

### I. THE COURT SHOULD GRANT SERVICEMAGIC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT.

SST raises no disputed factual issues whatsoever in response to ServiceMagic's motion for summary judgment. Instead, it makes only legal arguments about the meaning of terms that the Court already has construed. Accordingly, ServiceMagic is entitled to judgment as a matter of law. See Johnston v. IVAC Corp., 885 F.2d 1574, 1577 (Fed. Cir. 1989) ("[T]he motion of an accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement.").[3]

#### A. ServiceMagic's Website Does Not Satisfy The "Goods And Services" Limitation Of Claims 1 Through 3.

SST has not presented a genuine issue of material fact concerning alleged infringement of the "goods and services" claim limitation, which this Court has construed to mean "standardized articles of trade and performances of work for another." (10/16/2006 Op. at 28-29; 11/13/2006 Op. at 5.) In light of the patent's

[3] As discussed below, however, SST's cross-motion raises disputed factual issues concerning other claim limitations that foreclose granting summary judgment to SST.

purpose and specification, a standardized good or service does not vary from one vendor or customer to the next. As explained above, for the patented invention to have any utility as the "computerized quotation system" it was intended to be, buyers and vendors cannot be confused about what the other is seeking or offering. (See 11/16/2005 Op. at 3-5.)

Home repair, maintenance, and improvement services are not standardized services because they vary in scope and price depending on the customer, the contractor, and the intended project. Contractors require a detailed understanding of the scope of the contemplated project, which can be gained only from communicating directly with the homeowner and, in most cases, visiting the home. (See ServiceMagic's Mot. for Summ. J. [D.I. 96] at 11-12.) Such individualized services cannot be purchased using the "computerized quotation system" claimed in the '328 patent. (See id.)

SST's argument that "[v]irtually ***no*** service could be a standard service" under the Court's claim construction (SST Br. at 25) is meritless. A quick perusal of the Internet reveals a great many everyday services that may be considered standardized, including stock brokerage services, money transfer services, credit report services, car rental services, and courier services. Unlike services relating to home repair or improvement projects, the price and other aspects of these services

do not vary based on the subjective desires and circumstances of the particular buyer.

**1. The Court Should Reject SST's Request To Reconsider The Construction Of The Term "Goods And Services."**

Recognizing that the Court's claim constructions have left it no room to maneuver, SST is left with little choice but to invite the Court, again, to re-construe the term "goods and services." Courts must "be wary of litigants that seek to alter or amend claim terms" after claim construction. Loral Fairchild Corp. v. Victor Co. of Japan, 911 F. Supp. 76, 79 (E.D.N.Y. 1996) (Rader, J., Federal Circuit, sitting by designation). "[A] trial court -- in the wake of articulating a legal meaning of claim terms -- must carefully police the parties' new theories of liability or defenses to prevent prejudice[.]" Id. Accordingly, "parties are not entitled to 'construe' the Court's claim construction." EZ Dock, Inc. v. Schafer Sys., 2003 WL 1610781, at *12 (D. Minn. Mar. 8, 2003). These warnings are particularly apt here, where "[t]he parties submitted everything they had to say on this issue" in their *Markman* briefs, oral argument, and their papers on SST's motion for reconsideration. (11/13/2006 Op. at 3.)

The Court should therefore reject, as foreclosed by its claim constructions and in any event without merit, (a) SST's new argument that the '328 patent contemplates the purchase and sale of non-standardized goods, and (b) SST's old

(and already rejected) argument that only "descriptions" of goods and services need be standardized.

          a.     SST's New Argument Is Contradicted By The Record And Is Unsupported By Any Evidence.

SST's new argument depends on three premises:  (1) that there is a meaningful distinction between the words "standard" and "standardized" in the context of the '328 patent; (2) that the Court based its claim construction upon a misquotation of the patent; and (3) that "standard" really means "customary." Each premise is false.

*First*, the patent does not draw any distinction between the terms "standard" and "standardized."  Instead, as SST has previously acknowledged, the patent uses those terms interchangeably.  Although SST now argues that "the '328 patent consistently uses [']standard['] and [']standardized['] to convey ***totally different concepts***" (SST Br. at 21 (emphasis added)), it argued just the opposite during claim construction:

> In one place, the patent admittedly does say the Goods and Services must be standard items to ensure that there is no confusion  . . . .  In the other place it says standardization of product or service descriptions is essential to avoid confusion . . . . ***But, in fact, your Honor, both are talking about the exact same thing.***
>
> * * *

> ***[I]t doesn't make any sense, Judge, to say that the two paragraphs***, one of which says you have to have standard items to avoid confusion between the buyer and seller and the other one of which says, standardization to avoid confusion between them is essential unless you write out the text, ***to be*** [sic] ***directed to two entirely different subjects.***

(Markman Hrg. Tr. at 83-84 (emphasis added).)

