# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

```
--------------------------------------------------------X
                                           :
Source Search Technologies, LLC,           :
                                           :
                    Plaintiff,             :          Civil Action No. 2:04-cv-4420 (DRD)
                                           :
            v.                             :
                                           :
LendingTree, Inc., IAC InterActiveCorp, and :
Service Magic, Inc.                        :
                                           :
                    Defendants.            :
--------------------------------------------------------X
```

## REPLY BRIEF IN SUPPORT OF SST'S MOTION FOR SUMMARY JUDGMENT

<div style="margin-left:40%">

Jeffrey I. Kaplan (JK 4706)
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

</div>

Dated:  April 6 , 2007

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ................................................................................1

II.    ARGUMENT .....................................................................................2

       A.    SM Offers Standard Home Services
           and Has Even Admitted So ................................................2

       B.    SM's Definitional Position is Precisely
           What the Federal Circuit has Repeatedly Rejected...............3

       C.    No Definition of Standard Supports SM's Position.................4

       D.    SM's Reading of the Phrase in Issue
           Would Make it Blatantly False ...........................................5

       E.    SM's Position on RFQ's Would Require Meaningless
           Useless Data to be in the RFQ and is Inconsistent With
           the Exemplary Embodiment of the '328 Patent.....................6

       F.    SM's Position Can Not Be Made Consistent with
           the '328 Patent ...............................................................12

       G.    SST's Prior Argument During *Markman* Does Not
           Mandate a Different Result................................................13

             1.    SST Is Not Attempting To Reargue the
                   *Markman* Ruling ..................................................13

             2.    SST's Prior Argument was Perfectly Appropriate.....14

             3.    SM Is Trying to Deflect Attention from its Own
                   Improper Conduct ..................................................16

       H.    SST's Motion for Summary Judgment Should Be Granted..................18

III.    CONCLUSION.................................................................................20

# TABLE OF AUTHORITIES

**PAGE(S)**

*CCS Fitness Inc. v. Brunswick Corp.*,
  288 F.3d. 1359 (Fed. Cir. 2002) ...................................................................................18

*Chaveriat v. Williams Pipe Line Co.*,
  11 F.3d 1420 (7th Cir. 1993) .......................................................................................16

*Conoco, Inc. v. Energy & Environmental International, L.C.*
  460 F.3d 1349 (Fed. Cir. 2006) ...................................................................................18

*Daiichi Pharma Co. v. Appotex, Inc.*,
  2005 U.S. Dist. LEXIS 26059 (D. N.J. 2005) ..............................................................18

*EZ Dock, Inc. v. Schafer Sys.*,
  2003 WL 1610781 (D. Minn. Mar. 8, 2003) ................................................................14

*Guttman, Inc. v. Kopykake Entersl, Inc.*,
  302 F.3d 1352 (Fed. Cir 2002) ....................................................................................18

*Int'l Rectifier Corp. v IXYS Corp.*,
  361 F.3d 1363 (Fed. Cir. 2004) ................................................................................. 3-5

*Konstantinidis v. Chen,*
  626 F.2d 933 (D.C. Cir.1980) ......................................................................................16

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................3, 5

*Ryan Operations, GP  v. Santiam Midwest Lumber Co.*,
  81 F.3d 355 (3rd Cir. 1995) .....................................................................................16, 17

*Terlep v. Brinkmann Corp.*,
  418 F.3d 1379 (Fed. Cir. 2005) ................................................................................. 3-5

*Total Petroleum, Inc. v. Davis*,
  822 F.2d 734 (8th Cir.1987) ........................................................................................16

*Warner Lambert Co. v. Teva Pharms. USA, Inc.*,
  2006 U.S. Dist. LEXIS (D. N. J.  2005) .......................................................................18

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .....................................................................................19

## I.    __INTRODUCTION__

SM is incorrect in arguing that SST is trying to reopen the *Markman* proceedings.   SST takes no issue with the Court's use of "standardized" in the November 13 Opinion to refer back to the "must be standard" language in the '328 patent.   Nor does SST seek to reargue the Court's holding, that the claimed "goods and services" include that limitation.   However, the Court is now called upon to determine what the November 13 Opinion means by "standardized" – or equivalently, what the '328 patent means by "standard goods and services".   Neither issue was disputed, litigated, or considered, as they only first arose when SM sought summary judgment by attempting to divest ***this Court's*** use of the term standardized from the underlying '328 ***specification*** disclaimer language upon which it was exclusively based.   Nobody is rearguing that whatever the Court meant by standardized in the November 13 Opinion, this Court's holding that the claimed goods and services are so limited is now final and binding law of the case.[1]

