UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------X
                                                      :
Source Search Technologies, LLC,                      :
                                                      :
        Plaintiff,                            :   Civil Action No. 2:04-CV-4420 (DRD)
                                                      :
      v.                                      :
                                                      :
LendingTree, Inc., Service Magic Inc. and:
IAC InterActiveCorp,                                  :
                                                      :
        Defendants.                           :
------------------------------------------------------X

**PLAINTIFF SOURCE SEARCH TECHNOLOGIES, LLC'S ("SST")
RESPONSE TO SERVICEMAGIC'S MOTION FOR RECONSIDERATION**

**I.   Introduction**

    ServiceMagic's ("SM") motion for reconsideration must be denied. SM seeks to reargue issues that were briefed, argued, and fully considered previously, and in fact, its memorandum clearly so admits.  The items SM claims this Court "overlooked" were actually cited by this Court in the May 2 Opinion on Summary Judgment ("SJ Opinion").  Thus, the narrow standard for reconsideration has not been met.  In any event, SM is incorrect on the merits, so even if the Court improperly granted reconsideration to reargue the same issues, the result would be the same.   Finally, pursuant to 28 USC 1927, which has no cure period such as that provided by Rule 11, SST is clearly entitled to its costs and fees in connection with responding to this motion.

**II.   The Standard to Reconsider is A Narrow One**

    A motion for reconsideration must (1) point out the controlling facts or dispositive case law that the Court necessarily overlooked in rendering the decision, and (2) concisely specify the

suspect aspects of the Court's opinion with all due particularity. *Ciba-Geigy Corp. v. Alza Corp.,* No. 91-5286, 1993 WL 90412, at 2-3 (D.N.J. Mar.25, 1993). Such a motion is not to be used to simply reargue the same issues already rejected, or to voice disagreement with the Court's decision on the merits. *Auerbach v. Kantor-Curley Ped. Assocs.,* No. 01-854, 2004 WL 3037943, at *1 (E.D.Pa. Dec.30, 2004).

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. *U.S. v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J.1999). In the District of New Jersey, however, L. Civ. R. 7.1(g) governs motions for reconsideration. *Bowers v. Nat'l. Collegiate Athletics Ass'n.*, 130 F.Supp.2d 610, 612 (D.N.J.2001). L. Civ. R. 7.1(g) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion. L. Civ. R. 7.1(g). See *NL Industries, Inc. v. Commercial Union Ins.*, 935 F.Supp. 513, 515 (D.N.J.1996).

The standard for reconsideration is high and reconsideration is to be granted only sparingly. See *U.S. v. Jones*, 158 F.R.D. 309, 314 (D.N.J.1994). The moving party has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citation omitted).

The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. *Compaction Sys. Corp.*, 88 F.Supp.2d at 345; see also L. Civ. R. 7.1(g). "The word 'overlooked' is the operative term in the Rule." *Bowers*, 130 F.Supp.2d at 612 (citation omitted); see also *Compaction Sys. Corp.*, 88 F.Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. See *SPIRG v. Monsanto Co.*, 727 F.Supp. 876, 878 (D.N.J.), aff 'd, 891 F.2d 283 (3d Cir.1989). Thus, reconsideration is not to be used as a means of expanding the record. *Bowers*, 130 F.Supp.2d at 613; *Resorts Int'l. v. Greate Bay Hotel and Casino, Inc.*, 830 F.Supp. 826, 831 & n. 3 (D.N.J.1992); *Egloff v. N.J. Air Nat'l. Guard*, 684 F.Supp. 1275, 1279 (D.N.J.1988).

Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision. See *Resorts Int'l*, 830 F.Supp. at 831 n. 3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing. See *Levinson v. Regal Ware, Inc.*, 1989 WL 205724 at 3 (D.N.J. Dec. 1, 1989).

Moreover, L. Civ. R. 7.1(g) does not allow parties to restate arguments which the court has already considered. See *G-69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J.1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. *Bowers*, 130 F.Supp.2d at 612 (citations omitted); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J.1988); see also *Chicosky v. Presbyterian Medical Ctr.*, 979 F.Supp. 316, 318 (D.N.J.1997); *NL Industries, Inc. v. Commercial Union Ins. Co.*, 935 F.Supp. 513, 516 (D.N.J.1996) ("Reconsideration motions ... may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.*, 16 F.Supp.2d

3

511, 533 (D.N.J.1998) (citation omitted).

### III.    There are No Grounds to Reconsider This Court's RFQ Ruling

Far from "overlooking" the fact that a request for quote is a request for the price and other terms of a transaction, this Court *explicitly cited that definition* and specifically noted that the quote includes the price. (SJ Opinion, p. 22). In fact, at pp. 20-22 of the SJ Opinion, this Court cited much of the evidence SST submitted - which was unrebutted by SM - indicating that the consumers were ready to buy and were seeking proposed contracts and offers, with price and other terms, from the contractors. Accordingly, the standard for reconsideration has not been met, as the Court did not overlook the very items that the Court cited in its Opinion.

