UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------X
:
Source Search Technologies, LLC,           :
:
              Plaintiff,           :      Civil Action No. 2:04-CV-4420 (DRD)
:
     v.           :
:
LendingTree, LLC, ServiceMagic Inc.  and   :
IAC InterActiveCorp,           :
:
              Defendants.           :
---------------------------------------------------------X

**PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S ("SST")
MOTION TO FILE SURREPLY AND SURREPLY ON THE INFRINGEMENT ISSUE**

On behalf of plaintiff Source Search Technologies, LLC ("SST"), and in connection with the parties presently pending cross motions for summary judgment, we respectfully request the Court grant leave to file this surreply, directed <u>only</u> to new issues improperly raised in defendants' reply brief, and to submit evidence that became available <u>only after</u> SST's briefs were filed.

    **A.**    **LT's New Assertions on Goods and Services are Without Merit**

LT inaccurately, and for the first time on reply, advises the Court that SST is raising issues about "goods and services" that were not disclosed in discovery, even though this should have been asserted in LT's original opposition.  SST clearly maintained throughout discovery that lenders on the LT network provide the claimed goods or services.   For example, SST provided a detailed claim chart in discovery that cited the claim 12 limitation of identifying "a set of sellers **potentially capable of supplying said goods or services**",  and alleged that this limitation was met because "The Lendingtree system [identifies] **which banks are potentially**

**capable of lending the money**." (emphasis added). SST also noted that a user obtains "quotes on a mortgage or other standard good or service" from the LT website. See Esteves Dec. of September 17, 2007 Ex. E, pp. 3, 5, 7, claim charts for claims 1, 3, and 12. LT then responded with its own updated interrogatory response, claiming non-infringement on the grounds that loans are neither goods nor services. (Op. Ex. G, p. attached to Kaplan Decl. of June 29, 2007, pp. 10, 18). Thus, the issue of whether the lending services offered by the banks were within the '328's definition of goods and services was fully joined during discovery.

On the merits, LT also argues for the first time on reply that insurance is described as a good or service in the background portion of the '328 specification, and therefore is not relevant to the claimed invention. However, the background portion describes two prior art systems for obtaining quotes on standard goods and services and notes numerous disadvantages with such systems. ('328 patent, col. 1, line 49-50, cols. 1-2, generally). The "Summary of the Invention", and the remainder of the '328 patent, describe a <u>better way of obtaining quotes for</u> the exact same goods and services. At col., 3, lines 60-62, the '328 patent even notes that an advantage of the invention is that "standard" goods and services – the same "standard goods and services" referenced in the prior art description at col. 1, lines 49-50 – can be advantageously sold without a prior art central database. Nothing in the '328 patent indicates that the patent owner intended to change the definition of the goods and services being procured.

To accept the notion that the provision of money to purchase a home is not a good or service would in fact require this Court to accept the idea that insurance – the provision of money in the event of a specified loss - is not a good or service either. This 1) excludes the exemplary good or service in the '328 patent specification, 2) defines "goods and services" in a manner that is in conflict with the intrinsic record, and 3) amounts to a clear and unambiguous

2

disclaimer of financial services from the term "services", even though no such disclaimer exists in the '328 specification. These positions should be rejected, because <u>each one</u> constitutes a separate and independent reversible error. [1, 2, 3]

### B. LT's Assertions Concerning the Term "Purchasing" are Without Merit

LT also raises, for the first time on reply, the new argument that the claims themselves make clear that the purchase must be "completed" online, citing for support some specification language that it also did not cite for support in its opposition. These assertions are new, directed to issues that were fully framed in our opening brief, and should have been addressed in LT's opposition. Thus, we request the Court consider the following. The claim steps in claim 12 recite:

