# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------X
                                               :

Source Search Technologies, LLC,       :

                               :

                 Plaintiff,      :

                               :       Civil Action No. 2:04-CV-4420 (DRD)

       v.                    :

                               :

Lendingtree, LLC, ServiceMagic Inc.  and:
IAC InterActiveCorp,           :

                               :

               Defendants.     :
-------------------------------------------------------X

## PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S ("SST") COMBINED OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF SST'S CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFINITENESS UNDER 35 USC §112

Dated: December 21, 2007

Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (7608) *Pro Hac Vice*
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ 07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..........................................................................................................1

II.   DEFENDANTS LONG AGO WAIVED ANY DEFENSE
      BASED UPON INDEFINITENESS OF THE CLAIM......................................................2

III.  EITHER DEFENDANTS ARE ESTOPPED FROM ASSERTING
      THEIR DEFENSE UNDER 35 USC §112 OR THE COURT MUST
      REVISIT ITS CLAIM CONSTRUCTION ..........................................................9

      A.    If the Term Standard Is Ambiguous, It Can Not Limit The Claim.........................9

      B.    Federal Circuit Precedent Mandates That The Court
            Revisit Its Prior Claim Construction Ruling..................................................13

      C.    This Court Would Never Have Limited the Claims by
            Standard if the True Meaning of the Phrase in Issue
            Were Known at the Time of the *Markman* Proceedings.......................................14

IV.   ON THE MERITS, DEFENDANTS POSITION IS INCORRECT AND
      DEMONSTRATES A MISUNDERSTANDING OF APPLICABLE
      CASE LAW..........................................................................................................20

      A.    Defendants Brief on Indefiniteness is Based Entirely
            Upon the Wrong Legal Standard ............................................................20

      B.    Relevant Precedent has Repeatedly Rejected
            Defendants Indefiniteness Argument....................................................21

      C.    Defendants Cited Precedent Does Not Support Their Motion...............................26

V.    CONCLUSION ...............................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

*Alza Corp. v. Mylan*,
    349 F.Supp.2d 1002 (N.D.W.Va 2004) .......................................................................21, 28

*Am. Stock Exch. LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ...........................................................................................9

*Andrew Corporation v. Gabriel Electronics*,
    847 F.2d 819 (Fed. Cir. 1988) ...........................................................................................22

*Bancorp. Servs., LLC v. Hartford Life Insurance Company*,
    359 F.3d 1367 (Fed. Cir. 2004)...........................................................................................21

*Caterpillar Tractor Co. v. Berco S.P.A.*,
    714 F.2d 1110 (Fed. Cir. 1983)...........................................................................................24

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002)...........................................................................................10

*Chemical Separation Technology, Inc. v. US*,
    51 Fed. Cl. 771 (Fed. Cl. 2002) ...........................................................................................4

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
    460 F.3d 1349 (Fed. Cir. 2006)...........................................................................................12

*Cybersettle Inc. v. National Arbitration Forum, Inc.*,
    2007 WL 2112784 (Fed. Cir. 2007).....................................................................................13

*Daiichi Pharma. Co. v. Apotex, Inc.*,
    2005 US Dist. LEXIS 26059 (D.N.J. Nov. 2005)................................................................9

*Datamize LLC v. Plumtree Software Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)...........................................................................................26

*Dicon Global, Inc. v. Senco Sensors Inc.*,
    2004 F. Supp.2d 2004 (N.D. Ill. 2004) ...........................................................................21, 23

*Exxon Research and Engineering v. US*,
    265 F.3d 1371 (Fed. Cir. 2001)...........................................................................................4

*Fuji Photo Film, Ltd. v. The International Trade Commission*,
    386 F.3d 1095 (Fed. Cir. 2004)...........................................................................................16

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Guttman, Inc. v. Kopykake Entersl, Inc.,*
    302 F.3d 1352 (Fed. Cir 2002)........................................................................13

*Home Diagnostics v. Lifescan, Inc.,*
    381 F.3d 1382 (Fed. Cir. 2004)......................................................................10

*Honeywell Int'l Inc. v. Int'l Trade Commission,*
    341 F.3d 1332 (Fed. Cir. 2003).......................................................................28

*Housey Pharmeceuticals v. Astrazenica UK Ltd.,*
    366 F.3d 1348 (Fed. Cir. 2004).......................................................................10

*Interactive Gift Express, Inc. v. Compuserve, Inc.,*
    256 F.3d 1323 (Fed. Cir. 2001)......................................................................13

*Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.,*
    309 F.3d 1365 (Fed. Cir. 2002)..................................................................10, 11

*Kinzenbaw v. Case, LLC,*
    2005 WL 4827380 (N.D. Iowa 2005).............................................................23

*Konomi Corp. v. Roxor Games, Inc.,*
    445 F.Supp.2d. 725 (E. D. Tex. 2006).........................................................5, 10

*Middleton Inc. v. Minnesota Mining and Mfg. Co.,*
    311 F.3d 1384 (Fed. Cir. 2002)..................................................................10, 11

*Mossman v. Broaderbund Software,*
    51 USPQ 2d 1752 (E.D. Mich 1999)...............................................................27

*Penda Corp. v. US,* 29 Fed. Cl. 533 (Fed. Cl. 1993) .....................................................8

*Process Control Corporation v. Hydreclaim Corporation,*
    190 F.3d 1350 (Fed. Cir. 1999)......................................................................11

*Rosemount, Inc. v. Beckman Instruments, Inc.,*
    727 F.2d 1540 (Fed. Cir. 1984).............................................................7, 24-26

*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.,*
    731 F.2d 818 (Fed. Cir. 1984).......................................................................22

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Semler v. American Honda Motor Co.*,
  990 F.Supp. 967 (S.D. Ohio 1997) ...................................................................27

*Shatterproof v Libbey Owens Ford Company*,
  758 F.2d 613 (Fed. Cir. 1985)..........................................................................22

*Smithkline Beecham v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005)........................................................................28

*Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*,
  74 F.3d 1216 (Fed.Cir.1996)............................................................................13

*Spectra Physics, Inc. v. Coherent, Inc.*,
  827 F.2d 1524 (Fed. Cir. 1987).........................................................................18

*Standard Oil Co. v. American Cyanamid Co.*,
  224 F.2d 448 (Fed. Cir. 1985)......................................................................10, 11

*STX, Inc. v. Brine, Inc.*,
  37 F.Supp.2d 740 (D. Md. 1999) .....................................................................27

*Talecris Biotherapeutics, Inc. v. Baxter International Inc.*,
  510 F.Supp.2d 356 (D. Del. 2007)................................................................22, 23

*United States Gypsum Company v. National Gypsum Company*,
  74 F.3d 1209 (Fed. Cir. 1996)..........................................................................18

*Warner Lambert Co. v. Teva Pharms. USA, Inc.*,
  2006 U.S. Dist. LEXIS 3539 (D. N.J. Jan. 31, 2006) .........................................9

*W.E. Hall Company, Inc. v. Atlanta Corrugating, LLC*,
  370 F.3d 1343 (Fed. Cir. 2004).........................................................................11

*Young v. Lumenis, Inc.*, 492 F.3d 1336 (Fed. Cir. 2007) ............................................22

## I.    <u>INTRODUCTION</u>

Defendants now argue that SST's Patent No. 5,758,328 ('The '328 patent') in suit is invalid because the term standard is indefinite, and its scope thus can not be understood by one of ordinary skill in the art.  Defendants' argument in this regard fails on three different grounds.

