# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
-------------------------------------------------X
                                                 :
Source Search Technologies, LLC,                 :
                                                 :
                    Plaintiff,                   :
                                                 :          Civil Action No. 2:04-CV-4420 (DRD)
           v.                                    :
                                                 :          **Oral Argument February 4, 2008**
                                                 :
Lendingtree, LLC, ServiceMagic Inc.  and:
IAC InterActiveCorp,                             :
                                                 :
                    Defendants.                  :
-------------------------------------------------X
```

**PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S ("SST") *CORRECTED* REPLY BRIEF IN SUPPORT OF SST'S CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFINITENESS UNDER 35 USC §112**

Dated: January 25, 2008

Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (7608) *Pro Hac Vice*
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

## <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

I.     INTRODUCTION ..................................................................................................1

II.    DEFENDANTS HAVE WAIVED THE INDEFINITENESS DEFENSE.........................2

III.   WAIVER ASIDE, DEFENDANTS ARE INCORRECT ON THE MERITS..................5

    A.     Defendants Have Conceded the Issue In its Entirety...............................................5

    B.     Defendants' Remaining Arguments Are Without Merit........................................9

IV.    IF STANDARD IS INDEFINITE, IT MAY NOT LIMIT THE CLAIMS ......................10

    A.     Defendants Have Misrepresented the Holdings of Their Cited Precedent ...........10

    B.     Defendants Admit the "Must Be Standard" Language
           Should Not Have Limited The Claims.................................................................12

    C.     Defendants Are Improperly Trying to Take
           Advantage of the Order of the Adjudication.......................................................13

V.     DEFENDANTS' ATTACKS ON SST ARE UNFOUNDED.........................................16

VI.    CONCLUSION ..................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Andrew Corporation v. Gabriel Electronics*,
    847 F.2d 819 (Fed. Cir. 1988)...............................................................................9

*Bott v. Four Star Corp.,*
    807 F.2d 1567 (Fed. Cir. 1986)...........................................................................3

*Cetel v. Kerwan Fin. Group, Inc.*,
    460 F.3d 494 (3d Cir. 2006).................................................................................3

*Charpentier v. Godsil*,
    937 F.2d 859 (3d Cir. 1991).................................................................................3

*Daiichi Pharma. Co. v. Apotex, Inc.*,
    2005 US Dist. LEXIS 26059 (D.N.J. Nov. 2005)..............................................5

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)...........................................................................9

*Dicon Global Inc v. Senco Sensors, Inc.,*
    2004 WL 2958770 (N.D. Ill., 2004) .................................................................18

*E-Pass Techs., Inc. V. 3COM Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003)...........................................................................9

*Fuji Photo Film v. ITC,*
    386 F.3d 1095 (Fed. Cir. 2004)............................................................. 12-14, 16

*Halliburton Energy Servs, Inc. v. M-I, LLC,*
    456 F.Supp.2d 811 (E.D. Tex. 2006)................................................................10

*Kinzenbaw v. Case, LLC*,
    2005 WL 4827380 (N.D. Iowa 2005) ...............................................................18

*Konomi Corp. v. Roxor Games, Inc.,*
    445 F.Supp.2d. 725 (E. D. Tex.  2006).............................................................16

*Legget & Platt, Inc. v. Vutek, Inc.*,
    2006 WL 3813677 at *7 (E.D. Mo. Dec. 26, 2006) .........................................10

*Minnesota Mining and Manufacturing Company, Inc. v.*
    *Johnson & Johnson Orthopaedics,  Inc.*,
    976 F.2d 1559 (Fed. Cir. 1992).........................................................................11

## TABLE OF AUTHORITIES (Continued)

**Page(s)**

*Pfizer v. Teva Pharmaceuticals,*
    429 F.3d 1364 (Fed. Cir. 2005)..................................................................14

*Rackable Sys. Inc, v. Super Micro Computer, Inc.,*
    2006 WL 3065577 (N.D. Cal. Oct. 27, 2006)..................................................10

*Resonate  Inc. v Alteon Websystems,*
    338 F.3d 1360 (Fed. Cir. 2003)..................................................................8

*Ricoh v. Katun Corp.,*
    486 F. Supp.2d 395 (D.N.J. 2007) .............................................................3

*Rosemount v. Beckman,*
    727 F.2d 1540, (Fed. Cir. 1984).................................................................9

*Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.,*
    731 F.2d 818 (Fed. Cir. 1984).................................................................18

*Shatterproof v. Libbey Owens Ford Company,*
    758 F.2d 613 (Fed. Cir. 1985).................................................................18

*Smithkline Beecham Corp. v. Apotex Corp.,*
    403 F.3d 1331 (Fed. Cir. 2005).................................................................10

*Surace v. Caterpiller, Inc.,*
    111 F.3d 1039 (3rd Cir. 1997) ...............................................................8

*Talecris Biotherapeutics, Inc. v. Baxter International Inc.,*
    510 F.Supp.2d 356 (D. Del. 2007)..................................................5, 7, 8, 18

*Trading Technologies, International, Inc., v. eSpeed, Inc.,*
    2008 WL 63229, *2 (N.D. Ill. 2008) .........................................................11

*Warner Lambert Co. v. Teva Pharms. USA, Inc.,*
    2006 U.S. Dist. LEXIS 3539 (D. N.J. Jan. 31, 2006) ........................................5

*Young v. Lumenis, Inc.,*
    492 F.3d 1336 (Fed. Cir. 2007)................................................6, 7, 8, 18

## I.      INTRODUCTION[1]

While arguing that the word "standard" sets forth no clear boundaries for the claim, defendants actually clearly recite those boundaries in their brief, and indicate that they understand them.   Concerning waiver, defendants do not dispute that SST first heard of their "standard" §112 defense when the present motion for summary judgment was filed, long after expert discovery ended, and nearly a year after the Court accepted full briefing and ruled on the proper construction of the term "standard".  Defendants also do not dispute the fact that they were on notice of the Court's definition of "standard" long before expert discovery occurred.

Defendants cite to their Answer filed at the beginning of this case, which includes no more than a general allegation of patent invalidity based upon the patent statute.   Defendants' failure to notify SST of the present issue resulted in SST relinquishing legal arguments, and not pursuing the expert testimony that it did offer on the other indefiniteness defenses that defendants asserted.  It is hard to conceive of a case with more prejudice.

Defendants also claim they do not know to whom the items must be familiar in order to be "standard."  Yet, this Court, and defendants' own brief, have both answered that question with no problem.  SST will answer it – a third time – below.   The term "standard" is not indefinite.

Finally, as expected, defendants were not able to locate a single case where a Court held a patent indefinite based upon language from the patent specification that "limited" an otherwise definite claim.  The patent statute does not provide for invalidation of a patent based upon an

---

[1] "Defendants' brief" refers to their brief filed January 18, 2008 in connection with this motion. Ex. ___ refers to the Kaplan Declaration filed with SST's moving papers on December 21, 2007, as supplemented with additional exhibits on January 4, 2008, and further additional exhibits submitted herewith.  Some of the exhibits to the Kaplan Declaration are designated with numbers, because the number of exhibits used up the letters.

indefinite statement in the specification.  Instead, case law provides that an indefinite statement in the specification may not limit otherwise definite claims.


## II.    __DEFENDANTS HAVE WAIVED THE INDEFINITENESS DEFENSE__

Defendants ask the Court to deny "SST'S REQUEST FOR YET ANOTHER CHANCE AT CLAIM CONSTRUCTION", and then spend several pages criticizing SST for seeking more claim construction rulings.   But SST never argued about whether indefinite specification language can limit a claim, precisely because defendants never asserted "standard" was indefinite.[2]

Further, according to pp. 39-40 of defendants' brief, the Court should now consider defendants' definition of "standard" even though SST's March 20, 2007 summary judgment brief specifically indicated that the term "standard" was in dispute and fully briefed SST's proposed definition of that word, this Court ruled that defendants, despite having had a full opportunity to respond, had "not offered a different definition, [so] the Court adopts SST's definition", and the Court later denied defendants' reconsideration request for "leave to submit briefing on the meaning of the word standard" (Defendants' Motion to Reconsider, May 14, 2007, p. 2) because the Court found that defendants "did not submit evidence to the court that was available to [them]."  (Reconsideration Opinion, June 14, 2007).

The Court should not permit defendants to rebrief an issue that they have been found twice to have ignored when it was adjudicated.  However, if the Court allows defendants to

---

[2] SST does not believe the Court should reach the merits, but is only asserting its argument in this regard contingent upon the Court permitting a long ago waived defense that should be barred. Defendants' position is thus analogous to SST amending its pleadings now to assert a new patent in this lawsuit, and arguing that defendants may not challenge the claim construction of that new patent because *Markman* proceedings have ended.

