# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------X
:
Source Search Technologies, LLC,  :
:
           Plaintiff,  :
:   Civil Action No. 2:04-CV-4420 (DRD)
   v.  :
:
Lendingtree, LLC, ServiceMagic Inc. and :
IAC InterActiveCorp,  :
:
           Defendants.  :
---------------------------------------------------------X


**PLAINTIFF SOURCE SEARCH TECHNOLOGIES LLC'S ("SST") REPLY BRIEF IN SUPPORT OF SST'S CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF OBVIOUSNESS UNDER 35 USC §103**


Dated: January 30, 2008

Jeffrey I. Kaplan (JK 4706)
Michael R. Gilman (7608) *Pro Hac Vice*
KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
Facsimile: (732) 634-6887
*Attorneys for Plaintiff*
*Source Search Technologies, LLC*

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ..................................................................................................1

II. THE BRICK AND MORTAR ("BAM") ART
  MAY NOT BE CONSIDERED ...........................................................................1

III. DEFENDANTS HAVE FAILED TO ESTABLISH
  PRIMA FACIE OBVIOUSNESS .........................................................................4

IV. DEFENDANTS' ARGUMENTS EMPHASIZE
  THEIR FAILURE OF PROOF ............................................................................6

V. DEFENDANTS' REMAINING ARGUMENTS
  ARE MERITLESS ............................................................................................10

VI. DEFENDANTS CAN NOT PROVE CLAIMS 1-3 OBVIOUS .......................12

VII. CONCLUSION ..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

*Ajinomoto Co. v. ADM Corp.*,
    1998 WL 151411 (D. De. 1998)..........................................................................................2

*Astra et al. v Andryx Pharma, Inc.*,
    222 F.Supp.2d 423 (S.D.N.Y. 2003).................................................................................2

*AT&T Corp v. Microsoft Corporation*,
    2004 WL 292321, *8 (S.D.N.Y. 2004)..............................................................................2

*Bausch and Lomb, Inc. v. Barnes-Hind/Hydrocurvbe, Inc.*,
    796 F.2d 443, 448-449 (Fed. Cir. 1986) ..........................................................................13

*In re Bayer*,
    568 F.2d 1357 (CCPA 1978) .............................................................................................2

*Depuy, Inc. v. Zimmer Holdings, Inc.*,
    343 F.Supp.2d 675 (N.D. Ill. 2004) ...........................................................................2, 5, 7

*Ex Parte Crandall*,
    2007 WL 2843724 *5 (BPAI 2007)..................................................................................5

*Hilgrave, Inc. v. Symantec Corp.*,
    271 F.Supp.2d 964 (E.D. Mi. 2003) .................................................................................2

*Innogenetics N.V. v. Abbott Laboratories*,
    2008 WL 151080 * 10-13 (Fed. Cir. 2008) ..................................................................4, 11

*KSR International Co. v. Teleflex Inc.*,
    127 S.Ct. 1727 (2007).........................................................................................1, 4, 7, 10

*Mannesmann Demag Corporation v.*
    *Engineered Metal Products Company, Inc.*,
    605 F.Supp 1362 (D. Del. 1985).......................................................................................2

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
    721 F.2d 1563 (Fed. Cir. 1984).........................................................................................7

*MuniAuction, Inc. v. Thomson Corp.*,
    502 F.Supp.2d 477 (W.D. Pa. 2007).................................................................................7

*Norian Corporation v. Stryker Corporation*,
    363 F.3d 1321 (Fed. Cir. 2004).........................................................................................1

*Northern Telecom, Inc. v. Datapoint Corporation,*
     908 F.2d 931 (Fed. Cir. 1990)..................................................................................1,2

*In re Omeprazole,*
     490 F.Supp. 2d 381 (S.D.N.Y. 2007).....................................................................1, 4, 6

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
     411 F.3d 1332 (Fed. Cir. 2005)....................................................................................7

*Sanitec Industries v. Microwaste Corp.*,
     2006 WL 3455000 (S.D. Tex. 2006) ............................................................................2

*Single Chip Systems v. Intermec IP Corp.*,
     495 F. Supp.2d 1066 (S.D. Ca. 2007).........................................................................4

*SRI International Inc. v. Internet Security Systems, Inc.*,
     2008 WL 68679 *10-12 (Fed. Cir. 2008)....................................................................2

