# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Source Search Technologies, LLC,

        Plaintiff/Counterclaim Defendant,

-against-

LendingTree, LLC, IAC/InterActiveCorp, and ServiceMagic, Inc.,

        Defendants/Counterclaim Plaintiffs.

**DOCUMENT ELECTRONICALLY FILED**

Civil Action No.
04-CV-4420 (DRD) (ES)

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT

Kevin J. McKenna
Elvin Esteves
GIBBONS P.C.
  One Gateway Center
  Newark, New Jersey 07102-5496
  (973) 596-4500
  kmckenna@gibbonslaw.com
  eesteves@gibbonslaw.com

Claude M. Stern
Robert B. Wilson
Evette Pennypacker
James E. Baker
Linda J. Brewer
(all admitted *pro hac vice*)
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  51 Madison Avenue, 22nd Floor
  New York, New York 10010-1601
  (212) 849-7000
  claudestern@quinnemanuel.com
  robertwilson@quinnemanuel.com
  evettepennypacker@quinnemanuel.com
  jamesbaker@quinnemanuel.com
  lindabrewer@quinnemanuel.com

Date: January 30, 2008

Attorneys for LendingTree, LLC, IAC/InterActiveCorp, and ServiceMagic, Inc.

51200/2328830.7

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................... 1

II. SST ADMITS THAT THERE WAS NO WILLFUL INFRINGEMENT PRE-LITIGATION ...................................................... 3

III. SST HAS NO EVIDENCE OF WILLFUL INFRINGEMENT POST-LITIGATION ................................................................................................ 4

    A. Defendants' Non-Infringement and Invalidity Defenses Do Not Come Close to Being "Objectively Reckless" ................................... 4

        1. ServiceMagic's Non-Infringement Defenses Were Solidly Grounded in the Facts and the Law .............................. 5

        2. SST's Accusations About Dr. Scacchi Are Completely Unfounded ................................................................................ 8

        3. SST's Contentions on "Goods and Services" Are Hopelessly Inconsistent ............................................................. 9

    B. Defendants Have Litigated in Good Faith ........................................ 10

        1. Defendants' Motion to Dismiss Was Successful .................... 10

        2. Defendants' Subpoena of a Prosecuting Attorney Was Routine Fact Discovery ............................................................ 11

        3. Allegedly Calling SST a "Patent Troll" Is Not Bad Faith ....... 12

        4. SST Is Unable to Meet Ordinary Deadlines and Limits .......... 12

    C. SST Mischaracterizes the Post-*Seagate* Cases in Its Brief ................ 14

    D. There Is No Estoppel ......................................................................... 14

IV. CONCLUSION ................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
    228 F.3d 1338 (Fed. Cir. 2000) ............................................................................... 5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ............................................................................. 11

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*,
    514 F. Supp. 2d 1051 (N.D. Ill. 2007) ................................................................... 14

*Cohesive Techs., Inc. v. Waters Corp.*,
    2007 WL. 2746805 (D. Mass. Aug. 31, 2007) ...................................................... 14

*Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*,
    984 F.2d 410 (Fed. Cir. 1993) ................................................................................. 5

*Depomed, Inc. v. IVAX Corp.*,
    2007 WL. 4365476 (N.D. Cal. Dec. 12, 2007) ..................................................... 14

*Ricoh Co. v. Katun Corp.*,
    2007 WL. 2139576 (D.N.J. July 24, 2007) ........................................................... 11

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) ...................................................................... 1, 2, 3

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) ............................................................................... 3

*VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*,
    2007 WL. 3165548 (N.D. Cal. Oct. 24, 2007) ...................................................... 14

*Xerox Corp. v. 3Com Corp.*,
    267 F.3d 1361 (Fed. Cir. 2001) ............................................................................... 6

### **Statutes and Rules**

Computer Reservations System (CRS) Regulations,
    57 Fed. Reg. 43780, 43782-43783, (Sept. 22, 1992) ........................................... 5-6

## I.   INTRODUCTION

Plaintiff Source Search Technologies, LLC ("SST") admits on the first page of its opposition that it *did not have any factual basis* for alleging that Defendants willfully infringed the '328 patent when it filed its September 13, 2004 Complaint. Nor did SST have any basis for alleging the same thing in its October 15, 2004 First Amended Complaint. SST did not have *one iota* of direct or circumstantial evidence to support its stunning claim for $200,000,000 in alleged punitive damages. Indeed, SST acknowledges that it was *impossible* for Defendants to have willfully infringed because none of them had ever heard of SST or the '328 patent before this case began. (Opp'n at 1, 5-6).