Tellingly, in its own claim construction briefing and during the Markman hearing, SST itself used the terms "standard" and "standardized" interchangeably:

- "[E]ither the descriptions of the products had to be ***standardized*** . . . there must either be a ***standard*** description . . . . In other words, the descriptions must be ***standard***" (SST Resp. Markman Br. [D.I. 55] at 45-46 (emphasis added));

- "[I]if you refer to Column 3, when it first refers to the ***standardized*** Goods and Services, it says that they must be ***standard*** to ensure there is no confusion as to what buyers are requesting or what sellers are offering. That's why they want it ***standardized***, to ensure there is no confusion." (Markman Hrg. Tr. at 83 (emphasis added)); and

- "[Y]ou have to have is either a ***standard*** way of referring to things . . . . all it's saying, either ***standardize*** the product code . . ." (Id. at 84 (emphasis added).)

The time to argue that the patent distinguished between the two words was during claim construction. SST made no distinction and neither should the Court.

*Second*, contrary to SST's suggestion, the Court did not base its construction of "goods and services" upon a misquotation of the patent specification. (See SST Br. at 17.) Instead, the Court correctly recognized that the patent used the terms "standard" and "standardized" interchangeably. (See, e.g., 11/13/2006 Op. at 4 ("goods and services must be standard items" (quoting '328 patent col. 3, ll. 63-

65)); id. at 5 ("The programming . . . would include information sufficient for network members to identify standard goods or services . . . ." (emphasis in original) (quoting '328 patent col. 4, ll. 4-9)); id. (stating that the patent's use of "standardization" in relation to product descriptions "in no way suggests that the particular product . . . is not to be standardized.").) That the Court did not distinguish between the two terms is hardly surprising given SST's position during claim construction that "they are talking about the exact same thing."

*Third*, SST's argument is inconsistent with the patent and with controlling Federal Circuit precedent on claim construction. Notably, SST offers no evidence of how a person of ordinary skill in the art would understand "standard" or "standardized" in the context of the '328 patent. Instead, SST relies on its counsel's *ipse dixit* and a dictionary definition of "standard" as "Usual, common, or customary: Chairs are standard furniture in American households." (SST Br. at 18.) This is woefully insufficient.

Resort to a dictionary in this instance is inappropriate because in the context because, as SST has previously observed, "the use of dictionaries is disfavored, and may not be used to contradict the definition conveyed by the patent specification." (SST's Resp. Markman Br. at 2 (quoting Phillips v. AWH Corp., 15 F.3d 1303, 1321 (Fed. Cir. 2005)).) Here, SST's newly proposed definition would negate the Court's limitation of the terms "goods and services" because it

"would open up the request for goods and services to any product or service, standardized or not." (11/13/2006 Op. at 4.) Tellingly, SST does not provide an example of a single service that would not be considered "standard" under its definition. Further, SST's proposed definition cannot be reconciled with the need, expressly recognized in the patent, to avoid confusion about what participants in the system are requesting or offering.

In sum, the Court should reject SST's untimely claim construction arguments as unsupported and inconsistent with SST's prior arguments and the '328 patent itself.

b. This Court Already Has Rejected SST's Arguments That The Patent Requires Only Standardized "Descriptions" And That The Court's Construction Excludes An Embodiment.

In addition to its new argument, SST repeats two arguments that it raised in the *Markman* phase concerning the patent's mention of "text oriented" product descriptions. Specifically, SST previously argued that the patent teaches standardized "descriptions" of goods and services, but not standardized goods and services. (See, e.g., SST Br. at 22, 27, 28-29; see also SST Resp. Markman Br. at 45.) Relatedly, SST argued that the Court's construction somehow "exclude[s] the preferred embodiment" shown in Figure 8, which includes a "text oriented" description. (See SST Br. at 29-30; see also SST Resp. Markman Br. at 45;

Markman Hrg. Tr. at 85.) The Court need not consider these arguments again because it has already, and correctly, rejected them.