We do know that the Court based its ruling of "standardized" exclusively on the phrase "must be standard items", so the latter phrase, was clearly meant by this Court to refer to the former phrase.   Therefore, SST believes that this Court's task now is to determine what the phrase "standard goods and services" means in the '328 patent, and then attribute that meaning to this Court's use of standardized in the November 13 Opinion.   Such a procedure is in accordance with a plethora of Federal Circuit precedent discussed herein.

SM, in support of its position on this new dispute over language in the '328 ***specification***, offers no definition of either term, nor does it dispute the fact that the terms "standard" and "standardize" have two different meanings.   It simply urges the Court to treat the two words as one.

---

[1] Subject of course, to any right of appeal.

SM's remaining arguments render the "must be standard items" statement blatantly false, and exclude further preferred embodiments of the '328 patent.  Finally, SM is estopped from taking the position it argues here.  Accordingly, this Court should deny SM's motion and grant that of SST.

## II.    <u>ARGUMENT</u>[2]

### A.    SM Offers Standard Home Services and Has Even Admitted So

Extracting out the text from the '328 patent concerning services only, without the goods, perhaps most clearly shows the error in SM's position:

> The programming….would include information sufficient for network members to identify standard**….**services that they wish to identify in a request for quotation. To this end preprogrammed menu information is provided to classify…services in categories broken down by functional class and subclass…as they are commercially known and identified. Such menus are readily upgraded to include new and revised commercially available…services from the…suppliers of such…services. (Emphasis added)('328 patent, col. 4).

The foregoing refers to "standard…services" as "commercially available…services", and does not clearly and unambiguously disclaim roofing or plumbing services simply because the contractor may review the jobsite before quoting on the services.     SM itself admits that its services are standard services.  Its own corporate documents - in plain indisputable black and white – announce that SM services are **"Standard Home Services"** (Reply Ex. A)[3]

---

[2] Reply Ex. _____ refers to the Exhibits included in the declaration submitted herewith.  Opening Ex. __ refers to the Exhibits submitted with SST's Opening Memorandum in Support of its Motion for Summary Judgment.

[3] SM's citation to car rental services or courier services as standardized because "they do not vary based upon the subjective desires and circumstances of the particular buyer" is confusing.  Rental charges vary depending upon the amount of driving done, whether the car is returned to a different airport, if the user comes back late, etc.  In fact, when renting a car, if a user said that he was not sure what time he was going to return it, but it might be two or

**B.    SM's Definitional Position is Precisely What the Federal Circuit has Repeatedly Rejected**

SM does not dispute that the terms "standard" and "standardize" have two different meanings.  The dictionary lists them entirely separately, and shows different definitions.  Nor does SM rebut in any manner the detailed explanation in SST's moving brief showing how the words were used differently throughout the '328 patent.  Instead, offering no definitions of its own, SM all but admits that it wants this Court to just disregard the distinction between the words:  In *Int'l Rectifier Corp. v IXYS Corp.*, 361 F.3d 1363 (Fed. Cir. 2004) the Federal Circuit reversed the trial Court for doing precisely that:

> The dictionary definition cited by the district court, when examined carefully, not only defines "adjoining," but further, makes an express distinction between "adjoining" and "adjacent."…By resorting to the dictionary to determine the ordinary and customary meaning of the claim term, the district court was not free to disregard this usage note…. However, in this case, the district court's adoption of a definition attributed to "adjacent,"…disregards entirely the distinction between the two terms set forth in the usage note.  ***Had the inventor meant "adjacent," he could have used that word.***

(Emphasis added) *Id.,* at 1374.

Similarly, in *Terlep v. Brinkmann Corp.*  418 F.3d 1379 (Fed. Cir. 2005), the Court again noted the importance of respecting distinctions between similar words:

> The definition also sets forth an express distinction between transparent and translucent:  "transparent stresses complete absence of obstruction to vision" and "translucent applies to that which permits passage of light but bars clear and complete vision."  *Id.* ***The distinction between these synonyms cannot be ignored.***  *See Int'l Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363, 1374 (2004)…Here, the district court "attached appropriate weight" to the dictionary definitions in the context of the intrinsic evidence in reaching its construction of the claim term "clear."  *Phillips,* 415 F.3d at 1324. (Emphasis added)

---

three days, SM would claim the service is not standard, because the user requesting a quote would not have given the rental company enough to provide a quote.  The other services SM cites all have the same variances.