On the merits, Ex. D to the March 20 Kaplan Declaration contained a plethora of SM statements and documents indicating that its consumers were seeking and would receive quotes – the price and other terms of a transaction. As pointed out in SST's March 20 Memorandum in Support, pp. 8-11, SM advises that consumers are "ready to buy, right now!", that contractors should "quote on the repair" because the consumer, by using the SM website, has indicated their desire for "getting this work done (or receiving an estimate, depending upon the type of work) and thus you should approach the call presuming the scheduling of the work or the bid". Consumers are even advised to ensure that the contractor responses include "a detailed description of the work…dollar amounts associated with each task…" Of course consumers are seeking a price if SM tells them to ensure the responses they get include the price.

At pages 13-17 of its responsive brief filed on April 5, SM fully responded to SST's argument that consumers were submitting RFQs. In fact, in those five pages, SM specifically argued about the price term, and attempted to refute SST's assertion that an RFQ need not have

4

everything in it that was needed to give the quote. Further, in its moving papers filed February 22, SM argued that "In order for the prospective contractor to understand the project's scope and therefore price it, further information must be obtained…." (SM Brief in Support, Feb. 22, 2007, p. 13).

Thus, the Court considered the issue in detail, cited the parties' arguments and counterarguments, and resolved the dispute adversely to SM. The Court did not overlook the fact that a quote includes a price. SM simply seeks to reargue the same issue, and thus, its motion must be denied.[1]

### IV.     There is No Basis to Reconsider the Standard Issue

SM argues that is was somehow prejudiced by the Court "changing" claim constructions. This is incorrect.

The claims do not contain the term standard or standardized, and those terms were never construed in the *Markman*. The claims merely recite "goods and services". In the *Markman* briefing, SM argued that those goods and services were limited by the '328 patent specification language "The goods and services must be standard items…" As pointed out in SST's reply brief of April 6, SM had argued – more than a dozen times – that the sole basis for limiting the claimed "goods and services" was SM's repeated citations to the specification language "The goods and services must be standard items…"

If the Court had not fixed what everyone knew was a typographical error in the

---

[1] In any event, the argument would be just as wrong as it was the first time SM presented it. SM has still failed to answer the simple question: For what are consumers using the SM website looking if not a quote to perform the requested services? The detailed information input by users is required to assist contractors to price out the job.

*Markman*, and had instead left it as is, the Court's use of standardized in the *Markman* ruling would still have had to be interpreted in the present summary judgment motion. Indeed, the entire basis of SM's summary judgment motion was that the Court's use of standardized meant the RFQ had to contain everything needed to give the quote. (See SM's Opening and Reply briefs in Support). As the "must be standard items" language was the only thing upon which the "standardized" limitation was based - SM argued so more than 12 times and prevailed during *Markman* – the summary judgment opinion would have inevitably required interpretation of the "must be standard items" language, in order to determine what limitation was really added to the claims when that language was deemed a required limitation. SM could not seriously have claimed that the Court's use of "standardized" meant anything other than the "must be standard items" upon which it was exclusively based.

Thus, even if the Court had left the "standardized" language in the *Markman*, the summary judgment motions would still have required interpretation of the "must be standard items" language, and SM can hardly claim surprise that the language SM itself argued as the only basis for the claim limitation it achieved was held to be the relevant language that limited the claim. Thus, whether the Court construed its own use of standardize to mean "must be standard items", or whether the Court simply replaced the language directly in the *Markman*, the result would have been the same – summary judgment would have required this Court to interpret the meaning of "must be standard items."[2]

---

[2] In fact, if SM really did believe that standardized was different from standard, and that the SJ Opinion thus changed the *Markman* ruling, then SM was playing "bait and switch" with the Court by citing the "must be standard" language repeatedly during *Markman*, in an attempt to achieve the different "standardized" claim limitation that it knew was not justified by the language upon which it was relying. SST certainly does not believe that SM's prior counsel, a respected intellectual property litigator with a flawless record, did this. Instead, it is clear that all parties, and the Court, were fully aware that the "must be standard items" was the specification language that was deemed a claim limitation. Thus, even the Court's initial use of standardized

As a further reason that SM can not claim surprise, SST's March 20 summary judgment brief, at FN 1, SST specifically called to the Court's and SM's attention the fact that the parties now disputed that *specification* language that had been read into the claims, and that the Court would be called upon - for the first and only time - to construe the *specification* language "must be standard items".  SST asserted and then briefed its definition of the "must be standard" language.  SM then actually cited to the patent specification and argued its own definition.  (SM reply brief of April 5, p. 8).  SM further argued that the "must be standard' language excluded any services that required jobsite review before quoting.  SM Brief in Support, February 22, 2007.  At oral argument, this Court again specifically asked SM about the phrase in issue, and SM responded.