> communicating, over said data network, to a filter means, at least one request for a quotation from a ***potential*** buyer of said goods or services; filtering, at said filter means, the at least one request in order to ascertain a set of sellers potentially capable of supplying said goods or services; and obtaining, from at least one of said potential sellers, over a data network, quotes to supply said goods or services, and forwarding said quotes to said ***potential*** buyer, wherein at least part of the quote information is stored at a location remote from said filter means. (Emphasis added)

If the preamble term "purchasing" were used to read into the claim a requirement that the purchase be completed over the data network, then the term "potential" buyer used in the claim

---

[1] *Dow Chemical Company v. Sumitomo Chemical Company, Ltd*, 257 F.3d 1364 (Fed. Cir. 2001)*; Pfizer v. Teva Pharmaceuticals,* 429 F.3d 1364. (Fed. Cir. 2005) (Incorrect to adopt a definition of a claim phrase that excludes the preferred embodiment)

[2] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996) (If the intrinsic record defines a claim term, it is reversible error to look to extrinsic conflicting definition)

[3] *Fuji Photo Film, Ltd. v. ITC*, 386 F.3d 1095 (Fed. Cir. 2004) (Reversing claim construction that excluded embodiment not disclosed in the specification, and holding that the proper question is not whether the specification discloses the embodiment literally covered by the claim, but whether the specification clearly disclaims that embodiment.)

3

body would be read *out of* the claim.  Every buyer would have to be an actual buyer, not a potential buyer.  Actual is *the opposite* of potential, which means "possible, as opposed to actual".  www.dictionary.com.

Claim 12 recites a method that obtains quotes for a *potential* buyer.  The last step of claim 12 requires only that the quotes are forwarded to a potential buyer, and the method is fully complete, and the claim infringed, once those quotes are forwarded to the potential buyer.   The preamble merely suggests a use, namely, that the potential buyer *may* become an actual buyer *if* she uses the method to actually then purchase the offered items.   However, the same quotes are forwarded to the same potential buyer, and the claim language is fully met, whether she becomes an actual buyer or not.  This is consistent with purchasing being a suggested use, not a limitation.  Thus, like *Bristol Myers Squibb Company v. Ben Venue Laboratories, Inc.* 246 F.3d 1368 (Fed. Cir. 2001), "The steps of the…method [shown above] are performed the same way regardless of whether or not the ~~patient experiences a reduction in hematologic toxicity~~ [consumer completes any purchase on the data network]."  Thus, contrary to LT's assertion, the use of the term potential does not "make clear" that the purchase must be completed over the data network, but instead, makes clear that there might not be a completed purchase over the data network – or at all.

Second, purchase means "To acquire by the payment of money or its equivalent" (LT Opp'n Br. August 13, 2007, p. 26).[4]  A user executing the online purchase described at col. 6, lines 12-24 of the '328 patent, would finish utilizing the '328 method of purchasing, and walk away from his computer without having paid the money to the seller, and without having acquired the goods or services.   This is because that text notes that the purchase is *conditioned* upon *numerous* future events that take place after use of the method, and totally outside of the

---

[4] For purposes of this motion, we accept LT's definition of purchase.

4

data network. The vendor is not to be paid the money unless a shipper, days or weeks later, verifies to a credit company ("directly", e.g.; by telephone) that the goods are later delivered to the buyer without damage by a trucker. Moreover, the vendor will not even ship the goods unless it later verifies the buyer's credit through an additional process, the same thing LT lenders do. *Id,* col. 6.

Regardless of extrinsic definitions of purchase, the '328 patent describes, as an example of a purchase over a data network, a transaction wherein the offer and acceptance occurs on line, but the actual exchange of money and acquisition of the goods by the buyer may take place outside of the data network. The actual completion of the purchase – which LT claims must occur online - is accomplished using good old trucking companies such as "UPS Ground", as noted in Figure 8 of the '328 patent, days later, and shippers that call a credit company on the phone to request release of payment. *Id.*