First, this argument was long ago waived.  Defendants never raised it in three years of discovery, despite responding four different times to interrogatories that specifically asked for all defenses under 35 USC §112, and despite serving an expert report, discussing in detail numerous other invalidity defenses, <u>after</u> this Court defined the term standard in the manner about  which defendants now complain.   It is far too late to inject new defenses into the case, which could require new discovery, and new expert reports, at a time when all fact and expert discovery is long over, and the Court has before it the last set of motions to decide before this case is deemed trial ready.

Second, the term standard is not included within any claim of the '328 patent, but was read into the claims as a result of defendants arguing that the '328 specification used standard to <u>clearly and unambiguously</u> redefine the ordinary meaning of the <u>claim</u> phrase "goods and services".   If the term "standard" from the specification clearly and unambiguously redefined "goods and services" from its ordinary meaning, then the claim is not indefinite.  Alternatively, if the definition of the term standard is too ambiguous to understand, then it did not clearly redefine the ordinary meaning of "goods and services."   This means the Court must update its construction of goods and services to remove the limitation "standard."

Defendants can not argue that certain specification language clearly and unambiguously re-defines the claimed goods and services, and simultaneously argue that the same language is hopelessly ambiguous.  This is precisely why defendants can not cite a single case where a claim

phrase was declared indefinite based only upon language <u>read into the claim from the specification</u>.

Third, defendants' argument is incorrect on the merits, even assuming the goods and services are limited by the term standard. At best from defendants' point of view, they can establish that the boundary of the claim is not a bright line, but is slightly "fuzzy" such that whether a particular allegedly infringing apparatus is within the scope of the claim or not, in certain limited close situations, may be debatable. Precedent is clear that such a showing is not sufficient to prove indefiniteness under 35 USC §112. Defendants have simply read the case law completely incorrectly and presented an analysis that is based entirely upon the wrong legal standard to prove indefiniteness. Under the proper legal standard for 35 USC §112, defendants <u>have not alleged</u> the facts they would have to show to prove an indefiniteness defense under 35 USC §112.

Moreover, as courts at both the trial and appellate levels have noted in rejecting similar arguments, the ability of defendants' expert here (and defendants themselves) to state unequivocally that the accused processes are outside the scope of the claims, and that the prior art is inside the scope of the claims, as well as defendants' own characterization of their services as "standard" and "common", and the use of that same term to describe the goods and services in the very prior art upon which defendants rely, puts soundly to rest any assertion that the term is so indefinite that one of ordinary skill in the art could not understand its meaning.

On all three of the above grounds, defendants' motion must be denied.

II.    **DEFENDANTS LONG AGO WAIVED ANY DEFENSE**
       **BASED UPON INDEFINITENESS OF THE CLAIM**

On January 25, 2005, nearly three years ago, SST served upon defendants the following

interrogatory:

> If defendant contends that the patent in suit is invalid pursuant to 35 U.S.C. §112,
> identify the specific paragraphs or sections of Section §112 relied upon, and
> identify all facts and circumstances upon which defendant intends to rely in
> support of such contention.

Defendants gave no substantive answer, but instead, objected at length, and indicated

they would supplement their response.   (Ex. A, relevant portion at Interrogatory Number 8).

On May 13, 2005, defendants supplemented their responses to these same interrogatories.

No supplement to interrogatory number 8 seeking defenses under 35 USC §112 was provided.

(Ex. B).

On October 19, 2005, defendants provided a second supplemental response to SST's

interrogatory requesting the specific paragraph of 35 USC §112 upon which defendants would

rely, as well as all facts and circumstances upon which defendants would rely in asserting a 35

USC §112 defense.  Defendants provided a full page of explanation as to why numerous terms in

the claims allegedly rendered the claims indefinite under 35 USC §112.  (Ex. C, Response to

Interrogatory No. 8, p. 9).  No mention of any ambiguity in the term standard was made, despite

the fact that defendants had already provided preliminary claim constructions seeking to narrow

the claimed goods and services based upon the "must be standard" language from the patent

specification.

On December 29, 2006, more than two years after this litigation was initiated, and long

after this Court held that the "must be standard" language from column 3 of the '328 patent

limited the claimed goods and services, defendants served a third supplemental response to

SST's interrogatories seeking all facts and circumstances upon which defendants would rely in asserting any defense under 35 USC §112. Defendants clearly considered the interrogatory carefully, as they detailed nearly a dozen reasons why the '328 patent was indefinite, each reciting specific claim language and specific reasoning to support defendants' position. No mention of the term standard being indefinite was made. (Ex. D, Response to Interrogatory No. 8, pp. 9-10).

On March 20, 2007, nearly a year ago, SST filed with the Court and served on all defendants a combined Summary Judgment Opposition and Cross Motion for Summary Judgment. That brief was devoted almost exclusively to a discussion of why the proper definition of the word standard in the '328 patent was "commonly used or supplied" and similar/equivalent terms eventually accepted by the Court.

Defendants responsive brief, filed on April 4, 2007, gave no indication that they believed SST's proposed definition rendered the claim indefinite under 35 USC §112, nor did they update their discovery responses or their expert report with any such allegation. In fact, this Court found that defendants did not address SST's proposed definition of the term standard at all (Opinion of May 2, 2007, p. 18), despite the fact that the major if not dispositive issue in connection with the subject motion, and the Court's May 2 Summary Judgment Opinion, was the definition of the term "standard."

Notably, a claim may be declared indefinite only if there is no possible reasonable construction that makes it definite. *Chemical Separation Technology, Inc. v. US*, 51 Fed. Cl. 771 (Fed. Cl. 2002); *Exxon Research and Engineering v. US* 265 F.3d 1371 (Fed. Cir. 2001) (Both holding that a claim is to be declared indefinite only if all efforts at construing it prove futile and there exists no narrowing construction that can properly be adopted to save the

validity).  Thus, if defendants had raised the issue, SST could have proposed, and this Court could have considered, an alternative claim construction, fully supported by the specification.[1]

Moreover, if defendants had raised the issue, and if the Court had agreed with defendants that the term standard is indefinite, then that term could never have been read as a limitation on the claimed goods and services to begin with, because relevant case law prohibits reading into the claim a term from the specification that would make the claim unclear.  *Konomi Corp. v. Roxor Games, Inc.* 445 F.Supp.2d. 725, 735 (E. D. Tex.  2006) (Court will not construe claim based upon specification language that itself is difficult to construe).