2

assert a defense first disclosed in the present motion – and it definitely should not – we trust the Court will fully consider any response SST has on the matter, because the "remedy" for withholding a defense improperly for a year is not that any opposition to the defense should be precluded.[3]

Defendants cite three cases that purportedly support their position on waiver. *Ricoh v. Katun Corp.*, 486 F. Supp.2d 395 (D.N.J. 2007); *Cetel v. Kerwan Fin. Group, Inc.*, 460 F.3d 494 (3d Cir. 2006); and *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991). Those cases however, involve facts such as 1) the new defense, while slightly late, was disclosed <u>long before</u> expert discovery; 2) the defense had been disclosed earlier by other defendants, and the relevant issues for the defense were common among the plural defendants, so the plaintiff had actually fully met the same issues during litigation; or 3) the other party agreed it was not prejudiced.

Here, defendants claim that the present indefiniteness issue does not need expert testimony. Yet, defendants' six other indefiniteness defenses to the '328 claims (Ex. M, pp. 9-10) were all supported with <u>their own</u> expert testimony. Ex. N, pp. 131-132. SST also rebutted every one of the six with extensive expert testimony. (Ex. S, pp. 58 – 60). Defendants have no basis to claim SST (and defendants themselves) would not have done the same thing if SST had been on notice of the defense defendants now raise. It is not for defendants to now speculate as to how SST could have met the defense had it been timely asserted. Expert reports and discovery took place long after this Court ruled on the definition of the term "standard" on May 2, 2007. Defendants should have raised their defense so SST could have met it.

Moreover, as defendants' concurrently filed motion under 35 USC §103 notes, many computerized shopping systems existed at the time of the '328 invention, albeit not using the

---

[3] Finally, the Court should note this position of defendants when evaluating their conduct for willfulness purposes under *Bott v. Four Star Corp.* 807 F.2d 1567 (Fed. Cir. 1986).

filtering techniques set forth in the '328 claims. All of these systems involved the then relatively new practice of users selecting items for purchase from a computer, without a salesperson. (See e.g.; Ex. L, FAST documents) Thus, all of these systems would have the same issue to which the "must be standard" language in issue is directed. (Ex. J, portions of SST's prior brief, providing background on the "standard" issue) SST could have engaged the services of an expert that was involved in these ecommerce systems of the day to offer an explanation of how a phosita would understand "standard."[4]

SST also relinquished several legal arguments it could have made in the proceedings leading to this Court's May 2, 2007 Summary Judgment Opinion. ("The SJ proceedings" or "the SJ Opinion"). Had defendants raised the issue in response to the definition of "standard" put forth in SST's March 20, 2007 brief, all the present arguments could have been considered then, and a ruling would have been obtained before the experts opined. Indeed, in connection with the SJ proceedings, the Court did revisit and update its claim construction in response to SST's arguments. (SJ Opinion, at 13-16). The Court could have addressed all the issues about the term in dispute at one time. Or perhaps SST's expert, or a different expert, could have examined the '328 patent and offered a different interpretation of the term. Or, SST could have put forth a different proposed definition.

At the very least, defendants could have mentioned this in October or November, when they began preparing their present motion papers. Although the defense would likely have been waived even then, at least this would have provided a few months for SST to address the matter, and would have shown some good faith on defendants' part. Defendants certainly did not

---

[4] In fact, with respect to one of the infringement issues in this case, SST did procure an opinion from a separate expert other than SST's main expert, Dr. Dowling. (Ex. 1).

prepare an entire summary judgment brief – signed by seven different lawyers - and extensive supporting documentation, on the same day they filed it, November 30, 2007.   Yet, during all of October and November, while counsel had numerous communications concerning the briefing schedule and other case matters,  and while defendants requested and obtained SST's <u>courteous consent</u> to extend the date for defendants to file their summary judgment motions (Ex. 3), defendants concealed what they were doing.

Defendants' speculation about how SST could have responded to the issue is contrary to how SST <u>did</u> respond to the indefiniteness defenses defendants asserted, and does not excuse their discovery failures or eliminate the prejudice to SST.  It <u>certainly</u> does not excuse the intentional concealment that occurred after they decided to file the present motion.   This Court should foreclose this long ago waived defense without reaching the merits. *Warner Lambert Co. v. Teva Pharms. USA, Inc*. 2006 U.S. Dist. LEXIS 3539 (D. N.J. Jan. 31, 2006); *Daiichi Pharma. Co. v. Apotex, Inc*. 2005 US Dist. LEXIS 26059 (D.N.J. Nov. 2005).