*Stryker Trauma, SA v. Synthes,*
     2007 WL 1959231 (D. NJ 2007) ................................................................................5

*Wang Laboratories v. Toshiba Corporation,*
     993 F.2d 858 (Fed. Cir. 1993).....................................................................................6

**I.    INTRODUCTION**

Defendants have not proven publication of much of their prior art – therefore, it may not be considered. Defendants also lump together all the claims, but present argument directed <u>to claims 1-3 only</u>, failing to even address claim 14. Defendants claim SST's analysis is "made up", yet <u>every one</u> of the post *KSR* obviousness cases includes a <u>structured analysis,</u> with the Court stepping into the shoes of the phosita, starting with one reference, and recreating the <u>actual path</u> the phosita would have taken with the other references available. Defendants fail to make this showing, because they ignore teach aways, use the wrong test for analogous art, and propose solutions to problems that clearly <u>did not exist</u> in the art. Most importantly, their proposed combination – even if suggested by the prior art, which it is not - is <u>missing portions of the claim.</u> Accordingly, SST is entitled to summary judgment.

**II.   THE BRICK AND MORTAR ("BAM") ART MAY NOT BE CONSIDERED**

Simply introducing a dated document, without evidence of its publication date, is insufficient as a matter of law to prove publication to a <u>clear and convincing standard</u>, even when the document bears a copyright notice or similar indicia. *In re Omeprazole,* 490 F.Supp. 2d 381, 519-20 (S.D.N.Y. 2007) involved a number of documents which appeared <u>unquestionably</u> to be publications, but the Court refused to consider them:

> Impax presents no evidence that *Pharmacoat 1969* was disseminated or distributed to anyone prior to the critical date. Instead, Impax asserts that *Pharmacoat 1969* is "self-proving"… The Court finds this reasoning insufficient to show public availability…. Defendants have not shown that *H-22* (APO 973) or *H-17* (ITX 7) qualify as printed publications. While Impax argues that the *H-22* writing has a publication date of 1979, no party has presented any evidence that *H-22* or *H-17* were accessible to the public.

*Id.*, at 111-112. *Norian Corporation v. Stryker Corporation,* 363 F.3d 1321 (Fed. Cir. 2004) (general practice of publicly distributing abstracts does not prove publication); *Northern*

1

*Telecom, Inc. v. Datapoint Corporation* 908 F.2d 931, 936 (Fed. Cir. 1990); *SRI International Inc. v. Internet Security Systems, Inc.*, 2008 WL 68679 *10-12 (Fed. Cir. 2008) (placing document on website insufficient to prove publication unless website is properly indexed)[1]

    Defendants' carefully questioned <u>several</u> witnesses in this case for the precise purpose of establishing publication of certain prior art with which those witnesses were familiar. (Ex. 8)[2]. However, defendants here offer BAM documents going back decades, with no witness (or other evidence) to establish the date of public availability of these documents.  The evidence SST was able to locate, while not dispositive, suggests that one of these references was available only to people who met certain criteria related to the hardware business (Ex. 4, and its explanation) – making it <u>unavailable</u> to the ecommerce phosita, and improper as prior art. *SRI International Inc*. Several "Westlaw" documents produced with the "updated" report show copyright dates and hearsay publication dates that differ by <u>years</u>. (Ex. 6)  This calls into question the reliability of even the documents that have only one hearsay date. Even many of the ecommerce documents are provided with no such proof.

    Not a single patent has ever been declared invalid based upon documents without a sponsoring witness, or other <u>clear and convincing</u> evidence of publication date.  SST initially assumed this was an oversight, but it appears now that defendants have actually filed a summary

---

[1] *AT&T Corp v. Microsoft Corporation* 2004 WL 292321, *8 (S.D.N.Y. 2004)(document with a 1980 date not prior art); *Mannesmann Demag Corporation v. Engineered Metal Products Company, Inc*.  605 F.Supp 1362 (D. Del. 1985); ("the mere fact that the Demag brochure was dated "6.77" is hardly evidence that the brochure was actually disseminated to the relevant public as of that date"); *Depuy, Inc., v Zimmer Holdings, Inc*.  343 F.Supp.2d 675 (N.D. Ill. 2004); *Ajinomoto Co. v. ADM Corp*. 1998 WL 151411 (D. De. 1998); *Hilgrave, Inc. v. Symantec Corp*. 271 F.Supp.2d 964 (E.D. Mi. 2003)(Date printed on document is hearsay - can not prove publication); *Astra et al. v Andryx Pharma, Inc*., 222 F.Supp.2d 423 (S.D.N.Y. 2003); *Sanitec Industries v. Microwaste Corp*.  2006 WL 3455000 (S.D. Tex. 2006);  *In re Bayer* 568 F.2d 1357 (CCPA 1978)
[2] Kaplan Declaration, filed with the present motions, additional exhibits included herewith.