SST relies *exclusively* on unfounded allegations about Defendants' *post-filing conduct* to argue that willful infringement began at some undefined point during the course of this case. In the whirlwind of its flailing contentions, SST attempts to distract the Court from what it must actually prove in order to establish willfulness. Specifically, SST must come forward with evidence demonstrating that *all* of Defendants' non-infringement and invalidity contentions are *objectively reckless* and that Defendants *knew or should have known it*. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). And SST must meet the recklessness standard under a heightened burden of proof – *clear and convincing* evidence. *Id*.

51200/2328830.7

In the Federal Circuit's recent decision in *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), the Court expressed an intensely skeptical view of willfulness claims – like SST's – based exclusively on post-filing conduct. The Court explained that "willful infringement in the main must find its basis in ***prelitigation conduct***." (Emphasis added). The reason for this general rule is that if the defendant's ***post-filing*** conduct is reckless, the patentee can – and should – seek relief by moving for a preliminary injunction. *Id*.

> A patentee who does not attempt to stop an accused infringer's activities in this manner ***should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct***. *Id*. (emphasis added).

As the Court explained, "if a patentee ***attempts to secure injunctive relief but fails***, it is likely the infringement ***did not rise to the level of recklessness***." *Id.* (emphasis added).

Here, SST's arguments do not come close to raising a material issue of fact with respect to "objective recklessness." Indeed, most of SST's allegations do not have anything to do with the merits of this case. And even on the merits, SST is tellingly silent about the majority of Defendants' non-infringement and invalidity contentions. SST would hardly be able to establish "likelihood of success on the merits" for a preliminary injunction by ignoring Defendants' strongest arguments. Likewise, SST's piecemeal allegations fall far short of establishing "objective recklessness" necessary to support a finding of willfulness under *Seagate*.

Moreover, SST fails to make any showing with respect to the second element required for willfulness – *subjective intent*. *Id*. at 1371. SST desperately tries to spin inferences with a series of shrill accusations that are completely unsupported by the facts. But SST's gross mischaracterizations are readily exposed, confirming that it is willing to say anything to try to save its hollow claim. SST's complete failure of proof on the essential element of subjective intent is more than sufficient grounds – by itself – for summarily dismissing SST's willfulness claim.

As a last resort, SST asks the Court to take a "wait and see" approach, and argues that if "any claim is valid and infringed or even *likely* to be valid and infringed, then clearly any continued infringement would *have to be* deemed willful." (Opp'n at 2, emphasis added). SST's argument is completely unhinged from the required legal standard. SST attempts to paper over its lack of evidence by suggesting that a loss on the merits is the same as willfulness. That is not the law. *See, e.g.*, *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1238 (Fed. Cir. 1985). It is time to dismiss SST's baseless claim. Thus, Defendants respectfully request summary judgment of no willful infringement.

## II.  SST ADMITS THAT THERE WAS NO WILLFUL INFRINGEMENT PRE-LITIGATION

In its opposition, SST concedes that "any infringement prior to September 20, 2004, when defendants were put on notice of the '328 patent in suit, *can not* be

willful because defendants had no notice of the '328 patent." (Opp'n at 1, emphasis added). Thus, SST acknowledges that it never had a good faith basis for alleging willful infringement based on Defendants' pre-litigation conduct.