The Court correctly recognized in its Markman Order that SST's position would erroneously "open up the request for goods and services to any product or service, standardized or not." (11/13/2006 Op. at 4.) The Court also concluded that the patent's discussion of text oriented product and service descriptions "in no way suggests that the particular product for which a 'text oriented specification is appropriate' is not to be standardized." (Id. at 5.) And the Court held that Figure 8 actually supports the "*standardized* goods and services" requirement because while "a text oriented specification is provided, namely 5000 and 5% . . . the underlying product - the Type J resistor - is a standardized item." (Id.) This is well plowed ground and does not warrant further discussion.

**2. SST Has Not Proffered Evidence Establishing A Genuine Issue Of Material Fact Concerning The Application Of The Properly Construed Claims To ServiceMagic's Website.**

After making its flawed and untimely claim re-construction pitch, SST argues that ServiceMagic's motion "must be denied for three reasons, two of which are valid even if the Court disagrees with SST's analysis of 'standard.'" (SST Br. at 33.) In fact, two of these purported reasons depend upon the Court's accepting SST's new interpretation of the term "goods and services," while the third does not even involve the "goods and services" limitation.

SST's first "reason" is that the services offered on ServiceMagic's website are "common, usual, familiar services." (SST Br. at 33.) This is merely a reiteration of SST's claim construction arguments and should be rejected for the reasons set forth above. Next, SST argues that, to the extent the Court actually meant "standardized" when it expressly used that term, "standardized" means only "conformance." (See SST Br. at 34.) But this, too, is merely derivative of SST's flawed and previously rejected claim construction arguments. Finally, as a last resort, SST contends that even if the Court adopts ServiceMagic's argument relating to the "request for quotation" term, ServiceMagic still may infringe under the doctrine of equivalents. (SST Br. at 36.) This argument plainly has nothing whatsoever to do with the "goods and services" limitation.

Thus, SST has presented no evidence that ServiceMagic infringes the "goods and services" limitation of the asserted claims under the Court's governing claim construction. Therefore, on that basis alone, summary judgment of non-infringement is warranted.

**B. ServiceMagic's Website Does Not Satisfy The "Request For Quotation" Limitation Of Claims 1 Through 3.**

ServiceMagic's motion for summary judgment should also be granted because SST has failed to demonstrate that the online forms completed by homeowners on ServiceMagic's website are "requests for quotation." SST does not dispute that these forms do not contain sufficient information for a contractor

to provide a quotation. Instead, SST argues (1) that "[i]t simply does not follow logically that ***because*** something does not have everything needed to give the quote, it can not be a request for quote"; and (2) that because the asserted claims do not require that contractors respond immediately with a quotation, a request for quotation need not be sufficiently detailed to allow the contractor to respond with a quotation at any time. (See SST Br. at 9.) Both arguments ignore the Court's construction of "request for quotation" and the patent disclosure.

The Court—at SST's urging—construed the term as "a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." (10/16/2006 Op. at 16.) This is something quite different than a request for a name and phone number or a request for a "ballpark" estimate.[4] It is beyond dispute that a home contractor, such as a roofer, carpenter, or electrician, would not reasonably be expected to make an "offer" that includes the price and other material terms and that is "capable of acceptance" until it is first given sufficient information concerning the details of the home project. Indeed, SST concedes that the patent contemplates that contractors must be able to supply

[4] ServiceMagic does not agree that the online forms submitted by ServiceMagic consumers "contain[] enough information for the contractor to 'ballpark' the job ahead of time" and that contractors may supply "estimates." (SST Br. at 8, 11, 13, 36-37.) In any event, "estimates" and "ballparks" are not offers capable of acceptance -- they do not obligate the contractor to perform the service for the estimated price.

quotations in response to a request for quotation, and Figures 7 and 8 of the '328 patent demonstrate that the requests for quotation must be sufficiently detailed to enable a contractor to prepare such a quotation. (See SST Br. at 6 ("[T]he one way embodiment is a ***referral service***,[5] wherein buyers wishing to obtain quotes are referred to vendors who are ***likely to be able to supply the quotes*** …."), 9; Esteves Decl. Ex. A ['328 patent] at Figures 7-8.)