The requirement to respect the distinction in meaning is even more compelling in the present case than in the foregoing cases.  First, in *Terlap* and *Int'l Rectifier Corp.*, the two words were synonyms, but there was merely a usage note explaining different usages.  Here, standard and standardize are not even synonyms.  Second, unlike *Terlap* and *Int'l Rectifier*, the other word standardize with which SM seeks to confuse standard is actually used in the '328 patent two times, yet both times it is used to convey a meaning that is clearly different from that of standard.  SM invites clear reversible error when it asks this Court to simply treat both words as if they were the same – without any justification whatsoever.[4]

### C.    No Definition of Standard Supports SM's Position

SM's position on "standard" has one very fundamental flaw:   no definition of standard that SST could locate supports it.   First, the most respected thesaurus SST could locate lists the synonyms of standard as:  common, customary, established, garden variety, general, normal, popular, recognized, typical, usual, vanilla, and several others.  (Reply Ex. B)   This certainly explains SM's failure to cite any authority in support of its position.

Additionally, six different definitions of the adjective "standard" that SST could locate include:  1) Serving as a basis of weight, measure, value, comparison, or judgment; 2) of recognized excellence or established authority; 3) usual, common, or customary, 4) manual, not electric or automatic, 5) conforming in pronunciation, grammar, vocabulary, etc. to the usage of most educated native speakers, and 6) authorized or approved. (Opening Ex. E).   If one replaces each use of the term standard with definition 3 above -  usual, common or customary -  it makes

perfect sense in *all* of the four places in the '328 patent.  Every other one of the foregoing definitions leads to nonsense.  ('328 patent, Col. 1, lines 49-50, col. 2, line 45, col. 3, line 63, Col. 4, line 66- col. 5, line 1).   SM offers no definition at all.

This Court's use of the term standardized in a slightly different manner, while perfectly acceptable in the context of this litigation for the parties and the Court to litigate the issue of whether or not the phrase "must be standard items" was a limitation of the claimed goods and services, provides no basis to treat two different words - with two different meanings – as if they were the same word.  Accordingly, SM's motion, to the extent based upon the standardization issue, must be denied.[5]


### D.        SM's Reading of the Phrase in Issue Would Make it Blatantly False

SM asserts that "While an order for 5000 "Type J" resistors will not cause any confusion for suppliers who stock *the* item, home improvement services simply do not work that way." (Emphasis added)  Type J resistors however, are not *an* item.  Instead, it merely represents how accurate a resistor's resistance value is.  We respectfully refer the Court to the Dowling Declaration and supporting materials filed herewith, whereby Dr. Dowling, a PhD in electrical engineering, describes in detail the large number of parameters of a type J resistor, and how there are literally an infinite number of type J resistors that can be described.   (Reply Ex. C)

Specifying a Type J resistor is no different from specifying a wood frame building as opposed to steel.  There can be millions of variations.  SM's assertion that the use of Type J

---

[4] *Terlap* was decided after *Phillips v. AWH Corp* 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit's landmark *en banc* decision on claim construction.  *Terlap*'s citation to *Phillips* and *Int'l Rectifier* with approval clearly indicates that the foregoing cases accurately represent the present state of the law.
[5] A definition of standardize, as opposed to standard, is attached hereto as Reply Ex. D.  In SST's Opening Brief, we pointed out how SM's goods and services are even standardized – GFI outlets, 220 volt electrical services, 40 gallon water heaters.  SM does not respond at all.

resistors demonstrates the use of "standard items to avoid confusion" because such a designation will uniquely indicate "the item" that the consumer wishes to purchase in incorrect. That reading of the phrase in issue would make it blatantly false, because ordering a type J resistor would not in any way uniquely identify the product desired any more than telling a builder to build a wood house would specify the exact desired house. The Court should not assume the '328 patent was making a false statement when the statement can be read in a manner that makes it fully accurate.[6]

### E.    SM's Position on RFQ's Would Require Meaningless Useless Data to be in the RFQ and is Inconsistent With the Exemplary Embodiment of the '328 Patent

To its credit, SM finally admits now, at page 4 of its responsive brief, that its real argument is that "a request for a quotation must be sufficiently detailed to enable a vendor to provide price and other material contractual terms to a buyer". This definition of the term request for quote was never raised during *Markman*, and SST would respectfully request that if the Court is inclined to consider it now, SST be given an opportunity to update its expert report under this new claim construction.