Thus, SM had a full and fair opportunity to brief its understanding of the phrase "must be standard items" – *the same first and only opportunity to do so that SST had.* SM was on notice that the definition of that phrase was in dispute, it was in possession of SST's position concerning that definition, and it had a full opportunity to present a brief responding to SST's assertions – *and it did*.  Nothing was overlooked, all parties knew the phrase "must be standard items" was in dispute, and no party was denied any opportunity to fully present its position on the issue.

SM's present motion for reconsideration simply asks the Court for permission to reargue the issue, probably because SM's recently engaged new counsel – who signed the reconsideration brief but who neither signed nor argued the original motion for summary judgment - may have other ideas about how the summary judgment motion should have been

---

was clearly referring to the "must be standard items" language, and SM had no reason to believe otherwise.

7

handled. While we respect the advocacy and effort, this is not grounds for reconsideration.[3]

### V. The Court Should Not Reconsider its Decision Concerning Represent

SM's assertion that the Court should permit further briefing on "represent" is without merit. After SST put forth its definition of the term "Represent", SM fully opposed it. In fact, this Court's SJ opinion actually reiterated and considered SM's definition of the term "represent". SJ Opinion, at p. 25-26. SM even submitted a declaration of an expert witness, which refuted SST's definition of "represent". (Declaration of Dr. Scacchi, filed April 5, 2007). SM can not claim that anything was overlooked in this regard, or that its arguments were not considered. Again, both SST and SM had the same first and only opportunity to brief the definition of "represent".

On the merits, the argument makes no sense. Given the '328 patent's use of the term represent in two other places, there is no basis to believe that the patentee somehow changed meanings when he used that term in claim 3. SJ Opinion, pp. 25-26. If there was such a basis, it would have, and should have, been presented by SM in opposing SST's definition of represent. A new argument in support of one's position does not constitute proper grounds for reconsideration.

---

[3] If SM thought a different definition of standard was more appropriate based upon the file history, as it claims now, it could have and should have argued it in the underlying summary judgment motion. In fact, the entire patent file was already of record, as it had been submitted in connection with the *Markman* proceedings. SM, by urging that it wishes to re-argue the definition of standard that it extensively argued, fully admits that its reconsideration motion must be denied because it seeks to expand the record with new argument about the definition of the term standard, all of which could have and should have been previously presented when SM did present its argument concerning the phrase at issue.

**VI.    Conclusion**

The Court should deny SM's request for reconsideration. Given SM's clear admission that it wishes to reargue all of the exact same arguments that were previously presented, SM clearly was fully aware that there was absolutely no basis in fact or law for the reconsideration motion. Indeed, the motion alleges that the Court overlooked that which the Court cited in its own Opinion. This makes absolutely no sense.

The reconsideration motion needlessly multiplied these proceedings, and SM has used the pendency of it to seek more delay of the schedule before Magistrate Judge Salas. Pursuant to 28 USC 1927 therefore, SST respectfully requests that it be awarded its reasonable fees in responding to a baseless reconsideration motion.[4]

                                Respectfully submitted,

                                KAPLAN GILMAN GIBSON & DERNIER LLP
                                900 Route 9 North
                                Woodbridge, NJ  07095
                                Telephone (732) 634-7634
                                Facsimile (732) 634-6887

Dated: May 16, 2007                By:   s/Jeffrey I. Kaplan/
                                                 Jeffrey I. Kaplan (JK 4706)
                                                 Michael R. Gilman (MG 7608 *pro hac vice*)
                                                 *Attorneys for Plaintiff*

---

[4] SM also claims that the fact that other affiliates of SM are in this lawsuit argues in favor of reconsideration. First, those affiliates, as parties to the case, were served with all papers filed on the summary judgment motions, were on full notice of the dispute, and were more than welcome to submit papers if they believed they were at risk of suffering an adverse interpretation of the patent. They didn't - and for good reason. They are all represented by the same lawyers. It's not as if those lawyers had a better argument then that which they made for SM. Second, those parties all prevailed in the *Markman* proceeding by achieving a narrowing limitation of the claimed "goods and services" by arguing for the "must be standard" language limited the claims. They can hardly now argue that the claim limitation means anything other than the "must be standard" language. And third, if the Court wishes to give those parties an opportunity to separately argue the issue, undoubtedly it can do so without reopening the motion against SM, who ***did*** fully argue its interpretation of the relevant phrases.

10