There is <u>no embodiment in the '328 patent</u> where the money is paid and title to the goods or services is acquired – i.e.; the purchase completed - without further activity and future conditions outside of the data network, and after the methodology of claim 12 is completed. Instead, <u>every single example</u> in the '328 patent is to the contrary, requiring this additional activity. This intrinsic definition ends the issue. It would be error to adopt an interpretation of claim 12 that excludes all the disclosed embodiments and covers only embodiments not disclosed in the specification. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996)

In the LT system, the buyer clicks to "accept" a quote having conditions, and once the conditions are met, (proof of income, credit verification, etc), the lender is legally obligated to deliver the funds (Op. Ex. W, Kaplan Dec. of June 29, pp. '538, '653, '627). As pointed out in

our opening brief, LT is collaterally estopped from arguing that the consumer's interaction with the LT website does not constitute offer and acceptance. That methodology is described as a purchase at col. 6 of the '328 patent. Therefore, the Court need not reach the issue of whether the preamble is a limitation of claim 12, because LT meets the language even if it were erroneously deemed part of the claim.[5]

LT's next newly raised argument is to mischaracterize SST's position as "a preamble can be a limitation only if each and every word of the preamble is found in the body of the claim." Quite the contrary, SST believes precedent is clear that a preamble phrase can be a limitation of the claim even if other parts of the preamble are not found in the body. *Bell Communications Research, Inc. v. Vitalink Communications Corporation, Inc*, 55 F.3d 615 (Fed. Cir. 1995), cited by defendants themselves, is such a case. This is precisely why all of the precedent cited by both parties – **without a single exception** – analyzes each preamble term separately.

SST has argued instead that the reference in the body to one preamble phrase, absent more, does not read in the entire preamble. The Federal Circuit has confirmed this repeatedly. *Intertool, Ltd. v. Texar Corporation* 369 F.3d 1289 (Fed. Cir. 2004)(preamble phrase "punching and connecting overlapping sheet metal" did not limit the claim by the phrase punching and connecting, even though the claim body referred to "said sheet metal.); *NTP v. Research In Motion, Ltd.* 418 F.3d 1282 (Fed. Cir. 2005)("Because *these limitations* of claim 1 of the '960 patent derive their antecedent basis from the claim 1 preamble…the use of *these limitations* in the preamble limits the claim.")(emphasis added); *Vaupel Textilmashinen KG v. Meccanica Euro*

---

[5] LT's citation to the '328 disclosure noting that the buyer can automatically effectuate a credit purchase actually supports SST's position here. The '328 patent notes that such credit purchase can be conditional, and not be completed, unless and until the credit is verified, and other future conditions are satisfied and verified by the shipper. *Id.*, at col. 6. The only thing the purchase order does is accept the quote given by the vendor, subject to future conditions. That is precisely what LT consumers do. (Op. Ex. K. ("Receive up to four offers…*Accept* the offer that is right for you")(Emphasis added).

*Italia S.P.A*. (Fed. Cir. 1991), (Preamble "A method of …using a broad weaving **machine** having a sley and a **breast beam**" where claim body refers to "**the machine**", nonetheless does not limit claim by preamble phrase "breast beam"

*Bell Communications Research, Inc. v. Vitalink Communications Corporation, Inc*, 55 F.3d 615 (Fed. Cir. 1995) is not to the contrary.   In that case, the preamble recited "a packet" *and* "said packet including a source address and a destination address".   Thus, when the body referred to "said packet" it was referring to *the same packet* that had *been explicitly defined* as having a source and destination address.   Here, there is nothing in the preamble of claim 12 that refers to the phrase purchasing, or to any phrase that is used to explicitly define purchasing.

In any event, the body's reference to the preamble is only one factor.  The ultimate issue for this Court is always whether the body of the claim defines a complete invention and the preamble merely states an intended purpose.  *Catalina Marketing International, Inc. v. Coolsavings.com, Inc*. 289 F.3d 801; *Schumer v. Laboratory Computer Systems*, 308 F.3d 1304 (Fed. Cir. 2002). (Holding preamble does not limit claim even though body references preamble phrase.)