Defendants said nothing about the matter, in connection with the prior summary judgment and *Markman* proceedings - and for a good reason.  Alleging that the definition in the specification was unclear would have operated <u>against</u> their position that the specification language clearly and unambiguously redefined the term goods and services, and thus, should trump the ordinary meaning of the claim language.

Importantly, SST's March 20, 2007 Summary Judgment brief, including the proposed definition of standard that defendants now assert renders the claim indefinite, was served on defendants long prior to the completion of expert reports, summary judgment motions, and expert depositions.   Yet, SST had no reason to take any steps during expert discovery to rebut the §112 defense now raised, although several such steps could have been taken such as procuring additional expert views if needed. [2]

---

[1] In response to SST's claim construction assertions on another term during the *Markman* proceedings, defendants argued "no construction of these means plus function limitations is possible and that, <u>therefore, claims 1 and 3 are indefinite.</u>"  (emphasis added) (Defendants Opening Claim Construction Br., Dec. 7, 2005, at p. 27).  Thus, their failure to respond similarly to SST's proposed definition of the term standard led SST to believe they were not challenging that definition on the basis of it being indefinite.

[2] Pursuant to stipulated scheduling orders, SST served an expert report and a supplemental expert report on May 1, 2007 and July 20, 2007, respectively. Expert depositions took place in August, 2007.  No contention that the term "standard" was indefinite had been raised at that time.

Additionally, on May 1, 2007, approximately eight months ago, and one day before this Court issued its ruling on the term standard, defendants served their own Rebuttal Expert Report. Defendants' expert opined as follows:

> I understand that SST is arguing that, in the context of the '328 patent, "***standard***" simply means "commonly used or supplied" categories of goods and services.... If goods and services is construed as broadly as asserted by SST, then the claims of the '328 patent are invalid <u>in light of the prior art</u>" (underling added, bold italics in original)(Ex. E, relevant portions of Expert Report of Dr. Scacchi)

While not raising the 35 USC §112 defense in issue now, defendants' own expert explicitly focused them on the fact that the definition of standard proposed by SST might be adopted by the Court, and that it had a major impact on the scope and meaning of the claims. Defendants however, never indicated that they believed such definition would render the claim indefinite.  This, despite the facts that 1) the expert himself testified that he was working with defendants' lawyers in preparing his report, and thus, would have been explicitly discussing the word standard and its definition (Ex. F, Scacchi Deposition, pp. 7-8), and 2) there was a specific outstanding interrogatory seeking all defenses under 35 USC §112, and all basis for such defenses, which interrogatory had been updated three times by defendants.

On May 2, 2007, one day after defendants Rebuttal Expert Report was served, this Court issued its Opinion holding that the definition of standard in the '328 patent was "commonly used or supplied" (Opinion of May 2, 2007). That Opinion was reaffirmed in a reconsideration Opinion dated June 14, 2007.   At that time, there was a specific, stipulated scheduling order in place that gave defendants the right to update their expert report after the Court considered claim construction issues related to the word standard in its reconsideration Opinion. (Ex. G). Defendants had actually obtained SST's stipulation to permit this, in part by explaining to SST that the May 2 Summary Judgment Opinion, and reconsideration thereof, implicated issues with

6

respect to the term standard that they wanted to address in a new expert report.  (Kaplan Dec.).

Pursuant to that stipulation, defendants served a Supplemental Expert Report on June 28, 2007,

nearly two months after the May 2 Opinion in which the Court defined standard.  (Ex. H,

relevant portions)

   No mention was made in the Supplemental Report of the term standard being indefinite,

or of the definition being objectionable in any way, despite the fact that the expert acknowledged

that the Supplemental Report was in fact supplemented specifically to account for the Court's

definition of the term standard.    Far from opining that the scope of the claims was impossible to

ascertain or not clear to one of skill in the art, the Supplemental Report states the precise

opposite:

> I have also been asked to supplement my opinions in light of the Court's 2 May
> 2007 Opinion and Order regarding the construction of certain terms in the
> asserted claims of the '328 patent. (Underlining added, Ex. H, par. 3)
>
> I understand that the Court has construed the term "goods and services" to mean
> "standard articles of trade and performances of work for another"…I understand
> that the court has also construed "standard" to mean "usual, common, or
> customary" or "normal familiar or usual..commonly used or supplied." (Ex. H,
> par. 18)
>
> I have reviewed the District Court's 2 May 2007 Order.  I have applied the
> Court's construction of the terms "goods and services" to my analysis of
> invalidity and noninfringement. (underlining added, Ex. H, par. 17)
>
> Moreover, the loans on the LendingTree system are not "standard" as the Court
> has construed that term to mean "usual, common, or customary" or "normal,
> familiar, or usual…commonly used or supplied."  (Ex. H, par. 125)

   The report therefore, again reaffirmed the fact that defendants and their expert fully

understood the scope of the claims, as otherwise, the expert could not have opined that he

understood the definition, or that the accused processes were outside of that scope, or that the

prior art was within it.    *Rosemount, Inc. v. Beckman Instruments, Inc.,* 727 F.2d 1540 (Fed. Cir.

1984) (Ability of defendant's witness to clearly opine on invalidity requires rejection of assertion that claim is indefinite under 35 USC §112); *Penda Corp. v. US,* 29 Fed. Cl. 533 (Fed. Cl. 1993). [3]

At the time of serving the Rebuttal Expert Report, and in response to the Court's holding concerning the definition of the term standard, defendants also did not update their responses to SST's interrogatory seeking indefiniteness contentions under 35 USC §112. Thus, weeks later, when SST served its own supplemental expert report to rebut the invalidity contentions in defendants June 28 supplemental expert report, SST's expert did not address the defense now raised by defendants.

In short, from the beginning of this lawsuit, the meaning of the phrase "the goods and services must be standard items" from column 3 of the '328 patent has been in hot dispute. Yet, despite 1) serving four different sets of responses to discovery that sought specifically defendants §112 contentions on their indefiniteness defenses, 2) actually asserting several defenses alleging that the '328 patent claims were invalid as indefinite, all of which were later dropped 3) serving three different expert reports, two of which raised other issues of indefiniteness, 4) participating in fact and expert depositions, 5) arguing specifically about the construction of the term standard in several summary judgment and *Markman* briefs, 6) responding to SST's motion that specifically put forth the definition of the term standard that defendants now claim is indefinite, and 7) fully litigating this case on the merits for over three years, defendants never even hinted that the term standard rendered the claims indefinite.