### III.     WAIVER ASIDE, DEFENDANTS ARE INCORRECT ON THE MERITS

#### A.     <u>Defendants Have Conceded the Issue In its Entirety</u>

In *Talecris Biotherapeutics, Inc. v. Baxter International Inc*. 510 F.Supp.2d 356 (D. Del. 2007), the claim language in issue was "<u>acceptable</u> level suitable for intravenous administration" (underlining added).  In rejecting an indefiniteness defense, the Court noted that whether such "acceptability" limitation was met was "dependant upon a number of variables, which may include… <u>the individual characteristics of the patient</u>." (underlining added) *Id.*, at 360.   The Court nonetheless held that those of skill in the art would know, <u>for a particular patient</u>, what would be within acceptable limits, and thus, what would meet the claim language.  *Id.*, at 361.

The Court was not in any way concerned with the fact that the <u>same solution might or might not be infringing, depending upon the ultimate patient to which it was administered</u>.

Similarly, in *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007), the Federal Circuit most recently reversed the district court's finding of indefiniteness:

> Moreover, because the term "near" describes a location on an animal, its use, as opposed to a precise numerical measurement, is not inappropriate because the size of the appendage and the amount of skin required to be incised <u>will vary from animal to animal based on the animal's size.</u> …a person of skill in the art would know where to make the cut; thus, the use of the word "near" does not deprive one of ordinary skill from being able to ascertain where the cut should be made. (underlining added)

The fact that a claim term may have a different meaning depending upon the subject to which the patented method is applied is insufficient as a matter of law to render the claim indefinite. Apparently unaware of the foregoing, and despite their assertions that the claims are hopelessly indefinite, defendants actually correctly describe the boundaries of the claims at pp 9-11 of their brief. For a given user population to which network membership will be made available, <u>defendants agree that they actually know</u> which items are "standard" and which ones are not[5]:

> **General Public: The red area represents "goods and services" that the general public would consider to be "standard" (familiar, common, or usual). The regions outside the red box represent "goods and services" that the general public would consider to be "non-standard" (unfamiliar, uncommon, or unusual).**
>
> ***Electrical engineers:*** …**If surveyed, it is likely that electrical engineers would be familiar with most, if not all, of the same "goods and services" as the general public….As a group, however, electrical engineers are familiar with additional goods and services, specifically those related to their profession…. An example of a "standard" good that is familiar to electrical engineers, but not the general public, is the Type J resistor discussed in the '328 patent….**

---

[5] Underlining added

> ***Patent lawyers:*** **…Like electrical engineers, patent lawyers are likely to be familiar with most of the "goods and services" that the general public would consider "standard". Patent lawyers are also familiar with additional "goods and services" related to their profession, but these are different from the additional "goods and services" that are familiar to electrical engineers…. <u>An example of a service that would be familiar to patent lawyers, but probably not the general public or electrical engineers, is a service that retrieves PCT applications.</u>**

Defendants' real complaint is that "standard" has a different meaning based upon the population that will be permitted to join and use the network. Defendants claim they that therefore, they can not figure out who to ask, i.e.; among whom must the "goods and services" be commonly known? The answer is easy: Once the system designer or network operator knows to whom he or she will offer network membership, he can ascertain what types of items are standard – just as defendants correctly note at the quoted language above. The general public is one group, physicians are another group, electrical engineers are a third group, etc. *Talecris, Young.*

Is it anything more than fundamental common sense that the population among whom the items must be well known enough to be considered standard is the population to whom the system operator will offer network membership? Is it really all that difficult to figure out that if Westlaw, for example, is going to offer a '328 type feature to its users, whereby users of Westlaw can obtain quotes on law office supplies and legal publications and treatises from various vendors through the Westlaw computer system, that they ought to pick the type of items with which lawyers who use their system are familiar, rather than surgical tools with which only neurosurgeons are familiar? Or, that if the system is one for home repair services like that operated by defendant ServiceMagic, then "standard" items should be those well known and familiar among homeowners in the United States who use the system? Is <u>this</u> the mysterious

unknown upon which defendants' entire motion is based, to which most of their brief is devoted, and upon which they are asking the Court to declare the '328 patent invalid? [6]

Defendants' admissions that for a given population, <u>they actually know</u> which items are <u>standard</u>, requires the granting of SST's motion that the claims are definite.  However, defendants have gone further, because they also show how easy it is to ascertain what items are <u>non</u>-standard as well.  At pp. 3 and 14 of their brief, defendants note that SST can only cite "made up" and "imaginary" examples of non-standard items such as "rumble strip machines".  Defendants and their counsel – members of the public not involved in the roadway construction industry – were "confused" as to what a rumble strip machine was, just as SST stated they would be, and just as col. 3 of the '328 patent correctly notes.  SST correctly designated a rumble strip machine as non-standard. [7]

In short, defendants have argued that the scope of the claim may vary depending upon the network membership.  But defendants agree that for a given network membership, they know what the term "standard" means.  Defendants have thus conceded the issue. *Talecris, Young* [8]

---

[6] This is why ServiceMagic can advertise that it offers 240 "common" home services, and not have the problem of people not knowing to what the advertisements are referring.  In the SJ Opinion, this Court had no problem finding that items such as remodels, carpentry, flooring, painting, siding, etc. were standard. *Id.*, at 18.