judgment motion based largely upon inadmissible documents. SST's motion should be granted on this ground alone because a jury would not be permitted to even see most of this prior art.

Publication aside, defendants must prove their claim that the BAM counseling centers and hardware stores are "analogous" to ecommerce.[3] Defendants' failure in this regard stands out best with respect to claim 14, which defines a system that selects a sub-subset of potential vendors based upon a two step filtering process, and then <u>obtains and forwards quotes</u> (i.e.; price and other terms <u>in sufficient detail to constitute an offer capable of acceptance</u>) to a potential buyer, <u>thereby permitting an on-line purchase</u>.[4] Defendants claim that social services referral centers and the like render this claim obvious. Defendants cite nothing <u>in the prior art</u> that would indicate that an ecommerce engineer designing a system for <u>on-line quoting and optional purchase</u> would look to a social services referral center – which does not relate to ecommerce, does not provide quotes or permit optional purchases, and is not even the BAM equivalent of claim 14.

Defendants point to analogies to referral systems given by SST in this case to explain the subject matter of claims 1-3 to the Court (which also include analogies to car engines), analogies given <u>in the '328 patent</u> to explain the invention (which also include analogies to insurance companies), and analogies given by Dr. Dowling in 2007 to explain his testimony. The <u>only</u> reasons defendants <u>even claim</u> such referral art is <u>relevant</u> to claim 14 are all due to the '328 patent, and SST's "admissions" in this case. But neither can replace the legal definition of

---

[3] The Court defined the phosita as having a "BS degree in computer science or an equivalent field like electrical engineering, or having the equivalent work experience, and someone with experience designing and/or using Internet related software and commerce systems." Thus, ecommerce is the relevant art.

[4] Defendants lump all the claims together, but claim 14 is drastically different from the earlier claims, and includes numerous features not in those claims. Each claim must be evaluated separately.

3

analogous art. Defendants must point to a particular problem <u>known in the field of endeavor at the time of invention</u>, that would have caused the ecommerce engineer to call a counseling center clerk. *KSR*, at 1742; *Innogenetics N.V. v. Abbott Laboratories,* 2008 WL 151080 * 10-13 (Fed. Cir. 2008); *Single Chip Systems v. Intermec IP Corp*. 495 F. Supp.2d 1066, 1091 (S.D. Ca. 2007) (Under *KSR*, it is improper to start with analogous art, identify problems in it, and look back into the inventor's field.) [5]

As discussed further below, the only problem defendants cite is made up here, and does not exist in ecommerce. This is why Dr. Scacchi (and defendants) never thought to look to counseling centers, but instead relied upon references showing electronic quoting systems. This Court should not consider unpublished, non-analogous prior art.

### III.   <u>DEFENDANTS HAVE FAILED TO ESTABLISH PRIMA FACIE OBVIOUSNESS</u>

Even considering the BAM art, SST's motion should be granted, at least with respect to claim 14. In *Omeprezole*, the infringer offered a first reference showing a subcoating used for drugs, and a second reference showing a drug, Omeprezole, without a subcoating. Defendant argued that it would have been obvious to put the Omeprezole of the second reference inside the coating of the first reference, which was specifically made as a drug subcoating.

The court stepped into the shoes of the phosita, and started with each of two references, methodically recreating the alternative paths the phosita would have taken with each, explicitly noting the common sense and flexibility dictated by *KSR*, and accounting for the teach aways

---

[5] The FAST engineers, when they built their next generation system, started from their experience with another ecommerce quoting system, and the Compuserve systems show the same thing. (Ex. L, p. 17, Future Directions, p. 24, Lessons Learned, Scacchi 14, p. v, FORWARD). Defendants can not use the '328 inventor's decision, <u>after</u> inventing the technology, to apply it to implement an electronic referral system, as the missing teaching they need.