Moreover, SST acknowledges that it waited "*several years*" before bringing this lawsuit, even though it was fully aware of Defendants' activities and believed that they infringed. (Opp'n at 4, emphasis in original). If anything, SST's pre-litigation conduct demonstrates its bad faith in sitting silently by while Defendants worked to build their businesses (thereby increasing the amount of potential damages). SST should not be allowed to benefit from its intentional delay.

### III.  SST HAS NO EVIDENCE OF WILLFUL INFRINGEMENT POST-LITIGATION

It is apparent from SST's opposition that it is merely grasping at straws by cobbling together unrelated events that allegedly occurred over the course of this litigation in an attempt to identify a basis for its post-filing willfulness claim.

#### A.  Defendants' Non-Infringement and Invalidity Defenses Do Not Come Close to Being "Objectively Reckless"

SST attempts to dismiss Defendants' substantive contentions regarding non-infringement and its multiple bases for invalidity by picking and choosing specific arguments to discuss in its brief, while ignoring everything else. For example, SST does not challenge the good faith of Defendants' invalidity defense based on anticipation, and in fact, describes Dr. Scacchi's report as a "painstaking" analysis.

(Opp'n at 9). SST does not address two out of the three bases for non-infringement in LendingTree's currently-pending motion for summary judgment. It ignores most of the prior art discussed in Defendants' motion for summary judgment on obviousness. And it ignores Defendants' indefiniteness defense altogether. Defendants' multi-faceted and overwhelming challenge to SST's infringement claims simply defeats willfulness as a matter of law. *See, e.g.*, *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1352 (Fed. Cir. 2000); *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993).

> **1. ServiceMagic's Non-Infringement Defenses Were Solidly Grounded in the Facts and the Law**

SST criticizes ServiceMagic's arguments in support of its February 22, 2007 motion for summary judgment of non-infringement. (*See* Opp'n at 11-12). But none of those arguments comes anywhere close to being "objectively reckless."

***"Party Representing a Buyer or Supplier"*** – Claim 3 of the '328 patent describes a method in which referrals involve "a party representing a buyer or supplier." (Supp. Esteves Decl., Ex. 10 at 8:49-51). Early airline reservation systems are an example of "a party representing a buyer," in that a travel agent accesses the system on behalf of a traveler, rather than the traveler making a reservation directly. *See* Computer Reservations System (CRS) Regulations, 57 Fed. Reg. 43780, 43782-43783, (Sept. 22, 1992) (CRS regulations codified at 14

C.F.R. pt. 255) (attached to Supp. Esteves Decl., Ex. 31). Accordingly, ServiceMagic argued that "party representing a buyer or supplier" referred to a system accessed indirectly by agents, and that this term not only distinguished claim 3 from the other '328 claims, but was also different from its website (which is accessed directly by homeowners and contractors). Thus, ServiceMagic's argument was based soundly on the unique language of claim 3, examples in the art, and the fundamental principle of "claim differentiation." *See, e.g.*, *Xerox Corp. v. 3Com Corp.*, 267 F.3d 1361, 1366 (Fed. Cir. 2001).

*"Request for Quotation"* – SST criticizes ServiceMagic's argument that users of its website do not submit "requests for quotation" ("RFQs") because the homeowners' requests do not provide enough information for contractors to return a quote. (Opp'n at 11). SST's criticism is astonishing in light of the position it recently has taken in its opposition on obviousness. There, SST argues (precisely as ServiceMagic did) that "the RFQ itself must have enough information in it" so that the system can obtain and return a quote from the vendor. (Supp. Esteves Decl., Ex. 24 at 30). If that is so, ServiceMagic's website does not infringe. Thus, as it has in many other situations, SST simply argues what is expedient, regardless of the stark inconsistencies between its non-infringement and invalidity contentions.

***"Goods and Services"*** – SST argues that ServiceMagic could not have believed that the words "standard" and "standardized" have the same meaning, as used in the '328 specification to describe "goods and services." (Opp'n at 12). In fact, ***SST first used these words interchangeably*** in its claim construction brief. (Supp. Esteves Decl., Ex. 15 at 45). And SST continued to use the words interchangeably at the claim construction hearing. (Supp. Esteves Decl., Ex. 16 at 83-84). Only later, SST realized that it could not prove infringement with respect to the individualized services offered on the ServiceMagic website if the two words both referred to "off-the-shelf" characteristics of the claimed "goods and services." At that point, SST first argued that "goods and services" should be construed specifically to mean "standard." (Supp. Esteves Decl., Ex. 17 at 17).