Recognizing that ServiceMagic's online forms, as completed by homeowners, do not contain sufficient information about the home project for contractors to make an offer, SST argues that homeowners should be deemed to be submitting requests for quotations because they ultimately want to receive a quotation. (See SST Br. at 10-12, 40-41.) In other words, SST contends that whether the online form is a request for quotation turns on a homeowner's subjective state of mind when he or she completes the online form. There is simply no support in the patent or the Court's claim construction for SST's position and, indeed, such a result is insupportable as a matter of law. See Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1350 (Fed. Cir. 2005) ("The scope of claim language cannot depend solely on the unrestrained,

[5] As explained on pp. 2-4 above, the '328 patent does not disclose a "referral service."

subjective opinion of a particular individual purportedly practicing the invention.”).[6]

Moreover, SST’s argument stretches the patent beyond recognition. Under SST’s interpretation, an electronic search for “painters” in an online search engine or telephone directory would constitute a “request for quotation” if the user intends to eventually obtain a quotation from one or more painters identified by the search. Any inquiry, however attenuated the intention to actually buy something, would become “a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance.” Neither the patent, nor the Court’s claim construction, nor logic or the English language supports such an impermissibly broad reading of the claims.

Put another way, SST’s approach would improperly eviscerate from the patent claims the requirement that the request be a “request for quotation.” As ServiceMagic noted in its motion, the applicant deliberately chose to use the more

[6] SST’s hypothetical on page 9 of its brief is irrelevant to the “request for quotation” inquiry. SST contends that the fact that a painter might first need to visit a home before he can provide a quote in response to a homeowner’s verbal request for quotation does not change the fact that the homeowner requested a quotation. (See SST Br. at 9.) However, the ‘328 patent does not contemplate *verbal* requests for quotation. (See, e.g., Esteves Decl. Ex. A [‘328 patent] at Col. 6, l. 66 - Col. 7, l. 5 (“The process of the present invention begins when a buyer prepares a network compatible request for quotation (RFQ) …. The request or requests are telecommunicated to a quotation network computer and is thereafter routed to the specified class of vendors ….”).) Accordingly, SST’s hypothetical proves nothing.

narrow "request[] for quotation" in claims 1 through 3 instead of the broader "request[] … to engage in transactions" used in claim 4 (which SST is not asserting against ServiceMagic)? and certainly did not use any formulation resembling "request for information" as SST apparently now wishes it had. (See Esteves Decl. Ex. A ['328 patent] at Col. 9, ll. 3-20.) Therefore, SST cannot now assert that claims 1 through 3 encompass broader types of requests. Notably, SST does not even attempt to address this point.

Last, SST makes the irrelevant argument that claims 1 through 3 do not require that contractors respond immediately with a quotation. Whether the claims require that a contractor communicate a quotation (or a specific means by which any such quotation is communicated) does not have any bearing on the inquiry at issue: whether the information that a homeowner submits on ServiceMagic's website constitutes a request for quotation.[7]

---

[7] SST incorrectly contends, based on an improper comparison of ServiceMagic's website to the "preferred embodiment," that ServiceMagic infringes because "[v]endors 'respond' -- not necessarily with an immediate quote, and not necessarily through the computer system. Such response can be by telephone or email, or other means." (SST Br. at 16.) Even if this were true (and it is not), "infringement ... is determined by comparing an accused product ***not with a preferred embodiment described in the specification*** … but with the properly and previously construed claims in suit." SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) (emphasis added); see also CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1370 (Fed. Cir. 2002). A comparison of the ServiceMagic website to claim 1 reveals that ServiceMagic does not provide the "means for responding with a … response" limitation that the claim expressly requires.

Accordingly, SST has failed to proffer any evidence that ServiceMagic's website processes or otherwise involves requests for quotation.

### C. The Doctrine Of Equivalents Is Not Applicable.

In its motion, ServiceMagic argued that SST had not asserted a doctrine of equivalents argument with respect to either the "goods and services" or "request for quotation" limitations. In response, SST has provided no evidence that, for either limitation, ServiceMagic's website "performs [1] substantially the same function in [2] substantially the same way to [3] achieve substantially the same result as the claimed device." Malta v. Schulmerich Carillons, Inc., 952 F.2d 1320, 1325 (Fed. Cir. 1991) (citation omitted).

First, SST does not advance ***any*** doctrine of equivalents argument with respect to the "goods and services" limitation. Nor can it. As the Court recognized in its claim construction ruling, either the patent is limited to *standardized* goods and services or it applies to *all* goods and services. Because this limitation is binary—i.e., there are no partially standardized goods or services—the doctrine of equivalents simply does not apply.