In any event, SM erroneously attributes this new definition to this Court, and at page 14 of its brief, to SST. While SST argued that the request must be for the price and other material contractual terms, SST never argued, and this Court did not rule, that the '328 patent disclaimed any system where further information is gathered before a quote is given. Indeed, SST was fully aware of the SM system operation at the time of the *Markman* hearing, so it would never have

---

[6] Conversely, if wood molding is standardized to come in 3 foot and 6 foot sections, how does it cause "confusion" to write into the "buyer notes" section of the RFQ that is shown in the '328 patent: "I need this custom cut to 4 foot lengths"?

made such an argument against its interest.

The request is *for* the price and other contractually material terms. For example, someone wanting a basement finished or a new roof might ask a contractor to come quote on the job. The consumer typically wants a specific price, schedule, payment plan, etc. and a detailed contract to sign. It does not mean that the consumer's *request* contains everything needed to give that quote, nor is the contractor precluded from viewing the jobsite before quoting. In Fig. 2A the '328 patent, the consumer requests a quote on generic computer monitors, of which there are many types. The consumer does not specify whether he wants a USB interface, high or low resolution, etc. But, the consumer is still seeking a quote that will detail all of the capabilities of the item, and how much each option will cost.

SST does not deny that to prove literal infringement here, SST must prove that the SM contractors are returning to the consumers the price and other contractually material terms of a quote as this Court has construed the term RFQ. However, the idea that the *RFQ must contain* all the details required to give the quote is directly contrary to Fig 5 of the '328 patent, which depicts the one way embodiment of claim 1:



FIG. 5

In accordance with claim 1, the RFQ is received and the buyer's filter conditions, such as the currency he uses, his geographical location, etc., is extracted from the RFQ (501, 502). A search is then performed to locate and properly order the vendors that carry the sub-category of services applicable to the RFQ (503).   Once found, a list of these vendors that meet the buyer's filter criteria is generated, up to a maximum number of such vendors, thereby implementing the claimed network filter also.  (504, 505).   This is the list returned to the buyer, as indicated in claim 1.  The flow chart at Figure 5 essentially mirrors the language of the one way embodiment of the claims, such as claim 1, both in content and order, and SST strongly urges the Court to compare Figure 5 above with claim 1.

Notably, as long as the vendor meets the filter criteria of the buyer listed above at 504

8

(currency type, region by area code, etc.), and sells the sub-category of items requested by the buyer (e.g. water heater installation, as a subcategory of plumbing, or voltmeters or computer monitors as a subcategory of electronics equipment) the vendor can be put on the list that claim 1 returns to the buyer as a list of potential candidates to supply the quote.  The buyer then may follow up with "independent communication".   Importantly, the last item listed in claim 1 is the returned list of vendors.

As shown in Figure 5, all the system or the users *ever use* in the one-way embodiment, claimed in claim 1, is the identification of subcategories and the relevant filter conditions, to route the RFQ to vendors who deal in that type of good or service.  All the remaining specifications of the desired item that SM claims *must* be in the RFQ would not effect the operation of the embodiment of Figures 5 and 6, or the operation of claim 1, one iota.  The flow chart would never look at that data, and indeed, such data would not even by read by the computer in the entire algorithm of Figures 5 and 6 that depicts the claim 1 embodiment. Further, such data would not even be used by the vendors who get the RFQs, because in the one way embodiment recited in claim 1 and shown at Figure 5, buyers call the vendors when they get the list – "independent communications" - or vendors call buyers to discuss the project directly. The only thing the system uses to route the RFQ and make the buyer – seller connection is the subcategory to which the item belongs, and the network and/or buyer filter conditions as shown in Figure 5.