Given the fact that the claim body contemplates only "potential" buyers, that it would be inconsistent with requiring an actual purchase every time the method is used, that the steps execute the same way regardless of whether the purchase is completed, that the term purchasing is not in the claim body, and that the specification describes "purchase" as an option, SST respectfully submits that the methodology of returning quotes is completely defined by the claim body, whether or not a purchase is completed over the data network.  Accordingly, the Court should reject LT's invitation to improperly limit claim 12.

### C. LT Users Are Network Members

Concerning network members, LT notes that the '328 patent explains that 1) buyers deliberately register to become buyer members by submitting applications; 2) the system recognizes buyer members as such; and 3) membership entitles the buyer to certain benefits.

First, this Court already construed network member to be "anyone or any company that has registered as a user by completing an application", <u>explicitly finding</u> that the other items discussed in the '328 specification concerning network members – which LT claimed were limiting - were merely exemplary embodiments, not claim limitations. (*Markman* Opinion, October 16, 2006). LT now cites that specification discussion as grounds for non-infringement. This amounts to seeking reconsideration of the *Markman* ruling – nearly a year after its issuance. It is also wrong on the merits, because the '328 patent merely requires registration so the system knows each user and can forward later received quotes. It makes no mention anywhere of users being entitled to special benefits, for example.

Second, even if the claim were limited by the three items LT cites, the LT system meets all three, so summary judgment in SST's favor is still appropriate. Buyers deliberately register to use the LT system by providing information about themselves, and acknowledging a privacy policy, all of which <u>is processed and stored by the LT system, prior to accepting</u> the loan application. (Kaplan Reply Dec. Aug. 27, 2007, Ex. G). If they don't <u>first correctly complete this separate application</u>, which is <u>processed and stored by the LT system prior to the consumer gaining access to the loan application</u>, they are given an error message, and are not permitted to apply for a loan. *Id.* Second, the LT system does in fact recognize buyers as such. LT notes that when a user returns to use the website again "we can prefill much of your information…once you identify yourself". (Op. Ex. I to Kaplan Dec. of Aug. 27, p. 8). Third, after users register

8

with the website, whether they accept a loan offer or not, a week later they receive from LT "expert tips", "mortgage basics", "relevant articles", "calculators" and access to a "Smart Borrower Center" for further help. (See attached) They also receive special assistance and offers from LT in working with the lenders, because LT's "commitment to providing customer support doesn't end with your request." *Id.* Borrowers working with the same lender by simply calling the lender would not receive these benefits.[6]

LT is incorrect in its analysis of network members, both because the "limitations" it cites were long ago rejected as claim limitations by this Court, and because LT meets those "limitations" in any event.

### D.     Conclusion

The Court should grant leave to file this Surreply, and should deny LT's summary judgment motion and grant that of SST.

                                        Respectfully submitted,

                                        KAPLAN GILMAN GIBSON & DERNIER LLP
                                        *Attorneys for Plaintiff*
                                        *Source Search Technologies, LLC*
                                        900 Route 9 North
                                        Woodbridge, NJ  07095
                                        Telephone: (732) 634-7634
                                        Facsimile: (732) 634-6887

Dated: September 19, 2007        By:    s/Jeffrey I. Kaplan/
                                        Jeffrey I. Kaplan (JK 4706)
                                        Michael R. Gilman (7608) *Pro Hac Vice*

---

[6] Attached hereto is the communication received from LT approximately one week after inputting the undersigned's email address an other personal data as part of the registration process to apply for loans. In the interest of brevity of a requested surreply, we are not filing a separate sworn declaration, but hereby affirm under penalty of perjury that the attached is a true and correct copy of such communication. Additionally, the undersigned also received helpful written material in the mail shortly thereafter, which was unfortunately inadvertently discarded by another individual. We will provide a declaration to this effect at the Court's request.