This, even though much of the above activity took place <u>after</u> the definition in issue was proposed by SST, <u>after</u> defendants had a full opportunity to respond to SST's proposed

---

[3] Notably, Dr. Scacchi did serve an expert report that articulated lots of <u>other</u> bases for claiming the '328 patent was indefinite under 35 USC §112, none of which are the subject of the present motion. (Ex. I).

construction of that term, and even <u>after</u> the Court ruled that the definition of standard in issue

was the correct one.   Now, after more than three years of hard fought litigation, long after

experts have been deposed, when the case schedule provides that after this last round of

dispositive motions gets decided, the remaining issues are immediately trial ready, defendants

have inserted a totally new defense never before disclosed.

        To start over now, with new expert and fact discovery, new expert reports, and new

*Markman* briefing to address alternative claim constructions that could have been raised earlier,

after more than three years of litigation, would be unfair to SST and disrespectful of the Court's

effort in this case.   Indeed, Courts have barred this conduct even when the defense is introduced

at an <u>earlier</u> stage in the litigation than exists here.   *Am. Stock Exch. LLC v. Mopex, Inc.* 215

F.R.D. 87 (S.D.N.Y. 2002); *Warner Lambert Co. v. Teva Pharms. USA, Inc*. 2006 U.S. Dist.

LEXIS 3539 (D. N.J. Jan. 31, 2006)(Debevoise, J.)(Precluding affirmative defense to

infringement claim not disclosed in discovery);  *Daiichi Pharma. Co. v. Apotex, Inc*. 2005 US

Dist. LEXIS 26059 (D.N.J. Nov. 2005).

        Accordingly, the Court should simply bar this defense without reaching the merits

## III.    EITHER DEFENDANTS ARE ESTOPPED FROM ASSERTING
THEIR DEFENSE UNDER 35 USC §112 OR THE COURT MUST
<u>REVISIT ITS CLAIM CONSTRUCTION</u>

### A.    If the Term Standard Is Ambiguous, It Cannot Limit The Claim

        It bears emphasizing that the language defendants claim renders the '328 patent indefinite

– "standard" – is not in a single claim of the '328 patent.   Instead, the term standard is in issue as

a result of defendants' themselves urging that the '328 specification limited the ordinary

meaning of "goods and services" in the claims.   Defendants cannot cite a single case where a

court invalidated a patent as indefinite based upon language in the <u>specification</u> and not in the claims.  When one examines relevant precedent, the reason is clear.

It is a bedrock principle of patent law that claim terms are to be given their normal and ordinary meaning, absent a <u>clear and unambiguous</u> disavowal of claim scope, or the patent owner <u>clearly defining the term</u> in the specification in a manner different from its ordinary meaning.  *Housey Pharmeceuticals v. Astrazenica UK Ltd.*  366 F.3d 1348 (Fed. Cir. 2004); *Home Diagnostics v. Lifescan, Inc.* 381 F.3d 1382 (Fed. Cir. 2004); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).

The original claim called for goods and services, two terms that are clearly construable, and which defendants do not even allege are indefinite.  If the "standard" language from the specification was so ambiguous that its meaning to one of skill in the art could not be ascertained, then that language could not have possibly constituted a clear disavowal of claim scope or a clear re-definition of the terms goods and services sufficient to alter the ordinary meaning of goods and services in the claims.  Instead, such language from the intrinsic record would have had to be dismissed as non-limiting, <u>due precisely to its ambiguity</u>. *Middleton Inc. v. Minnesota Mining and Mfg. Co.*, 311 F.3d 1384 (Fed. Cir.  2002); *Standard Oil Co. v. American Cyanamid Co.*, 224 F.2d 448 (Fed. Cir. 1985); *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.*, 309 F.3d 1365 (Fed. Cir.  2002) (Claim entitled to full ordinary meaning because meaning of statements allegedly disclaiming scope are ambiguous.)

Additionally, case law has specifically rejected the idea that a term from the specification that would <u>create</u> an ambiguity can be read into a claim to "define" an otherwise unambiguous claim term.    In *Konomi*, the Court considered plaintiff's assertion that the <u>claim</u> term "matching relationship" should be construed as "having a correspondence when one overlaps another"

based upon the specification.   Noting that the definition of overlap set forth in the specification

was unclear, the Court rejected this argument, with reasoning applicable here:

> Inserting "overlaps" into the construction could also create confusion as the
> question will certainly arise, what does overlap mean? The Court is not inclined to
> adopt a construction that runs the risk of <u>creating</u> such confusion by, in essence,
> using a term that begs its own construction. (underlining added)

*Id.,* at 734-735.

See also, *Process Control Corporation v. Hydreclaim Corporation,* 190 F.3d 1350 (Fed.

Cir. 1999).  (Rejecting use of specification language to redefine claim term because "[T]he

quoted portions from the written description above do not <u>so clearly redefine</u> "the discharge rate"

in clause [d] so as to put a reasonable competitor or one reasonably skilled in the art on notice

that the patentee intended to so redefine that claim term.") (emphasis added); *W.E. Hall*

*Company, Inc. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1350 (Fed. Cir. 2004) ("[T]he

intrinsic record is used to resolve ambiguity in claim language, or, ***where it is clear***, trump the

inconsistent dictionary definition") (emphasis added).

Defendants themselves recognized this problem in their prior briefing.  At page 11 of

their February 22, 2007 Summary Judgment Brief, and again at pp.22-23 of their *Markman* brief

filed on December 7, 2005, they argued <u>against</u> the ordinary meaning of the claimed goods and

services by repeatedly stating that the narrower definition of the goods and services provided by

the '328 specification was "clear", and "clearly" defined the goods and services in a contrary

manner to the ordinary meaning.

Defendants cannot have it both ways.   If the specification language upon which

defendants relied during *Markman* is so unclear that its meaning to one of skill in the art is

unconstruable, then that statement was nothing more than a <u>failed, ambiguous</u> attempt to use the

word standard to redefine the ordinary meaning of the terms goods and services, and "standard"

must be removed from the claims. *Middleton*; *Standard Oil*; *Inverness*; *W.E. Hall Company,* at 1350. This is precisely why it comes as no surprise that defendants cannot cite a single case where language from the specification was deemed to limit the claims, and then that same language was used to invalidate the claims as indefinite.

Defendants' prior argument was that the claimed goods and services are limited by the term standard, precisely ***because*** the specification <u>clearly and unambiguously</u> defined goods those words in a manner different from their ordinary meaning. They are now judicially estopped them from arguing the opposite, namely, that the definition of the term in the specification was not clear and unambiguous. Moreover, this Court's holding on the issue in defendants' favor constitutes law of the case that the term standard is not ambiguous, because if the Court had found otherwise, it could not have limited the claimed "goods and services" as it did.