[7] Rumble strip machines are used to cut the troughs into the surface of the shoulders of most major roadways, to cause the tires and car to vibrate (i.e.; rumble) if the car starts to swerve into the shoulder or other prohibited lane.  The machines that cut these troughs are called rumble strip machines.  *Surace v. Caterpiller, Inc.*, 111 F.3d 1039 (3rd Cir. 1997); See also Ex. 2.

[8] To the extent that some small number of individuals in the population of interest do not know what the item is, that does not make it non-standard. Instead, it simply means that the use of a "standard" item did not actually ensure there was <u>no</u> confusion because even with a commonly known item there was some small amount of confusion.  However, the failure of the claimed invention to solve every issue or problem described in the specification does not impact the validity of the claims.  *Resonate  Inc. v Alteon Websystems*, 338 F.3d 1360 (Fed. Cir. 2003) (Holding that it is not necessary that claimed invention operate to solve all the problems

**B.**     <u>Defendants' Remaining Arguments Are Without Merit</u>

Defendants argue that Dr. Scacchi used prior art with off the shelf parts in his report on invalidity, and thus, the Scacchi report does not show that the term "standard" is definite. The Federal Circuit disagrees. *Rosemount v. Beckman* 727 F.2d 1540 (Fed. Cir. 1984). More importantly, this still does not explain how Scacchi opined unequivocally on <u>infringement</u>, after this Court defined the word "standard" on May 2, 2007: "[L]oans on the LendingTree system are not "standard" as the Court has construed that term to mean usual, common, or customary…" (Ex. N1, page 35) According to defendants, Dr. Scacchi's opinion is: "I don't know what kind of items the claim calls for, but whatever kind they are, it's the kind defendants don't sell." Dr. Scacchi, like defendants, this Court, and the patent examiner, fully understands the scope of the claims.[9]

Defendants' citation to *Datamize, LLC, v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) is misplaced. In *Datamize*, the phrase was aesthetically pleasing. One can say something is aesthetically pleasing, and the same person can say the same thing is not aesthetically pleasing the next day. And nobody has any way of measuring why something is or is not aesthetically pleasing to someone. The "scope of claim language can not depend solely on the ***unrestrained subjective opinion*** of a particular individual."   (emphasis added) *Datamize*

---

discussed in the specification);  *E-Pass Techs., Inc. V. 3COM Corp.*, 343 F.3d 1364 (Fed. Cir. 2003) ("The court's task is not to limit claim language to exclude particular devices because they do not serve the perceived 'purpose' of the invention").

[9] Defendants have never challenged SST's assertion that the statement was necessary to ensure compliance with the best mode requirement. However, defendants propose no more definite or precise manner in which the concept could have been conveyed in the '328 specification. If the language is as precise as the subject matter permits, the courts can demand no more. *Andrew Corporation v. Gabriel Electronics,* 847 F.2d 819 (Fed. Cir. 1988).

Here, nothing depends upon anyone's unrestrained subjective opinion.  Statistical and factual data exists about what items are known to the general public, or to the population of patent attorneys, or to any other population that the system will operate with.  Defendants state so themselves.  While the "standard" nature of an item may be difficult to ascertain in some circumstances, this does not render the claim indefinite.  *Smithkline Beecham Corp. v. Apotex Corp*. 403 F.3d 1331 (Fed. Cir. 2005).


IV.    **IF STANDARD IS INDEFINITE, IT MAY NOT LIMIT THE CLAIMS**

A.    **Defendants Have Misrepresented the Holdings of Their Cited Precedent**

None of the three cases defendants cite hold that specification language may be used to limit a claim, and then declare the claim indefinite.   In *Legget & Platt, Inc. v. Vutek, Inc.*, 2006 WL 3813677 at *7 (E.D. Mo. Dec. 26, 2006), the claim term "deform" was found indefinite.  The Court, following precedent that a claim term should only be declared indefinite if no reasonable construction can render it definite, attempted to save the claim by trying to define it using language from the patent specification.  The Court ultimately held the claim could not be saved: "As a result, the claim terms deform…are not capable of reasonable construction…"  (emphasis added).  *Id.*, at 8.   In *Rackable Sys. Inc, v. Super Micro Computer, Inc*., 2006 WL 3065577 (N.D. Cal. Oct. 27, 2006), the Court held the claim terms "components requiring intermittent physical access" and "front" were indefinite.  *Id.*, at 6-7.  *Halliburton Energy Servs, Inc. v. M-I, LLC*, 456 F.Supp.2d 811 (E.D. Tex. 2006) also held that the claim language "fragile gel" was indefinite.[10]

---

[10] It appears two of these three cases are presently on appeal, and SST believes they may have been decided incorrectly in the lower courts.  Regardless of the outcome of the appeals, it is indisputable that all three cases involved holdings of indefiniteness with respect to terms in the claims themselves.