4

and the "goals" of each reference. The court concluded that a phosita starting with the first reference would not be motivated to add the second, and a phosita starting with the second would also not be motivated to add the first, because each reference did not suggest the other, and in fact, taught away. *Id.*, at 523-535[6]

Here, defendants have several prior art references that are directed to automatically obtaining quotes through a computer over a data network. All these references teach to get <u>as many quotes as one can</u>, and are in a field that had <u>numerous</u> ways to efficiently sort through and display the most relevant ones if too many were returned.[7] Defendants are faced with <u>emphatic, multiple teachings against</u> limiting the <u>vendors on the way out</u> to the specific number of quotes to be received, like in claim 14. Second, defendants have some BAM prior art that teaches to give a limited number of <u>referrals</u> to someone. When a patient or victim is going to call and/or meet with <u>each referred professional</u>, in the brick and mortar world, it makes sense to give someone one or two names, rather than <u>every</u> name. However, in these systems, there are emphatic teachings that the referral service should <u>not</u> obtain and forward quotes to the buyers, but instead, should ensure users are matched to one another for further consultation. Thus, defendants are here faced with multiple teachings <u>against</u> those systems obtaining quotes (price and other terms in sufficient detail to constitute an offer capable of acceptance).[8]

---

[6] Similar cases include *Depuy Spine, Inc. v. Medtronic Sofomor Danek, Inc.* 2007 WL 4305933 (D. Ma. 2007) ("Because adding a compression member to the Puno device would defeat one of the stated purposes [of that device]…"it would not be obvious); *Ex Parte Crandall* 2007 WL 2843724 *5 (BPAI 2007)("[I]ncorporating Destafano's teaching into Lapierre's system would defeat the intented purpose of such system."); *Stryker Trauma, SA v. Synthes* 2007 WL 1959231 (D. NJ 2007).
[7] Exs. L, X, Scacchi 43.
[8] (Scacchi 35 p. 8 ("When a consumer comes looking for a contractor…[h]e avoids any kind of favoritism by handing the consumer his contractor referral book."); Ex. 5 p. 1 ("Gordon arranges for the exchange of first names and phone numbers and the clients proceed on their own"); p.4

5

Like *Omeprezole*, this is classic text-book, non-obviousness. Defendants have ecommerce art, the intended purpose of which would <u>be destroyed entirely</u> by limiting the vendors in any way, never mind the manner defined by claims 13 and 14. Defendants also have BAM referral services prior art that counsels <u>against</u> the system obtaining and returning quotes, and which involves counseling and other professional services not suitable for computerized quoting. This means that a phosita starting from **<u>either</u>** vantage point would be <u>taught against</u> combining it with the other. This is why referral services and ecommerce systems <u>both exist online today</u>, but the former do not return quotes, and the latter do not diminish vendor choices.[9] Defendants' several attempts to support this improper combination simply emphasize their failure to establish a *prima facie* case of obviousness, and compel the granting of SST's motion.

## IV. <u>DEFENDANTS' ARGUMENTS EMPHASIZE THEIR FAILURE OF PROOF</u>

First, believing the teach aways in the referral services are less emphatic than in the ecommerce art, defendants incorrectly begin their analysis by claiming an ecommerce engineer seeking to design a system that <u>returns quotes and permits online purchasing</u> would <u>begin</u> his design by ignoring ecommerce and calling a hardware store or United Way counseling center. However, even if these referral centers constitute analogous art, the phosita does not reach them until he starts designing an ecommerce system, and encounters a problem in ecommerce that directs him outside his art. This is the only way analogous art can be used to establish obviousness. *Wang Laboratories v. Toshiba Corporation,* 993 F.2d 858, 864 (Fed. Cir. 1993).

Second, even if defendants' starting point were correct, their combination results in a

---

("[i]f you decide to engage the attorney services, you will need to negotiate fees and payment arrangements [with the attorney].")

[9] <u>www.airs.org</u>, online version of referral service at Scacchi 33. Unlike *Omeprezole*, here all of the offered prior art is cumulative of what the Examiner already considered, and the art is not even from the same field, but is <u>at most</u> analogous.