Indeed, the meaning of "goods and services" is still not fully resolved because of SST's ever-changing contentions. SST has switched gears yet again in opposing Defendants' motion for summary judgment of indefiniteness to argue that the limitation "goods and services" should not be construed as "standard" ***or*** "standardized" – an argument that the Court has already considered and ***flatly rejected*** during claim construction. (Supp. Esteves Decl., Ex. 22 at 3-4). It is SST's complete reversal on this issue – ***not once, but twice*** – even in the face of adverse rulings from the Court, that smacks of "bad faith."

51200/2328830.7                                      7

### 2. SST's Accusations About Dr. Scacchi Are Completely Unfounded

As discussed in detail in Defendants' obviousness brief, SST's insinuations about the supplemental opinions of their expert, Dr. Walter Scacchi, have absolutely no basis in fact. (*See* Supp. Esteves Decl., Ex. 26 at 37-40). In particular, SST's accusation that Defendants are "pretending" that Dr. Scacchi's opinions are reflected in his supplemental expert report is outrageous. (*See* Opp'n at 9-10). If SST truly believed that something was amiss, it would have asked Dr. Scacchi at his deposition. Tellingly, SST did not ask Dr. Scacchi *a single question* about how he formulated his opinions or prepared any of his expert reports. (Supp. Esteves Decl., Ex. 19).

SST's contention that Dr. Scacchi withdrew his earlier anticipation opinions in favor of the obviousness opinions in his supplemental report is equally baseless. (*See* Opp'n at 10). Again, SST marked all three of Dr. Scacchi's expert reports, but did not ask *a single question* about whether he was withdrawing any of his invalidity opinions. Plainly, SST understood that he was not.

SST's suggestion that Defendants or their counsel somehow misled the Court is belied by the record of Defendants' letters requesting leave to serve a supplemental report, which explain clearly the bases for Defendants' request. (Supp. Esteves Decl., Ex. 27 at 1, Supp. Esteves Decl., Ex. 28 at 2). Even a brief glance at Dr. Scacchi's supplemental expert report confirms that it was prepared in

response to the Supreme Court's ruling in *KSR* and this Court's May 2, 2007 claim construction rulings – which is exactly the request that Defendants made and Judge Salas granted. (*See* Supp. Esteves Decl., Ex. 35 at 1-2).

Finally, SST's conclusory assertion that Defendants "could not have had any reasonable belief" in their contentions because some of the prior art allegedly "taught away" from the claimed system does not begin to create a material issue of fact as to willfulness. (*See* Opp'n at 10-11). As explained in Defendants' opposition and reply brief on obviousness, SST selects a few prior art references that it believes supports its "teaching away" theory, but leaves the majority of Defendants' contentions on the prior art as a whole completely unrebutted. (*See* Supp. Esteves Decl., Ex. 26 at 17-21). Thus, SST's attempt to disparage Defendants' prior art contentions is belied by its own failure to even attempt to rebut them on summary judgment.

### 3. SST's Contentions on "Goods and Services" Are Hopelessly Inconsistent

SST contends that it is "frivolous" for LendingTree to argue that its website does not infringe the '328 claims because loans are not "goods" or "services." (Opp'n at 12). SST's ever-changing positions with respect to this issue reveal the fundamental flaw in SST's contentions, not LendingTree's. SST's expert, Dr. Eric Dowling, originally opined that loans were "goods." (Supp. Esteves Decl., Ex. 32 at 11). Then, contrary to its own expert's opinion, SST argued that loans were

actually "services." (Supp. Esteves Decl., Ex. 18 at 15). And at his deposition, Dr. Dowling testified that he believed loans were both "goods" and "services," but he did not know whether money was either a "good" or a "service." (Supp. Esteves Decl., Ex. 20 at 66:18-70:21). SST's inability to shoehorn loans into either category confirms that they fit into neither one, and demonstrates that LendingTree's argument is far from "frivolous."