Second, while SST hints at a doctrine of equivalents argument on the "request for quotation" limitation, it does not engage in the analysis required to raise a triable issue. SST asserts only that "the SM system is including in the RFQ ***almost*** all of the terms, so the contractor has ***almost*** everything he needs to give

the quote -- he can ballpark the job." (SST Br. at 37; see also SST Br. at 8, 11, 13, 36.) This conclusory statement does not suffice. See Aquatex Indus., Inc. v. Techniche Solutions, ___ F.3d ___, 2007 WL 582392, *6 (Fed. Cir. Fed. 27, 2007) (affirming summary judgment of non-infringement where patentee failed to provide testimony and argument establishing all three requirements of doctrine of equivalents); Zelinski v. Brunswick Corp., 185 F.3d 1311, 1317 (Fed. Cir. 1999) (affirming summary judgment of non-infringement where patentee offered only conclusory statements of its patent attorney expert to support doctrine of equivalents argument).

Moreover, SST's argument, if accepted, would vitiate the literal text of the asserted claims. It is well established that the doctrine of equivalents is not a mechanism for rewriting a patent and cannot be used to vitiate express claim limitations. See Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 954-55 (Fed. Cir. 1993). Here, SST's argument would erase the "request for quotation" limitation as construed by the Court. A "ballpark" figure or estimate does not contractually obligate the contractor to perform a job at a particular price under particular terms. A "request for a ballpark estimate" is therefore materially different from "a request for the price and other terms of a particular transaction in sufficient detail to constitute an offer capable of acceptance." As with the "goods and services"

limitation, there are no quasi-offers and thus no quasi-requests for quotation. Therefore, the doctrine of equivalents does not apply.

Because ServiceMagic's website does not infringe the '328 patent, literally or under the doctrine of equivalents, the Court should enter summary judgment of non-infringement in favor of ServiceMagic.

## II. SST'S CROSS-MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED.

SST has not satisfied its burden of affirmatively presenting sufficient uncontested evidence demonstrating that ServiceMagic's website meets each and every limitation in Claims 1-3. See Warner-Lambert Co. v. Teva Pharms., USA, Inc., 418 F.3d 1326, 1340 (Fed. Cir. 2005); Deering Precision Instr., L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1324 (Fed. Cir. 2003). Rather than affirmatively demonstrating how each element of each claim is met by the ServiceMagic website, SST seeks to demonstrate "infringement" simply by challenging ServiceMagic's non-infringement defenses. This approach contravenes well established law because it improperly shifts the burden of proof to ServiceMagic to prove non-infringement.[8] In addition, with respect to the small

[8] In addition, ServiceMagic's non-infringement positions were based upon the Court's claim construction rulings and therefore do not address SST's new (and erroneous) interpretations of, among other things, "goods and services" and "party representing a buyer." Therefore, it is improper to equate ServiceMagic's interrogatory responses with responses to requests for admissions or other similar stipulations. (See SST Br. at 38-39.)

number of claim terms that SST actually addresses in its brief, SST has failed to demonstrate how ServiceMagic's website satisfies those claim limitations.[9]

**A. SST Has Failed To Demonstrate That ServiceMagic Literally Infringes Each And Every Limitation Of Any Of Claims 1 Through 3.**

The test for literal patent infringement is straightforward: "every limitation set forth in a claim must be found in an accused product, exactly." Southwall Techs. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). SST bears the burden of affirmatively presenting sufficient evidence demonstrating that ServiceMagic's website meets each and every claim limitation. See Warner-Lambert, 418 F.3d at 1340; Deering Precision, 347 F.3d at 1324. SST has not satisfied this burden because it has failed to demonstrate where each element of each of the asserted claims is found in ServiceMagic's website.

By way of example only, and without limiting ServiceMagic's argument, SST has failed to demonstrate (1) how ServiceMagic's website infringes any of the means-plus-function limitations of the asserted claims or (2) that ServiceMagic's

9 Two of the claim limitations SST addresses in its cross-motion are "request for quotation" and "goods and services." ServiceMagic will not unnecessarily repeat its arguments relating to these two key claim elements here. For all the reasons stated above and in ServiceMagic's motion, ServiceMagic's website does not process or otherwise involve requests for quotation for standardized goods or services.

website processes requests for quotations from "a party representing a buyer or supplier."[10]