SM's position is that the '328 patent requires – indeed, *mandates* by use of the word "must" – that the RFQ include lots of meaningless and unused information that has no purpose whatsoever, and which is never read or used by the system or the users of that system in the entire operation of the method claimed in claim 1.   Why would such useless information be

9

stated as **mandatory** for the system to properly operate, when the system never uses that data and is totally unaffected whether that data is present or not?   Why would the '328 patent falsely tell readers that they **must** have all the data needed to give the quote, to **ensure** there is no confusion, when that data is never used, does not in any way effect the claimed method **at all,** and thus would do nothing to avoid any confusion? [7]

SST submits that a much more feasible interpretation of the subject language is that, in accordance with ordinary usage – including SM's usage - of the phrase "standard items", the items must be normal and customary goods and services so that users understand what they are reviewing on a computer with no access to a salesperson – painting and landscaping in the case of services, for example, and computer monitors and water heaters in the case of goods.   In the case of SM, the "Standard Home Improvement Services" that SM claims it offers meets this limitation. (Reply Ex. A).   Nothing in the '328 patent clearly and unambiguously disclaims any system wherein the vendor quote includes a jobsite review.   SM's attempt to read this limitation into the claims is incorrect. [8]

SM also critiques SST for arguing that homeowners should be deemed submitting requests for quotes because the homeowner submitting the thing "ultimately wants to receive a quotation".   If a homeowner "wants to receive a quotation" in SM's words,  and is, according to SM, ready to buy something right now, submits a form to the SM system in order to facilitate the contractors providing quotes, just as SM tells them to, how could that not be considered a request for a quote?  For what is it a request?   Moreover, under SM's theory, nobody could ever request

---

[7] SM's position is also inconsistent with the '328's teaching of requesting quotes on generic voltmeters and computer monitors, of which there are thousands of species. ('328 patent, Fig. 2A, and Col 7).
[8] SM notes that the '328 patent does not use the term referral.  This is correct.  However, it is indisputable that claim 1 defines a system that merely finds vendors that sell the relevant product type, selects them based upon filter conditions and their likelihood to respond, and then sends a list of them to the buyer.  SM can call this what it wants, but this is a referral service.

a quote on home services, because as long as the contractor wanted to review the jobsite to assess the situation before quoting, the consumer did not request a quote. This is simply nonsense.

SM also incorrectly claims that any attenuated inquiry would be deemed a request for a quote. But that is not the case. Anyone can search the Internet for bicycles, to see the most modern day bicycles available, without seeking a quote. But SM users' needs are well defined, and they are ready to act, to buy right now. (Opening Ex. D). SM users don't put in attenuated inquiries, they put in requests that are specific, well defined, and which are filtered and sent to contractors, wherein the contractors are instructed that the consumer is ready to buy, and that the contractor should respond with a quote. And the contractors pay for the right to do that, assuming that consumers are in fact ready to buy. (Opening Ex. D). In fact, SM's document state that the consumers have indicated a desire to get the work done or to receive a quote.

Finally, SM's position on the doctrine of equivalents and RFQs misses the point. If the RFQ is deemed to require all terms needed to give the quote, the SST must be given an opportunity to supplement its expert report, because this claim limitation was never in the definition of RFQ, so SST's expert never addressed the equivalents issue. Moreover, if all the remaining limitations are in the SM system, a fact SM does not deny, then sending all but one term in the RFQ, and conveying the last term by phone, would be classic doctrine of equivalents. Suppose the RFQ needs 100 terms to provide a quote. SM can not avoid infringement by sending 99 in the RFQ, and leaving out the last minor term that only affects whether the price is one of two possible selections. In fact, that situation would have less uncertainty then simply asking for a quote on a generic voltmeter, like the '328 patent claims. Accordingly even if this Court were to agree with SM's claim construction arguments, SST must be given an opportunity to update its expert reports in view of a new limitation being applied to the term RFQ.

11

### F.    SM's Position Can Not Be Made Consistent with the '328 Patent

SM asks the Court to accept the idea that the patent owner used two different words with two different meanings interchangeably, told the public that all the details needed to give the quote ***must*** be in the RFQ even though such details are never used in the embodiment of Figure 5, and represented to the public, falsely, that by ordering a Type J resistor, that would convey to vendors the specific product desired, even though there are a virtually infinite number of such Type J resistors.  (Reply Ex. C).   And, to get to such a result, SM requests the Court accept all of this by interpreting standard in a manner that corresponds to no known definition of that word that SST can locate – and which disregards the fact that SM itself characterizes its offerings as "Standard Home Services".