Accordingly, defendants are either estopped from asserting their indefiniteness defense, or alternatively, this Court must reexamine the *Markman* ruling and remove the limitation "standard' if it agrees with defendants here that the language from the specification was not clear. While either course of action requires denial of defendants' present motion, SST believes, for the reasons below, that the latter is the more appropriate procedure.

> **B.    Federal Circuit Precedent Mandates That The Court
> Revisit Its Prior Claim Construction Ruling**

Although waiver, law of the case, and judicial estoppel clearly bar the assertion of the indefiniteness defense, SST believes the most appropriate solution, given the prior confusion between the terms "standard" and "standardize", is for the Court to revisit its claim construction and update it. The Federal Circuit has repeatedly encouraged district courts to revisit, refine, and

alter claim construction rulings during the litigation as further facts about the patent and

technology in issue become clear.  *Conoco, Inc. v. Energy & Environmental International, L.C.*

460 F.3d 1349 (Fed. Cir. 2006) ("We have recognized that district courts may engage in rolling

claim construction, in which the court revisits and alters its interpretation of the claim terms as

its understanding of the technology evolves"); *Guttman, Inc. v. Kopykake Entersl, Inc.*, 302 F.3d

1352, 1361 (Fed. Cir 2002); *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.,* 74 F.3d 1216,

1221 (Fed.Cir.1996)).

        Moreover, SST clearly, repeatedly, and unequivocally argued throughout *Markman*

proceedings that the goods and services were simply goods and services, their ordinary meaning,

and should not be limited by the '328 specification at all.  (SST *Markman* Submission of

December 21, 2005, p. 45-46,  Opinion of November 13, 2007, noting SST's argument that

goods and services is not limited at all).  As discussed below, the subsequent clarification of the

difference between standard and standardize in the Court's May 2, 2007 Opinion provided a

different reason, unknown at the time of the *Markman*, as to why the original claim construction

of goods and services put forth by SST should have been accepted.  When a party supports on

appeal the same claim construction it did at the district court, all arguments in support of that

same claim construction are preserved, even if not offered at the district court.  *Interactive Gift*

*Express, Inc. v. Compuserve, Inc.,* 256 F.3d 1323, 1343 (Fed.Cir.2001); *Cybersettle Inc. v.*

*National Arbitration Forum, Inc.* 2007 WL 2112784 (Fed. Cir. 2007) (Unpublished).

        Given that neither the parties, nor even the Court, fully understood the difference

between the words standard and standardize in the '328 patent at the time of the *Markman,* and

thus, the specification language at issue was also misunderstood,  that the subsequent

clarification of that difference provides new support for the same claim construction SST

13

previously argued (albeit for the wrong reasons), that this Court is authorized by the Federal

Circuit to engage in "rolling claim construction", and that the issue is fully preserved for appeal,

this Court should correct the error now in the interest of judicial efficiency, rather than dealing

with a remand later on.  It is clear that the term standard – properly understood in context –

should never have limited the claims to begin with.

> C.     **This Court Would Never Have Limited the Claims by Standard if the True Meaning of the Phrase in Issue Were Known at the Time of the *Markman* Proceedings**

At p. 22 of defendants' Opening *Markman* Brief of December 7, 2005, defendants argued

as follows:

> [T]he invention of the '328 patent requires that the goods and services be ***standardized***.  As expressly stated in the specification…the goods and services must be ***standard*** items.  (emphasis added)

In another claim construction filing on October 30, 2006, defendants argued that the '328

patent was limited to ***standardized*** items because "[I]t is difficult to imagine a clearer disclaimer

and limitation than the statement "the goods and services must be ***standard*** items….."

(Defendants Opposition to SST's Motion for Reconsideration) Similar representations, confusing

standard and standardize, were made by defendants to this Court at the *Markman* hearing. (Tr.

March 31, 2006 *Markman* hearing).  This Court's October 16, 2006 *Markman* Opinion noted that

for the standar<u>dized</u> construction of goods and services, defendants "rely upon the following

language…the goods and services must be standard items."

Defendants led this Court to believe that there was a <u>requirement</u> being imposed by the

'328 patent specification for standar<u>**ization**</u> of goods and services, and the Court, believing that

assertion, limited the goods to standardized ones.  SST's March 20, 2007 Brief in Support of Its

Summary Judgment Motion pointed to fifteen (15) specific reasons why that was incorrect, and pointed out the true meanings in the '328 patent of the <u>different</u> words standard and standardize.[4]

In response, this Court acknowledged that it had inadvertently confused the terms standard and standardize, when "they clearly have two different meanings". (Opinion of May 2, 2007, p. 13, granting Summary Judgment, and *sua sponte* correcting Court's inadvertent use of standard and standardize interchangeably). Unfortunately, the Court's May 2 correction did not fully solve the problem created by the prior erroneous assertion on defendants' part that the '328 patent was imposing a requirement of standardization. The remaining error was not relevant to any issue at the time, so SST had no reason to worry about approaching the Court to attempt to correct it. However, if the Court is inclined to even consider this newly raised defense, the remaining error becomes highly relevant. While this provides further basis to bar the defense entirely, at the very least, the remaining error in the May 2 Opinion must be looked at again because it is relevant only as a result of defendants' newly raised defense.

When the specification language at issue is properly looked at with the real meaning of standard – not standardize - it is clear that the statement was not limiting. Instead, the subject statement was <u>required</u> to comply with the best mode requirement of 35 USC §112, and the '328 patent could be invalid absent the statement. It makes no sense to penalize the '328 patentee for his conduct in complying with the best mode requirements of the patent law.

Specifically, the actual phrase in issue states "The goods and services must be standard items to ensure there is no confusion as to what buyers are requesting and what sellers are offering to buyers." Suppose the specification had stated one or both of the following:

---

[4] A copy of the portion of that Brief important to the present motion is attached at Ex. J. Although we will not repeat all of that analysis here, a review of Ex. J hereto demonstrates the completely different usages of the two different words in the '328 patent.

> The goods and services must be popular items to ensure the system will generate lots of revenue from sales and be very profitable.
>
> The computerized system must be built from very dependable computers, to ensure that it is available to consumers most of the time and not down for maintenance and repair.

Although both sentences use the term must, clearly, neither of these statements from the *specification* would have been deemed a structural limitation sufficient to limit the ordinary definition of the terms "goods and services" or "computerized system" in the claims.   The statements merely describe, in rather general terms, how to *optimize* the system to sell more products and to provide good service to customers.   The statements do not define specific structure or clearly and unambiguously re-define the computerized system or the goods and services recited in the claim language – despite using mandatory language such as "must".

Federal Circuit case law recognizes a distinction between specification language that mandates something <u>for an optimum embodiment</u> (i.e.; in this case, to ensure that nobody is ever confused about offered items), and specification language that mandates something <u>for all embodiments of the invention</u>.  Only the latter limits the claims.