Defendants' attempts to extend the above case law to a prohibition against indefinite language in the specification – even if the term "standard" were indefinite, which it is not - would violate the facial language of the patent statute.  Specifically, 35 USC §112 sets out <u>separate</u> requirements for the specification and claims.  Only the claims must "particularly point out and distinctly claim" the invention, and therefore, only the claims are subject to a definiteness requirement.

There is no allegation here that the term "goods and services" is vague or indefinite.  It is improper to use the "standard" language from the specification that the Court used in construing the <u>claim</u> term "goods and services" to hold the claim indefinite.  Indeed, Courts have repeatedly rejected this idea. In *Minnesota Mining And Manufacturing Company, Inc. v Johnson & Johnson Orthopaedics,  Inc*. 976 F.2d 1559, 1566-67 (Fed. Cir. 1992), the Federal Circuit affirmed the lower court's construction of the term "pre-lubricated resin coated sheet" as requiring a slippery feel or slippery surface, because the <u>specification</u> explained that a pre-lubricated surface was one <u>made slippery</u>.   At the same time, the Court rejected the indefiniteness challenge by holding that "JJO's argument is improperly framed in its use of the term slippery because this term is not used in the claims.  The claims only require lubrication.  The term slippery was used by the Master to define and explain what was meant by the term lubricant."  (Internal quotes omitted) See also,  *Trading Technologies, International, Inc., v. eSpeed*, *Inc*., 2008 WL 63229, *2 (N.D. Ill. 2008). (improper to use language of Court's construction, imported from specification to construe claim, to then render claim indefinite.)

Defendants do not have a single reported opinion holding that indefinite language in the specification can be used to "limit" a definite claim, and then further used to declare the claim invalid as indefinite.  This position is contrary to law.

**B.    Defendants Admit the "Must Be Standard" Language
Should Not Have Limited The Claims**

At page 13 of their brief, defendants make a remarkable admission:

> For example, the '328 patent identifies Type J resistors, a specialty electronics
> item, as a preferred embodiment of a "standard" good….But general consumers,
> the public, and most people are unlikely to have ever heard of a Type J resistor,
> let alone be familiar with what it is. **Thus, SST's interpretation of the claims
> excludes the preferred embodiment**. (Emphasis added)

*Fuji Photo Film v. ITC*, 386 F.3d 1095 (Fed. Cir. 2004) involved whether a step of a

claimed film loading and assembly method <u>had</u> to be performed in the dark.  The claim had no

explicit language stating so, just like the claim here has no language stating that the "goods and

services" are standard.  However, in *Fuji*, the specification used the mandatory language similar

to the must be "standard" language here:  "[F]ilm loading and film package assembly <u>has</u> to be

done in the dark room".  (emphasis added) *Id*., at 1105.

The Federal Circuit however, reversed the lower Court for improperly limiting the

claims.   Because the patent explicitly disclosed an embodiment that did not require dark room

loading, this "context ma[de] it clear that the statement [that film loading has to be done in the

dark] refers to a preferred embodiment of the invention, not the invention as a whole.  *Id.*, at

1105.

Here, to the extent defendants are correct in their assertion that a Type J resistor is not a

standard, commonly known item, this fact puts this case on all fours with *Fuji Photo*.

Specifically, according to defendants, the '328 patent discloses a non-standard item that causes

confusion, such as a Type J resistor, and also has a statement "The goods and services must be

standard items to ensure there is no confusion."    This is *Fuji Photo*, where the patent disclosed

a film loading method performed in the light, but also stated film loading "has to be done in the dark."

Simply put, if one embodiment in the '328 patent discloses that the method must use "standard" items to avoid confusion, and if defendants are correct that another embodiment discloses a non-standard item that may not always avoid confusion, then the claim can not be limited to the first embodiment, and declared invalid as excluding the second embodiment, as defendants urge. Instead, the Court must construe the claim to cover both of the embodiments disclosed in the specification, by noting that the "must be "standard" items" limitation is only mentioned in connection with the first embodiment that ensures there is no confusion, so the claim must cover both embodiments, like in *Fuji Photo*. In fact, at p. 21 of its October 16, 2006 *Markman* decision, this Court rejected defendants' proposed construction of filter means by noting "Thus, filter means can not be limited to the algorithm in Figures 5 and 6. Rather, the definition of that term must encompass each of the various descriptions of the structure found throughout the specification."