6

computerized referral service that fails to show all the claim limitations, because it does not obtain or forward quotes (price and other terms of a transaction in sufficient detail to constitute an offer capable of acceptance), or store portions of quote information at a location remote from said filter means, as required by claim 14. Defendants' claim chart, reproduced here at Ex. 7 with annotations, speaks volumes on this issue, which they ignore. If defendants' want to improperly start with referral services, they need to explain why a phosita is going to modify them to store and return quotes through a computer – history reveals that has never happened. (Ex. 9). *MuniAuction, Inc. v. Thomson Corp*, 502 F.Supp.2d 477, 491 (W.D. Pa. 2007)(*KSR* irrelevant if the combination is missing a claim limitation).[10]

Defendants' third solution to the teach away is the language "as a whole" from *KSR* and subsequent precedent. However, that language does not mean the Court should compile a collection of a large number of BAM and ecommerce references, and see if it can find all the claim limitations in the collection "as a whole." Instead, it means the Court should start with a reference, and see if the art as a whole suggests the proffered combination. *Depuy Spine, Inc.; Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332 (Fed. Cir. 2005) ("The 'as a whole' instruction in title 35 prevents evaluation of the invention part by part… Without this important requirement, an obviousness assessment might successfully break an invention into its component parts, then find a prior art reference corresponding to each component.")

Defendants' fourth solution to the teach away is that filtering is the "key innovation" in the '328 claims. It is improper to analyze obviousness by looking to the "key innovation." *Medtronic, Inc. v. Cardiac Pacemakers*, *Inc.* 721 F.2d 1563 (Fed. Cir. 1984).

---

[10] SST did not change positions as defendants claim, but fully agrees that claims 1-3 previously in issue, and addressed later herein, are properly characterized as an electronic referral system. This does not relieve defendants of their burden with respect to claim 14, even if they are correct about claims 1-3.

Defendants' fifth attempt to avoid the teach away is that the phosita reading FAST would ignore its teach away, and instead understand that 1) there would eventually be too many vendors for the buyer to sort through, and 2) that vendors would be "not likely to respond" if they had to compete against too many other vendors.  As to the first issue, FAST did not recognize it until years later, and then solved it a different way, not in a way that would destroy FAST's purpose.  As to the second issue, in the BAM world of referrals, defendants are correct that a contractor may not want to spend hours visiting a consumer and consulting about a new home addition if fifty other contractors got the same lead.   However, systems like FAST involved one computer automatically querying another for a quote, and often, the queried computer was that of a third party, not even the vendor.  (Ex. L).   Defendants thus suggest that a vendor, who could receive sales with absolutely zero cost or effort as a result of FAST querying computers, would be dissatisfied that his chance of winning the bid was too low, so he would ask to be deleted from the computerized quoting process for selected RFQs – to ensure his chance was zero.  And, FAST would rewrite its software to also delete others from the process so that it only queried the same number of vendors as the predetermined number of quotes to be received, creating a system that returns few or no quotes because FAST had no way of knowing if any of the queried computers would return a quote.

    The problem of vendors not wanting to take the trouble to respond when there was too much competition did not exist in FAST-like systems, because the vendor would have to take affirmative action not to respond, and whatever orders he got through FAST were "found money".[11]  This is why defendants cite no prior art that recognizes this problem, but rely exclusively upon attorney argument.   Defendants' hindsight "solution" to this non-existent

---

[11] One vendor got an $8600 order through FAST even though he never heard of FAST. (Ex. L, p. 32).

8

problem would result in a system that no longer had the ability to obtain the best deal from vendors over the Internet and which would return few or no quotes. This is the <u>improved</u> system for which FAST buyers would pay? In any event, even if such a system only sent the RFQ to a limited number of vendors, each vendor would never know which others of the thousands to which it would be sent, so <u>unlike in the BAM world</u>, the mere <u>ability of the computer to contact such a large number of vendors</u> would create an environment of too much competition, and the same alleged problem would exist.[12]

      Defendants can not get to the analogous art, nor prove motivation to combine <u>to a clear and convincing standard</u>, by claiming the ecommerce phosita would have tried to solve a non-existent problem with a solution that would not solve it if it did exist. Instead, defendants need a real problem in ecommerce, supported by <u>clear and convincing evidence from the prior art</u>, and a <u>suitable solution to it in BAM referral centers</u> that would have motivated a designer of an ecommerce quoting system to change course, <u>ignore the ecommerce teachings</u> and redesign those systems as defendants claim.