### B.   Defendants Have Litigated in Good Faith

SST's scattershot arguments confirm that it has absolutely no evidence, direct or circumstantial, of subjective intent – let alone ***clear and convincing*** evidence – that would give rise to a material issue of fact.

#### 1.   Defendants' Motion to Dismiss Was Successful

SST argues that Defendants' Rule 12(b)(6) motion was "frivolous." (Opp'n at 7). On the contrary, it was quite successful. In its First Amended Complaint, SST alleged that all three Defendants – LendingTree, ServiceMagic, and their parent company, IAC/InterActiveCorp ("IAC") – were "direct, contributory, and/or inducers of the infringement." (Supp. Esteves Decl., Ex. 11 at ¶11). Because LendingTree and ServiceMagic operate as stand-alone companies, Defendants moved to dismiss all claims against IAC. Defendants also asked the Court to convert their Rule 12(b)(6) motion into a motion for summary judgment under Rule 56 (*see* Supp. Esteves Decl., Ex. 12 at 6), which the Court did after ***both***

*parties* introduced facts outside the scope of the pleadings. (*See* Supp. Esteves Decl., Ex. 13 at 4).

In response, SST admitted that the inducement claim against IAC was "the only relevant issue." (*See* Supp. Esteves Decl., Ex. 13 at 9). Thus, SST dropped two out of the three infringement theories against IAC, thereby narrowing the issues. (*Id.*) Defendants' success in this regard can hardly be described as "bad faith."

### 2.   Defendants' Subpoena of a Prosecuting Attorney Was Routine Fact Discovery

SST argues that Defendants' May 11, 2005 subpoena of SST's trial counsel was nothing more than an attempt to turn "SST's trial counsel into a fact witness to obtain disqualification and frustrate SST's cause." (Opp'n at 8). Again, SST leaves out the most important fact – ***trial counsel for SST was also responsible for prosecuting the '328 patent in the U.S. Patent and Trademark Office*** ("PTO").

As the prosecuting attorney, SST's counsel had knowledge of relevant facts surrounding issuance of the '328 patent that were not available from any other source. Accordingly, it is no surprise that prosecuting attorneys are routinely subpoenaed to give deposition testimony. *See, e.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1328 (Fed. Cir. 2003); *Ricoh Co. v. Katun Corp.*, 2007 WL 2139576 at *13 (D.N.J. July 24, 2007).

SST elected to have its prosecuting attorney also act as its trial counsel. Counsel presumably advised SST about the potential risks. Moreover, Defendants sought only fact discovery. (*See* Supp. Esteves Decl., Ex. 33 at Ex. B; Supp. Esteves Decl., Ex. 34 at 1-3). They never moved to disqualify SST's choice of counsel. Although ultimately unsuccessful, Defendants' request for routine fact discovery to defend against SST's infringement claims does not amount to anything approaching "bad faith."

### 3. Allegedly Calling SST a "Patent Troll" Is Not Bad Faith

SST complains that, during a status conference before Judge Salas, prior counsel for Defendants called it a "patent troll" that does not have a "real business." (Opp'n at 12-13). Assuming Defendants' counsel even said what SST contends, calling the opposing party an allegedly "bad name" does not even merit the Court's attention. Besides, it is undisputed that SST does *not* have a "real business." As the named inventor on the '328 patent testified, SST exists only to prosecute this case. (Supp. Esteves Decl., Ex. 14 at 69:8-19, 130:25-132:14).

### 4. SST Is Unable to Meet Ordinary Deadlines and Limits

In a particularly desperate argument, SST accuses Defendants of "bad faith" for refusing to agree to *a third extension* of time for SST to file its opposition to this motion. (Opp'n at 13). SST fails to point out that Defendants had earlier agreed to two extensions of time (from the original return date of December 10,

2007 to January 4, 2008) as part of stipulations between the parties. Indeed, Defendants agreed to the second extension as a professional courtesy to SST's counsel in order to accommodate his vacation plans.