**1. SST Has Failed To Demonstrate How ServiceMagic's Website Infringes Any Of The Means-Plus-Function Limitations.**

"[I]t is part of the ultimate burden of proof of the patent owner to establish, with respect to a claim limitation in means-plus-function form, that the structure in the accused device which performs that function is the same as or an equivalent of the structure disclosed in the specification." Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir. 1987) (en banc), overruled on other grounds, Cardinal Chem. Co. v. Morton Int'l, 508 U.S. 83 (1993). Stated another way, "[t]o satisfy a means-plus-function limitation literally, the accused device must perform the identical function required by the limitation. Moreover, the accused device must employ as the means for performing that function either the precise structure disclosed in the specification or a structural equivalent thereof." Greenberg v. Ethicon Endo-Surgery, Inc., 1995 U.S. Dist. LEXIS 22411, at *9 (E.D.N.Y. Sept. 25, 1995).

---

[10] SST has also failed to demonstrate how ServiceMagic's website satisfies the "network members" claim limitations, including, for example, "said network members being remotely located from said central processing unit and connected thereto via a communications channel" (as required by claim 1) and "storage means containing identification of the network members" (as required by claims 1 and 3).

SST has not satisfied its burden of proof on, among other claim elements, any of the means-plus-function limitations recited in claims 1 through 3. SST has not affirmatively demonstrated that the ServiceMagic website performs the claimed functions, nor has it demonstrated that the ServiceMagic website employs the precise structure(s) disclosed in the patent or any structural equivalent thereof. SST's failure to come forward with any evidence as to these limitations, without more, warrants denial of its cross-motion.

### 2. SST Has Failed To Demonstrate That ServiceMagic's Website Processes Requests For Quotations "From A Party Representing A Buyer Or Supplier."

Claim 3 recites "[a] method for processing requests for quotation for goods and/or services from a party representing a buyer or supplier of goods and/or services." SST contends that the term "representing" in Claim 3 means "being": "He represents [i.e., is] one of the finest cardiologists to ever practice medicine." (SST Br. at 42.) SST's proposed definition of "represent" is no definition at all because it renders superfluous the words "a party representing."

SST also contends—without any evidentiary support—that "claim 3 merely means that a computer can be configured to act in the role of a buyer or seller." (SST Br. at 42.) However, one of ordinary skill in the art would not understand a "party" to refer to a computer. (Decl. of Walter Scacchi, Ph.D., filed contemporaneously herewith, ¶ 10.) Indeed, the patent elsewhere refers to

computers and terminals by name. (Id.) The patent applicant obviously knew how to describe a computer. (Id.) He therefore meant something else when he used the words "a party representing a buyer or supplier" in the claims. (Id.)

In fact, one of ordinary skill in the art would understand "a party representing a buyer or supplier" to refer to an individual or entity acting as an agent or other type of representative on behalf of the buyer or supplier. (Id. at ¶ 11.) SST has not demonstrated that the ServiceMagic website performs the "method for processing requests for quotation … from a party representing a buyer or supplier [i.e., an individual or entity acting as an agent or other type of representative on behalf of the buyer or supplier]."

### B. SST Has Failed To Demonstrate That ServiceMagic Infringes Under The Doctrine Of Equivalents.

SST has not "provide[d] particularized testimony and linking argument on a limitation-by-limitation basis" that foreclose the existence of any genuine issue of material fact pertinent to the application of the doctrine. See Aquatex Indus., 2007 WL 582392, at *6. As explained in more detail in Part III.C, SST's conclusory arguments as to a single claim limitation ("request for quotation") do not suffice.

## CONCLUSION

SST cannot, in either opposing or seeking summary judgment, rewrite its patent or reargue this Court's claim constructions. When the governing claim construction is applied to the undisputed facts, it is clear that ServiceMagic's

website does not satisfy at least two distinct limitations of the asserted claims of the '328 patent: (1) the "standardized goods and services" limitation, and (2) the "request for quotation" limitation. The Court should therefore enter summary judgment of non-infringement in favor of ServiceMagic and deny SST's cross-motion for summary judgment.

GIBBONS P.C.

Dated: April 5, 2007
Newark, NJ

s/ Elvin Esteves
Kevin J. McKenna
Elvin Esteves
One Gateway Center
Newark, New Jersey 07102-5497
Tel.: (973) 596-4500
Fax: (973) 639-6489

OF COUNSEL:
Holmes J. Hawkins III
A. Shane Nichols
James J. Mayberry
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5134

Attorneys for Defendant
SERVICEMAGIC, INC.