Competing with that is a reading of the subject language that corresponds to a definition of standard that was used consistently throughout the '328 patent, which respects the difference in meaning between two different words, and wherein the patentee merely reminded the system designer, when computer based commerce was in its infancy, that users would be reviewing items from unknown vendors on a computer, and that such users must be clear as to what types goods and services are being offered.   One can hardly imagine how the former reading could possibly be accepted over the latter by any Court of law.  This Court should reject SM's position.[9]

---

[9] SM is incorrect in its statement that properly interpreting standard would negate the Court's claim construction. For example, iPods are today common items, but were first introduced in 2001.  See www.lebanonlinks.com. Undoubtedly, anyone offering something called an iPod in 2001 would be faced with a lot of confused consumers, because the item was not popular or known of, and most people had never heard of it.  Additionally, if PCT National Stage Filing Services were offered on the SM website, it would not be a standard service, because this has to do with a specific type of international patent filing with which many SM users would not be familiar.  The '328 patentee

G.     **SST's Prior Argument During *Markman* Does Not Mandate a Different Result**

1.     **SST Is Not Attempting To Reargue the *Markman* Ruling**

Contrary to SM's assertion, SST is not seeking to reexamine any of the *Markman* rulings. This Court ruled that the goods and services are "standardized ***articles*** of trade and ***performances*** of work for another".  (Emphasis added).  This Court did this by writing an entire Opinion discussing the phrase "The goods and services must be standard items to ensure that there is no confusion…"  (Opening Ex. N, p. 4).

Certainly one can find a definition of "article" that is different from that of goods, but nobody would seriously argue that SST should have approached this Court and complained that the Court was changing the definition of goods to mean articles, such as newspaper articles, or articles of incorporation.  Nor would one argue that SST should have filed a brief urging that the Court should not use the term performances because the '328 patent is not directed to a dramatic play at a theatre.   Similarly, SST takes no exception at all to this Court ruling that the goods and services must be standardized, as long as "standardized" is understood in the context in which this Court used it – to implement its holding that the goods are services must be standard items.

The history of these proceedings make clear that this Court adjudicated only the issue of whether the claim language "goods and services" was limited by the language of col. 3 in the '328 patent.   Nowhere did this Court adjudicate the meaning of that language at col. 3, or the definition applicable to the '328 patent's use of the term standard, or the definition applicable to the Court's use of standardized in the November 13 Opinion.  These are the issues before this

---

was simply advising the system designer to use services and goods that were standard and common so the population to which the system is directed will not be confused as to what the items are.

Court now, not a reargument of the *Markman* proceedings.[10]

### 2.    SST's Prior Argument was Perfectly Appropriate

In  SM's Opening Markman Brief of December 7, 2005, argued as follows:

> [T]he invention of the '328 patent requires that the goods and services be ***standardized***.  As expressly stated in the specification…the goods and services must be ***standard*** items.

SM argued essentially identically in its Reply Markman of December 30, 2005, urging that the '328 patent was limited to standardized goods and services by citing the 'must be standard" language.  (Reply Ex. E, relevant pages attached).  In fact, this Court referenced the argument in its October 16, 2006 Opinion, and noted that for the standardized construction of goods and services, defendants "rely upon the following language…the goods and services must be standard items."

In another claim construction filing on October 30, 2006, SM argued that the '328 patent was limited to ***standardized*** items because:

> [I]t is difficult to imagine a clearer disclaimer and limitation than the statement "the goods and services must be ***standard*** items…..The '328 patent does not say that the goods and services may or could be ***standard***; it says the goods and services must be ***standard***.  Thus, SST's argument…cannot be reconciled with the plain language of the intentional disclaimer….the specification expressly provides that the goods and services <u>must</u> be ***standard*** items…In either case, however, the underlying product – a Type J resistor – is still a ***standard*** good….If the products themselves were not ***standard***, the use of text oriented descriptions would surely give rise to confusion …the underlying goods and services must be

---

[10] SM's citation to *EZ Dock, Inc. v. Schafer Sys.* 2003 WL 1610781 (D.Minn. Mar. 8, 2003) is misplaced.  In that case, the Court granted a motion to preclude a litigant from arguing that the jury should depart from the Court's claim construction.  The Court noted that the jury is not free to re-construe the claims.  Here, SST seeks to preclude SM from obtaining a claim construction by arguing that specific language in the patent specification should limit the claims, and then arguing that the resulting claim limitation means something other than the underlying language upon which it was based.