*Fuji Photo Film, Ltd. v. The International Trade Commission,* 386 F.3d 1095 (Fed. Cir. 2004) perhaps best exemplifies this principle.   In *Fuji Photo*, the ITC limited the claim to require that film be loaded into the camera in a darkroom, although the claim did not specifically state so.  The ITC had relied upon language in the specification similar to that relied upon by defendants here "[f]ilmloading and film package assembly <u>has</u> to be done in the dark room." (emphasis added).   The Federal Circuit reversed, holding that the "has" mandatory language was only referring to what has to be done in one embodiment, not for the invention as a whole.  *Id.*, at 1105.

In the case *sub judice,* now that the phrase is properly understood, it is clear that the '328 patentee was telling the reader that if you build the system and try to sell non-common goods, some people might not know what some of the offered goods are.  Moreover, because the '328 patent matches buyers with vendors that are <u>unidentified</u> at the time the buyer selects the item for quoting, there would be no vendor to call for more information. Therefore, a user would sit there, looking at his computer menu of goods and services, and not know what one or two items are.

To avoid this risk that from time to time, some individuals may not understand what an offered item is – i.e.; to "ensure there is ***no*** confusion" – one must use items with which the user population is familiar. (emphasis added)    If the reader did not realize this, he or she would have a system that would operate, but which would be suboptimal because some items might confuse some consumers, some of the time.

While the statement explains how to ensure there is <u>zero</u> confusion (i.e.; the optimum embodiment), the statement does not say the system won't operate if, from time to time, there are ***some*** items that don't sell too well because ***some*** people never heard of them and are thus confused.   The statement also does not simply say "The goods and services must be standard items."   There is also nothing in the '328 specification to indicate that if the system has any confusion whatsoever – even one person in a system with thousands of users and products does not know what one item is and thus cannot buy it – that the system will not work.  The statement also does not say "This invention requires standard goods and services."  Instead, the statement is nothing more than a warning that if you don't use commonly known items, some people will be confused from time to time, and the system thus will not be optimum.

The examples given in the defendants' own brief demonstrate the need to remove the erroneous limitation from the claims.  Defendants assert that PCT filing services, known only to

those familiar with patent filing services, are a non-standard item.  But if PCT services were added to a '328 patent type system that previously sold only pencils and screwdrivers – standard items - to the general public, it does not mean the system will not work or is outside the scope of the claims.  It simply means that among the general public, there is now an item that most people will not order because they don't know what it is, and there is nobody for them to call and ask for clarification.   So, there will be some confusion among some users.

The patentee <u>knew</u> at the time of filing that the system would work with any types of items, that some less well known items would cause some confusion among potential buyers from time to time, and thus, that the optimal system should use items familiar to the general user population in order to maximize the profits, and ensure nobody is ever confused.   This was a necessary statement at the time, because the idea of obtaining quotes and buying things over a computer system, without a salesperson, from vendors unknown at the time of item selection, was relatively new at the time.   System developers might not realize that unlike the retail environment, they should select only commonly known items for sale so consumers would be comfortable making selections on their own, without any help from vendor employees.  Failure to warn the public that they must use standard items to ensure no confusion at all could have resulted in the '328 patent being invalid for failure to disclose the best mode. *Spectra Physics, Inc. v. Coherent, Inc*. 827 F.2d 1524 (Fed. Cir. 1987); *United States Gypsum Company v. National Gypsum Company,* 74 F.3d 1209 (Fed. Cir. 1996).

This "heads I win, tails you lose" result for defendants, whereby inclusion of the statement means the claim is narrowed and the patentee gives up coverage, and exclusion of the statement in issue means the patent fails the best mode requirement and may be invalid,  is clearly improper.  It was only reached as a result of the Court being misled due to defendants'

confusion between standard and standardize. Defendants' erroneous assertion that the matching computer needed standardized items to match buyers and sellers, and could not operate at all without such standardized items, was explained at length in their *Markman* brief of December 7, 2005. This convinced the Court that the statement was mandatory for the '328 computer system to operate at all – a result that all now know to be erroneous.

In short, while the '328 patent specification admittedly uses the mandatory language "must", it does so in indicating what must occur to have an optimum system with absolutely no confusion at all. It thus does not use "must" in describing what must occur for the computer system to operate, or in all embodiments of the invention, nor does it clearly disclaim any system that has any minor amount of confusion from claim coverage. Therefore, the "must be standard" language should not have limited the claim, as SST argued, but for different reasons than SST argued.[5]

If the Court does not bar the defense based upon waiver or estoppel, then the Court should correct the error now, and remove the erroneous limitation from the claim term goods and services, and hold that goods and services need no construction. Such a ruling will also necessarily dispose of defendants' belated motion on indefiniteness, which should be denied.

## IV.    ON THE MERITS, DEFENDANTS POSITION IS INCORRECT AND DEMONSTRATES A MISUNDERSTANDING OF APPLICABLE CASE LAW

### A.    Defendants Brief on Indefiniteness is Based Entirely Upon the Wrong Legal Standard

Even if the Court does not revisit claim construction, and permits defendants to assert an argument they long ago waived and are estopped from making, defendants' motion must still be

---

[5] The cases cited in this Court's *Markman* decision of November 13, 2006 all involve situations where the patentee indicated a requirement for all embodiments of the invention.

denied because they are incorrect on the merits.   Defendants' position at its core is that because the term standard does not define a bright line between infringement and noninfringement, the claim is indefinite.  This represents a total misunderstanding of the applicable legal standard for indefiniteness under 35 USC §112.

Before turning to a detailed treatment of the relevant case law, it is worth noting immediately the very fundamental legal error that defendants make, an error best demonstrated with pictures:



Figure 1                                        Figure 2

Figure 1 above represents a claim limitation that defendants would argue is definite under §112, for example "said first member being less than two inches away from said second member".   Figure 2 represents a claim limitation that defendants would argue is *in*definite under 35 USC §112, for example, "said first member being close to said second member."  The difference between the two figures is that in Figure 1, there is a bright line to determine whether or not the claim limitation is met.  Everything to the left of the line is outside the claim limitation, and everything to right is inside the limitation.  Figure 2, on the other hand, is somewhat "fuzzy", i.e.; how close does it have to be?

Despite defendants' entire brief being based upon the idea that this allegedly "fuzzy" area at the boundary between infringement and non-infringement renders the claim indefinite under 35 USC §112, this is the wrong standard for indefiniteness under 35 USC §112.   Instead, Federal Circuit precedent instructs that this simply means the infringement question may be difficult, because, for accused products that fall near the boundary, there may be differing opinions as to whether the claim limitation is met.