Defendants' assertion that the '328 patent discloses an embodiment that uses non-standard goods is a reason to remove "standard" from the claimed goods and services, to avoid excluding a disclosed embodiment. It is not a reason to declare the claims invalid.

**C.    Defendants Are Improperly Trying to Take Advantage of the Order of the Adjudication**

This Court has already held that at the time of the original *Markman* proceedings in this case, the Court inadvertently used the words "standard" and "standardize" interchangeably. SJ Opinion, at 13-16. This was not the Court's fault - <u>defendants</u> had those two words confused

throughout their briefing. (See Defendants Markman Briefs of December 7, 2005 and December 30, 2005, pp. 22 and 16, respectively).   As the term "standard" was not in any claim, the parties focused on only construction of the claim term "goods and services."   The definition of "standard" only came into issue when defendant ServiceMagic filed for summary judgment many months later. (SJ Opinion, at 17 "In order to answer that question, the court must define the term standard.")

This Court then arrived at the proper definition of the <u>specification</u> language "standard." Indeed, the Court's definition of "standard" <u>must</u> be taken as correct for purposes of this motion, as all parties have fully briefed that, the Court has fully considered and adjudicated the matter, and nobody has alleged any valid reason to revisit that issue.   Had the Court instead adjudicated the meaning of the specification term "standard" <u>before</u> it construed the claim language "goods and services", rather then adjudicating the two issues in the reverse order as happened, all of defendants' assertions of invalidity here would have instead operated <u>against</u> limiting the claimed "goods and services" to "standard" ones.

For example, if the specification language was found to have been too undefined for the phosita to understand it as a clear intent to redefine the ordinary meaning of the claim term "goods and services",  this would have provided a reason not to limit the claimed "goods and services".   Similarly, the fact that the "standard" language is inconsistent with allegedly non-standard embodiments disclosed in the specification – as defendants now argue - would also have counseled <u>against</u> construing the claimed "goods and services" as limited to "standard" ones, notwithstanding the "must be standard" language. *Fuji Photo*.   It is error to construe the claimed "goods and services" to exclude the non-standard "goods and services" disclosed in the specification. *Pfizer v. Teva Pharmaceuticals,* 429 F.3d 1364.  (Fed. Cir. 2005).   No case has

14

ever limited the claim by one disclosed embodiment, and then declared it indefinite because it excluded the other disclosed embodiment.

Defendants however, again argue that reading "standard" to mean "off the shelf", (i.e.; standardized) would render the claim more definite.   But reading "standard" and standardize as the same, when they have two different meanings, and are used differently <u>in six places throughout the '328 specification</u>, would be error.  SST set forth fifteen different reasons why, and cited extensive case law on this matter, and defendants offered nothing in response.  Indeed, SST showed that the definition defendants proposed led to absurd results, like the same word in the patent means different things in different places, and different words mean the same thing. (Ex. J).  It is indisputably wrong to read two different words with different meanings as the same, as this Court correctly ruled in the SJ Opinion.

Defendants thus urge an approach where, having themselves read the term "standard" into the claim without the benefit of what it meant, and now discovering that the true meaning of "standard" would improperly exclude the preferred embodiment from the claims, the Court should simply pick a different definition of standard, which confuses two words and which all parties know to be incorrect, to save the claim from excluding the preferred embodiment or from being indefinite.  Relevant Federal Circuit precedent however, suggests a much more appropriate solution than correcting one wrong with another wrong.

First, forget about <u>the order</u> in which the two issues <u>were</u> decided, and focus instead on arriving at the proper definition of <u>both</u> the specification language <u>and the claim language</u>. Claims are to be construed in light of the specification, not the reverse, so the specification language needs to be understood first.  That was done in the SJ Opinion. Second, using the correct meaning of the <u>specification</u> phrase "must be standard items to avoid confusion", review

15

the *Markman* ruling with the benefit of that meaning, a benefit that was unavailable at the time of the *Markman* ruling.