      **<u>What have defendants offered in this regard</u>**? They speculate that referral services may have suffered from using a large rolodex card file, but they can't find <u>any</u> prior art that recognizes this, never mind in ecommerce as the law requires. They note the "key innovation" of the '328 claims, and offer solutions to problems that did not exist. They indicate that the phosita would recognize the too many problem, and modify FAST to <u>defeat FAST's intended purpose</u>, a theory belied by the actions actually taken by the FAST designers. And, even if the phosita abandoned ecommerce and started with referral centers, defendants offer <u>nothing at all</u>

---

[12] Defendants themselves acknowledged this previously. (Ex. 10, p. 8). Their logic confirms why *Single Chip* was correct when it held that identifying a problem in the <u>analogous art</u> – assuming the BAM art is analogous - "is not supported in *KSR* as a sufficient basis for finding obviousness." *Id.*, at 1091-2.

9

suggesting a modification to obtain quotes and facilitate optional online purchasing in systems that still do not do that today.  Absent SST's briefs and the '328 patent, defendants can not find anything that links referral services to electronic quoting systems <u>in any way at all</u>.  Defendants can not establish a *prima facie* case of obviousness by positioning themselves <u>in the middle</u> of lots of prior art in different fields, and grabbing the pieces they need from each using the buzzwords "prior art as a whole."  They need to <u>prove the path the phosita would have taken</u>.

### V.     <u>**DEFENDANTS' REMAINING ARGUMENTS ARE MERITLESS**</u>

Defendants have never produced the LowerMyBills ("LMB") settlement, and the public record (Ex. 12) shows that case remained pending <u>four months</u> after *KSR*.  Defendants obtained their patent by arguing, six times, one distinction over the prior art: the matching computer <u>obtained quotes</u> from <u>only a subset</u> of the banks whose filtering criteria matched the filter conditions input by the buyer, rather than from all matching banks. This, in the face of BAM methods that involved consumers being <u>referred to only a small number of banks</u>, just as described in defendants' BAM art.  <u>Every one</u> of the arguments defendants make here – from the alleged benefit of decreased competition, to the recognition of the alleged too many problem – would equally have barred their own patent, and is directly opposite the position they previously took.  This is compelling evidence of non-obviousness here.

Defendants also do not explain why they (and their expert, Dr. Scacchi) relied upon 29 ecommerce references for 3 years of litigation, or why it was *KSR* that made viable a theory based <u>exclusively upon pre-*KSR* precedent</u>.  The <u>Court order</u> permitting their updated report was <u>strictly limited</u> in this regard. (Ex. G)  Defendants were not forthright with Judge Salas, and they thus gained the right to submit a new expert report, with a new theory of the case never disclosed in discovery, that otherwise would have been barred as more than five months late.

*Innogenetics, NV,* at 12-13.   Dr. Scacchi's original report provides <u>powerful evidence</u> of what prior art a phosita would look to.[13]

The Iquest-I mode that defendants claim SST overlooked actually presents a user with a set of menu questions she must answer, <u>before</u> entering her search phrase.  The answers to the menu questions are then used to <u>select one database</u> against which <u>the later entered search phrase</u> is applied to find <u>as many "hits" as possible</u>.  (Ex. 11, p. 81, 199)  Defendants provide no reason at all why a phosita would modify Iquest-I nonsensically, so that it can only return one document when searching one database, as claim 14 states.  Moreover, Iquest-I's teachings of a <u>separate</u> database selection process <u>in advance of</u> entering the search string teaches <u>against</u> filtering the search query itself to select the database, even if defendants could analogize a search string to an RFQ.[14]

Defendants' task here is well defined:  They need to prove, <u>by clear and convincing evidence,</u> that a real problem in ecommerce would have motivated a phosita to look outside his art, and take the path defendants claim he would have taken.   But far from recognizing a problem with searching the network far and wide to obtain the best quotes, ecommerce engineers of the day were <u>working feverishly to facilitate that which they viewed as the</u> **goal**, not a problem.  SST is thus entitled to summary judgment with respect to claim 14.

---

[13] The Court should not consider the Scacchi report here until it has had a full opportunity to consider SST's motion to exclude, which will show the report goes well beyond Judge Salas' order.  Otherwise, the Court would be encouraging defendants' gamesmanship.