Counsel for SST first indicated that he might need yet another extension when he called Defendants' counsel ***on the day that SST's brief was due***. SST's counsel provided no explanation for the delay other than wanting more time to work on his brief. At around 3:00 p.m., counsel for SST sent an e-mail confirming that he was going to call the Court to ask for a one day extension and giving Defendants' counsel "20 minutes" to respond. (Supp. Esteves Decl., Ex. 23). In light of the two earlier extensions, the fact that SST still had nine hours before the deadline, and the lack of any real reason for the delay, Defendants opposed. Remarkably, after the Court granted SST's request, counsel filed his brief that evening anyway, calling into question why he had wasted everybody's time haggling over an extension that he apparently didn't need.

Throughout this litigation, Defendants have been extremely generous in extending professional courtesies to SST's counsel. Defendants' refusal to agree to one of SST's many requests hardly qualifies as "bad faith" litigation conduct that would support SST's claim of willful infringement and an award of treble damages.

### C. SST Mischaracterizes the Post-*Seagate* Cases in Its Brief

Post-*Seagate* decisions strongly support Defendants' motion. For example, SST leaves out the first, and most important, factor leading to the court's finding of no willfulness in *Cohesive Techs., Inc. v. Waters Corp.*, 2007 WL 2746805 (D. Mass. Aug. 31, 2007) – *i.e.*, whether there was ***a bona fide dispute over validity and infringement***, which is exactly the case here. SST also mischaracterizes *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc*., 514 F. Supp. 2d 1051 (N.D. Ill. 2007), in which the court doubled damages, but only after ***the defendant lied*** and told the court that it would stop selling its infringing product, but did not. Finally, in two other cases, the court denied summary judgment of no willful infringement based on a strong showing of ***pre-litigation intent***, which is utterly missing here. *See VNUS Med. Techs., Inc. v. Diomed Holdings, Inc*., 2007 WL 3165548, at *3 (N.D. Cal. Oct. 24, 2007); *Depomed, Inc. v. IVAX Corp*., 2007 WL 4365476, at *12 (N.D. Cal. Dec. 12, 2007).

### D. There Is No Estoppel

SST argues that Defendants have litigated in "bad faith" because they should have known that they would be estopped from raising virtually any defenses to infringement. (Opp'n at 13-15). But, as Defendants hove pointed out time and again, there is no estoppel with respect to any defense. In their summary judgment briefs on non-infringement and obviousness, Defendants have explained in detail

why SST has failed to make even a preliminary showing of estoppel. (*See* Supp. Esteves Decl., Ex. 21 at 9; Supp. Esteves Decl., Ex. 26 at 34-37). SST's conclusory arguments are completely disconnected from any pertinent legal standard or relevant case law. Thus, SST's theories are entitled to ***no weight*** on the issues of "objective recklessness" or Defendants' subjective intent.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment of no willful infringement.

Respectfully submitted,

Date: January 30, 2007    By: s/ Elvin Esteves

Kevin J. McKenna
Elvin Esteves
**GIBBONS P.C.**
  One Gateway Center
  Newark, New Jersey  07102-5496
  (973) 596-4500
  kmckenna@gibbonslaw.com
  eesteves@gibbonslaw.com

Claude M. Stern
Robert B. Wilson
Evette Pennypacker
James E. Baker
Linda J. Brewer
(all admitted *pro hac vice*)
**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**
  51 Madison Avenue, 22nd Floor
  New York, New York  10010-1601
  (212) 849-7000
  claudestern@quinnemanuel.com
  robertwilson@quinnemanuel.com
  evettepennypacker@quinnemanuel.com
  jamesbaker@quinnemanuel.com
  lindabrewer@quinnemanuel.com

Attorneys for LendingTree, LLC,
IAC/InterActiveCorp, and ServiceMagic, Inc.