> *standard* items…nothing in the '328 patent suggests that the invention may cover non-*standard* goods and services. While the patent gives examples of non-standard product descriptions, it never once gives an example of a non-*standard* good or service. For the reasons stated herein…SST's motion for partial reconsideration should be denied.

Reply Ex. E, all emphasis added. Similar representations were made by SM to this Court at the *Markman* hearing. (Tr. March 31, 2006 *Markman* hearing)

Because the only issue being litigated at the time was whether the claim language "goods and services" was limited by the language at col. 3 of the '328 patent, and because SM used standardized consistently to refer to the "must be standard items" language in the '328 patent, SST's counsel simply searched the '328 specification for references to those terms that refuted SM's position, namely, that **the goods and services in the claim** were limited by the language in the specification, and brought them to the attention of the Court. The meaning of neither standard nor standardized was in dispute, so SST had no reason to challenge the use of standardize to refer to standard, or the interchangeability of the two, any more than it would have challenged SM's use of the term "articles" instead of the claim language "goods", or its use of "performances" instead of "services" in the *Markman* ruling.

It was only after the Court held that the subject language was in fact a limitation of the claim, and SM then filed for summary judgment by urging that as a result of the must be standard language, the RFQ must contain everything needed to give the quote, that the definition of the term standard came into issue. SST then realized that SM was attempting to completely divest the Court's use of the term "standardized" from the language upon which that ruling was exclusively based, and this was the first that SST had any reason whatsoever to investigate the definitional difference between the two words. In the *Markman* proceedings, who cared whether it was called standard or standardize, or anything else for that matter, because the

parties and the Court knew full well that the issue in dispute was whether "goods and services" were limited by the language at column 3 of the '328 patent. Accordingly, the fact that the words were used interchangeably in a dispute about the claim term "goods and services" does not mean those two words are interchangeable in a different dispute that goes directly to whether there is a difference in meaning between those two words.

### 3. SM Is Trying to Deflect Attention from its Own Improper Conduct

SM seeks to avoid the merits by pointing to an argument that SST made that appears inconsistent with standard and standardize being different. The Third Circuit discussed this issue at length in *Ryan Operations, GP, v. Santiam Midwest Lumber Co*. 81 F.3d 355 (3rd Cir. 1995). The Court noted that even if the positions are inconsistent, asserting inconsistent positions does not trigger the application of an estoppel unless intentional self-contradiction is used as a means of obtaining unfair advantage. Thus, the doctrine of judicial estoppel does not apply when the prior position was taken without a specific intent to mislead the court. *Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980). An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing. *See Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1428 (7th Cir.1993); *see also Total Petroleum, Inc. v. Davis,* 822 F.2d 734 (8th Cir.1987)(holding that the doctrine only applies to deliberate inconsistencies that are "tantamount to a knowing misrepresentation to or even fraud on the court.").

Here, SST made the prior assertions in an argument about goods and services, before there was any dispute about the difference in meaning, before there was any reason to even investigate the different meanings of the two terms at issue. If anyone is changing positions, demonstrating bad faith towards the Court, or subject to an estoppel, it is SM. SM repeatedly

argued, in more than a dozen places, that the sole basis for limiting the term "goods and services" in the claim to standardized goods and services was the "must be standard items" language at column 3 of the '328 patent. This was the only language in the entire '328 patent specification that SM pointed to in support of its position to limit the "goods and services" to standardized ones.

In fact, when SST pointed to the language at col. 4 of the '328 patent that uses the term *standardize*, SM indicated that that language was not relevant to the Court's claim constructions. (SM Response to SST's Motion for Reconsideration, October 30, 2006 "In the second instance, 'standardization' is used to specify how those standard goods and services may be <u>described</u>. SST's reliance on the sentence in the patent relating to [standardized] product descriptions only confirms that the underlying goods and services *must be standard items*". (Emphasis added) SM is now arguing, "I fooled you because you did not realize that when I told you to limit the claim based upon this language, I really changed that language and you didn't notice it"