When the proper standard for definiteness under 35 USC §112 is applied, it is clear that defendants have <u>not even alleged</u> the necessary facts to prove such a defense.  In fact, defendants' brief, their other submissions in this case, and the very case law they cite in support of their motion, all prove the opposite of the finding they seek.

>   **B.    Relevant Precedent has Repeatedly Rejected
>   Defendants Indefiniteness Argument**

Turning now to a detailed treatment of the relevant case law, we first note that the standard to prove a patent indefinite is a high one.  *Alza Corp. v. Mylan*. 349 F.Supp.2d 1002 (N.D.W.Va 2004).   If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, the claim is sufficiently clear to avoid an indefiniteness challenge.  *Id.*   During litigation, close calls with respect to the issue of indefiniteness are to be resolved in favor of the patentee.  *Dicon Global, Inc. v. Senco Sensors Inc.,* 2004 F. Supp.2d 2004 (N.D.Ill.) (citing *Bancorp. Servs., LLC v. Hartford Life Insurance Company*, 359 F.3d 1367 (Fed. Cir. 2004)).

If the claims, read in light of the specification, <u>reasonably</u> apprise those skilled in the art both of the utilization and scope of the invention, and if the language is <u>as precise as the subject</u>

matter permits, the courts can demand no more.  *Andrew Corporation v. Gabriel Electronics.*

847 F.2d 819 (Fed. Cir. 1988).  As the Federal Circuit noted in *Andrew Corporation,* the Manual

of Patent Examining Procedure (MPEP) instructs patent examiners similarly:

> [An examiner] should allow claims which define the patentable novelty with a
> *reasonable* degree of particularity and distinctness.  Some latitude in the manner
> of expression and the aptness of terms should be permitted even though the claim
> language is not as precise as the examiner might desire (Italic in original)

Applying the above standard, the Federal Circuit has emphatically rejected the notion that

the "fuzzy boundary" theory, argued here by defendants, renders the claim indefinite under 35

USC §112:

> Much technological change that meets the criterion of unobviousness, when
> viewed in light of the prior art, has a fuzzy boundary at its point of origin.
> Technological differences from prior art usually become more pronounced with
> distance from the boundary, but the changes may become manifest gradually…To
> the extent the *Brown Bridge* may be read as holding, as the district court appears
> to have believed, that the claim is invalid unless it sets as a limitation the exact
> technological border of the invention, we expressly reject that holding" (emphasis
> added).

> *Andrew Corporation v. Gabriel Electronics*, 847 F.2d 819, 823-824 (Fed. Cir.1988)

(Reversing district court for holding claims indefinite simply because there was no bright line

delineation of the scope of the claim).

Applying the above standards, the very same arguments defendants assert here have been

repeatedly rejected, in case after case.   *Young v. Lumenis, Inc*. 492 F.3d 1336 (Fed. Cir. 2007)

(claim language "near the edge" is not indefinite, because one reading the specification would

know how close to the edge to be to accomplish the objectives of the invention);  *Seattle Box*

*Co., Inc. v. Indus. Crating & Packing, Inc.* 731 F.2d 818 (Fed. Cir. 1984); *Shatterproof v Libbey*

*Owens Ford Company*, 758 F.2d 613 (Fed.Cir. 1985) ("freely supported is not indefinite, simply

because parties might debate how freely the support has to be); *Talecris Biotherapeutics, Inc. v.*

*Baxter International Inc.* 510 F.Supp.2d 356 (D. Del. 2007) ("Acceptable level suitable for intravenous administration" is not indefinite, despite subjective nature of the term); *Kinzenbaw v. Case, LLC* 2005 WL 4827380 (N.D. Iowa 2005) (term "proximate" is not indefinite); *Dicon Global Inc v. Senco Sensors, Inc* 2004 WL 2958770 (N.D. Ill., 2004) (phrase "in such a manner as to substantially accommodate changes" is not indefinite, rejecting notion that words of approximation render claim indefinite).

When one carefully reads the '328 specification, it is clear that the must be standard language in issue is telling the ordinary artisan – in language as precise as the subject matter permits - that in order to ensure users will know what the items are that are being offered, without access to a salesperson and looking only at a list of items on a computer, the system should sell items that are well known in the user community.  If, for example, the user community is the general public, then certainly pencils and paintbrushes would meet this claim limitation.  However, among the general public, rumblestrip machines would likely not meet this standard, as most people are not very familiar with such items, and would be confused as to what this product is.

This determination does not depend on the subjective state of mind of any individual.   It depends instead upon the objective criteria of what is well known in the overall community of use in which the system will be employed.

The best defendants can establish, is that there is a fuzzy boundary, meaning that whether or not an item is well known enough to avoid consumer confusion is subject to debate, particularly when it is a "close call."   However, as set forth above, that is not sufficient to prove indefiniteness under 35 USC §112.   This simply means that the parties and their experts might

disagree on whether or not a particular item is standard enough that it avoids confusion by potential buyers. It does not mean that the claim is indefinite.

Perhaps defendants' argument in this regard is most soundly rejected by *Rosemount v. Beckman* 727 F.2d 1540, (Fed. Cir. 1984). In *Rosemount*, the Federal Circuit considered whether the term "close proximity" was vague and indefinite. How close was close enough to infringe, argued the defendant, similar to how defendants here argue about how common an item has to be to infringe. The Federal Circuit not only rejected that argument, but came very close to deeming it frivolous:

> As stated in the district court's Memorandum Decision, "to accept Beckman's contention would turn the construction of a patent into a mere semantic quibble that serves no useful purpose."…Indeed, the devotion of large portions of Beckman's briefs to this defense is difficult to appreciate in light of the record. The district court accepted testimony that one skilled in the art would understand all language in the claims when read in light of the specification, as the claims must be. *Caterpillar Tractor Co. v. Berco S.P.A.,* 714 F.2d 1110, 219 USPQ 185 (Fed.Cir.1983). **Beckman is confronted also with its own ease in applying "close proximity" to the prior art at trial and in its briefs here, the use of "close proximity" in the claims of one of its references, its own use of "close proximity" in describing its pH meters, its own witness' statement that he had no trouble understanding the claims of <u>the '525 patent</u>, the specific acceptance of "close proximity" by the examiner and by the industry, and the district court's finding that "close proximity" is as precise as the subject matter permits.** (Bolding added).

*Id.*, at 1546-47.

The bolded factors noted by the Court in *Rosemount* are the same factors present here.

First, as in *Rosemount*, defendants here have had no problem asserting, with absolute certainty, that certain prior art contains each and every limitation of the claims. Not only have they consistently done so throughout their discovery responses, but they have alleged so in a motion for summary judgment based upon that prior art that they filed concurrently with the present motion. How did defendants determine with such certainty that their prior art meets the

claim limitations in issue, for purposes of the motion they have concurrently filed under 35 USC §103, if they do not know what that limitation means?