Third, determine if defendants are correct here that this specification phrase, now properly understood, would exclude the Type J resistors in the specification, or that the phrase is indefinite.   If either is the case, properly construe the claim to <u>not</u> be limited by the term standard, in accordance with case law holding that construing a claim to exclude disclosed embodiments, or limiting a claim based upon indefinite language in the specification, is improper.  *Fuji Photo*, *Konomi Corp. v. Roxor Games, Inc.,* 445 F.Supp.2d. 725 (E. D. Tex.  2006). Alternatively, if the Court finds the specification term "standard" not indefinite, and not to exclude the disclosed Type J embodiment, then the claim as already construed is definite.  In this case, grant SST's cross motion on the issue.[11]

To be sure, <u>SST would prefer the Court not revisit its claim construction</u> – SST believes the defense is barred as untimely, and the term "standard" is not indefinite in any event. However, ***if*** the Court permits this defense, and ***if*** the Court finds that limiting the claimed "goods and services" by the proper meaning of the specification phrase "must be standard items to avoid confusion" would exclude a disclosed embodiment, or would make an otherwise definite claim <u>in</u>definite, then that specification language may not limit the claim, and must be removed from the claims.  *Fuji Photo*.   Either way, SST's motion should be granted.

## V.    **DEFENDANTS' ATTACKS ON SST ARE UNFOUNDED**

Defendants assert that SST is trying to interpret the claims one way for infringement and a different way for validity.  But SST agrees that if this Court maintains its prior ruling that the

---

[11] The avoidance of having to perform all of these steps now, and the risk of the result injecting further issues into this case, provides further support for the Court to bar the defense as waived.

"goods and services" must be standard, then they must be "standard" for purposes of validity <u>and</u> infringement.  If the Court concludes that the claimed "goods and services" are not so limited, then they are also not so limited for purposes of validity <u>and</u> infringement.   However, before the Court may adjudicate infringement <u>or</u> validity, it must interpret the claims in light of the specification, and then apply its same interpretation of the claims to both the validity <u>and</u> infringement analysis.

SST is merely arguing that specification language too ambiguous to define anything can not also be so clear that it overcomes the "heavy presumption" that the claimed "goods and services" are to be given their ordinary meaning.  Thus, either the term "standard" is not ambiguous, or it does not limit the claim – both for purposes of invalidity <u>and</u> infringement.

Ironically, it is defendants who want to switch the definition of words when convenient for them, and who take different claim constructions for purposes of validity and infringement. It is defendants that have offered infringement defenses and expert opinions - after the definition about which they complain was adopted by the Court – that unequivocally state they do not offer "standard" items. Yet, they claim they can not figure out what "standard" means.  It is defendants who characterize their own "goods and services" as common and "standard" in their product brochures, yet they claim this term is hopelessly ambiguous.  And it is defendants who urge that the heavy presumption that a claim term is to be given its ordinary meaning is overcome by specification language that clearly evidences an intent to redefine that claim language, while at the same time, urging that the meaning of that specification language can not be ascertained.

At bottom, SST believes the statement at issue, now that it is properly understood, was a relatively innocuous statement indicating that the system designer should sell well known goods

to make sure people don't have the problem that defendants and their counsel had here - not knowing what a rumblestrip machine was. The statement is no different than stating that the computers must be <u>reliable</u> to ensure they are not out of service too often, or stating that the menu text on the user's computer display must be made <u>large</u> to ensure users could clearly see it. While the terms "reliable", and "large", without any further guidance, might possibly be problematic as indefinite in a claim, neither of the foregoing two statements made in the patent specification would cause any problem under 35 USC §112, and neither of the foregoing two statements could possibly be read as clearly redefining any claim language.    Instead, both would be defined as simply cautionary statements that explain how to make the best use of the invention.

In any event, defendants concede in the motion that for a given user population, they know what "goods and services" are covered. Their expert appears to understand the claim, their prior art uses the term, and their own advertisements advertise the term with the language in issue. Case law holds repeatedly that under such circumstances, the term is not indefinite, and defendants position is therefore without merit. *Young*; *Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.* 731 F.2d 818 (Fed. Cir. 1984); *Shatterproof v Libbey Owens Ford Company*, 758 F.2d 613 (Fed.Cir. 1985); *Talecris*; *Kinzenbaw v. Case, LLC* 2005 WL 4827380 (N.D. Iowa 2005); *Dicon Global Inc v. Senco Sensors, Inc* 2004 WL 2958770 (N.D. Ill., 2004).

## VI.    <u>CONCLUSION</u>

The Court should hold that the argument defendants make is waived. Alternatively, the Court should either bar the argument based upon estoppel, or remove the word "standard" from the claim. If the Court does none of the foregoing, it should hold the phrase in issue is not

indefinite.   Finally, the Court should take note of the arguments defendants presented here when evaluating if defendants are proceeding in this case in good faith, for purposes of the willfulness motion.

Respectfully submitted,
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

DATED: January 25, 2008    By:    s/Jeffrey I. Kaplan/
Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (MG 7608) *Pro Hac Vice*