[14] Defendants' conclusory assertion that there was no technological barrier to the '328 invention falls <u>way</u> short of meeting their burden to show why the Compuserve Iquest and the BAM art allegedly existed for nearly two decades, the same commercial motivation existed for longer, and nobody came up with the '328 invention.

11

**VI.     DEFENDANTS CAN NOT PROVE CLAIMS 1 – 3 OBVIOUS**

With respect to claim 1, the subject "means" can "determine" based upon one of two things. A camera that can take pictures in color or in black and white can do both. Defendants ignore the fact that in both claims 1 and 3, there is <u>very different use</u> of the word "or" to convey the concept that defendants claim is conveyed by the subject language.[15]

It is no coincidence that accounting for the varied use of "or" reads the claim <u>exactly onto</u> the embodiment of col. 7 of the '328 specification, and defendants' construction – wherein the central computer <u>filters the RFQ and determines which vendors should receive it before the central computer receives the RFQ</u> – leads to a non-sensical impossibility. Claim 1 is a throttle, wherein the determining is based upon the buyer's conditions or the network's conditions. In the exemplary embodiment at col. 7, the latter occurs when the former selects too many. <u>Defendants challenge only the construction of claim 1, not the failure of the prior art to teach the throttle, so if the Court agrees with SST's construction, SST is entitled to summary judgment</u>.[16]

---

[15] See '328 patent, claims 1 and 3: "means for responding to the generator of said request with <u>either</u> a response from the selected network members <u>or</u> with a list of said selected network members"; said selected vendors communicating their quotations <u>either</u> directly to the buyer <u>or</u> to the computerized system which in turn transmits said received quotations to the requesting buyer. The subject language has no "either" clause.

[16] Defendants claim SST is reading the word "or" as "and". However, "and" would make no sense in the subject context. Determine means to ascertain or decide. www.dictionary.com. In the case where the "cap" is 5, and the buyer's filter conditions select 3 vendors, the buyer's filter conditions <u>fully</u> ascertain and decide the specific three vendors to receive the RFQ, and the network filter <u>does nothing</u>. The network filter only ascertains and decides which vendors will receive the RFQ if the buyer selects too many potential candidates, precisely because in this case, the buyer's filter conditions <u>selected too many</u> and thus, <u>could not</u> ascertain the set of vendors that should receive the RFQ. Thus, the set of vendors is ascertained by one set of filter conditions or the other, but never by both. Use of the term "and" could have, for example, excluded from infringement all uses of the system where the buyer's conditions select less than the maximum number, as the network filter is not <u>involved at all</u> in the determination.

Finally, SST agrees with defendants that claims 1 – 3 define a computerized referral system and in these claims, the RFQ does not need to have enough information to return a quote, and quotes don't need to be returned. However, even with respect to claims 1 – 3, regardless of where the phosita started, he would have been led <u>directly away</u> from claims 1 -3 as soon as he attempted to apply the ecommerce art, because claims 1 – 3 all require <u>narrowing sources on the way out</u>, which is directly <u>against</u> the teaching of the ecommerce art. The prior art "as a whole" does not mean "everything, except the teaching in ecommerce that counsels against the '328 claim." *Bausch and Lomb, Inc. v. Barnes-Hind/Hydrocurvbe, Inc.*, 796 F.2d 443, 448-449 (Fed. Cir. 1986).[17]

## VII.  CONCLUSION

Defendants have failed to prove publication, have not provided a reason why a phosita would modify either of the references they cite, and propose combinations that are missing claim limitations, and which are taught away from. The Court should grant SST's motion.

Respectfully submitted,

KAPLAN GILMAN GIBSON & DERNIER LLP
900 Route 9 North
Woodbridge, NJ  07095
Telephone: (732) 634-7634
*Attorneys for Plaintiff Source Search Technologies, LLC*

DATED: January 30, 2008          By:      s/Jeffrey I. Kaplan/
                                  Jeffrey I. Kaplan (JK 4706)
                                  Michael R. Gilman (7608) *Pro Hac Vice*

---

[17] Dr. Scacchi's 1994 publication notes "There is a related need for how to address the transition from current business practices…to those designed or reengineered around the use of the Internet" Ex. Q, p. 2. People were using the Internet for its intended purpose. *KSR*.