In short, to permit SM to achieve a narrowing claim limitation by successfully urging that specific language from the specification limits the claims, and then later attempt to totally divorce the claim limitation from the very specification language upon which it was exclusively based, is precisely the type of "fast and loose" playing with the Court that is prohibited. SM must now be estopped from arguing that the phrase standardized in this Court's *Markman* ruling means something other than the "must be standard" language in the '328 patent upon which it was exclusively based. *Ryan Operations, GP. Supra.*

All the Court ruled in the *Markman* proceedings was that the phrase "goods and services" in the claim is defined by the '328 specification's statement "must be standard items." Now, the Court must refine that definition because present dispute involves this Court determining the

meaning of the "must be standard" language, and then attributing that meaning to ***the Court's*** use of standardize in the November 13 Opinion. This procedure is in full accord with what the Federal Circuit has repeatedly deemed proper and indeed required. *Conoco, Inc. v. Energy & Environmental International, L.C.* 460 F.3d 1349 (Fed. Cir. 2006) ("We have recognized that district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves"); see also *Guttman, Inc. v. Kopykake Entersl, Inc.*, 302 F.3d 1352 (Fed. Cir 2002) (citing numerous other cases). The distinction between the two terms has just arisen, and should be adjudicated on the merits. [11]

### H.    SST's Motion for Summary Judgment Should Be Granted

SM presents only two arguments in opposition to SST's Motion for Summary Judgment. The first is that SST has failed to provide evidence of many of the claim limitations. However, the interrogatory response SM provided (Opening Ex. H) was intended precisely to narrow down the issues in dispute. SM provided that response in January, 2007, and SST addressed in its motion papers all of the non-infringement defenses SM asserted.

If SM has any other non-infringement defenses that it has not yet put forth, they are precluded at this point, because SST's expert served an infringement report months ago, relying upon the SM responses provided at Opening Ex. H. *Warner Lambert Co. v. Teva Pharms. USA, Inc.*, 2006 U.S. Dist. LEXIS (D. N. J. 2005)(Debevoise J); *Daiichi Pharma Co. v. Appotex, Inc*. 2005 U.S. Dist. LEXIS 26059 (D. N.J. 2005)(Both precluding infringement defenses when not

---

[11] The fact that SST initially opposed the "standardized" requirement would preserve the present issue for appeal. *CCS Fitness Inc. v. Brunswick Corp.* 288 F.3d. 1359 (Fed. Cir. 2002). On the other hand, SM's present assertion, that the RFQ must contain everything needed to give the quote, and that the patentee disclaimed any system wherein the returned quote is based on anything outside the RFQ, was never put forth by SM in the *Markman*.

disclosed in response to interrogatories requesting same).

Even if they were not precluded, SM could have, and should have, put in a declaration from an expert in response to SST's motion, rather than just telling the Court that its expert will come up with something later. Had SST known that SM was going to take the position that its updated discovery responses from January 2007 were meaningless, SST could have, and would have, put in a claim chart showing the infringement step by step through the claims. Instead, SST took the response as asserting all non-infringement defenses, because that is what the question asked.[12]

Second, SM asserts that the language "a party representing a buyer or supplier of goods or services" is either vague or requires an agent to operate the computer. The term represent is defined in the '328 patent, which means that this Court may not consider SM's conflicting expert declaration. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

At that bottom of column 7 of the '328 patent, it is discussed that the same entity may **be** (i.e.; represent) a buyer or a seller. While SM takes issue with the use of the term represent to describe this, the '328 patent in fact uses the term represent just this way – in two places. See col. 3, line 32 ("FIG. 2 shows a block diagram representing how a buyer interacts with the computerized system…); Col. 5, lines 15-16, ("The buyer and vendor filters may represent in their simplest form defined classes…..). Thus, it stands to reason that the inventor used that term consistently. Nothing in the '328 patent even remotely suggests that users must have an agent to use their computers.

## III.    <u>CONCLUSION</u>

---

[12] Because of the present unusual briefing schedule, there is only one day to file a reply, and no time to do that now. However, the evidence submitted with SST's Opening brief shows each and every claim limitation, and SST is happy to point to the Court to specific evidence at oral argument, or to supplement this filing with a short, two page chart, showing each and every claim limitation, and a citation to SM material showing it being practiced.

The Court should grant SST's Motion for Summary Judgment and deny that of SM.

Respectfully submitted,

KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

Dated: April 6 , 2007          By:     s/Jeffrey I. Kaplan/
                                    Jeffrey I. Kaplan (JK 4706)