Second, in *Rosemount*, the Federal Circuit also relied heavily on the ability of the defendant's own witness to apply the claims to the prior art in asserting invalidity. Here, defendants' expert opined, <u>after</u> the definition of standard was adopted by the Court on May 2, 2007, as follows:

> I have reviewed the District Court's 2 May 2007 Order. I have applied the Court's construction of the terms "goods and services"...to my analysis of invalidity and infringement...[L]oans on the Lendingtree system are not standard, as the Court has construed that term to mean usual, common, or customary, or normal, familiar, or usual... commonly used or supplied.

Ex. H at par. 17, 125.

This is hardly indicative of someone who can not understand the types of goods and services that are covered, or who finds the claim language too confusing to comprehend its bounds with a reasonable degree of certainty. In fact, the same report contains a detailed invalidity analysis opining that certain prior art is within the scope of the claims, and the claims are thus invalid.

Third, the *Rosemount* Court also cited the defendant's "own use of close proximity in describing its pH meters." Here, defendants also advertise that their own systems as selling "standard" and "common" home services. (Ex. K). Defendants can not seriously be claiming that their own advertisements are so unclear that nobody to which they are directed understands them.

Fourth, like in *Rosemount*, the examiner here too accepted the phrase standard in the '328 specification.

Fifth, the Court in *Rosemount* also noted that one of the prior art references upon which defendants relied for invalidity also described the feature as "close proximity." Here to, the FAST reference upon which defendants have based their concurrently filed summary judgment motion under 35 USC § 103 also states that it helps buyers procure "standard parts and components." (Ex. L, at, 10, 14[6], referring to FAST as dealing in "standard parts and components" and "standard electronic parts", respectively).

Sixth, this Court was able to make the finding – on summary judgment - that "the services on the website would not cause confusion to a buyer, they fall within the specification." May 2, 2007 Summary Judgment Opinion, p. 18. With the utmost respect due this Court, the ordinary artisan in the field of ecommerce would presumably have ***more*** knowledge of how to understand the teachings of the '328 patent than did this Court. Defendants know full well what the term in issue means. Their motion under 35 USC §112 is meritless, and must be denied.

### C.    Defendants Cited Precedent Does Not Support Their Motion

Finally, defendants' cases are not in conflict with the above cited case law. Putting aside the fact that all of those cases involve language that was in the claim, not in the specification, the language itself was not the type of language in issue here. Defendants' cases all involve situations where the patent was declared invalid not because the criteria for adjudicating the infringement issue did not result in a bright line test, but instead, <u>because there was no criteria at all</u> for even performing an infringement analysis.

Specifically, the claim language in *Datamize LLC v. Plumtree Software Inc*., 417 F.3d 1342 (Fed. Cir. 2005) was "aesthetically pleasing". This language is not the type where there is a defined boundary, and a little "fuzziness" surrounding that boundary. Instead, this language is

---

[6] Refers to the hand numbering on the lower right of each page.

totally subjective and undefined.  What is absolutely beautiful to one individual is totally

disgusting and ugly to another.  There is not even an objective standard by which to measure

infringement.[7]    Here, among the general public, pencils are clearly standard, and rumblestrip

machines are not.  The objective criteria, clearly set forth in the '328 patent, is simply whether

the item is common enough that it would not cause confusion to the user population to which the

system is directed.

   In *Mossman v. Broaderbund Software,* 51 USPQ 2d 1752 (E.D. Mich 1999), the Court

noted that the patent "does not mention or even attempt to establish <u>any criteria</u> for determining

whether a display can be readily followed".  (emphasis added)  Here, there are certainly criteria

for establishing whether a good or service is standard, that is, whether it is commonly known

enough that it would not cause confusion to the average consumer using the system.   The Court,

defendants, and their experts, have all had no trouble making this determination in litigating

infringement and validity in this case, and the fact that some goods and services may present a

"close call" merely goes to infringement, not indefiniteness.

   In *Semler v. American Honda Motor Co*. 990 F.Supp. 967 (S.D. Ohio 1997), the term

"overrunning" was in issue.  The Court noted it would be indefinite if construed to mean "when

the speed of the engine exceeds a predetermined speed established by *any* fixed relationship

between engine speed and throttle position".  (emphasis in original).  The Court reasoned that

whatever speed the alleged infringement was at, the patent owner could simply say it infringed

by arbitrarily defining the "any fixed relationship".  There were <u>no criteria</u> to use for the fixed

relationship.  When the engine speed is ten times the throttle position?  One thousand times?

Three times?  When the speed is the square root of the engine throttle position?  Whatever the

---

[7] *STX, Inc. v. Brine, Inc.* 37 F.Supp.2d 740 (D. Md. 1999) aff'd 211 F.3d 388 (Fed. Cir. 2000), also cited by
defendants, involved a similar problem.

speed was, the patent owner could randomly define a relationship such that infringement would result.  Again, there was thus no criteria at all to ascertain the scope of the claim.

Similarly, *Honeywell Int'l Inc. v. Int'l Trade Commission* 341 F.3d 1332 (Fed. Cir. 2003) also involved a situation where the Court found there was no criteria by which to measure whether one infringed or not, not that the criteria was slightly less defined than a bright line.

Thus, all of defendants cases involve situations where there was no infringement analysis that could even be performed to make the determination, not simply that the determination was a little tougher because the claim boundary was a little fuzzy such that reasonable minds can differ. Defendants <u>do not even allege</u> that they have no idea what criteria is being set forth concerning goods and services.  Instead, their expert clearly understands the definition, and defendants merely allege that it is difficult to ascertain whether their own conduct meets that limitation or not.   This however, does not render a claim invalid as indefinite.  *Smithkline Beecham v. Apotex Corp*., 403 F.3d 1331, 1340-41 (Fed. Cir. 2005); *Alza Corporation v. Mylan Laboratories, Inc*. 349 F.Supp.2d 1002). ( Indefiniteness does not depend on the infringer's ability to determine whether its own product has the properties that meet the claim limitation or not, but instead, upon whether the claim language states those properties.)

The term standard is no less definite than terms like close or near, or numerous other such terms that have been deemed acceptable by the Federal Circuit.  Thus, defendants' motion must fail for the additional reason that it relies entirely upon the wrong legal standard.


V.    <u>CONCLUSION</u>

The Court should hold that defendants' 35 USC §112 defense was waived. Alternatively, the Court should hold that defendants are estopped from asserting this defense, or

should revisit the *Markman* decision and remove the limitation in issue.  Finally, if the Court

does none of the foregoing, the Court should hold that the claim is not indefinite under 35 USC

§112.


Respectfully submitted,

KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*


By:    s/Jeffrey I. Kaplan/
      Jeffrey I. Kaplan (JK 4706)
      Michael R. Gilman (7608) *Pro Hac Vice*

Dated: December 21, 2007